United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation, Plaintiffs, <br><br> v. <br><br> Timeshare Lawyers P.A., and others, Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-24681-Civ-Scola |

### Order Granting in part and Denying in Part Motion to Dismiss

Plaintiffs Bluegreen Vacations Unlimited and Bluegreen Vacations Corporation (collectively "Bluegreen") filed this action against Defendants Timeshare Lawyers, Carlsbad Law Group, LLP, Gallagher-Clifton, LLC, MG&N Group LLC, Yuge Internet Marketing, LLC, Bugly Internet Marketing, LLC, Bigly Internet Marketing, LLC, VCF Enterprises, LLC, Rich Folk, William Wilson, JL Slattery, Patrick Thompson, Patrick Stewart, Angela Consalvo, and David J. Crader. (ECF No. 1.)

Bluegreen, a company in the business of selling timeshare interests in Florida, brings this action against the Defendants for damages resulting from the Defendants' participation in a scheme to induce Bluegreen timeshare owners to breach timeshare contracts. Defendants Pandora Marketing, doing business as Timeshare Compliance ("TSC"), VCF Enterprises, and their owners Wilson and Folk move to dismiss the complaint because it fails to state a claim under Rules 9 and 12 of the Federal Rules of Civil Procedure. (ECF No. 17.)[1] Additionally, Folk and Wilson argue the claims against them should be dismissed for a lack of personal jurisdiction. Bluegreen has filed a response in opposition to the motion (ECF No. 38) and the Defendants did not file a reply. After careful consideration, the motion to dismiss is **granted in part and denied in part. (ECF No. 17.)**

---

[1] This is the first of several motions to dismiss filed by the various defendants in this case. The defendants, who are represented by different counsel, were all served at different times and raise similar claims. The Court will address the motions to dismiss in separate orders. Going forward, however, all of the Defendants are required to jointly file dispositive motions unless granted leave from Court to file separately. Separate filings in a case like this unnecessarily clutter the docket, result in the inefficient duplication of litigant and Court efforts and can create unwarranted conflict and inconsistency.

1. **Background**

This action involves an alleged scheme by all named Defendants to offer Bluegreen timeshare owners a way to get out of their contracts. Individual timeshare owners purchase timeshare interests through Bluegreen and enter into purchase agreements. (ECF No. 1 at ¶ 58.) If an owner obtains financing for their purchase, the Bluegreen timeshare owner also executes a promissory note. (*Id.*) The purchase agreement and promissory note control the benefits and obligations of timeshare ownership and establish a legal relationship between Bluegreen and the timeshare owners. (*Id.*)

The Defendants are not parties to the timeshare contracts between Bluegreen and timeshare owners. (*Id.* ¶ 59.) The Defendants, however, participate in an unlawful scheme to induce Bluegreen owners to breach their timeshare contracts through nonpayment. (*Id.*)

The scheme is comprised of four components: the Marketing Defendants (TSC, VCF, Wilson, and Folk), the Third-Party Advertiser Defendants (Yuge Internet Marketing, LLC, Bigly Internet Marketing, LLC, and David J. Crade), the Lawyer Defendants (Timeshare Lawyers, Gallagher-Clifton, Carlsbad Law, Thompson, Deighan, Stewart, and Slattery); and the Credit Repair Defendants (MG&N Consulting, LLC and Angela Consalvo).

The Marketing Defendants falsely advertise timeshare exit services by promoting a legitimate process to exit timeshare contracts. (*Id.* at ¶ 53.) However, the process is not legitimate and instead induces Bluegreen owners to breach their timeshare contracts through nonpayment. (*Id.* at ¶ 54.) The Marketing Defendants charge thousands of dollars to help Bluegreen owners breach the timeshare contracts. (*Id.* at ¶ 57.) The Marketing Defendants advertise their services on the Third-Party Marketing Defendants' websites that rate various timeshare exit companies. Those websites are intended to direct Bluegreen owners to the Marketing Defendants. The Marketing Defendants also employ telephone sales tactics, during which case analysts make false statements to timeshare owners regarding the legality of their services. (*Id.* at ¶ 135.)

The Lawyer Defendants, in exchange for a fee, execute a letter directed to Bluegreen that is intended to "cut off any communication between Bluegreen and the Bluegreen timeshare owners, and constitutes the entirety of the 'service' the Lawyer Defendants perform." (*Id.* at ¶ 33.) Lastly, the Credit Repair Defendants manipulate the timeshare owners' credit reports and remove negative trade lines related to the timeshare owner's default on the timeshare contracts. (*Id.* at ¶ 44.) Additionally, they also file false police reports claiming identify theft on behalf of timeshare owners to discourage credit bureaus from

reporting negative information. (*Id.* at ¶ 45.)

Bluegreen initiated this action against the Defendants alleging claims of false advertisement and contributory false advertisement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), tortious interference with contractual relations, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), and civil conspiracy to commit tortious interference. (ECF No. 1.)

The Marketing Defendants (Pandora Marketing, doing business as TSC, VCF Enterprises, Wilson, and Folk) filed the subject motion to dismiss for failure to state a claim and lack of personal jurisdiction over the individual defendants. (ECF No. 17.)

### 2. Legal Standards

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009), abrogated on other grounds by *Mohamad v. Palestian Authority*, 132 S. Ct. 1702 (2012).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). In reviewing the complaint, the court must do so in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions").

### 3. Analysis

The Marketing Defendants move to dismiss the complaint on two grounds: The Court lacks jurisdiction over Wilson and Folk, the individual defendants, and Bluegreen has failed to state a claim against any Defendant consistent with the requirements of Rules 9 and 12. The Court will first dismiss the claims against VCF Enterprises, then analyze the threshold issue of whether it has jurisdiction to adjudicate the claims against Wilson and Folk. Lastly, the Court will decide the applicability of Rule 9 to Bluegreen's claims and whether Bluegreen's pleading states a claim.

### A. Defendant VCF Enterprises

The motion to dismiss argues that Bluegreen has failed to allege sufficient facts to state a claim against all four of the Marketing Defendants. As will be discussed below, the Court disagrees with this contention as it applies to the claims against Marketing Defendants Pandora Marketing, TSC, Wilson, and Folk. However, the Court notes that the complaint fails to state any claim against Defendant VCF. Indeed, the complaint does not explain what that company's role in the scheme is. The complaint alleges that VCF is an alter ego of the individual Defendants and is under the control of Wilson and Folk. (ECF No. 1 at ¶ 160.) The complaint vaguely claims that "VCF participates in, and reaps the benefit of, the false and/or misleading advertisement herein." (*Id.*) However, the remainder of the allegations lump VCF with the other Marketing Defendants such that it is impossible to decipher their role in the scheme and thus, what the basis for liability is. It is not enough that Wilson and Folk simply own VCF Enterprises, rather the complaint must allege facts to put the Defendant (and the Court) on notice of the facts that make up the claims against it. This deficiency is unique to Defendant VCF Enterprises and the complaint pleads sufficient facts to establish the role of the remaining Marketing Defendants.

### B. Personal Jurisdiction over Wilson and Folk

In Count I, Bluegreen brings a claim against the Marketing Defendants for false advertising in violation of the Lanham Act. Defendants Wilson and Folk, owners and corporate officers of the corporate Marketing Defendants, argue that the claims against them should be dismissed for a lack of personal jurisdiction. (ECF No. 17.) Wilson and Folk submitted their declarations in

support of their argument. (ECF Nos. 17-2, 17-2.) In opposition, Bluegreen submitted the declaration of Tim Clark, who is familiar with both Defendants and their involvement in the alleged scheme. (ECF No. 35-1.)

Plaintiff has the burden of establishing a prima facie case of personal jurisdiction for each defendant. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). When a defendant has submitted affidavits challenging a court's jurisdiction, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction, unless the defense affidavits contain only conclusory assertions. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). Where the plaintiff and defendant have submitted conflicting evidence, the court must construe all reasonable inferences in favor of the plaintiff. *Id.*

"Whether the court has personal jurisdiction over a defendant is governed by a two-part analysis." *Verizon Trademark Servs.,* 810 F.Supp.2d at 1324. First, the court must determine whether the applicable state long-arm statute is satisfied. *Future Tech. Today,* 218 F.3d at 1249. "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.,* 163 F.3d 1259, 1265 (11th Cir.1998); *see also Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1361 (11th Cir. 2006). Second, if the state long-arm statute is satisfied, the court must analyze "whether the exercise of jurisdiction over the defendant comports with the Constitution's requirements of due process and traditional notions of fair play and substantial justice." *Verizon Trademark Servs.,* 810 F.Supp.2d at 1324; *Sculptchair, Inc. v. Century Arts,* 94 F.3d 623, 626 (11th Cir. 1996).

### i. Personal Jurisdiction Under the Florida Long Arm Statute

To exercise jurisdiction over Wilson and Folk, the Court must find that their conduct placed them within the reach of Florida's Long-Arm Statute, Fla. Stat. § 48.193.

Under Florida's long-arm statute, a defendant may be subject to specific personal jurisdiction in Florida courts "for any cause of action arising from the doing of any of the following acts: [including] ... committing a tortious act within this state." Fla. Stat. § 48.193(1)(a)(2). A nonresident defendant need not be physically present in the state in order to commit a tortious act within the state under Florida's Long-Arm statute. *Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002). Under § 48.193(1)(a)(2), the Court has jurisdiction if a

tortious acted committed outside Florida causes injury within the state. *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, No. 13-CV-23066, 2014 WL 11899285, at *2 (S.D. Fla. July 15, 2014) (Williams, J.).

The complaint alleges that both Wilson and Folk are subject to personal jurisdiction because they participated in a scheme with Florida-based companies, including Pandora Marketing and TSC, which they own, to induce Bluegreen buyers to breach their timeshare contracts. (ECF No. 1 at ¶ 83.) Pandora Marketing had an office in Fort Lauderdale and directly solicited Bluegreen owners located in Florida. (*Id.*) The amended complaint alleges that Wilson and Folk personally supervised salespersons to solicit timeshare owners in Florida and they personally reviewed and approved the content of misleading call scripts used to solicit those timeshare owners. (*Id.* at ¶¶ 125-132.) Folk and Wilson directed employees to fly to Florida to meet with timeshare owners. (*Id.* at ¶ 128.) Accordingly, the Court finds that Bluegreen has pled a prima facie case of personal jurisdiction, which can be overcome through contrary affidavits. *Van Vechten v. Elenson*, 920 F. Supp. 2d 1284, 1290 (S.D. Fla. 2013) (Scola, J.) (citing *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1214 (11th Cir. 1999)).

Wilson and Folk have both submitted their own declaration, however, the Court finds that neither controvert personal jurisdiction. The affidavits are almost identical and generally attest that they are residents of California, are the owners and managing officers of Pandora Marketing, a Wyoming company, and VCF Enterprises, a Nevada company. (ECF Nos. 17-1, 17-2.) Pandora Marketing entered into an agreement with a third party, which permitted Pandora Marketing to use an office conference space in Fort Lauderdale. (*Id.*) In 2017, Pandora Marketing ceased using that office space. (*Id.*) Folk and Wilson admitted that Pandora had some contacts with Florida through their relationships with third parties that provided additional marketing and legal services directly related to the alleged fraudulent scheme. (*Id.*) Accordingly, the affidavits are consistent with the general allegations in the complaint and do not demonstrate that the Court lacks personal jurisdiction.

Wilson and Folk also argue that they are not subject to personal jurisdiction because the allegations in the complaint do not concern their conduct in their individual capacities, but rather as owners and officers of the corporate Marketing Defendants.

The corporate shield doctrine recognizes the "distinction between a corporate officer acting on one's own and a corporate officer acting on behalf of one's corporation" for purposes of establishing personal jurisdiction over individual plaintiffs. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993). This doctrine is based on the "notion that it is unfair to force an individual to defend

a suit brought against him [or her] personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his [or her] employer." *Id.* Notably, this doctrine does not shield a corporate officer accused of committing "fraud or other intentional misconduct." *Id.* at 1006 n.1. Indeed, the Eleventh Circuit has held that a defendant "cannot invoke Florida's corporate shield doctrine" in cases involving intentional torts. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1354-55 (11th Cir. 2013).

The complaint paints Folk and Wilson as the masterminds of the tortious scheme. They created Pandora Marketing and TSC, they directed operations for an office in Fort Lauderdale, they personally supervised sales agents who solicited Bluegreen owners in Florida and reviewed the scripts to induce timeshare owners to breach their contracts. Accordingly, the Court is satisfied that Bluegreen has sufficiently alleged tortious fraudulent activity and neither Wilson nor Folk will be shielded by the doctrine. *Wyndham Vacation Ownership, Inc. v. Montgomery L. Firm, LLC*, No. 618CV2121ORL37LRH, 2019 WL 5394186, at *5 (M.D. Fla. Aug. 8, 2019) (Dalton, J.) (finding the plaintiffs in a timeshare exit case had established personal jurisdiction over the defendants because the complaint alleged that they made false and misleading advertisement to induce timeshare owners to stop making their payments); *see also TracFone Wireless*, 2014WL11899285 at *3 (denying corporate shield defense and finding personal jurisdiction over out of state defendants because the complaint alleged the intentional tort of trademark infringement); *Louis Vuitton*, 736 F.3d at 1355 ("Because Louis Vuitton alleges that Mosseri committed intentional torts, his corporate shield defense to personal jurisdiction fails under Florida law.")

## ii. Due Process

Next, the Court must analyze whether the exercise of personal jurisdiction over Wilson and Folk comports with the due process requirements of the Fourteenth Amendment. To determine whether due process is satisfied, the Court must consider: (1) whether Bluegreen's claims "arise out of or relate to" the Defendants' contacts with the forum; (2) whether Wilson and Folk purposefully availed themselves of the forum state's privileges and protections; and (3) whether exercising personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *See Louis Vuitton*, 736 F.3d at 1355 (internal citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate

traditional notions of fair play and substantial justice." *Id.*

The relatedness prong concerns whether a plaintiff's claim arises out of or relates to at least one of the defendant's contacts with the forum. The inquiry focuses on "the direct causal relationship among the defendant, the forum, and the litigation." *Wyndham Vacation*, 2019WL5394186 at *6 (citing *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (internal quotations and citation omitted)). Bluegreen alleges that Wilson and Folk directed and supervised the fraudulent operation of Pandora Marketing and VSF, they created and oversaw the misleading sales pitch to induce timeshare owners in Florida, they directed a leasing of a Florida office, they personally participated in the solicitation of timeshare owners in Florida, they entered into business agreements with marketing and advertising vendors in Florida, and they directed the referral timeshare owners to multiple Florida lawyers who would encourage them to breach their contracts. (ECF No. 1 at ¶¶ 103, 125-35.) Accordingly, Bluegreen has satisfied the first prong of the test. *Wyndham Vacation*, 2019WL5394186 at *6.

Next, the Court considers the purposeful availment prong. For claims involving intentional torts, such as those alleged here, there are two applicable inquiries to assess whether Bluegreen has satisfied this prong: (1) the "effects" test as described in *Calder v. Jones*, 465 U.S. 783 (1984); or (2) the traditional purposeful availment test. *Id.* (citing *Louis Vuitton*, 736 F.3d at 1356–57). Under the "effects" test, the nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.* (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1286 (11th Cir. 2008)).

The effects test is satisfied. Bluegreen's claims against Wilson and Folk are intentional torts, were aimed at Florida, and caused harm that Wilson and Folk should have anticipated would occur in the forum state. Indeed, the complaint alleges that Wilson and Folk directed and participated in the purported fraudulent scheme. Additionally, the harm suffered by Bluegreen, a Florida resident, should have been anticipated because Wilson and Folk were targeting timeshare owners in Florida and inducing them to breach their contracts. *Id.*

Lastly, Bluegreen has satisfied the fairness prong, which requires that the plaintiff make "a compelling case that the exercise of personal jurisdiction would violate traditional notions of fair play and substantial justice." *Louis Vuitton*, 736 F.3d at 1355. The factors, as applied here, are: (1) the burden on Wilson and Folk; (2) Florida's interest in adjudicating the dispute; (3) Bluegreen's interest in obtaining convenient and effective relief; (4) the interests of the interstate judicial system in obtaining the most efficient resolution of

controversies; and (5) the shared interests of Florida and California in furthering fundamental social policies. *Sloss v. Indus. Corp. v. Eurisol*, 488 F.3d 922, 933 (11th Cir. 2007).

Considering these factors, the Court finds that Wilson and Folk have failed to show that exercising jurisdiction here would violate traditional notions of fair play and substantial justice. Neither Wilson nor Folk argue that adjudicating this case in Florida would unconstitutionally burden them. At best, both argue that they would be inconvenienced by having to travel to Florida. (ECF Nos. 17-1, 17-2.) "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." *Lovelady*, 544 F.3d at 1288. Moreover, Bluegreen has an interest in obtaining relief in Florida, where its alleged injuries occurred. *Id.* Finally, the Court sees no reason, and Wilson and Folk do not identify any, why the interests of the Florida and California would be harmed by adjudicating this dispute in Florida. Thus, exercising personal jurisdiction over Wilson and Folk would not offend due process. *Wyndham Vacation*, 2019WL5394186 at *7.

### C. Application of Rule 9

Before addressing the merit of Bluegreen's claims, the Court must resolve the parties' disagreement as to the application of Rule 9(b) in this case. The Marketing Defendants argue that Rule 9(b) applies to Bluegreen's claims for false advertising under the Lanham Act, FDUPTA, and state law tortious interference claims. (ECF No. 17 at 11-12.) Bluegreen disagrees.

Rule 9(b) states as follows, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Where a complaint contains allegations of fraud or mistake, Rule 9(b) imposes a heightened pleading standard, requiring that the circumstances constituting fraud be stated with particularity. *Blair,* 2012 WL 868878, at *2 (citing *Brooks v. Blue Cross & Blue Shield of Fla.,* 116 F.3d 1364, 1381 (11th Cir.1997)). To comply with Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Cardenas v. Toyota Motor Corp.*, 2019 WL 4777891, at *2 (S.D. Fla. Sept. 30, 2019) (Moreno, J.) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-81 (11th Cir. 1997) (*per curiam*)).

Courts in this district have determined that claims for false or misleading

advertising under Fla. Stat. § 817.41 must comport with Rule 9(b). *See Begualg Inv. Mgmt. Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2011 WL 4434891, at *4 (S.D. Fla. Sept. 23, 2011) (Martinez, J.) ("A claim for false and misleading advertising is also subject to Rule 9(b) heightened pleading standards."); *see also Simpson v. FWM Labs., Inc.*, No. 09-61771-CIV, 2010 WL 1257714, at *4 (S.D. Fla. Mar. 29, 2010)(Cohn, J.). However, courts in this Circuit tend to apply Rule 8 when addressing motions to dismiss claims under the Lanham Act. *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, No. 15-CIV-80352, 2016 WL 4254257, at *2 (S.D. Fla. Feb. 16, 2016) (Bloom, J.) (citing *Synergy Real Estate of SW Fla., Inc. v. Premier Property Mgmt. of SW Fla., LLC*, 578 F. App'x. 959, 961-62 (11th Cir. 2015)); *Blue Water Innovations, LLC v. Fettig*, No. 18-60671-CIV, 2019 WL 1904589, at *5 (S.D. Fla. Mar. 8, 2019) (Scola, J.); *ThermoLife Int'l LLC v. Vital Pharms. Inc.*, No. 19-CV-61380, 2019 WL 4954622, at *3 (S.D. Fla. Oct. 8, 2019) (Bloom, J.). Accordingly, the Court will not apply Rule 9(b) to Bluegreen's claims under the Lanham Act.

  Likewise, the Court finds that the particularity requirements of Rule 9(b) do not apply to Bluegreen's FDUPTA claims. The Defendant argues that Bluegreen's FDUTPA claim must meet the heightened pleading standard of Rule 9(b). However, there is a split of authority within the Southern District as to whether Rule 9(b) applies to FDUTPA claims. One line of cases holds that Rule 9(b) applies to the extent the FDUTPA claim at issue sounds in fraud. *See, e.g. Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (Altonaga, J.); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Seitz, J.). Another line of cases holds that the requirements of Rule 9(b) do not apply to claims under FDUTPA. *See, e.g., FTC v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016) (Moreno, J.); *Toback v. GNC Holdings, Inc.*, 13-cv-80526, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (Cohn, J.); *Harris v. Nordyne, LLC*, 14-cv-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 13, 2014) (Bloom, J.).

  This Court joins the decisions holding that the requirements of Rule 9(b) do not apply to claims arising under FDUPTA. *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1185 (S.D. Fla. 2019) (Scola, J.). Indeed, the purpose of FDUPTA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (2013). As the Eleventh Circuit has held, "the proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud or negligent misrepresentation, which asks only whether a representation was technically accurate in all

material respects." *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010). "FDUTPA's elements are more particularized than those of common law fraud." *Harris*, 2014 WL 12516076 at *5. Therefore, Rule 9(b)'s concerns with subjecting defendants to unfounded allegations of fraud is lessened by the specificity required under FDUTPA. Because "FDUTPA claims seek a remedy for conduct distinct from traditional common law torts such as fraud[,]" the Court finds that "the uniqueness of the cause of action place[s] it outside the ambit of Rule 9(b)." *Harris*, 2014 WL 12516076 at *4.

Lastly, the Court finds that Rule 9(b)'s requirements do not apply to Bluegreen's claims of tortious interference and conspiracy to commit tortious interference. *Palm Springs Mile Assocs., Ltd. v. T-Mobile USA, Inc.*, No. 20-22841-CIV, 2020 WL 7711687, at *4 (S.D. Fla. Dec. 29, 2020) (Scola, J.) (declining to apply heightened pleading requirement to claims of tortious interference); *ThermoLife Int'l LLC v. Vital Pharm. Inc.*, No. 19-CV-61380, 2020 WL 409594, at *3 (S.D. Fla. Jan. 24, 2020) ("[A] tortious interference claim is not subject to a heightened pleading standard.").

### D. False Advertising in Violation of Lanham Act

In Count I, Bluegreen alleges that the Defendants have engaged in false advertising to induce Bluegreen owners to breach their timeshare contacts. The Marketing Defendants move to dismiss Count I for failure to allege false or misleading advertisements. (ECF No. 17 at 13.) The Defendants also argue that dismissal is warranted for failure to identify specific Bluegreen owners who were actually induced by the advertisements and breached their timeshare contacts. (*Id.*)

To state a claim of false advertisement under the Lanham Act, Bluegreen must allege that: (1) the defendant's advertisements were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on the consumers' purchasing decision; (4) the misrepresented service affects interstate commerce; and (5) [the plaintiff] has been, or likely will be, injured as a result of the false or misleading advertisement. *Sovereign Military Hospitaller Order of St. John of Jerusalem of Rhodes & of Malta v. Fla. Priory of Knights Hospitallers*, 702 F.3d 1279, 1294 (11th Cir. 2012). Accepting the complaint's allegations as true, as is required at this stage, the Court finds that Bluegreen has adequately alleged a claim for false advertisement under the Lanham Act.

Bluegreen has sufficiently stated a claim for false advertisement under the Lanham Act. The complaint alleges that the Marketing Defendants' advertisements were false or misleading and that they had the capacity to

deceive and in fact deceived Bluegreen timeshare owners. The complaint claims that the Pandora Marketing as TSC advertised its services on ratings websites and compliance websites falsely claiming that their services were legal and effective. Specifically, the Defendants, through Pandora Marketing and TSC, advertised that "Our team at Timeshare Compliance as has a proven track record of persuading developers to exit timeshare contracts. We will remove all liability from your timeshare contract." (ECF No. 1 at ¶ 118.) The complaint also alleges that the Marketing Defendants advertised their "proprietary strategy of resolving timeshare contracts," (*Id.* at ¶ 121.) when in reality their strategy was to trick timeshare owners to withhold payments to Bluegreen and to hide their fraud through credit repair services and letters from lawyers falsely affirming the legality of the Marketing Defendant's services. The Marketing Defendants also engaged cold calling tactics representing that "TSC's service permits the Bluegreen owner to safely stop payments to Bluegreen" and that "the Bluegreen owner is guaranteed to receive a legal release from their timeshare obligation." (*Id.* at ¶ 135.) Accordingly, Bluegreen has stated the first two prima facie elements.

    The complaint alleges that Bluegreen owners employed the Marketing Defendant's services and stopped payments on their timeshare contracts. (*Id.* at ¶ 175.) Bluegreen claims that "without the direct false advertising Defendants' false and/or misleading advertisements, the Bluegreen owners would have continued to make payments on their timeshare and continued to understand that their Timeshare Contracts are legitimate and enforceable." (*Id.* at ¶ 176.) Lastly, Bluegreen alleges that it was financially harmed due to the Marketing Defendants' efforts to induce Bluegreen owners to stop payment on their timeshare contracts.

    The Marketing Defendants argue that Bluegreen has failed to state a cause of action because it has not shown that the statements were actually misleading or false; nor has Bluegreen identified what specific timeshare owners were induced by the Marketing Defendants' alleged scheme. However, that evidence is not necessary at the motion to dismiss stage and thus, is not dispositive to this Court's ruling. S*ee Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1278 (11th Cir. 2015) ("explaining that determining whether a statement is false or misleading is a 'fact-intensive' inquiry"); *see also North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, n. 12 (11th Cir. 2008) ("Whether a statement is literally false is a finding of fact, which is reviewed only for clear error."). Notwithstanding, as discussed above the Court finds that Bluegreen has identified the advertisements and statements that were misleading and explained why they were so. *See e.g., Diamond Resorts Int'l, Inc. v. US Consumer Att'ys*, P.A., No. 18-80311-CIV, 2019

WL 3412169, at *7 (S.D. Fla. May 14, 2019) (Reinhart, J.) (denying motion to dismiss false advertising claim because the plaintiffs alleged that "the Defendants used misleading statements and deceptive sales tactics, luring Timeshare Owners with an "illusory" promise that they could relieve them of their valid and binding timeshare obligations. The SAC includes a 'representative advertisement,' and pleads several statements by the Newton Defendants, alleging that they are false or misleading."); *Westgate Resorts Ltd. V. U.S. Consumer Attorneys, P.A.*, No. 6:18-cv-359-Orl-31TBS, 2018 WL 4898947, at *4 (M.D. Fla. Oct. 9, 2018) ("Plaintiffs adequately convey the substance of the website and plead sufficient facts from which the Court can reasonably infer that Defendants' statements were false or misleading when considered in full context.") (Artuon, J.).

The Marketing Defendants also argue that dismissal is appropriate because the statements are puffery or opinion and thus are not actionable. It is well established that factual statements are actionable under the Lanham Act, but statements of opinion are only actionable "if they imply a false factual basis for the opinion." *Advisors Excel, LLC v. Scranton*, No. 14-60558, 2014 WL 12543802, at *4 (S.D. Fla. Sept. 16, 2014) (J. Middlebrooks). "Thus, to be actionable, a statement must give consumers the impression that it describes actual facts about the plaintiff or the activities in which plaintiff participated." *Id.* The Marketing Defendant's advertisements regarding a 100% guarantee and top ratings, as well as advertisements that owners would not be liable at all under the timeshare contracts could constitute facts on which a consumer may rely. *See Diamond Resorts Int'l, Inc.*, 2019 WL 3412169, at *9 (citing *Westgate Resorts, Ltd. v*, 2018 WL 5279156, at *5)).

Accordingly, the motion to dismiss is denied on this point and the Court will not dismiss Count I against the Marketing Defendants.

### E. Tortious Interference With Bluegreen Timeshare Contracts

In Count V, Bluegreen asserts a claim against all Defendants, including the Marketing Defendants, for tortious interference. Bluegreen claims that by soliciting its customers and inducing them to breach their timeshare contracts, the Marketing Defendants tortiously interfered with Bluegreen's contracts. "The elements of a Florida tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Prem. Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018).

The Marketing Defendants argue that dismissal is appropriate for two reasons. First, the complaint fails to identify the specific contracts and parties at issue. (ECF No. 17 at 15.) Specific contract identification, however, is unnecessary at this stage. *Hilton Resorts Corp. v. Sussman*, No. 19CV305ORL40DCI 9CV305ORL40DCI, 2019 WL 2717164, at *4 (M.D. Fla. June 28, 2019). Next, the Marketing Defendants argue that the complaint fails to specify what specific misconduct by each Defendant gives rise to the tortious interference claim. (*Id.* at 16.) However, as discussed above, the complaint alleges that Pandora Marketing, operating as TSC and under the direction of the individual defendants, advertised the timeshare exit services and induced Bluegreen owners to breach their contracts.

### F. FDUPTA

The complaint alleges that all Defendants violated FDUPTA by publishing deceptive and misleading advertisements and tortiously interfering with Bluegreen's contracts. FDUTPA declares the following actions unlawful: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

The Marketing Defendants move for dismissal of the FDUPTA claim arguing that the complaint fails to allege deceptive acts or practices attributable to each Defendant. (ECF No. 17 at 17.) This argument fails because it is premised on the Marketing Defendant's arguments that they have not engaged in any fraudulent activity and rather their conduct is simply offering services to timeshare owners. (*Id.*) As explained throughout this order, this is not the case here. The complaint has thoroughly identified the actions taken by the Marketing Defendants that resulted in the allegedly false advertisements and that those actions interfered with Bluegreen's timeshare contracts.

### G. Civil Conspiracy to Commit Tortious Interference

In Count VII, Bluegreen asserts a claim of civil conspiracy to commit tortious interference against all of the Defendants. To maintain an action for civil conspiracy, the plaintiff must establish: (1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy. *Westgate Resorts*, 2018 WL 5279156, at *6.

The Marketing Defendants argue that the claim should be dismissed

because it is based on conclusory allegations that the Defendants all agreed at some unspecified time to engage in a scheme to interfere with Bluegreen's contracts. (ECF No. 17 at 18-19.) This argument is unavailing because the complaint alleges that the Marketing Defendants engaged the third-party marketing vendors to disseminate their misleading claims, engaged with the Lawyer Defendants to provide correspondence that appeared to legitimize the timeshare exit services, and directed Bluegreen owners to the Credit Repair Defendants to avoid any detrimental incidents on their credit reports. The complaint describes in detail the roles of the named Defendants and how their actions furthered the purported conspiracy. These allegations are sufficient to state a plausible claim for civil conspiracy.

### 4. Conclusion

For these reasons, the Marketing Defendants' motion to dismiss is **granted in part and denied in part. (ECF No. 17.)** All claims against Defendant VCF Enterprises are dismissed. All other claims against the remaining Marketing Defendants survive.

**Done and ordered** at Miami, Florida, on August 11, 2021.

_____
Robert N. Scola, Jr.
United States District Judge