**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-CV-24681-SCOLA/GOODMAN**

BLUEGREEN VACATIONS
UNLIMITED, INC., et al.,

      Plaintiffs,

v.

TIMESHARE LAWYERS P.A.
d/b/a FEDERAL FINANCIAL
LAW GROUP, et al.,

      Defendants.

_____/

**OMNIBUS REPORT AND RECOMMENDATIONS ON**
**MOTIONS TO STRIKE AFFIRMATIVE DEFENSES**

This Omnibus Report and Recommendations rules on three motions to strike affirmative defenses [ECF Nos. 106; 109; 115] filed by different defendants. The Undersigned respectfully recommends entry of an Order granting the motions, all of which United States District Judge Robert N. Scola, Jr. referred for a Report and Recommendations. [ECF Nos. 107; 111; 117].

**Factual and Procedural Background**

After Judge Scola entered [ECF No. 96] an Amended Omnibus Order on the Lawyer Defendants' Motions to Dismiss the Complaint [ECF No. 1], Plaintiffs Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation (collectively,

"Bluegreen") filed motions to strike [ECF Nos. 106; 109; 115] affirmative defenses filed by Defendants Pandora Marketing, LLC, William "Bo" Wilson and Rich Folk [ECF No. 102]; Carlsbad Law Group, LLC and JL "Sean Slattery" [ECF No. 103] and Timeshare Lawyers, P.S. and Patrick Thompson [ECF No. 108]. All Defendants other than Timeshare Lawyers and Thompson filed responses [ECF Nos. 110; 112], and Plaintiffs filed replies [ECF Nos. 113; 114]. The deadline for Timeshare Lawyers and Thompson to file responses expired long ago. Neither Defendant filed a motion for an enlargement of time (or any other type of response), so Plaintiffs' Motion to Strike [ECF No. 115] is therefore unopposed (and can be granted by default).

Bluegreen, a company in the business of selling timeshare interests in Florida, filed this action against Defendants for damages resulting from Defendants' alleged participation in a scheme to induce Bluegreen timeshare owners to breach timeshare contracts.

In his Omnibus Order on the Lawyer Defendants' Motions to Dismiss, Judge Scola summarized the factual background. The Undersigned sees no reason to reinvent the wheel. The core background, as outlined by Judge Scola [ECF No. 96, pp. 2-3], is as follows:

> This action involves an alleged scheme by all named Defendants to offer Bluegreen timeshare owners a way to get out of their contracts. Individual timeshare owners purchase timeshare interests through Bluegreen and enter into purchase agreements. (ECF No. 1 at ¶ 58.) If an owner obtains financing for their purchase, the Bluegreen timeshare owner also executes a promissory note. (*Id.*) The purchase agreement and promissory note

control the benefits and obligations of timeshare ownership and establish a legal relationship between Bluegreen and the timeshare owners. (*Id.*)

The Defendants are not parties to the timeshare contracts between Bluegreen and timeshare owners. (*Id.* ¶ 59.) The Defendants, however, participate in an unlawful scheme to induce Bluegreen owners to breach their timeshare contracts through nonpayment. (*Id.*)

The scheme is comprised of four components: the Marketing Defendants (TSC, VCF, Wilson, and Folk), the Third-Party Advertiser Defendants (Yuge Internet Marketing, LLC, Bigly Internet Marketing, LLC, and David J. Crade, the Lawyer Defendants (Timeshare Lawyers, Gallagher-Clifton, Carlsbad Law, Thompson, Deighan, Stewart, and Slattery); and the Credit Repair Defendants (MG&N Consulting, LLC and Angela Consalvo).

The Marketing Defendants falsely advertise timeshare exit services by promoting a legitimate process to exit timeshare contracts. (*Id.* at ¶ 53.) However, the process is not legitimate and instead induces Bluegreen owners to breach their timeshare contracts through nonpayment. (*Id.* at ¶ 54.) The Marketing Defendants charge thousands of dollars to help Bluegreen owners breach the timeshare contracts. (*Id.* at ¶ 57.) The Marketing Defendants advertise their services on the Third-Party Marketing Defendants' websites that rate various timeshare exit companies. Those websites are intended to direct Bluegreen owners to the Marketing Defendants. The Marketing Defendants also employ telephone sales tactics, during which case analysts make false statements to timeshare owners regarding the legality of their services. (*Id.* at ¶ 135.)

The Lawyer Defendants, in exchange for a fee, execute a letter directed to Bluegreen that is intended to "cut off any communication between Bluegreen and the Bluegreen timeshare owners, and constitutes the entirety of the 'service' the Lawyer Defendants perform." (*Id.* at ¶ 33.) Lastly, the Credit Repair Defendants manipulate the timeshare owners' credit reports and remove negative trade lines related to the timeshare owner's default on the timeshare contracts. (*Id.* at ¶ 44.) Additionally, they also file false police reports claiming [identity] theft on behalf of timeshare owners to discourage credit bureaus from reporting negative information. (*Id.* at ¶ 45.)

Bluegreen initiated this action against the Defendants alleging claims of false advertisement and contributory false advertisement in

violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), tortious interference with contractual relations, violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), and civil conspiracy to commit tortious interference. (ECF No. 1.)

[ECF No. 96, pp. 2-3].

In its initial Order [ECF No. 95] on a motion to dismiss, the Court granted in part and denied in part the motion to dismiss filed by the Marketing Defendants. The Court dismissed all claims against VCF but determined that all other claims against the remaining Marketing Defendants survive.

In its later Order [ECF No. 96] on the Lawyer Defendants' Motion to Dismiss, the Court granted the motion filed by Defendant Deighan and denied the motions filed by Defendants Carlsbad Law, Slattery, Timeshare Lawyers and Thompson.

**Applicable Legal Standards (Re: Motions to Strike Affirmative Defenses)**

The Court, either on its own or on a motion made by a party, is permitted to strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1)-(2). "Courts 'have broad discretion when considering a motion to strike,' however, 'striking defenses from a pleading' remains a 'drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken material has 'no possible relation to the controversy.'" *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (quoting *Guarantee Ins. Co. v. Brand Mgmt. Serv., Inc.*, No. 12-61670, 2013 WL 4496510, at *2 (S.D. Fla. Aug. 22, 2013)).

Unlike the pleading requirements for a claim for relief under Federal Rule of Civil Procedure 8(a), which must comply with *Twombly* and *Iqbal,* when a party responds to a pleading, it must only "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b); *see also Laferte v. Murphy Painters, Inc.,* Case No. 17-CIV-60375, 2017 WL 2537259, at *2 (S.D. Fla. June 12, 2017) ("[A]ffirmative defenses are not subject to the heightened pleading standard elucidated in *Twombly* and *Iqbal*" and "[t]he straightforward construction of Rule 8 delineates different standards for pleadings generally, and those applicable defenses.").

An affirmative defense is "one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters. A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (internal citations omitted).

Moreover, "'an affirmative defense must be stricken when the defense is comprised of no more than 'bare-bones, conclusory allegations' or is 'insufficient as a matter of law.'" *Northrop & Johnson Holding Co., Inc.,* No. 16-CV-63008, 2017 WL 5632041, at *3 (S.D. Fla. Nov. 22, 2017) (quoting *Adams,* 294 F.R.D. at 671 and *Home Mgmt. Sols., Inc. v. Prescient, Inc.,* No. 07-20608-CIV, 2007 WL 2412834, at *2 (S.D. Fla. Aug. 21, 2007)).

"A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Romero v. S. Waste Sys.,*

*LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009) (quoting *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005)).

Affirmative defenses are also "subject to the general pleading standard of Fed. R. Civ. P. 8(a), which requires a 'short and plain statement' of the asserted defense." *Romero*, 619 F. Supp. 2d at 1358.

**<u>Analysis</u>**

<u>Pandora/Folk/Wilson Affirmative Defenses</u>

The affirmative defenses at issue are the sixth through the ninth:

6.    **<u>Sixth Affirmative Defense:</u>** As the Sixth Affirmative Defense, Pandora affirmatively states any action taken by Mr. Folk in his capacity as a member of Pandora Marketing inured to that limited liability company. Therefore, any allegations pled against Mr. Folk other than in his capacity as a Member of Pandora Marketing are barred, as a matter of law.

7.    **<u>Seventh Affirmative Defense:</u>** As the Seventh Affirmative Defense, Pandora affirmatively states any action taken by Mr. Wilson in his capacity as a Member of Pandora Marketing inured to that limited liability company. Therefore, any allegations pled against Mr. Wilson other than in his capacity as a Member of Pandora Marketing are barred, as a matter of law.

8.    **<u>Eighth Affirmative Defense:</u>** As the Eighth Affirmative Defense, Pandora affirmatively states Mr. Folk neither dominated nor controlled Pandora Marketing to the extent necessary to subsume the independent existence of that limited liability company. Further, on no occasion did Mr. Folk use Pandora Marketing for any improper means. Therefore, no basis exists to support an allegation, if any, of Mr. Folk as an alter ego of Pandora Marketing, as matter of law.

9.    **<u>Ninth Affirmative Defense:</u>** As the Ninth Affirmative Defense, Pandora affirmatively states Mr. Wilson neither dominated nor controlled Pandora Marketing to the extent necessary to subsume the

independent existence of that limited liability company. Further, on no occasion did Mr. Wilson use Pandora Marketing for any improper means. Therefore, no basis exists to support an allegation, if any, of Mr. Wilson as an alter ego of Pandora Marketing, as matter of law.

[ECF No. 102, pp. 15-16].

The Sixth and Seventh Affirmative Defenses argue that Folk and Wilson are immune from liability because their actions "inure" to the entity defendants. But this is legally incorrect. The *individuals* **can** be liable to Bluegreen for their own *personal* acts -- despite their roles with the entity defendant. Folk and Wilson are subject to liability for their *own* actions.

As to Bluegreen's state law tort claims, "[i]f . . . a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort." *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. 4th DCA 1981) (quoting 19 Am. Jur. 2d Corporations § 1382).

Folk and Wilson are liable for their "tortious acts" even if "such acts were committed in the scope of [their] employment by the corporation." *Id*. This rule is equally applicable to the LLC context. *Candyman Kitchens Inc. v. Sandcrafters LLC,* No. 8:18-CV-869-T-23CPT, 2018 WL 6434058, at *1 (M.D. Fla. Dec. 7, 2018) ("Under Florida law, a member or manager of a limited liability company is **personally** liable for the torts committed within the scope of the employment." (emphasis added)).

Concerning Bluegreen's federal Lanham Act claim, an individual who "actively

and knowingly" caused a Lanham Act violation "is **personally** liable . . . without regard to piercing of the corporate veil." *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (emphasis supplied); *see also Wyndham Vacation Ownership, Inc. v. Totten Franqui Davis & Burk, LLC*, No. 18-81055-CV, 2019 WL 7905018, at *4 (S.D. Fla. Apr. 9, 2019) (In a Lanham Act false advertising matter, "allegations are sufficient to support Plaintiffs' claim that the Individual Defendants are **personally** liable without regard to piercing the corporate veil" (emphasis added)).

Here, the Complaint asserts liability as to Folk and Wilson based on their *personal* conduct. [ECF No. 1, ¶¶ 1, 50, 52, 83(d), 126-29, 132-34, 138, 149, 156-79, 222-82]. Accordingly, it is legally incorrect to argue that Folk and Wilson are *immune* from personal liability. *See Orlovsky*, 405 So. 2d at 1364; *Babbit*, 38 F.3d at 1184. Such defenses are "clearly invalid as a matter of law" and the Undersigned recommends striking them from the pleadings. *See Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002) (granting motion to strike with prejudice seller's copyright misuse defense because the defense substantively failed).

Moreover, the Pandora Defendants argue, in connection to the Sixth and Seventh Affirmative Defenses, that **if** discovery reveals no facts supporting active participation or cooperation in a wrongful act of commission or omission by Folk and/or Wilson, then "no liability for either would result due to the status of each as a member, manager or agent." But that argument simply parrots a potentially inapplicable truism: *if* there is no evidence

to establish personal involvement by the individual defendants, then they cannot be held personally liable. But the opposite scenario is also correct: if there *is* evidence, then they *can* be liable.

True, the individual Defendants cannot be held personally liable merely because of their status as an entity member, manager or agent if there is no evidence of personal involvement. But that does not mean that the affirmative defense is valid. Defendants' argument incorrectly asserts that the individual cannot *ever* be liable because the conduct is subsumed within the entity (i.e., it "inured" to the entity). The law is to the contrary. If the evidence establishes personal involvement, then there can be liability. And if the evidence does not demonstrate that, then the individuals will not be liable. But the core premise of the affirmative defenses -- that the individuals' actions "inure" only to the corporate entity and that this somehow immunizes individuals from all claims arising from their own personal misconduct -- is flat-out incorrect.

Framed by these legal principles, the Undersigned recommends entry of an Order striking these two affirmative defenses.

Concerning the Eighth and Ninth Affirmative Defenses, Defendants challenge an alter ego theory of liability against the individual defendants. But Plaintiffs have not asserted such a claim here. For all practical purposes, the alter ego type of affirmative defenses are hypothetical, as they concern theories not yet raised. The Undersigned therefore recommends entry of an Order striking them.

<u>Carlsbad Law Group/Slattery Affirmative Defenses</u>

The affirmative defenses at issue are the fourth (which concerns only Bluegreen's tortious interference claim) and the seventh:

## **Fourth Affirmative Defense (Unenforceable Contracts)**

As their Fourth Affirmative Defense, the Defendants affirmatively state that Plaintiffs' claims for damages are based on alleged interference with contracts which were void or unenforceable because they were obtained through fraudulent representations, because of Plaintiffs' subsequent actions or based on the law of the State where the contract was executed.

As for the facts supporting this defense, those facts are specific to the individual contracts on which Plaintiffs' claims are based. Plaintiffs have elected not to disclose names of the owners or to identify specific contracts in the Complaint, but instead represented that Plaintiffs will provide the Court with copies of the contracts in issue at some point in the future. (See Footnote 1, Complaint, Doc 1, at 43) To date, those contracts have not been filed with the Court.

However, as to Plaintiffs' owners represented by any Attorney Defendant, the contract involved was obtained as a result of Plaintiffs engaging in fraud and deception and making false promises to induce that purchaser to enter into that contract, on which promises that purchaser relied. While the false promises varied from purchaser to purchaser, they included:

• Falsely representing the purpose and length of a meeting, which was represented as being to update Owners on their rights as Owners, when the true purpose was to coerce those individuals into purchasing additional Plaintiffs' products.

• Refusing to permit the potential purchasers to leave a meeting after they initially said they did not want to purchase and employing inappropriate tactics to keep them from leaving.

• Misrepresenting the nature of the product being offered and the terms of

10

ownership.

• Falsely representing that a timeshare purchase was a prudent investment and would increase in value.

• Falsely representing the resale prospects for the timeshare interest.

• Claiming that the timeshare interest could be rented out for a profit and generally misrepresenting rental opportunities.

• Misrepresenting the process for booking reservations, including the availability of units and the ease, costs and fees involved.

• Misrepresenting or concealing the cost of future maintenance fees and other fees.

• Misrepresenting the nature and extent of incidental benefits, including Plaintiffs' exchange program.

• Failing to fully inform the purchaser about the debt he or she was incurring.

• Falsely claiming that the purchase offer being made was an "exclusive offer" good only for that day.

• Failing to explain the right of rescission or cancellation.

As to each of Plaintiffs' Owner represented by any of the Attorney Defendants, Plaintiffs are aware of the facts alleged by that specific owner which support this defense. Said Attorney Defendant previously delivered to the appropriate Plaintiff a lengthy and detailed letter setting forth the facts demonstrating the unenforceability of that contract. Additionally, each Owner prepared a statement setting forth deceptions and inappropriate pressure tactics employed by the Plaintiffs, which statements have been or will be provided to Plaintiffs in discovery. At such time as Plaintiffs' file with the Court the contracts on which Plaintiffs base their claims, as Plaintiffs have committed to do, the Attorney Defendants can file both the above-described detailed letter and the owner's statement which corresponds to each such contract.

11

Additionally, as to certain contracts which Plaintiffs may include in this litigation, the state law in the state where that contract was executed may limit or preclude enforcement. For example, California law on loan practices requires lenders to register with California's Department of Business Oversight. Where lenders making consumer loans fail to do so, their remedies are dramatically limited. But until Plaintiffs specify which contracts are at issue, the Attorney Defendants cannot evaluate which state laws may be applicable.

Finally, Attorney Defendants have a good faith belief that certain of the contracts are unenforceable because Plaintiffs have released the owners from their contracts, or have waived Plaintiffs' rights to pursue the owners, or have engaged in acts which estop Plaintiffs from enforcing that contract. But at this stage, the Complaint does not identify which contracts are involved and Plaintiffs have not produced the sales files and records for said contracts to the Attorney Defendants.

At this point, it is unclear which contracts are the basis for Plaintiffs' claims. The pleadings do not disclose which contracts are at issue and Plaintiffs have not filed the contracts with the Court. Without that information, it is difficult for the Attorney Defendants to be more specific as to the facts supporting this defense as to each contract.

. . . .

### Seventh Affirmative Defense (Unclean Hands)

As their Seventh Affirmative Defense, the Defendants state that Plaintiffs' own wrongful conduct precludes it [sic] from seeking equitable relief under the doctrine of unclean hands. Plaintiffs' have a policy of cancelling timeshare agreements and releasing from liability owners that meet a certain criteria. As to certain owners who were represented by Lawyer Defendants, Plaintiffs' wrongfully chose to deviate from that policy in order to harm those timeshare owners and Lawyer Defendants. Plaintiffs engaged in this wrongful conduct to manufacture the Plaintiffs' claims brought against the Defendants in this matter, and thus it is directly related to those claims.

Plaintiffs' actions are part of a coordinated effort among major leaders in the timeshare industry to irrevocably damage certain entities

assisting timeshare owners who seek to cancel their timeshare contracts in an effort to reduce or eliminate the availability of that assistance.

[ECF No. 103, pp. 15-19].

Assuming that the underlying contracts were indeed procured through fraudulent inducement, that is not fatal to Bluegreen's claim because "the unenforceable nature of the alleged contract . . . does not bar a suit for intentional interference with a contract or an existing business relationship . . . ." *United Yacht Brokers v. Gillespie*, 377 So. 2d 668, 672 (Fla. 1979). Other courts applied this rule where "the contract alleged to be interfered with was unenforceable for some deficiency which did not render it void." *Thomas v. Ratiner*, 462 So. 2d 1157, 1160 (Fla. 3d DCA 1984). Neither of the alleged reasons for unenforceability would render the Relevant Contracts **void** (as opposed to *voidable)*.

The Fourth Affirmative Defense asserts that the Relevant Contracts are unenforceable because they were "obtained as a result of Plaintiffs engaging in fraud and deception and making false promises to induce that purchaser to enter the contract, on which promises that purchaser relied." [ECF No. 103, p. 16]. While Bluegreen denies the allegation and argues that there is nothing in the record to support such allegations, the allegations, even if true, do not preclude Bluegreen's claim because -- at most -- they would make the Relevant Contracts merely *voidable. See, e.g., Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 313 (Fla. 2000) ("It is axiomatic that fraudulent inducement renders a contract voidable, not void."); *Pino v. Union Bankers Ins. Co.*, 627 So.

13

2d 535, 536-37 (Fla. 3d DCA1993) (quoting Restatement (Second) of Contracts § 7 cmt. b ("Typical instances of voidable contracts are those where . . . the contract was induced by fraud, mistake, or duress . . . .")).

Thus, even if the Relevant Contracts were unenforceable and voidable, Bluegreen's tortious interference claim would remain. *See Mazzoni Farms*, 761 So. 2d at 313.

Defendants' response vaguely argues that state laws may vary and that some *may* render contracts procured through fraud in the inducement to be void. But Defendants do not mention specific states. Instead, they merely assert that one or more unidentified states might adopt a void-not-voidable legal principle. This nebulous possibility is inadequate to sustain the affirmative defense.[1]

As a potential rebuttal to this challenge to the detail-free nature of the argument that some state laws might render the underlying contracts void, the Carlsbad Defendants argue that they are not to blame for the failure to pinpoint which state laws would void the contracts because Bluegreen did not designate the states of the underlying clients. But the Carlsbad Defendants presumably know, or should know, who their clients are and the states in which they live.

---

[1]    Defendants mention in their Opposition that California, to provide an example, "has certain statutes which could affect contracts entered into in California." [ECF No. 112, p. 3]. But they do not specifically allege that a timeshare owner who is a party to the Underlying Contract resides in California, nor do they allege that the unnamed "statutes" deem the contract void. And they do not identify which California statute or statutes purportedly support their view of a void contract.

Although the Undersigned is recommending that the fourth affirmative defense be stricken, I am doing so without prejudice so that the Carlsbad Defendants can review their files, determine the states in which their clients live and research the applicable state law to see whether any at-issue state deems a fraudulently-induced contract to be void, as opposed to be voidable. Assuming that they can locate such a state, then they may file an Amended Answer which (in an amended affirmative defense) specifies the state (or states) at issue.

The Carlsbad Defendants also contend that releases executed by Bluegreen in favor of the timeshare owners who are parties to the Relevant Contract preclude a tortious interference claim against them. But a person can maintain an action for breach of contract and a claim for tortious interference with that same contract and "settlement of the contract action does not preclude further prosecution of the tort action for interference with the contract." *Wright v. Nigh,* 399 So. 2d 515, 517 (Fla. 4th DCA 1981).

Thus, even if Bluegreen released timeshare owners of liability in connection with some of the Relevant Contracts, Bluegreen is not somehow automatically prevented from pursuing its tortious interference claim against the Carlsbad Defendants.

Moreover, Florida Statute § 46.015(1) provides that "[a] written covenant not to sue or release of a person who is or may be jointly and severally liable[2] with other persons

---

[2]    *See, e.g., Designs for Vision, Inc. v. Amedas, Inc.,* 632 So. 2d 614, 615 (Fla. 2d DCA 1994) ("When a party breaches a contract . . ., and the breach results from the tortious

for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim." Fla. Stat. § 46.015(1) (footnote added). At best, the Carlsbad Defendants would be entitled to a set-off if the owner had made a payment to Bluegreen in exchange for the release. *Id.* § 46.015(2).

But the Carlsbad Defendants make no such allegations in their affirmative defense. Instead, the Fourth Affirmative Defense claims that any releases shield liability. *See also* [Resp., ECF No. 112, p. 3 ("Carlsbad believes that the evidence will establish that certain of the contracts are unenforceable either because Plaintiffs have released those owners from their contract and taken back the security in full satisfaction of their claim or have engaged in other acts which would prevent Plaintiffs from enforcing that contract.")]. Thus, the allegations as stated in the affirmative defense are legally insufficient.

The Undersigned respectfully recommends that Judge Scola strike without prejudice the Fourth Affirmative Defense, giving the Carlsbad Defendants leave to file an Amended Answer to include an amended affirmative defense if they in fact locate an applicable state where a fraudulently-induced contract is void (not merely voidable).

The Carlsbad Defendants' Seventh Affirmative Defense is for "unclean hands." But the defense is unavailable because the misconduct allegations have not been shown to relate to the claims against the Carlsbad Defendants.

---

interference of another party . . ., the proper procedure is to make the two jointly and severally liable for the damages resulting from the breach.").

Under an equitable unclean hands defense, the alleged misconduct by the plaintiff must be "directly related to the claim against which it is asserted, and, even if directly related, the defendant must also show that it was personally injured by the plaintiff's wrongful conduct." *Regions Bank v. Old Jupiter, LLC*, No. 10-80188-CIV, 2010 WL 5148467, at *5 (S.D. Fla. Dec. 13, 2010); *see also Calloway v. Partners Nat. Health Plans,* 986 F.2d 446, 450–51 (11th Cir. 1993). The Carlsbad Defendants cannot meet this test.

It is irrelevant that the Carlsbad Defendants allege that third-party timeshare owners were supposedly injured because that does not address any harm (i.e., the alleged unclean hands misconduct) wrought by Bluegreen **against the Carlsbad Defendants**. *See Calloway* 986 F.2d at 450–51; *Regions Bank*, 2010 WL 5148467, at *5.

In addition, the Carlsbad Defendants fail to explain how the alleged misconduct is related to whether such defendants or any of the other defendants engaged in false advertising in breach of the Lanham Act, tortiously interfered with Bluegreen's contracts, violated FDUTPA, or were members of a conspiracy (i.e., Bluegreen's claims against them).

Even if the Carlsbad Defendants' allegation that Bluegreen "manufactured" the lawsuit is factually correct, they have not explained how the purported wrongdoing is "related to the claim against which it is asserted." *Regions Bank*, 2010 WL 5148467, at *5. Without that link, the defense is inapplicable. *See Calloway*, 986 F.2d at 451.

Therefore, the Undersigned respectfully recommends that Judge Scola strike

(without prejudice) the Seventh Affirmative Defense, with leave to file an Amended Answer with an amended unclean hands affirmative defense if the Carlsbad Defendants can show how the defense relates to the claims against which it is asserted.

<u>Timeshare Lawyers P.A./Thompson Affirmative Defenses</u>

The Affirmative Defenses at issue are the First, Second, Eighth and Tenth:

### **First Defense**

Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations. Plaintiffs' claims generally relate to the Timeshare Lawyers Defendants' alleged actions in causing specific timeshare owners to breach their purported timeshare obligations or interfering with such purported obligations. Assuming that a 4-year statute of limitations is applicable to the bulk of Plaintiffs' claims, Plaintiffs have yet to identify specifically which contracts/obligations were interfered with or when such interference/conduct on the part of the Timeshare Lawyers Defendants occurred. To the extent Plaintiffs purport to include conduct by the Timeshare Lawyers Defendants that accrued outside of the statute of limitations applicable to Plaintiffs' claims, then claims related to those specific timeshare owner(s) would be untimely.

### **Second Defense**

Plaintiffs' claims are barred, in whole or in part, [by the] doctrine of unclean hands. Plaintiffs engage in widespread fraudulent sales practices that have resulted in multiple class action lawsuits filed against Plaintiffs (e.g., *Miles v. Bluegreen Vacations Unlimited, Inc.*, Case No. 1:16-cv-00937; *Landon v. Bluegreen Vacations Unlimited*, Case No. 18-cv-994; *Louis v. Bluegreen Vacations Unlimited, Inc.*, Case No. 0:21-cv-61938), settlements/lawsuits by state attorneys general (e.g. State of Florida Department of Legal Affairs File No. L10-3-1184), and other lawsuits. Plaintiffs in this lawsuit complain about purportedly deceptive/unfair practices by the Timeshare Lawyers Defendants when the timeshare owners at issue were lied to/pressured into becoming timeshare owners through high-pressure, fraudulent sales practices by Plaintiffs.

. . . .

### Eighth Defense

Plaintiffs' claims are barred, in whole or in part, because the subject timeshare owner contracts are unenforceable. Plaintiffs' claims for damages are based on alleged interference with contracts which were void or unenforceable because they were obtained through fraudulent representations, because of Plaintiffs' subsequent actions or based on the law of the State where the contract was executed. As for the facts supporting this defense, those facts are specific to the individual contracts on which Plaintiffs' claims are based. Plaintiffs have elected not to disclose names of the owners or to identify specific contracts in the Complaint, but instead represented that Plaintiffs will provide the Court with copies of the contracts in issue at some point in the future. (See Footnote 1, Complaint, Doc 1, at 43). To date, those contracts have not been filed with the Court.

However, as to Plaintiffs' owners represented by the Timeshare Lawyers Defendants, the contract involved was obtained as a result of Plaintiffs engaging in fraud and deception and making false promises to induce that purchaser to enter into that contract, on which promises that purchaser relied. While the false promises varied from purchaser to purchaser, they included:

• Falsely representing the purpose and length of a meeting, which was represented as being to update Owners on their rights as Owners, when the true purpose was to coerce those individuals into purchasing additional Plaintiffs' products.

• Refusing to permit the potential purchasers to leave a meeting after they initially said they did not want to purchase and employing inappropriate tactics to keep them from leaving.

• Misrepresenting the nature of the product being offered and the terms of ownership.

• Falsely representing that a timeshare purchase was a prudent investment and would increase in value.

• Falsely representing the resale prospects for the timeshare interest.

• Claiming that the timeshare interest could be rented out for a profit and generally misrepresenting rental opportunities.

• Misrepresenting the process for booking reservations, including the availability of units and the ease, costs and fees involved.

• Misrepresenting or concealing the cost of future maintenance fees and other fees.

• Misrepresenting the nature and extent of incidental benefits, including Plaintiffs' exchange program.

• Failing to fully inform the purchaser about the debt he or she was incurring.

• Falsely claiming that the purchase offer being made was an "exclusive offer" good only for that day.

• Failing to explain the right of rescission or cancellation.

As to each of Plaintiffs' owners represented by any of the Timeshare Lawyers Defendants, Plaintiffs are aware of the facts alleged by that specific owner which support this defense. The Timeshare Lawyers Defendants previously corresponded with Plaintiffs and set forth the facts demonstrating the unenforceability of any contract for which the Timeshare Lawyers represented a timeshare owner.

Finally, [t]he Timeshare Lawyers Defendants have a good faith belief that certain of the contracts are unenforceable because Plaintiffs have released the owners from their contracts, or have waived Plaintiffs' rights to pursue the owners, or have engaged in acts which estop Plaintiffs from enforcing that contract. But at this stage, the Complaint does not identify which contracts are involved and Plaintiffs have not produced the sales files and records for said contracts to the Timeshare Lawyers Defendants. At this point, it is unclear which contracts are the basis for Plaintiffs' claims. The pleadings do not disclose which contracts are at issue and Plaintiffs have not filed the contracts with the Court. Without that information, it is difficult for the Timeshare Lawyers Defendants to be more specific as to the facts supporting this defense as to each contract.

. . . .

## Tenth Defense

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver. Plaintiffs waived their right to claim, as damages, any amounts allegedly owned on timeshare contracts that were cancelled and or terminated by the Plaintiffs and the timeshare owner was released from further liability. Plaintiffs possessed the right to receive payments from timeshare owners under certain timeshare contracts and had knowledge of that right. Plaintiffs intentionally relinquished their rights to receive payments under those contracts by acquiring the timeshare interest from the timeshare owner and issuing a 1099-A and/or by entering into an agreement with the timeshare owner whereby Plaintiffs took back the security in satisfaction of the debt and released the timeshare owner from any further liability under the timeshare contract.

[ECF No. 108, pp. 32-33, 35-38].

Bluegreen filed its motion to strike the four affirmative defenses on October 12, 2021. No response has been submitted.

Local Rule 7.1(c)(1) provides, in pertinent part, that "each party opposing a motion shall file and serve an opposing memorandum of law no later than fourteen (14) days after service of the motion. Failure to do so may be deemed sufficient cause for **granting** the motion **by default**." S.D. Fla. L.R. 7.1(c)(1) (emphasis supplied).

Timeshare Lawyers and Thompson have not filed the required memorandum of law even though the motion was filed almost three months ago. They have not filed a motion for enlargement of time or any other type of submission concerning the motion to strike affirmative defenses.

21

Given the complete lack of a response and defense counsel's knowledge of the motion (*see* Local Rule Certificate of Conferral, reflecting telephone conferral between Bluegreen's counsel and counsel for Timeshare Lawyers and Thompson on October 12, 2021), the Undersigned *could* simply recommend that Judge Scola grant the motion to strike by default.[3] *See Alarm Grid, Inc. v. Zions Sec. Alarms*, No. 17-CV-60190, 2017 WL 7794338, at *1 (S.D. Fla. May 19, 2017) (striking defendant's affirmative defenses by default and noting that "Defendant's failure to respond to the Motion -- despite ample time in which to do so, and the Court's warning regarding the effect of such failure -- justifies the application of the Local Rule and an exercise of the Court's broad discretion to strike"); *Travelers Cas. & Sur. Ins. Co. v. Sholom House, Inc.*, No. 1:12-CV-24387-UU, 2013 WL 12095591, at *2 (S.D. Fla. May 8, 2013) ("*Independent* of the substantive reasons for striking Defendant's affirmative defenses, the Court also finds that they should be stricken pursuant to Local Rule 7.1(c)." (emphasis in original)); *Jacobs v. Hudson Real Est. Holdings, LLC*, No. 20-CIV-80911-RAR, 2021 WL 705785, at *1 (S.D. Fla. Feb. 23, 2021) (refusing to set aside order granting by default plaintiffs' motion to strike affirmative defenses).

Although the Court is authorized to grant the motion to strike by default, the

---

[3]     Defense counsel is also aware that other defense attorneys filed opposition responses to other motions to strike affirmative defenses filed by Bluegreen. Those opposition responses [ECF Nos. 110; 112] were filed *before* Bluegreen filed its motion to strike affirmative defenses asserted by Timeshare Lawyers and Thompson.

Undersigned deems it more prudent to also evaluate the motion on the merits, and use the failure to submit an opposition response as an "independent" ground to support an Order striking the four affirmative defenses. *Travelers* Casualty, 2013 WL 12095591, at *2. Therefore, as outlined below, the Undersigned recommends that Judge Scola grant the motion to strike both on the merits and for the additional, separate justification generated by the default procedure authorized by Local Rule 7.1(c).

By way of introductory background, the four defenses are copies of defenses that a defendant propounded in similar litigation before the Middle District of Florida (the "*Wyndham* Matter"). *See Wyndham Vacation Ownership, Inc. et. al. v. Slattery, Sobel & Decamp, LLP et. al.*, Case No. 6:19-cv-01908, ECF No. 539 (M.D. Fla. Aug. 24, 2021). The Court in that matter struck each of the identical defenses. *See* [ECF No. 583 in Case No. 6:19-cv-01908 ("*Wyndham* Order")]. Bluegreen attached a copy of the *Wyndham* Order to its motion, as Exhibit A.[4]

According to Bluegreen, the Timeshare Lawyers Defendants are represented by the same counsel here as the relevant defendant in the *Wyndham* Matter. Bluegreen argues that the four defenses are equally invalid in this litigation as they were in *Wyndham*.

Bluegreen notes that the Timeshare Lawyers Defendants have done little more

---

[4]     United States Magistrate Judge Embry J. Kidd entered an Order on the motion to strike affirmative defenses; Judge Scola's referral to me is for a Report and Recommendations.

than copy the defenses asserted by a different party in different litigation brought by a different plaintiff, and it contends that this development should cast "immediate suspicion" on the application of the defenses to this action.

The *Wyndham* Court rejected[5] the statute of limitations defense because the Defendant did not "at least specify *which* claims are purportedly barred by the statute of limitations." [ECF No. 583, p. 7 in Case No. 6:19-cv-01908] (emphasis added).

In addition, the *Wyndham* Court also rejected the unclean hands defense because Defendant "fails to allege how it was personally injured by Plaintiffs' conduct." *Id.* at 9.

The Order in *Wyndham* also rejected the affirmative defense that the underlying agreements were either "void or voidable" because they were allegedly obtained through "fraud, misrepresentation, and inappropriate methods." *Id.* at 10. Although the plaintiffs there argued that the "defense is legally insufficient because an unenforceable contract may still support a tortious interference claim," the Court did not address that position. Instead, it based its ruling (rejecting the defense) on the defendant's failure to state with particularity the circumstances constituting fraud, a requirement of Federal Rule of Civil Procedure 9. *Id.*

---

[5]     The *Wyndham* Plaintiff filed a motion to strike affirmative defenses asserted by Intermarketing Media, LLC, and Intermarketing then filed a motion for leave to file amended affirmative defenses. Plaintiff opposed the motion, arguing that the defenses "would remain legally insufficient." The Court granted in part and denied in part both motions, permitting some amended affirmative defenses but striking others.  The Court rejected the four defenses which are also at issue in the instant motion concerning the affirmative defenses raised by Timeshare Lawyers and Thompson.

Finally, the *Wyndham* Court rejected the waiver defense because Defendant did not submit or discuss any proof that Plaintiffs' termination of timeshare obligations constituted an intent to relinquish a known right (which is a necessary element for waiver). *Id.* at 7.

Concerning the first affirmative defense (i.e., the statute of limitations), Defendants did not specify which of Bluegreen's claims are subject to an undefined statute of limitations, which Defendants assume to be a four-year statute. The Undersigned agrees with *Wyndham* and also agrees that "[t]o give fair notice of the defense . . . a party should identify the claim to which the defense applies." *Rastellini v. Amy Charles, Inc.*, No. 6:08-CV-255-ORL-28GJK, 2008 WL 11470890, at *1 (M.D. Fla. June 11, 2008). The Undersigned therefore recommends that the motion to strike this defense be granted and that Timeshare Lawyers and Thompson be given leave to file an amended answer in order to adequately allege the statute of limitations as an affirmative defense (assuming that Defendants still want to raise that defense).

Moving to the unclean hands affirmative defense (the second defense), the Undersigned adopts and incorporates the analysis and ruling above concerning the same defense in a motion filed by another defendant.

As to the eighth affirmative defense (i.e., that the underling contract is void or voidable), the Undersigned adopts and incorporates the analysis and ruling above concerning the same defense in a motion filed by another defendant.

25

Finally, concerning the tenth defense of waiver, it does not provide fair notice as to which portion of Bluegreen's claims are subject to the defense. *See Rastellini*, 2008 WL 11470890, at *1. Bluegreen is left to guess about which portion of its claims are subject to the defense, which renders the defense inadequate. The Undersigned therefore recommends that Judge Scola grant the motion to strike with leave to amend to properly assert the defense in an amended answer.

**Conclusion**

The Undersigned respectfully recommends that Judge Scola grant the motions to strike, as explained above.

**Objections**

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola, Jr. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error

if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**<u>RESPECTFULLY RECOMMENDED</u>** in Chambers, in Miami, Florida, on January 10, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
Honorable Robert N. Scola, Jr.
All counsel of record

27