United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation, Plaintiffs, <br><br> v. <br><br> Timeshare Lawyers P.A., and others, Defendants. | ) ) ) ) ) ) ) ) ) ) Civil Action No. 20-24681-Civ-Scola |

### Order Granting the Plaintiffs' Motion for Preliminary Injunction

This matter is before the Court on the Plaintiffs Bluegreen Vacations Corporation and Bluegreen Vacations Unlimited, Inc.'s (collectively, "Bluegreen") amended expedited motion for entry of a preliminary injunction. (ECF No. 462.) Bluegreen seeks to enjoin the Defendants Pandora Marketing, LLC, Rick Folk, and William Wilson (the "Marketing Defendants") from certain conduct relating to their offer of services to Bluegreen timeshare owners during the remainder of this action and until such time as a final judgment and permanent injunction are issued. The Marketing Defendants have responded in opposition to Bluegreen's motion (ECF No. 466), and Bluegreen has replied (ECF No. 471). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** Bluegreen's motion. (**ECF No. 462**.)

1. **Background**

The Court assumes the parties' familiarity with the general procedural and factual background of this case.

On May 2, 2023, the Court issued an omnibus order addressing the parties' cross-motions for summary judgment, wherein it granted in part and denied in part Bluegreen's motion. As relevant here, the Court granted Bluegreen's motion for summary judgment with respect to its claim for injunctive relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* ("FDUTPA"), but it specified that it would refrain from entering the injunction until the entry of final judgment. (Summ. J. Order 40, ECF No. 437.) At that time, this case was set for trial during the two-week period commencing on May 22, 2023.

However, during pretrial conferences held on May 16, 2023, and May 30, 2023 (ECF Nos. 457, 475), it became apparent that, due to the parties' and the Court's scheduling conflicts, trial in this matter would not take place until the

week of August 21, 2023. Shortly after the May 16, 2023, conference, Bluegreen filed the expedited motion for entry of a preliminary injunction that is the subject of the instant order. (ECF No. 462.) In the motion, it seeks entry of a preliminary injunction based on the Court's summary judgment conclusions on the merits of Bluegreen's request for injunctive relief under FDUTPA.

## 2. Legal Standard

"The grant or denial of a preliminary injunction is a decision within the discretion of the district court." *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp., Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997). To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam); *see also New Wave Innovations, Inc. v. McClimond*, 589 F. App'x 527, 528 (11th Cir. 2015) (applying the test for a preliminary injunction in suit claiming violation of the FDUTPA, among other causes of action); *Family First Life, LLC v. Rutstein*, No. 22-80243-CIV-CAN, 2022 U.S. Dist. LEXIS 97384, at *12 (S.D. Fla. Apr. 5, 2022) (Cannon, J.) (same).

## 3. Analysis

### A. Entitlement to a Preliminary Injunction

The Marketing Defendants raise various objections to Bluegreen's request for a preliminary injunction, which more or less touch on the elements of the test for a preliminary injunction.[1] However, the Court finds that Bluegreen has met each of the four required elements, as set forth below.

First, Bluegreen has demonstrated a substantial likelihood of success on the merits. In its omnibus order on the parties' cross-motions for summary judgment, the Court reached various conclusions evidencing Bluegreen's substantial likelihood of success on the merits. (*See* Summ. J. Order, ECF No. 437.) In particular, the Court granted summary judgment in favor of Bluegreen on its request for injunctive relief pursuant to the FDUTPA, finding that:

(i) the Marketing Defendants' business practices are deceptive to reasonable consumers;

---

[1] The Court makes this observation because the Marketing Defendants' response also makes various arguments previously raised in other filings, including in their summary judgment briefing, which the Court will not address again.

      (ii)      various Bluegreen timeshare owners relied on the Marketing Defendants' false offer of a legal means to exit their timeshare contracts in hiring the Marketing Defendants and defaulting on their obligations to Bluegreen; and

      (iii)     Bluegreen has been aggrieved as a result of the Defendants' deceptive conduct.

(*Id.* at 23–27.) Thus, not only has Bluegreen shown a substantial likelihood of success on the merits, with respect to its FDUTPA claim, it has in fact succeeded on the merits. *See Transcon. Gas Pipe Line Co. v. 6.04 Acres*, 910 F.3d 1130, 1163 (11th Cir. 2018) ("Because the district court properly granted summary judgment in favor of Transcontinental on its right to condemn Defendants' properties, the first factor—whether Transcontinental has a substantial likelihood of success on the merits—is no longer at issue.").

      Second, Bluegreen has demonstrated that it will suffer irreparable injury if the injunction does not issue because the Marketing Defendants continue to engage in the deceptive business practices, with no intention of stopping. The Court explained as much in its summary judgment order:

> The record shows that the Defendants sell a service that depends entirely on the timeshare owners defaulting on their contractual obligations to Bluegreen, and this causes Bluegreen harm in various ways. As just one example, Bluegreen has put forth unrebutted evidence that anytime an owner defaults on her loan obligations Bluegreen incurs various sorts of expenses related to repossessing and reselling the timeshare interest associated with that loan. Moreover, it is undisputed that the Marketing Defendants continue to accept Bluegreen owners as customers and to refer them to attorneys, including the Lawyer Defendants.

(*See* Summ. J. Order 27, 30, ECF No. 437.) Therefore, unless enjoined, the Marketing Defendants will continue providing a service that depends entirely on their interference with the contractual and business relationship between Bluegreen and its customers. (*See id.* at 19–20.) The ongoing impacts of the Marketing Defendants' conduct, which include not only a loss of customers for Bluegreen, but also consumer confusion generally, suffice to satisfy the irreparable harm prong of the preliminary injunction analysis here. *See Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (loss of customers and goodwill constitutes irreparable injury); *Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012) (conduct that could create consumer confusion and damage timeshare company's reputation actionable on a claim for injunctive relief under the FDUTPA).

The Marketing Defendants argue that Bluegreen's delay in seeking a preliminary injunction precludes it from being able to demonstrate irreparable harm. They point out that circumstances have not changed in the two and a half years since Bluegreen filed the complaint such as would justify only *now* seeking preliminary injunctive relief. The Court is cognizant of the robust authority to the effect that "a party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm." *See Wreal, Ltd. Liab. Co. v. Amazon.com*, 840 F.3d 1244, 1248 (11th Cir. 2016). However, Bluegreen explains that the timing of its request is procedurally distinguishable because it did not have the evidence necessary to seek a preliminary injunction at the early stages of the case, and, now that the Court has determined Bluegreen is entitled to an injunction on the merits, trial is still months away. In light of Bluegreen's explanation for its delay and, more significantly, the fact that the Marketing Defendants intend to continue their deceptive conduct, the Court finds that Bluegreen will suffer imminent irreparable harm if they are not enjoined between now and the final disposition of this case.

Third, the harm suffered by Bluegreen without an injunction outweighs the Marketing Defendants' potential harm if an injunction is entered. The Marketing Defendants fail to put forth any argument regarding what sort of harm Bluegreen's requested preliminary injunction would inflict on them. Without such information from the Marketing Defendants, the Court presumes that any harm to them would be limited to lost revenue from their inability to sell their purported services to Bluegreen's timeshare owners. Such injuries, however, are easily outweighed by the commercial harm caused to Bluegreen by the Marketing Defendants' continued provision of those services.

Finally, the Court has no difficulty concluding that the entry of the relief requested would serve the public's interest. The Marketing Defendants also fail to directly address this facet of the preliminary injunction analysis, instead insisting (in the context of another argument) that various timeshare owners have represented they were not harmed by their decision to default on their obligations to Bluegreen. However, as the Court has already found, the Marketing Defendants' business practices are deceptive to reasonable consumers, who rely on the Marketing Defendants' misleading offers in defaulting on their obligations to Bluegreen. The Marketing Defendants do not provide the timeshare owners with truthful or helpful advice; instead, they profit from the owners' ignorance of Bluegreen's internal collections policy to charge them for nonexistent services. The preliminary injunction will thus serve the public's interest by stopping the Marketing Defendants' deception of at least some timeshare owners.

Accordingly, the Court concludes that Bluegreen has sufficiently demonstrated its entitlement to a preliminary injunction.

### B. Scope of the Preliminary Injunction

The Marketing Defendants also argue that (i) any preliminary injunction may not be impermissibly vague and must be tailored to the identified harm and (ii) any preliminary injunction should only apply to Florida residents.

As to the first point, the Court notes that the specific content of the preliminary injunction was discussed during the pre-trial conference held on May 30, 2023. Following that conference, the parties each submitted a proposed preliminary injunction, containing what they considered to be appropriately tailored language. (*See* ECF Nos. 484, 485.) The final language of the injunction, as reflected below, closely follows the parties' proposals and is tailored, as the Marketing Defendants request, to preventing conduct already found to violate the FDUTPA.

In addition, as to the second point, the Court concludes that the preliminary injunction need not be limited to the Marketing Defendants' conduct directed at Florida timeshare owners. In its summary judgment order, the Court recognized that Florida law is unclear regarding whether the FDUTPA applies with respect to consumers outside of Florida when the conduct at issue did not take place entirely within Florida. However, the Court now decides the Marketing Defendants' conduct in this case falls entirely within the FDUTPA's purview.

To that point, the Court notes that § 501.211(1) of the FDUTPA "permits a claim for injunctive relief by '*anyone aggrieved*' by an unfair or deceptive act," without limitation as to where the unfair or deceptive act originated or unfolded. *See generally Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.*, 123 So. 3d 1149, 1152 (Fla. 5th DCA 2012) (emphasis added). As the Court has already found, Bluegreen has been aggrieved by the Marketing Defendants' conduct, which has been directed at its customers throughout the country. As such, Bluegreen rightly seeks to enjoin that conduct in so far as it extends outside of Florida as well.

Moreover, the Court finds persuasive *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, and the line of cases following it, which reject the argument that the "FDUTPA applies only to the limited circumstance where the consumer is located in Florida and the errant conduct at issue occurs entirely within Florida." *See* No. 10-23869-CIV, 2012 U.S. Dist. LEXIS 61710, at *18 (S.D. Fla. May 2, 2012) (Altonaga, J.); *see also Millner v. Plutus Enters., LLC*, No. 21-23436-CIV, 2022 U.S. Dist. LEXIS 110795, at *15-16 (S.D. Fla. June 22, 2022) (Moreno, J.) (rejecting argument that conduct at issue had insufficient

connection to Florida for FDUTPA claim where foreign defendant engaged with another, Florida-based defendant, and the latter targeted plaintiff from Florida). In *Barnext*, Chief Judge Altonaga concluded that the FDUTPA applied to a transaction between a foreign plaintiff and domestic and foreign defendants even though significant portions of the transaction occurred outside of Florida. *Id.* at *16–18, *20–21. In concluding that "[t]he FDUTPA is to be applied broadly," Chief Judge Altonaga noted, among other things, that "there are no geographical or residential restrictions contained in the express language of" the statute. *Id.* at *17, *20 (quoting *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1262 (Fla. 3d DCA 2000)) (cleaned up).

      Here, although the Marketing Defendants are in California, and Bluegreen's customers are located throughout the United States, the Marketing Defendants' conduct has a sufficient connection to Florida to render it entirely within the FDUTPA's scope. In addition to the Marketing Defendants targeting Bluegreen timeshare owners in Florida, both Bluegreen Plaintiffs are Florida corporations with their principal places of business in Florida. Furthermore, the timeshare interests Bluegreen sells to its customers, and which the Marketing Defendants interfere with, arise under the Bluegreen Vacation Amended and Restated Club Trust Agreement, which, in turn, is established pursuant to the Florida Vacation Plan and Timesharing act, Fla. Stat. § 721.01 *et seq.* Because the Marketing Defendants are essentially selling the cancellation of a contract with a Florida entity, that is governed by Florida law, their deceptive conduct necessarily involves Florida.

      As such, the Court finds it appropriate here to enjoin the Marketing Defendants' harmful conduct with respect to all Bluegreen timeshare owners.

### 4. Conclusion

      Accordingly, for the reasons set forth above, the Court **grants** Bluegreen's amended expedited motion for a preliminary injunction (**ECF No. 462**), and a preliminary injunction is entered under the terms set forth below.

### PRELIMINARY INJUNCTION

      This cause having come to be heard upon the amended expedited motion for a preliminary injunction (ECF No. 462) by the Plaintiffs Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation (together, "Bluegreen"), this Court hereby enters the following Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a):

### DEFINITIONS

    1.    As used herein, the "Marketing Defendants" means the Defendants Pandora Marketing, LLC; William "Bo" Wilson; and Rich Folk.

  2. As used herein, "Bluegreen Interest" shall be interpreted broadly to include any Bluegreen timeshare interest, Bluegreen points-based program, or other Bluegreen vacation ownership interest of any kind, including but not limited to all current Bluegreen timeshare products and all legacy products affiliated with Bluegreen.

  3. As used herein, "Bluegreen Owner" means:
   a. a person who owns a Bluegreen Interest; or
   b. a person who has an existing payment obligation in favor of Bluegreen; or
   c. any owner of a points-based timeshare ownership program denominated as a Bluegreen points-based program.

## ENJOINED CONDUCT

It is hereby **ORDERED AND ADJUDGED** that the Marketing Defendants, their officers, employees, agents, affiliated entities, and all persons acting in active concert or participation shall be RESTRAINED AND ENJOINED from:

 (1) making any misrepresentation to a Bluegreen Owner regarding the services that the Marketing Defendants, or any lawyer to which the Marketing Defendants refer, will provide in connection with a Bluegreen Interest;

 (2) communicating to a Bluegreen Client, that the Marketing Defendants have a 100% success rate, that the Marketing Defendants are 100% successful, the Marketing Defendants have always gotten Bluegreen Owners out of their timeshare, or the Marketing Defendants have never lost a case;

 (3) inducing a Bluegreen Owner to cease payment on an obligation associated with a Bluegreen Interest; or

 (4) offering for sale to any Bluegreen Owner the legal cancellation of a Bluegreen Interest unless the Marketing Defendants first demonstrate to the Court that the Marketing Defendants have the ability to deliver such service. The Court reserves jurisdiction to consider, upon application by the Marketing Defendants, whether the Marketing Defendant have demonstrated such ability. If the Marketing Defendants believe they can comply with this provision, the Court will give expedited consideration to their submission.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that:

This Preliminary Injunction is to remain in effect until such time that a final judgment and/or permanent injunction is issued by this Court regarding the conduct governed herein.

**Done and ordered**, in chambers, at Miami, Florida, on June 20, 2023.

_____
Robert N. Scola, Jr.
United States District Judge