# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

BLUEGREEN VACATIONS UNLIMITED,
INC., et al.,

    Plaintiffs,

vs.

CASE NO: 1:20-cv-24681-RNS

TIMESHARE LAWYERS, P.A., et al.,

    Defendants.

_____/

**DECLARATION OF SCOTT GREY IN SUPPORT OF DEFENDANTS PANDORA MARKETING, LLC, RICH FOLK, AND WILLIAM WILSON'S MOTION FOR MODIFICATION AND/OR CLARIFICATION OF THE PRELIMINARY INJUNCTION ORDER**

I, Scott Grey, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.    I am over the age of 21 and am competent to testify in this matter. I submit this declaration in support of the motion of Defendants Pandora Marketing, LLC ("Pandora"), Rich Folk, and William Wilson (collectively, the "Pandora Defendants") for modification and/or clarification of this Court's Order Granting the Plaintiffs' Motion for Preliminary Injunction (ECF No. 487). The representations set forth below are based on my personal knowledge, unless otherwise indicated.

    2.    I am currently the Chief Financial Officer for Pandora and have functionally served in that role since April 2018.

    3.    I received my MBA from Pepperdine University in 2001 and my undergraduate degree in Accounting from California State University at Fullerton in 1991. I have previously held both state and federal securities licenses, including Series 7.

1

4. I have served in numerous executive level finance positions across various industries, including timeshare development.

5. I served as the Corporate Representative for Pandora in this case and submitted to a 30(b)(6) deposition taken by Plaintiffs.

6. I submitted a prior Declaration in this case in opposition to Plaintiffs' Motion for Preliminary Injunction (ECF No. 466-6).

7. The Court granted Plaintiffs' motion and entered a preliminary injunction (the "PI Order") on June 20, 2023. The PI Order enjoins the Pandora Defendants from:

(1) making any misrepresentation to Bluegreen Owners regarding the services that the [Pandora] Defendants, or any lawyer to which they refer, will provide in connection with a Bluegreen Interest;

(2) communicating to a Bluegreen [Owner] that the [Pandora] Defendants have a 100% success rate, that the [Pandora] Defendants are 100% successful, the [Pandora] Defendants have always gotten Bluegreen Owners out of their timeshare, or the [Pandora] Defendants have never lost a case;

(3) inducing a Bluegreen Owner to cease payment on an obligation associated with a Bluegreen Interest; or

(4) offering for sale to any Bluegreen Owner the legal cancellation of a Bluegreen Interest, unless the [Pandora] Defendants can first demonstrate to the Court that the [Pandora] Defendants have the ability to deliver such service.

PI Order at 7. Upon receipt of the PI Order Pandora temporarily stopped accepting Bluegreen Owners as clients until it could confirm that specific steps were in place to address each of the items in the PI order.

8. Pandora has taken steps to ensure that it is in compliance with each section of the PI Order. The first three elements are consistent with Pandora's long-standing policies and guidelines. As set forth in my prior Declaration, it has been Pandora's policy since I began

working for the firm that its salespeople are not permitted to advise owners that they should stop making payments on their timeshares.  ECF No. 466-6 at ¶ 6.  That policy was set forth and communicated to Pandora's sales and customer service personnel in writing in multiple documents, including a memo entitled "Analyst Do's and Don'ts," Pandora's Case Representative Training Guide, and the Timeshare Compliance Services Agreements.  Id. ¶ 8 & Exhibits A-C.  Each of these policies has been reiterated to Pandora's employees in a series of meetings this year.

9. Pandora also plans to revise its Frequently Asked Questions document that is posted on its website to make clear that Pandora does not, and cannot, recommend that owners stop paying for their timeshares, maintenance fees, or other financial obligations to developers and that Pandora does not claim a 100% success rate or otherwise promise a successful outcome to every owner.

10. In addition, Pandora has taken down all advertising that it controls which states that it has a 100% success rate (or makes similar statements regarding Pandora's success) or that suggests that timeshare owners may stop making payments on their timeshares.  Pandora has removed all such language from its homepage and other websites that it controls, such as its YouTube, Facebook and Instagram pages.

11. Pandora has also requested that third-party Internet sites that it does not control, such as Google and Bing, remove such language as well.  While Pandora cannot control whether or not third-party sites comply with its requests or the speed with which they do so, it will continue to monitor such sites and periodically renew its requests that the prohibited language be removed as necessary.

12. Pandora has not attempted to remove the language from archived sites that Pandora does not control because potential customers do not typically research such "mothballed" sites when looking for an exit company, and many of these sites intend to capture and keep web information as it once existed and therefore a request to delete the information would be futile. Such sites include the Wayback Machine and Archive.fo.

13. In response to Section 4 of the PI Order, Pandora has made certain policy changes regarding the services that it will provide to Bluegreen Owners going forward. First, the lawyer(s) that Pandora recommends will affirmatively reach out to each Bluegreen Owner to provide a telephone consultation and to advise each owner of their legal options regarding exiting their timeshare. Under this policy, all recommended lawyers will be required to initiate legal counseling for each Bluegreen Owner. If a Bluegreen Owner is not satisfied with the recommended lawyer, Pandora will recommend a second lawyer to the Owner. The second lawyer will also be required to initiate contact with the Bluegreen Owner for the provision of counseling.

14. Second, Pandora will pay the legal fees of any Bluegreen Owner who becomes a client of Pandora and is subsequently sued by Bluegreen. While Pandora has previously paid the legal fees of its clients who were sued by developers at its discretion, this will now be a binding policy for all Bluegreen Owners and will be reflected in the services contracts between Pandora and Bluegreen Owners.

15. As set forth in my prior Declaration, Pandora recommends a lawyer to each of its clients, and these recommended lawyers are experienced in assisting timeshare owners to exit their contracts. ECF No. 466-6 at ¶ 11. The majority of the exits that Pandora's recommended lawyers have helped obtain for its clients have been via a release negotiated by the lawyer with

the developer, including settlement agreements and deeds in lieu of foreclosure. Id. The recommended lawyers have negotiated these legal releases from the owners' timeshare contracts. Id. I attached as **Composite Exhibit E** to my prior Declaration certain documentary evidence showing that Bluegreen has negotiated exits with owners' counsel.

16. Since it began operations, Pandora has recommended the following lawyers and law firms to its clients:

- Carlsbad Law Group LLP
- Del Mar Law Group LLP
- Diane Bass, Esq.
- Federal Financial Law Group
- Gallivan, Boyd & White
- Hellmuth & Johnson
- Law Offices of Richard Weisberg
- Lichtin Law
- McCroskey Legal
- Molfetta Law
- MXM Legal
- O'Grady Law

17. While Bluegreen has claimed in this litigation that it does not negotiate with or otherwise respond to lawyers' efforts to resolve a Pandora client's timeshare contract, Bluegreen has sent Notices of Termination and 1099-As to many Pandora clients in care of their Pandora-recommended counsel, thereby acknowledging that the owner whose timeshare interest was cancelled had legal representation for the exit. **See Composite Exhibit 1.** These Notices of Termination and 1099-As were sent to Pandora clients in care of their legal counsel both before *and after* Bluegreen instituted its "zero tolerance" policy. In contrast to its current litigation position, therefore, Bluegreen knew that these clients were represented by counsel and still released them from their timeshares. *See, e.g.,* [redacted]

5

 Furthermore, Bluegreen did not communicate to Pandora or its clients about the implementation of the "zero tolerance" policy.

18. In addition to negotiating settlement agreements and other agreed timeshare releases with Bluegreen, Pandora-recommended lawyers have negotiated legal exits for Pandora clients with developers including Wyndham Vacation Resorts, Marriott Vacation Club, Spinnaker Resorts, Lando Resorts, and Breckenridge Grand Vacations. In certain of these negotiations, refunds were paid by the developer to the owners.

19. Pandora has also paid certain lawyers and law firms to represent Pandora clients who were sued in litigations and arbitrations by timeshare developers. For example, in 2020 and 2021, Pandora paid for legal representation for two Pandora clients who were sued in New York State Supreme Court by Hilton Resorts Corporation. Hilton sued to foreclose on the mortgages of the Pandora clients, who had defaulted on their loans. Both of those lawsuits were resolved by a lawyer-negotiated settlement agreement, pursuant to which Hilton accepted a deed in lieu of foreclosure from the owner and the owner was released from all liability. In one case Pandora paid a negotiated settlement fee to Hilton of $30,000, and in the other, the settlement fee was $8,000. Pandora's clients paid no additional fees for these negotiated settlements. Pandora routinely engages outside counsel for this purpose. *See* **Composite Exhibit 2.**

20. In addition, the law firm of Hellmuth & Johnson is currently representing a Pandora client in Minnesota state court against a developer claiming unpaid maintenance fees, property taxes and other charges. *See Credit Service Int'l. Corp. assignee of High Village Timeshare Owners Associations, Inc. v. Jeffrey L. Kahnke, et al.*, Carver County Case No. 10-CO-23-98.

21. Pandora also paid for Carlsbad Law Group to represent clients in 19 arbitrations brought by and against Diamond Resorts in 2021.

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I hereby verify under penalty of perjury that the foregoing declaration is true and correct.

Dated: July 21, 2023

_____
Scott Grey

# COMPOSITE EXHIBIT 1

# Redacted Pursuant to Local Rule 1.11(d)

# COMPOSITE EXHIBIT 2
# Redacted Pursuant to Local Rule 1.11(d)