United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation, Plaintiffs, <br><br> v. <br><br> Timeshare Lawyers P.A., and others, Defendants. | ) ) ) ) ) Civil Action No. 20-24681-Civ-Scola ) ) ) ) |

### Order Denying Motion for Modification and/or Clarification of Preliminary Injunction

    This matter is before the Court on the Defendants Pandora Marketing, LLC, Rick Folk, and William Wilson's (the "Marketing Defendants") expedited motion for modification or, in the alternative, clarification of the Court's June 20, 2023, preliminary injunction order. (Mot., ECF No. 496.) Because the Marketing Defendants seek expedited consideration of their motion, the Court issues the instant order before the Plaintiffs Bluegreen Vacations Corporation and Bluegreen Vacations Unlimited, Inc.'s (collectively, "Bluegreen") have filed a response. Regardless, after having reviewed the record and the relevant legal authorities, the Court **denies** the Marketing Defendants' motion, as further explained below. (**Mot., ECF No. 496**.)

    The Court assumes the parties' familiarity with the factual and procedural background of this case. As relevant here, on June 20, 2023, the Court entered an order granting Bluegreen's motion for a preliminary injunction to prohibit the Marketing Defendants from engaging in certain conduct relating to their offer of services to Bluegreen timeshare owners during the remainder of this action and until such time as a final judgment and permanent injunction are issued. (Prelim. Inj. Order, ECF No. 487.) The Court enjoined the Marketing Defendants from engaging in four separate categories of conduct. In their most recent motion, the Marketing Defendants take issue only with the last of the categories—*i.e.*, with that which enjoins them from "offering for sale to any Bluegreen Owner the legal cancellation of a Bluegreen Interest unless the Marketing Defendants first demonstrate to the Court that the Marketing Defendants have the ability to deliver such service." (*See generally* Mot., ECF No. 496.)

    The Court's preliminary injunction order specified that the Marketing Defendants could apply to the Court if they believed they could comply with

that provision and that the Court would give their submission expedited consideration. (*See* Prelim. Inj. Order 7, ECF No. 487.) Believing that they can now offer legal cancellation services to Bluegreen timeshare owners, the Marketing Defendants request that the Court modify its preliminary injunction order to delete the provision prohibiting them from providing such services. However, after conducting a thorough review of the Marketing Defendants' submission, including the hundreds of pages of supporting exhibits, the Court is not convinced that the Marketing Defendants have demonstrated the ability to offer the legal cancellation of Bluegreen timeshare owners' contractual interests.

As primary support for the position that they can now offer Bluegreen owners the legal cancelation of their timeshare interests, the Marketing Defendants cite to two policy changes regarding the services that they will provide to those owners going forward. (*See generally* Mot., ECF No. 496.) First, where before the Marketing Defendants would recommend lawyers to timeshare owners, who could initiate communications with those lawyers if they wanted, now, all recommended lawyers will be required to affirmatively initiate legal counseling for Bluegreen owners. Second, the Marketing Defendants will institute a binding policy wherein they commit to pay the legal fees of any owner who is sued by Bluegreen. The Court does not agree that either of these planned policy changes demonstrate the Marketing Defendants' ability to offer owners the legal cancellation of their Bluegreen timeshare interests.

Perhaps most obviously, the biggest issue with the Marketing Defendants' motion is that neither of the contemplated policy changes have actually been implemented. The Marketing Defendant make clear that these are services they plan to provide to Bluegreen owners "going forward." (*See* id. at 3.) Thus, even if the Court agreed that such changes sufficed to show the Marketing Defendants' ability to offer the legal cancellation of timeshare contracts, they would be irrelevant to whether the Marketing Defendants can, in fact, offer those services at this time. And this is not just a meaningless distinction. Because the Marketing Defendants have yet to execute their two policy changes, it is unclear whether either, or both, of them will work as purportedly intended. As just one example, while the Marketing Defendants commit themselves to add a term to their contracts with Bluegreen timeshare owners assuming responsibility for the legal fees of any client sued by Bluegreen, absent from their motion is any concrete evidence of what that new contractual term will look like, or, for that matter, any evidence that it has already been incorporated in contracts with Bluegreen timeshare owners.

In any event, it seems likely to the Court that the anticipated policy changes will, at best, do nothing more than shift the role of instructing Bluegreen timeshare owners to breach their contracts from the Marketing Defendants to their lawyers. This is clear from the fact that the Marketing Defendants fail to assume any responsibility for working with lawyers to ensure that Bluegreen timeshare owners are released from their timeshare obligations through affirmative means—*i.e.,* through anything other than Bluegreen's internal release policy following an owner's default on her contractual obligations. On this point, it is telling that the Marketing Defendants are only committing themselves to pay for the legal fees of clients who are *sued by Bluegreen*, and not, for example, to referring clients to attorneys who are prepared, as a matter of course, to *initiate* litigation to free owners of their timeshare interests.

Granted, the Marketing Defendants' motion cites instances in which the lawyers it has recommended to clients have represented them in litigation and arbitration. (*See id.* at 13.)  However, it is notable that these are only a handful of examples, compared to the thousands of timeshare owners the Marketing Defendants take on as customers, and that not one of the examples involved Bluegreen owners. In addition, while the Marketing Defendants point to "Composite Exhibit E to the Prior Grey Declaration" as evidence that their lawyers have actively negotiated with counsel for Bluegreen in the past, the exhibit does not evidence any such negotiations: it merely contains the final, executed releases, which are equally consistent with Bluegreen deciding to release a customer following default.  (*See id.* at 11.)

The remainder of the Marketing Defendants' motion focuses on the argument that their referred lawyers will also be providing legal advice by recommending that Bluegreen timeshare owners commit strategic defaults. Putting aside the significant issue of whether such advice would be protected under Florida law, the Marketing Defendants seems to be confusing the concept of a strategic default, or efficient breach, with their practice, which recommends an owner's mere default. The difference is that a strategic default contemplates a calculation, wherein the defaulting party decides that it is more advantageous for her to pay the costs of default than to continue proceeding under the contract. *See, e.g., Allapattah Servs. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1329 (S.D. Fla. 1999) (Gold, J.) ("The law has long recognized the view that a contracting party has the option to breach a contract *and pay damages* if it is more efficient to do so." (emphasis added)). By contrast, what the Marketing Defendants have done in the past (and presumably what the contemplate their referred lawyers will now do in their stead) is recommend that owners default without paying any of their outstanding obligations to the

timeshare developer in the expectation that the latter will employ its internal policy of terminating and reacquiring the interests of owners who are delinquent on their payments. This is not the same as a strategic default because it does not involve a calculation of whether it would be more economically rational for the owner to continue complying with her contractual obligations or pay any damages due thereunder. Instead, the defaults relied on by the Marketing Defendants depend entirely on Bluegreen choosing to follow its internal collections policy. And because of this, such defaults not only place timeshare owners at risk of incurring future negative consequences, including potential litigation from the developer, but also damage those developers in ways that a true strategic default would not.

Finally, the Court also rejects the Marketing Defendants' alternative request for clarification of the preliminary injunction order to ensure that they are not prohibited from making "truthful statements" to Bluegreen Owners regarding the services that they, and the lawyers they recommend to Bluegreen Owners, provide. (*See* Mot. 18–19, ECF No. 496.) The Court will not issue a blanket modification of its order to the effect that the Marketing Defendants are free to make any "truthful statements." To the extent that the Marketing Defendants would like to include particular language in their advertisements that Bluegreen takes issue with, the parties may compile that specific language and submit additional briefing on the issue, including as to why it does, in fact, qualify as truthful.

**Done and ordered**, in chambers, at Miami, Florida, on July 28, 2023.

_____
Robert N. Scola, Jr.
United States District Judge