JAMS ARBITRATION NO. 1260005681

DIAMOND RESORTS, U.S. COLLECTION
DEVELOPMENT, LLC,

       Claimant,

vs.

JANICE LOUISE HAYES,

       Respondent.

-----------------------------------------------

## FINAL AWARD

THE UNDERSIGNED ARBITRATOR --- having been duly designated to be
the Arbitrator in accordance with the arbitration provision of Paragraph 16 of
the Diamond Resorts U.S. Collection Purchase and Security Agreement,
dated May 12/15, 2017, and based on careful consideration of the parties'
testimonial and documentary evidence adduced during the one-day court-
reported evidentiary session of the Merits Hearing of the Arbitration Hearing
held in this matter on February 9, 2021, the parties' post-evidentiary sessions
written submissions (including written closing argument and legal briefing)
on the merits, written submissions concerning prevailing party attorneys' fees
and costs, and applicable law pertinent thereto --- and good cause appearing ---
the Arbitrator makes this Final Award --- including the findings, conclusions and
determinations ("determinations") and relief granted and/or denied in this Final
Award, as follows.

/ / / / /

/ / / / /

/ / / / /

<u>DETERMINATIONS</u>

## I. INTRODUCTION AND SUMMARY OF KEY DETERMINATIONS

     1.     On February 9, 2021, a court-reported "Zoom" evidentiary session of the Merits Hearing of the Arbitration Hearing in this matter was held.[1] Although three (3) such evidentiary sessions were scheduled for hearing on February 9, 10 and 11, 2021, the matter was submitted for decision at the conclusion of the first scheduled hearing date.

          All pre-marked and exchanged exhibits were admitted into evidence.

          All witnesses were sworn and subject to cross-examination.

     2.     For the reasons set forth below, this Final Award has determined that:

          A.     Claimant Diamond Resorts U.S. Collection Development, LLC ("Diamond") has not sustained its burden of proof on its claim for breach of contract, under the substantive law of Nevada, asserted against Respondent Janice Louise Hayes ("Ms. Hayes").

          B.     Diamond is barred from collecting any sum or amount beyond the aggregate total of all amounts paid by Ms. Hayes to Diamond and retained by Diamond as of, on and after November 20, 2019 --- when Diamond cancelled and terminated Ms. Hayes' timeshare membership pursuant to transactional contract documents drafted and enforced by Diamond and Diamond's internal collection policies, including notices sent by Diamond to Ms. Hayes by Diamond, in furtherance of those policies, via computer systems programmed to implement and enforce those provisions and policies.[2]

---

[1] The court reporter's hearing transcript of the February 9, 2021 Merits Hearing of the Arbitration Hearing in this matter is an official record of this arbitration.

[2] Diamond's Clarity* and NLS operating systems notes reflect that Diamond cancelled Ms. Hayes' loan and membership consistent with Diamond's policy. Exhibit Nos. R50 & R84. Diamond's Business Support Manager, Monique Cupolo ("Ms. Cupolo") testified that she reviewed those notes. Hrg.Tr. at 55:10-11, 76:1-5.

   Ms. Cupolo testified that if a cancellation of Ms. Hayes had occurred --- as denied by Diamond --- there would be a notation in Diamond's NLS system reflecting that the loan was cancelled. Hrg. Tr. at p. 64:2 & 11-14. In fact there was such a notation in Diamond's NLS and Clarity operating systems on November 20, 2019 [Exhibits Nos. 50 & 84] --- which Ms. Cupolo confirmed during trial. Hrg. Tr., at 76:1-5.

"CXLD Loan" is an acronym for "cancelled loan." Hrg.Tr., p. 56:1-4.

2

       C.    As a matter of law, Diamond is barred from collecting any sum or amount beyond the aggregate total amount of Ms. Hayes' payments retained by Diamond because (1) Diamond elected to avail itself of the contractually and legally available remedy of liquidated damages and took all legal and contractual steps to trigger and enforce that election, and (2) Diamond is barred by the so-called "One Action Rule" under Nevada law, including because Diamond did not comply with the requirements of Nevada law (i.e., NRS Sec. 40.430 et seq.), in order to judicially foreclose on Ms. Hayes' timeshare membership which, under Nevada law, was an interest in real property.[3]

       D.    Ms. Hayes has not sustained her burden of proof, by clear and convincing evidence, as required by Nevada law, that Diamond fraudulently induced her to enter into the transaction and contract for her acquisition of the timeshare membership --- which is at the core of the transactions and occurrences involved in this arbitration --- by falsely representing to her that in order for her to end her Monarch Grand maintenance fee obligations and timeshare, she had

---

["30(b)(6)" designated witness, Ricky Vides, testified that Diamond's Clarity system tracks the status of membership.  Hrg. Tr., at p. 181:10-12.

[3] Diamond's contention that the timeshare membership interest in suit is not an interest in real property under Nevada law, because it is not a "deeded" interest has not been accepted by the Arbitrator.

Diamond's contention is not based on admitted or admissible evidence but, rather, on an argument that the Purchase Agreements do not create a debt secured by a mortgage, deed of trust, or other lien on real property."  Diamond Br., at p.15.

The One Action Rule is applicable to the security interest in the PSA.  It is applicable to liens, as well as mortgages.  Under Nevada law, security interest in the PSA is a "'Lien' [which] means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and **includes a security interest created by agreement**..." See NRS Sec. 112.150(8) [**bold** and <u>underlining</u> for emphasis here, only] The PSA contains a provision creating a "security agreement" which is "an agreement that creates or provides for a lien."  NRS Sec. 32.205.

The Diamond timeshare membership interest in suit is an interest in real property, as a matter of law. Although the Arbitrator has determined that Ms. Hayes' Nevada Timeshare Act claim is time-barred, that statute states that "the terms 'real property' and 'real estate' as used in chapter 645 of NRS shall be deemed to include a time share, whether it is an interest in real property or merely a contractual right to occupancy." NRS Sec. 119A.170, subd. (4).  In <u>Nevada Employment Security Dep't v. Capri Resorts, Inc.</u>, 104 Nev. 527, 528 (1988), the Nevada Supreme Court held that by enacting the Timeshare Act, "the legislature defined timeshare as real property interests." See also <u>Cal-Am Corp. v. Department of Real Estate</u>, 104 Cal.App.3d 453, 457 (1980), to the same effect.

For the foregoing reasons, Diamond's security interest is invalid to the extent that Diamond has claimed a personal property interest in real property.

CONFIDENTIAL      DP-902208

to trade in her existing Diamond Hawaii timeshare and purchase a Diamond U.S. Collection timeshare.  Principally because of the applicable "clear and convincing" burden of proof, that determination stands, notwithstanding Ms. Hayes' evidence that her Diamond Hawaii time share was not transferred to Diamond U.S. and that a Mutual Release and Termination Agreement was not executed.

    E. Ms. Hayes has not sustained her burden of proof, by a preponderance of the evidence that , as required by the Nevada Deceptive Trade Practices Act [NRS 598.0915(15)], Diamond knowingly made a false representation to her in Diamond's May 2017 sale to Ms. Hayes of the timeshare membership, which is at the core of the transactions and occurrences involved in this arbitration.

    F. The preponderance of the evidence is that Ms. Hayes did not timely commence an action or file an arbitration demand asserting a claim for Diamond's violation of the Nevada Timeshare Act "within 1 year after the date of purchase or within 1 year after the date of the discovery of the [alleged] misrepresentation giving rise to the action for rescission." NRS 119A.475(6).

    G. Because the Arbitrator has determined that there has been a valid and enforceable express contract between Ms. Hayes and Diamond --- albeit one which the Arbitrator has determined was cancelled and terminated by Diamond, a contention strongly relied on by Ms. Hayes in this arbitration --- Ms. Hayes does not have a cognizable claim for unjust enrichment under Nevada law, which is the substantive law governing this arbitration.[4]  Accordingly, it is not necessary for this award to resolve or address any of the other issues and contentions of the parties predicated on an assumption that Ms. Hayes had a cognizable claim for unjust enrichment under Nevada law.

## II. AMPLIFICATION AND DISCUSSION OF KEY DETERMINATIONS

   3. The elements for breach of contract under Nevada law are as follows:  (1) the existence of a valid and enforceable contract, (2) a material breach by the defendant, and (3) damage resulting from that breach, and (4) calculable monetary damages. See Contreras v. American Family Mutual Insurance Co.., 135 F.Supp.3d 1208, 1227 (D. Nev. 2015).

---

[4]  See Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975, 113 Nev. 747, 755, 942 P.2d 182, 187 (1997); accord, Springs Limited Partnership v. Fidelity and Deposit Company, 409 F.Supp.3d 946 (D. Nev. 2019).

CONFIDENTIAL                          DP-902209

A civil action plaintiff or arbitration claimant has the burden of proof to satisfy each and all of the elements for breach of contract by a preponderance of the evidence.

A failure to sustain that burden of proof as to any one element is fatal to the claim.

4.      Diamond failed to sustain its burden of proof as to more than one of the required elements --- the clearest being a failure to prove that it sustained any legally cognizable damage.[5]

The principal reason for Diamond's failure to prove that it sustained legally cognizable damage is that --- pursuant to Diamond's own contractual provision Par. 14.3(i) of the Purchase and Sale Agreement ("PSA")[6] and internal policies and procedures --- Ms. Hayes' deliberate inaction in responding to Diamond's programmed notices of her default on her underlying promissory note triggered internal procedures, which are outlined in Diamond's

/////

/////

/////

---

[5] See Frantz v. Johnson, 116 Nev. 455, 469 (2000) (per curiam) (causation of claimed damage, which must be proved, is a question of fact for the trier of fact)

Among other things, Ms. Hayes has asserted that Diamond is barred from recovery because it did not follow the required procedures to foreclose on Ms. Hayes' timesharing membership, which she contends is real property under Nevada law.  Because there is or are alternative bases for resolving Diamond's substantive breach-of-contract claim --- principally, here, failure to prove cognizable damage --- it is not necessary for this opinion and award to resolve that contention.

[6] The PSA liquidated damages provision provides for liquidated damages in the event of any default under the PSA, promissory note or any term of the collection documents. Exhibit No. R14, Par. 14.3(i).

In addition to the PSA, the key transactional documents executed by Ms. Hayes at the time of her purchase from Diamond of the subject time membership were a promissory note and a security agreement.

5

CONFIDENTIAL

DP-902210

"Non-Deeded Recovery Process" (Exhibit No. R69),[7] for Diamond to treat all prior payments made by her as liquidated damages.

   5.      The preponderance of the evidence --- including documentary and testimonial evidence of and attributable to Diamond, including "PMQ"/Rule 30(b)(6) testimony received in evidence --- is that (A) Diamond gave and sent Ms. Hayes an August 14, 2019 Notice of Default - Revocation of Notice ("Revocation Notice"), which was received by Ms. Hayes, informing her that (1) her account was in default,  that (2) "[a]s a result of such delinquency, and pursuant to the Owner Agreement executed by you," and that (3) "if [your] account remains in default for 14 days, without further notice, your loan will be subject to TERMINATE; any reservations held in your name will be CANCELLED; and all amounts previously paid by you will be retained as damages."* and (B) Diamond retained all amounts previously paid by Ms. Hayes under the promissory note.  [*Exhibit No. R83 (Caps and **bold** in the original; underlining for emphasis here, only]

         Ms. Cupulo testified at trial that the August 14, 2019 Revocation Notice was generated by Diamond's NLS system and sent by Diamond pursuant to Diamond's Non-Deeded Recovery Process policy.  Hrg. Tr., at p. 53-12-14.

         The Revocation Notice --- which under Diamond's collection policies was the final notice --- gave Ms. Hayes two options, one of which would go into effect expressly "without further notice."  Either (1) Ms. Hayes would bring her account current within 14 days "by paying the delinquent amount listed above, or (2) by not so paying, she would "[a]llow the loan to AUTOMATICALLY TERMINATE, without further notice."[Caps and **bold**, in the original]

/ / / / /

---

[7] Diamond's collection procedures for its timeshare memberships, outlined in Diamond's "Non-Deeded Recovery Process" (Exhibit No. R69) is automated and, among other things, provides that "Upon conclusion of the Non-Deeded Recovery process, the loan is cancelled." Id.  At that point, the defaulting party's timeshare points are transferred to the "HOA/Developer" and the defaulting party's account is updated and flagged in Diamond's Clarity and NLS operating systems to reflect the loan cancellation. Id.  The testimonial evidence adduced at trial was that the term "account" refers to the member's loan and membership.  Hrg.Tr., p. 180:24-25, 181:1-4 ("30(b)(6)" deposition testimony of Diamond Senior Collection Manager Ricky Vides ("Mr. Vides"), in evidence).*
[*Mr. Vides' 30(b)(6) deposition testimony was taken on July 20, 2020, in connection with a AAA arbitration, Case No. 01-19-0004-1456, in which Diamond was a party claimant, whose counsel in that matter was present at that deposition, representing Diamond.

CONFIDENTIAL                                                                  DP-902211

Diamond's "30(b)(6)" designated witness, Ricky Vides, testified, at deposition, in evidence, by answering "Correct." to the question:

"Say the member doesn't bring their account current, is it your understanding that account will be automatically terminated?" Hrg. Tr., at p. 180:7-22.

Mr. Vides' answer of "Correct." was an admission binding on Diamond. See Great American Insurance Company of New York v. Vegas Construction Co., 251 F.R.D. 534,538 (D. Nev. 2008). Further, and relatedly, "[a] corporation generally cannot present a theory of the facts that differs from that articulated by the designated Rule 30(b)(6) representative." Hani v. Abraham, No. 217CV00692APGPAL, 2018 WL 10467640, at *1 (D. Nev. August 21, 2018) ("Hani"). Diamond, albeit an LLC, is no less bound by that important legal principle than a corporation. In addition, and directly pertinent here, Diamond "cannot rebut the testimony of its Rule 30(b0(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no adequate explanation for the rebuttal." Snapp v. United Transportation Union, 889 F.3d 1088, 1103-1104 (9th Cir. 2018) ("Snapp"), quoting with approval, MKB Constructors v. American Zurich Insurance, 49 F.Supp.3d 814, 829 n.11 (W.D. Wash. 2014).

Compared with Mr. Vides' "30(b)(6)" testimony --- which has been relied upon by Ms. Hayes during and after trial in this arbitration --- Ms. Cupolo's testimony was "conflicting evidence truly, and without good reason or explanation, [was] in conflict, i.e., where it cannot be deemed as clarifying or simply providing full context for the Rule 30(b)(6) deposition." Snapp, at p. 1103.

6.   Liquidated damages are valid and enforceable "in lieu" damages. What that means is that --- instead of having to prove actual damage and the amount of actual damages allegedly sustained in a civil action or arbitration for breach of contract --- the agreed amount or calculable amount, by agreement of the contracting parties and legally, is presumed to be tantamount to and "in lieu" of estimated actual damages sustained by the party in whose favor the liquidated damages provision runs, in the event of a contract breach default.[8]

_____

[8] See Mason v. Fakhimi, 109 Nev. 1153, 156 (1993): "Liquidated damages are the sum which a party to a contract agrees to pay if [she/he] fails to perform, and which, having been arrived at by a good faith effort to estimate the actual damages shod a breach occur."

7

The party in whose favor the liquidated damages provision ran was Diamond --- which was the party which drafted the liquidated damages provision in its own favor, as part of its contract with Ms. Hayes.

7.      In light of the foregoing determinations --- as a matter of law and equity (under principles of estoppel) --- Diamond should not be able to and cannot legally challenge the legal validity or enforcement of its own, self-favoring contract provision --- which it drafted and presented to Ms. Hayes for signature, as part of the transactional documentation at the core of this matter.

In the circumstances of Diamond's having contractually elected to retain all payments made by Ms. Hayes in connection with her purchase of her timeshare membership pursuant to its own liquidated damages provision, and Diamond's resale at retail and in excess of what Ms. Hayes paid for that membership, and the Arbitrator's having sustained Diamond's contention that it was not unjustly enriched by that resale, as contended by Ms. Hayes, it would be inequitable --- as well a legally prohibited "double recovery"[9] --- for the Arbitrator to make an award and decree which would entitle Diamond to more than that vis-à-vis Ms. Hayes.[10]

8.      Diamond, however, could challenge, as it has in this arbitration, whether or not it availed itself of that self-favoring provision.

/////

---

[9] See Elyousef v. O'Reilly & Ferrario, LLC, 126 Nev. 441,444 (2010) (only one recovery is permissible for single injury, regardless of multiple theories).

[10] The Arbitrator cannot credit Diamond's apparent contention that it can accept and resell Ms. Hayes' timeshare membership interest, retain all of Ms. Hayes' payments for purchase of that cancelled and terminated interest, and further claim enforcement of a claimed "contractual right to recover the remaining balance under the Note as clearly indicated by the PSA." Diamond Br., at p. 19.

By the same token, the Arbitrator cannot credit Ms. Hayes' unjust enrichment requested remedy of payment of "excess value" --- assuming against applicable Nevada law that she would have an unjust enrichment claim. Because of the Arbitrator's determination and Ms. Hayes' contention that she --- like Diamond --- had an option, the option she selected was to deliberately let her default continue which, as shown in the evidence and herein, meant that she elected to lose all right, title and interest in and to her timeshare membership interest. Having contended that Diamond must be satisfied with enforcement of its retention of Ms. Hayes' payments, and not to anything more (which Diamond has pursued in this arbitration), likewise, Ms. Hayes must be satisfied with legal consequences of her "Option 2" election, and not to anything more (which Ms. Hayes has pursued in this arbitration). In the event, no alleged "excess value" contains any amount of actual payment by Ms. Hayes to Diamond.

8

CONFIDENTIAL                                                          DP-902213

The preponderance of the evidence --- consisting of the transactional documents in evidence, Diamond's collection and other internal policies and procedures in evidence and testimonial evidence --- is that Diamond cancelled and terminated Ms. Hayes' promissory notes and membership pursuant to the Purchase and Security Agreement ("PSA").

The preponderance of the evidence is that Diamond so acted consistently with its own drafted contractual documentation, its own Non-Deeded Recovery policy, the terms of its Revocation Notice sent to Ms. Hayes and the "30(b)(6)" deposition testimony, in evidence, of Mr. Vides

Neither of Diamond's (inconsistent) contentions --- that it did not do so, or if it did, it was a mistake --- have been proven by a preponderance of the evidence.[11]

9.     A determination of Diamond having availed itself of its elective "liquidated damages" remedy in the event of Ms. Hayes' breach of contract default --- which is not in issue in this arbitration ---would and does preclude Diamond from claiming, as it has, that Diamond has sustained legally cognizable

---

[11]  As to its contention of no cancellation or termination, that has been dealt with in detail elsewhere herein --- with the exception of Diamond's contention, via Ms. Cupulo, in substance, that Diamond's legal department's involvement after November 20, 2019, reactivated Ms. Hayes' account, effectively negated everything else which preceded it.

Ms. Cupolo was not a competent witness to so testify, but she did testify that Diamond's legal department or team was not a specified or designated team, among other teams specifically identified in Diamond's written policy concerning Diamond's collection/cancellation policy

As to its contention of mistake, there was no documentary evidence of a Diamond mistake and no reliable evidence of a Diamond mistake. Ms. Cupolo --- Diamond's sole witness in support of that contention --- had no personal or direct knowledge of a basis for her testimony in support of a Diamond mistake. See Hrg. Tr. at pp. 56:24-25 and 57:1-19 --- which, in pertinent part,  consists of Ms. Cupolo's concessions/admissions on cross-examination, "I don't know" if "the mistake [was] because, in fact the loan was, in fact cancelled, correct." When followed up with a question, "You don't know if it's a mistake --- I'm sorry?," Ms. Cupolo answered, I don't work in that department, sir.  I don't do the cancellations and the loans. **I don't know the process.**" In response to further questioning about Diamond's Clarity system, Ms. Cupolo conceded that Ms. Hayes' note would have shown up in her review of that system and that Clarity system has a note showing that on November 28, 2018, Diamond did, in fact cancel Ms. Hayes' loan, correct? -- I see the [Clarity system] note that they cancelled the loan." [**bold** for emphasis here, only]

On this record and under applicable law, Ms. Cupolo's testimony --- being inconsistent with that of Diamond's "30(b)(6)" deponent, Mr. Vides --- cannot be accorded reliability or credibility sufficient to acceptably differ from Mr. Vides' testimony.

CONFIDENTIAL                                                  DP-902214

damage as a result of Ms. Hayes' default, which constituted her breach of contract, and so on, to the near ultimate conclusion, alluded to above, that Diamond has failed to sustain its burden of proof on a required element of its breach-of-contract claim --- the only claim in suit in this arbitration --- so that, after a trial on the merits, Diamond's demand for arbitration should be dismissed with prejudice.

10.     The preponderance of the evidence is that Diamond's cancellations and terminations and repossession of Ms. Hayes' membership interest and retention of all monies previously paid by Ms. Hayes constituted actions would limit Diamond's damages to the amount of those paid and retained monies, as and for contractual liquidated damages[12] --- whence no cognizable or actionable damages, whence a failure of proof of Diamond's breach of contract claim.

In light of the foregoing determinations, Diamond failed to prove by a preponderance of the evidence that it did not terminate Ms. Hayes loan and timeshare membership on November 19, 2019, pursuant to its own internal collection policies the liquidated damages provision in the Purchase and Security Agreement, which Diamond drafted and had Ms. Hayes sign, as presented.

11.     Diamond's contention that the timeshare membership interest in suit is not an interest in real property under Nevada law, because it is not a "deeded" interest has not been accepted by the Arbitrator.   Diamond's contention is not based on admitted or admissible evidence but, rather, on an argument that the Purchase Agreements do not create a debt secured by a mortgage, deed of trust, or other lien on real property." Diamond Br., at p.15.

/////

/////

---

[12] See American Fire & Safety, Inc. v. City of North Las Vegas, 109 Nev. 357, 359 (1993): "As a general rule, an aggrieved party's damages for breach of contract are limited to the amount specified in a valid liquidated damages clause."

10

CONFIDENTIAL                                                                 DP-902215

The so-called One Action Rule is applicable to the security interest in the PSA. It is applicable to liens, as well as mortgages.[13] Under Nevada law, security interest in the PSA is a "'Lien' [which] means a charge against or an interest in property to secure payment of a debt or performance of an obligation, and <u>includes a security interest created by agreement</u>..." See NRS Sec. 112.150(8) [**bold** and <u>underlining</u> for emphasis here, only] The PSA contains a provision creating a "security agreement" which is "an agreement that creates or provides for a lien." NRS Sec. 32.205.

12.    The Diamond timeshare membership interest in suit is an interest in real property, as a matter of Nevada law. Although the Arbitrator has determined that Ms. Hayes' Nevada Timeshare Act claim is time-barred, that statute states that "the terms "real property' and 'real estate' as used in chapter 645 of NRS shall be deemed to include a time share, whether it is an interest in real property or merely a contractual right to occupancy." NRS Sec. 119A.170, subd. (4).  In <u>Nevada Employment Security Dep't v. Capri Resorts, Inc.</u>, 104 Nev. 527, 528 (1988), the Nevada Supreme Court held that by enacting the Timeshare Act, "the legislature defined timeshare as real property interests."  See also <u>Cal-Am Corp. v. Department of Real Estate</u>, 104 Cal.App.3d 453, 457 (1980), to the same effect.[14]

13.    For the foregoing reasons, Diamond's security interest is invalid to the extent that Diamond has claimed a personal property interest in real property.

---

[13] In the event, and as an evidentiary matter, Diamond's contention that the PSA does not create a "mortgage" is contradicted and/or otherwise undercut by the following Diamond-generated documentation:
  . As part of its collection process, Diamond sends a defaulting member, such as Ms. Hayes, a "Mortgage Acceleration" notice which informs the member that Diamond must receive immediate payment "in order to prevent invocation of remedies outlined in the **mortgage document** regarding acceleration of the debt." [**bold** added for emphasis here, only] Exhibit No. R81.
  . Diamond defines as "Mortgage" "a document in which the owner pledges his/her title to real property to a lender as security for a loan described in a promissory note." Exhibit No. R63.
  . Diamond maintains "**Foreclosure Procedures**" for "**handling the foreclosure** and recovery of delinquent accounts." Exhibit No. R63.
[14] Nevada courts often look to the decisions of California courts for guidance.

CONFIDENTIAL                                                    DP-902216

## IV. PREVAILING PARTY, ATTORNEYS' FEES AND COSTS

14.     Under Nevada law --- which governs the recovery of attorneys' fees in this arbitration --- Ms. Hayes is the prevailing party in this arbitration.

Parties "prevail" if they succeed on any substantial aspect of the case, and the term "prevailing party" "is broadly construed so as to encompass plaintiffs, counterclaimants, and defendants." Valley Electric Ass'n v. Overfield, 121 Nev. 7, 10, 106 P.3d 1198, 1200 (2005); followed, Davis v. Beling, 128 Nev. 301, 321 (2012).

15.     While both sides requested attorneys' fees and costs in connection with this arbitration, Ms. Hayes is not entitled to recover her attorneys' fees or costs in connection with this matter under any contract, statute or applicable arbitration rule.[15]  That is because:

A.     Nevada law, as interpreted, including recently by the Nevada Supreme Court, follows the so-called "American Rule" concerning attorneys' fees and not the so-called "loser pays" rule or mutuality or reciprocity rule, which exists and, for example, is followed in California under Section 1717 of the California Civil Code.  See Pardee Homes of Nevada v. James Wofram, 135 Nev. Ap. (July 2, 2019); Thomas of City of North Las Vegas, 122 Nev. 82, 90, 127 P.3d 1057, 1063 (2006).

Even where there is a specific Nevada statute providing for prevailing party attorneys' fees, contracting parties may override that statute, and supersede its legal effect, by so contracting.  Rowland v. Lepire, 662 P.2d 1332, 1336-1337 (Nev. 1983).

B.     Accordingly, although there is an attorneys' fees provision under the Promissory Note, it is one-sided, in that it only provides for Diamond to recover its attorneys' fees.  Under Nevada case law, a one-sided attorney's fees provision, favoring only a named party, as here, will be enforced according to its terms.

---

[15] In general, a district court applying Nevada law --- and thus an arbitrator doing the same, as here --- may not award "attorneys fees...unless authorized to do so by a statute, rule or contract." U.S. Design & Construction v. IBEW, Local 357, 118 Nev. 458, 462, 50 P.3d 170, 173 (2002).

Because of the foregoing determination, for the reasons hereinabove set forth, in the main text hereof, it is not necessary for the Arbitrator to make any determinations as to all bases and reasons for that determination.

CONFIDENTIAL                                                                          DP-902217

There is no mutuality or reciprocity of entitlement implied or otherwise available, if the promisor under a promissory note with such promisee-only attorneys' fees provision is the prevailing party in a civil action or arbitration.

C.    The only statutory basis for Ms. Hayes' claimed entitlement to her attorneys' fees and costs, as the prevailing party, is under the Nevada Timeshare Act. However, because it has been determined that Ms. Hayes' claim under that act has been time-barred,[16] the jurisdictional predicate for attorneys' fees under the Timeshare Act similarly has been time-barred, assuming arguendo, that she would have been the prevailing party on the merits of that statutory claim, had it not been time-barred.  Ms. Hayes has not cited any cases holding to the contrary of that analysis and determination.

D.    Notwithstanding any of the foregoing, the Arbitrator has the discretion under JAMS Streamlined Arbitration Rules & Procedures Rule 23 (e) to "allocate Arbitration fees and Arbitrator compensation and expenses, unless such an allocation is expressly prohibited by the Parties' Agreement."[17]

## V.   RELIEF GRANTED AND/OR DENIED

Based on careful consideration of the evidence, applicable law, the determinations hereinabove set forth, and good cause appearing --- and subject to further order and/or award --- the Arbitrator hereby makes this Final Award and grants and/or denies requested relief, and it is hereby adjudged and decreed, as follows:

1.    Because Claimant Diamond Resorts U.S. Collection Development, LLC ("Diamond") has failed to sustain its burden of proof as to its breach-of-contract claim --- which is Diamond's only claim for affirmative relief in this arbitration against Respondent Janice Louise Hayes (" Ms. Hayes") ---  Diamond should and shall take nothing by way of that claim and demand in this arbitration, which accordingly is hereby dismissed, with prejudice.

2.    Ms. Hayes is entitled to declaratory relief in this arbitration, and it is accordingly hereby declared that Diamond cancelled and terminated Ms. Hayes' timeshare contract and that --- beyond Diamond's continued

---

[16] See Determinations, Par. 2F, supra.
[17] JAMS Streamlined Arbitration Rules & Procedures, are the contractually mandated Rules governing this Arbitration.  See PAMC Order, at p. 2 & n. 2 thereof.

13

CONFIDENTIAL                                                                                   DP-902218

retention of all payments made by Ms. Hayes to Diamond --- Ms. Hayes has no legal or financial obligation owed to Diamond.

3.       Because Ms. Hayes failed to prove that she was fraudulently induced by Diamond to enter into the contract, which is at the core of the parties' dispute, Ms. Hayes' counterclaim based on that theory should be and is hereby dismissed, with prejudice.

4.       Because Ms. Hayes is not entitled to assert or prevail on a claim for unjust enrichment under Nevada law --- because of the Arbitrator's determination of a valid and enforceable express written contract between Ms. Hayes and Diamond --- Ms. Hayes' counterclaim for unjust enrichment should be and is hereby dismissed, with prejudice.

In the event, Ms. Hayes is not entitled to any substantive monetary recovery from Diamond for the reasons hereinabove set forth, including because any alleged "excess value" of Ms. Hayes former timeshare membership interest which exceeds Diamond's damages contain or represent an amount actually paid by Ms. Hayes beyond the amount paid and retained by Diamond as contractual liquidated damages.

5.       Pursuant to agreement of the parties, via their respective counsel of record, in their Joint Report, dated May 3, 2021, any issue and/or matter of or concerning a judicial foreclosure sale of Ms. Hayes' former membership points has been agreed to be moot --- as the parties have "agree[d] [that] a stipulation memorializing Hayes' acknowledgment that Diamond retain ownership of the points would be sufficient to memorialize any transfer of points to from Hayes back to Diamond." [sic] Joint Report, Par. 2.

6.       Ms. Hayes is the prevailing party in this arbitration.

7.       Notwithstanding that Ms. Hayes has been determined to be the prevailing party in this arbitration --- and notwithstanding that both Diamond and Ms. Hayes, in their pleadings and briefs, have prayed for and requested prevailing party attorneys' fees and costs --- Ms. Hayes has not sustained her burden of proof that she is entitled to an award of contractual and/or statutory prevailing party fees and costs under Nevada law.

8.       In the event, and in the exercise of the Arbitrator's discretion under JAMS Streamlined Arbitration Rule 19(e), Ms. Hayes is hereby awarded $250.00, as and for reimbursement of her payment to JAMS of that amount as a JAMS filing fee in connection with this arbitration.

CONFIDENTIAL                                                  DP-902219

Diamond shall remain and be solely and entirely legally and financially liable and responsible for payment of all other JAMS Arbitration fees and Arbitrator compensation and costs and expenses billed and incurred in connection with this arbitration.

9.      To the extent, if any, that any claim, defense or contention has not been expressly granted or denied, any and all such claims, defenses and contentions are hereby denied.

10.     The Arbitrator hereby declares the Arbitration Hearing in this arbitration closed, as of June 12, 2021 --- the date of last papers in this matter, which are Ms. Hayes' Reply in support of her post-hearing application for attorneys' fees and costs in this matter.

11.     The Arbitrator shall continue to maintain jurisdiction over the parties concerning the subject matter of this arbitration until the last day permitted by law and applicable JAMS Rules.

12.     To the extent, if any, that there is any inconsistency between this Final Award and the Interim Award and/or any other prior order or ruling of the Arbitrator, this award shall govern and prevail in each and every such instance.

**IT IS SO ORDERED.**

Dated: July 9, 2021

STEPHEN E. HABERFELD
Arbitrator

15

CONFIDENTIAL                                                       DP-902220

**D - 0406-0015**

**PROOF OF SERVICE BY E-Mail**

Re: Diamond Resorts U.S. Collection Development, LLC vs. Hayes, Janice Louise
Reference No. 1260005681

I, Joshua Kroll, not a party to the within action, hereby declare that on  July 9, 2021, I served the attached Final Award on the parties in the within action by electronic mail at Los Angeles, CALIFORNIA, addressed as follows:

Abran E. Vigil Esq.
Joshua D. Ihler Esq.
Ballard Spahr LLP
1980 Festival Plaza Drive
Suite 900
Las Vegas, NV  89135
Phone: 702-471-7000
VigilA@ballardspahr.com
ihlerj@ballardspahr.com
    Parties Represented:
    Diamond Resorts U.S. Collection Development,

David P. Hall Esq.
Carlsbad Law Group LLP
5050 Avenida Encinas
Suite 300
Carlsbad, CA  92008-4386
Phone: 858-793-6244
dhall@carlsbadlawgroup.com
    Parties Represented:
    Janice Louise Hayes

I declare under penalty of perjury the foregoing to be true and correct. Executed at Los Angeles, CALIFORNIA on  July 9, 2021.

_____
Joshua Kroll
JAMS
JKroll@jamsadr.com

CONFIDENTIAL

DP-902221

D - 0406-0016