AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL

| In the Matter of Arbitration between: | Case Number: 01-19-0004-6454 |
|---|---|
| Richard Johnson<br>-vs-<br>Diamond Resorts U.S. Collection Development, LLC | (Claimant)<br><br>(Respondent) |

### AWARD OF ARBITRATOR

I, the Undersigned Arbitrator, having been designated in accordance with the arbitration agreement entered into between the above-named parties dated April 27, 2016, and having been duly sworn, and having duly heard the arguments and evidence of the parties, hereby AWARD as follows:

After due and proper notice by the AAA, an arbitration hearing took place on October 20-21, 2020, pursuant to the agreement of the parties and by order of the Arbitrator. Cynthia L. Marks of Carlsbad Law Group, LLP represented the Claimant. Holly Ann Priest of Ballard Spahr, LLP represented the Respondent.

Though Claimant originally asserted his arbitration demand against Diamond Resorts U.S. Collection Development, LLC and a Respondent called "Diamond Resorts," Claimant's counsel stipulated at the outset of the hearing that no entity named simply "Diamond Resorts" exists and that the sole Respondent present in the arbitration is Diamond Resorts U.S. Collection Development, LLC.

The Arbitrator heard live testimony from all witnesses called by the parties, namely, Claimant Richard Johnson, his wife Marian Johnson, and Respondent's employee James Hutchison. The Arbitrator received into evidence all exhibits offered by Claimant and Respondent, with the exception of Claimant's Exhibits 40 and 44. Exhibit C40 was hearsay and irrelevant concerning unrelated legal proceedings in Arizona not involving Claimant. Exhibit C44 had not been timely produced as required by Preliminary Hearing and Scheduling Order No. 1 and was immaterial in any event as concerning a prior 2008 transaction between Claimant and Respondent. The Arbitrator also permitted Claimant to make a post-hearing submission as to the statute of limitations and his attorney's fees on November 6, 2020 with

Final Award 01-19-0004-6454                                                                                               Page | 1

CONFIDENTIAL                                                                                                            DP-902222

D - 0407-0001

supplementation on November 19, 2020, and Respondent to make a similar submission on November 24, 2020, and the hearing was closed on November 24, 2020.

This arbitration concerns an April 27, 2016 transaction between Claimant and Respondent. Claimant purchased a 20,500-point timeshare interest in Respondent's U.S. Collection in exchange for cash, a promissory note, and the surrender of the Claimant's 12,000 points in Respondent's California Collection. Claimant's amended claim asserts six counts, including fraud in the inducement, Nevada Deceptive Trade Practices Act, Nevada Timeshare Act, financial elder abuse, unjust enrichment, and declaratory relief. Respondent did not assert any counterclaim for the unpaid part of the promissory note. Though the 2016 transaction occurred in Branson, Missouri, the parties agree that Nevada substantive law applies to the transaction pursuant to the contract.

The claim under the Nevada Timeshare Act is barred by the statute of limitations. Section 119A.475 requires claims to be brought within one year "after the date of the discovery of the misrepresentation giving rise to the action for rescission." Claimant's amended claim in the arbitration—not just his earlier Superior Court complaint—sought rescission as the primary relief he requested pursuant to the Nevada Timeshare Act. Claimant testified that his chief concern in entering into the 2016 transaction was to obtain the ability to surrender his timeshare interest. Respondent sent him a letter in July 2017 refusing to take back his timeshare. Claimant did not file the California Superior Court lawsuit that preceded this arbitration until September 12, 2019. Claimant testified that he did not grasp the extent of the misrepresentations in July 2017, but the statute begins to run when he discovered or reasonably should have discovered the wrong, and the frustration of his chief purpose in entering into the transaction should have been evident to him in July 2017.

Likewise, the financial elder abuse claim is barred by the statute of limitations. Under NRS §11.190(4)(b), any such claim must be brought within two years. See *World Class LLC v. Co. V.*, Case No. A-19-804593-C, 2020 Nev. Dist. LEXIS 465, *10-11, (Eighth Jud. Dist. June 26, 2020). Since Claimant was put on notice of his potential claim in July 2017 and did not file any claim in court or arbitration until September 2019, the claim is time barred.

Final Award 01-19-0004-6454 Page | 2

CONFIDENTIAL DP-902223

D - 0407-0002

The unjust enrichment claim is not viable. It is black letter law in Nevada and elsewhere that an unjust enrichment remedy is not available when there is an express written contract covering the subject matter. Claimant signed extensive written contractual documentation on April 27, 2016. His contractual remedies are limited to those documents, and the Arbitrator cannot imply or infer any additional or different contractual obligations.

Declaratory Relief is also not appropriate. What Claimant really seeks is an award of money damages. If money damages are not awarded, there is no other declaration of the respective rights of the parties that will provide any relief to Claimant.

With respect to his claims of fraud in the inducement and deceptive trade practices, Claimant alleged several purportedly material misrepresentations of fact. However, Claimant has not demonstrated that the representation that annual maintenance fees would increase more in the California Collection than the U.S. Collection was false. Claimant's maintenance fee for the California Collection increased significantly in the last year prior to the 2016 transaction, and Claimant's maintenance fee in the U.S. Collection was higher after the transaction, but he also had 8,500 more points, so it stands to reason that his total maintenance fee would be higher. Claimant did not introduce evidence of what his maintenance fees would have been in the California Collection for 2017 and subsequent years. Next, Marian Johnson testified that she could not be sure that James Hutchison did not tell them that they would have to be at the platinum level to use their points to pay maintenance fees. Likewise, Claimant has not proven a misrepresentation to the effect that it would be simpler for him to turn in or cancel his timeshare interest if he financed part of the purchase price through Respondent rather than through a bank. Claimant testified that he believed it would be simpler, but he did not say that this idea originated with Respondent's vacation counselor, and it is not at all clear that the notion was false; it might well have been simpler with seller financing *if* Respondent had allowed surrender of timeshare interests. Further, the allegations that Respondent's offer to Claimant was good only for that day and the price would never be lower were weakened by Richard Johnson's testimony that what James Hutchison actually said was that the offer *probably* would not be good a week later. This is a common negotiating tactic and not a positive

Final Award 01-19-0004-6454                                                                                                              Page | 3

CONFIDENTIAL

DP-902224

D - 0407-0003

representation of fact. Additionally, the suggestion that Claimant would have a personal vacation counselor does not appear to be material. The alleged misrepresentation seems to have been based primarily upon a document (Exhibit C24) provided after Claimant signed the contract documents, and Claimant did not testify that the prospect of a personal vacation counselor was a significant motivation for him in entering into the transaction.

    Claimant's remaining alleged misrepresentations were that Respondent's California Collection would imminently become bankrupt, that Claimant needed to upgrade to the U.S. Collection to avoid losing his timeshare interest in the California Collection, that Diamond would allow him to turn in or cancel his timeshare interest if needed after he upgraded to the silver level, and that Respondent would sell Claimant no less than 8,500 points even though he needed only 3,000 more points to receive to achieve silver level status. These matters were clearly material to Claimant, and they are just as clearly false.

    With respect to the common law claim of fraud in the inducement of the contract, the Arbitrator is not persuaded that Claimant proved all of the elements of the cause of action by clear and convincing evidence. The statutory deceptive trade practices claim does not impose the same burden as common law fraud. Claimant must show that Respondent knowingly misrepresented the legal rights, obligations, or remedies associated with his timeshare contract purchase. The misrepresentations as to the bankruptcy, imminent worthlessness of the California Collection, ability of silver level members to cancel their memberships, and requirement to purchase no less than 8,500 points easily meet this standard.

    The real dispute of fact in this arbitration is whether Respondent made these misrepresentations. Richard Johnson and Marian Johnson testified that Respondent's sales representative James Hutchison said all of these things. James Hutchison testified that he had no memory of the April 27, 2016 owner's update presentation with the Johnsons, but that he would not have made these misrepresentations because he had not been trained by Respondent to make such misrepresentations. The Arbitrator finds the testimony of Mr. and Mrs. Johnson more credible.

Consequently, the Arbitrator finds in favor of Claimant and against Respondent on Claimant's claim for deceptive trade practices.

With respect to damages, Claimant has proved his initial cash deposit of $6,628.00, the ascribed value of his surrendered California Collection interest of $25,655, and sixteen monthly loan payments totaling $6,617.60. These amounts sum to $38,900.60. I do not award Claimant the 2016 and 2017 maintenance fees as he did not demonstrate an actual misrepresentation on that point.

Claimant also sought as damages, a fee of $21,000.00 that he paid to timeshare exit company Seaside Consultants Group to obtain his exit from Respondent's timeshare. Claimant's contract with Respondent provides for reasonable attorney's fees. It does not provide for any award of fees of non-attorney consultants. Payment of the Seaside fee does not operate as mitigation of damages since it substantially increased rather than decreased his alleged damages. The Arbitrator does not see any other legal basis for recovery of any such fee. Moreover, if the Seaside fee were recoverable analogous to attorney's fees, it would still have to be reasonable, and the arbitrator finds the Seaside fee exorbitant and unreasonable, particularly since Seaside did nothing to extract Claimant from his timeshare other than to advise him to default on his installment payments.

Both the Nevada Deceptive Trade Practices Act and the contract allow an award of reasonable attorney's fees to Claimant if he prevails on his claims. Claimant is the prevailing party, though he succeeded on only one of his six counts, because he obtained an award for the majority of the actual damages that he sought. Any attorney's fees awarded must be reasonable. Claimant's attorney seeks an award of $151,900 in fees. That amount inappropriately includes fees for filing the Superior Court lawsuit despite the arbitration clause and for opposing the successful motion to compel arbitration. More importantly, attorney's fees more than three times the actual damages potentially recoverable (given that there was no basis to recover the Seaside fee) are not reasonable. The amount requested is also 50% more than the fees defense counsel reported at their higher hourly rates despite Claimant's counsel's criticism that Respondent's counsel overstaffed the case with a partner and three (actually four) associates. Further, Claimant submitted evidence that his contingency retainer agreement with his counsel gave his

CONFIDENTIAL                                                                                              DP-902226

D - 0407-0005

attorney both a contingent fee of 40% of Claimant's recovery and entitlement to the entirety of any contractual or statutory award of attorney's fees. Double compensation to the attorney is not reasonable. The right to fees under both the contract and the statute belongs to the prevailing party, not to the attorney, and Claimant's only obligation to pay any fees is the 40% contingent fee. Given that Claimant had a clear entitlement to fees under the statutes and the contract if he prevailed, a reasonable arrangement would have been for any award of attorney's fees to be applied first to reduce Claimant's 40% contingent fee obligation, but that is not the agreement that Claimant made, and the arbitrator has no power to change it.  The arbitrator finds that an award of attorney's fees in the amount of $75,950 (over and above the contingency fee obligation) is reasonable.

Accordingly, the arbitrator grants Claimant's claim for deceptive trade practices and awards Claimant $38,900.60 in damages, $75,950.00 in attorney's fees, and $4,065.00 in costs for a combined amount of $118,915.60.

The administrative fees and expenses of the American Arbitration Association totaling $6,535.00 and the compensation and expenses of the arbitrator totaling $17,547.50 shall be borne as incurred, entirely by Respondent as agreed in the arbitration clause in Respondent's contract.

The total amount of this award in favor of Claimant is $118,915.60.

This award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are hereby denied.

___December 8, 2020___  
Date

*Douglas W. King* (signature)  
Douglas Willard King-Arbitrator