# P-0881

Exhibit A

Bluegreen Vacations Corporation
4960 Conference Way North, Suite 100
Boca Raton, FL 33431

February 12, 2020

127_DOM ▲ 0 0 0 0 0 2
M███ Marston



582017
PARADISE POINT RESORT

| UNIT(S) | VACATION WEEK(S) | INTERVAL(S): |
|---------|------------------|--------------|
| 2303M   | 17               | E            |

<div style="background:orange">**NOTICE OF TERMINATION OF OWNER BENEFICIARY RIGHTS**</div>

Dear M█████,

Having failed to perform your obligation under the promissory note in connection with your purchase of the above referenced properties, your loan owed to Bluegreen / Big Cedar Vacations, LLC is in default.

As a result, the Owner Beneficiary Rights you acquired in connection with your purchase of the above referenced properties have been terminated as provided in the Bluegreen Vacation Club Amended and Restated Trust Agreement. Your termination for non-payment will be reported to the credit bureau(s) and may result in your inability to obtain consumer financing in the future. Please be advised that unless you have other active Bluegreen Owner Beneficiary Agreements with accounts that are currently in good standing, your membership in Bluegreen Vacation Club, Inc. has been terminated.

Should you have any questions regarding this matter, please call 1-844-339-4277.

Sincerely,

Bluegreen Vacations Corporation

termvc

BXG
LISTED
NYSE

BG-CARLSBAD 046850

**FEDERAL AND STATE DEBT COLLECTION LAWS AND/OR THE FAIR CREDIT REPORTING ACT
REQUIRES THE FOLLOWING DISCLOSURES**

Required by the Fair Credit Reporting Act: You have a right to inspect your credit report.
**All states**: You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**CALIFORNIA**: As required by law, you are hereby notified that a negative credit agency report reflecting on your credit report may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described in the notice on the front of this letter.
The state Rosenthal Fair Debt Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9
p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have a reason to know that you may not receive personal calls at work. For the most part, collectors may     not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC HELP or www.ftc.gov.

**COLORADO**: If the consumer notifies a debt collection agency in writing that: the consumer wishes the collection agency to cease contact by telephone at the consumer's residence or place of employment, then no such further contact by telephone shall be made; the consumer refuses to pay a debt or the consumer wishes the collection agency to cease further communication with the consumer, then the debt collector or collection agency shall not communicate further with the consumer with respect to such debt, except for a written communication: to advise the consumer that the collection agency's further efforts are being terminated; to notify the consumer that the collection agency or creditor may invoke specified remedies which are ordinarily invoked by such collection agency or creditor; or where applicable, to notify the consumer that the collection agency or creditor intends to invoke a specified remedy permitted by law. FOR INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION PRACTICES ACT, SEE WWW.AGO.STATE.CO.US/CADC/CADCMAIN.CFM.
This communication is from a debt collector.

**IDAHO**: Managers can be reached at 800.330.1361, Monday-Friday 8:00 a.m. to 5:00 p.m.

**MAINE**: Hours of Operation are Monday - Thursday 8:00 a.m. to 7:00 p.m. and Friday 8:00 a.m. to 5:00 p.m.

**MASSACHUSETTS**: Send Payments to P.O. Box 810937, Boca Raton, FL 33431
"Notice of important rights": You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the debt collector.

**NEVADA**: Additional fees may be charged for certain types of payments. There is a $5.00 convenience fee when making payments through our website.

**NEW YORK**: Department of Consumer Affairs License Number 1381842

**NORTH CAROLINA**: North Carolina Department of Insurance Permit Number 103835

**TENNESSEE**: This collection agency is licensed by the Collection Service Board of the Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

**UTAH**: As required by Utah law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

**WISCONSIN**: This collection agency is licensed by the Office of the Administrator of the division of Banking, P.O. Box 7876, Madison, Wisconsin 53707

**WEST VIRGINIA**: The activities of collection agencies in West Virginia are regulated by the Attorney General's Consumer Protection Division, 812 Quarrier St., Charleston, WV 25301. Federal law prohibits agencies from contacting you about your debt if you send a letter requesting that all contacts stop.

P-1277



# CARLSBAD

## LAW GROUP, LLP

June 19, 2020

**_VIA UPS (Signature Required)_**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**    *In re Bluegreen Vacation Club Sales Practices*
              **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Gerald William Barnett<br>Sheila Rae Barnett | Timeshare Contract No. 1110130<br>Dated 03.01.2018 |
| Peter L. Greaves<br>DeAnn M. Greaves | Timeshare Contract No. 752785<br>Dated 02.25.2013 |
| Emma Josephine Stubblefield | Timeshare Contract No. 1104162<br>Dated 01.18.2018 |

We hereby demand that BVC, including its agents and affiliate-companies, **_cease and desist_** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Legal Department
June 19, 2020
Page 2 of 2

Enclosed please find a Third Party Authorization for these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:dw
Enclosure

P-1278



## CARLSBAD

LAW GROUP, LLP

April 23, 2021

*Via UPS (Return Signature Required)*

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

> **Re:    Bluegreen Vacation Club**
> **Contract No. 1110130**
> **Date Purchased: March 1, 2018**

Attention: Legal Department

As you know, Gerald William Barnett and Sheila Rae Barnett ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 1110130, dated March 1, 2018 (the "Contract"). Following up on our previous correspondence dated June 19, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $24,876** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, and breach of fiduciary duty. Accordingly, Bluegreen must rescind the Contract.

### A.  FACTUAL OVERVIEW

Our Clients originally purchased a small Bluegreen timeshare, but soon realized they were not receiving much benefit from their purchase because they were frequently unable to reserve the timeshare when and where they desired. In 2018, while our Clients were on vacation using their timeshare, Bluegreen representatives pressured them into attending a 90-minute "update" meeting about their timeshare benefits. Bluegreen advertised the "update" as an opportunity to receive an "update about all of the big changes at Bluegreen."

The presentation, which lasted from 10:00AM until closing (forcing our Clients to cancel their dinner reservations), was a high-pressure Bluegreen timeshare sales pitch during which multiple Bluegreen sales representatives (including Ashlyn Porter, Melissa East, and Patricia Telford) pressured our Clients to upgrade their existing timeshare by purchasing additional points. During the sales presentation, the Bluegreen sales representatives made several false and/or misleading statements regarding Bluegreen timeshare ownership. One of the sales

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Contract No. 1110130
April 23, 2021
Page 2

representatives told our Clients that he was the "only sales representative who survived the massive reorganization because all of the other Bluegreen sales representatives were terminated for unethical sales practices." The Bluegreen sales representatives repeatedly described Bluegreen timeshare ownership as an "investment" in real property that was deeded, would gain value over time, and could be passed to our Clients' children. The Bluegreen sales representatives also told our Clients, who were concerned they would not be able to use all of the points each year, that they could "easily book and rent out" the timeshare (the Bluegreen sales representatives claimed they did this with their own points too).

When our Clients complained to the Bluegreen sales representatives that they were having a lot of difficulty booking vacations due to a pervasive lack of availability, the Bluegreen sales representatives told our Clients that upgrading would give them booking priority over "90% of Bluegreen owners." The Bluegreen sales representatives told our Clients that if they upgraded, they would no longer have any issues with access or availability; the Bluegreen sales representative even promised our Clients that he would be their "personal booking agent" and even provided them with his "personal phone number." They also told our Clients that upgrading would afford them access to a portal where they could obtain steep discounts on hotels around the world. Despite these promises, however, nothing changed for our Clients, who have continued to experience an inability to book vacations when and where they desire because Bluegreen does not provide timeshare owners with adequate volume of accommodations. When our Clients contacted their "personal booking agent," he never returned their calls. The Bluegreen sales representatives also promised that Bluegreen would "buy back" the timeshare from our Clients at "any time."

During the sales presentation, our Clients declined several high-priced offers made by the Bluegreen sales representatives, who continued lowering the price of the timeshare and relentlessly pressuring our Clients until they ultimately agreed to purchase a timeshare. Our Clients felt particularly pressured to make a purchase on the day of the presentation because the Bluegreen sales representatives told them that the offer was a "special" that was good for "one day only." After more than six hours of aggressive sales tactics, our Clients were tired and hungry, but the Bluegreen sales representatives would not allow them to leave to get food, instead offering them some crackers they happened to find in the sales room. The Bluegreen sales representatives also signed up our Clients for a Bluegreen Mastercard, which they promised would help our Clients accumulate points to pay for their maintenance fees, but this too was false.

The Bluegreen sales representatives rushed our Clients through the process of signing the Contract. In so doing, the Bluegreen sales representatives failed to disclose key information to our Clients. For example, they failed to disclose that the annual maintenance fees were subject to increases, or that the maintenance fees would more than double after the upgrade (despite the fact our Clients asked specifically about the increase to the maintenance fees and referenced the recent hurricanes on the east coast, to which the Bluegreen sales representatives claimed that "insurance covered it" and the repair costs were not passed on to owners). In addition to this, the Bluegreen sales representatives never disclosed the interest rate charged on the mortgage. They

Bluegreen Vacation Club
Contract No. 1110130
April 23, 2021
Page 3

also never disclosed that our Clients' children would automatically inherit the timeshare, and that they would be saddled with an obligation to pay annual maintenance fees in perpetuity.

During the presentation, and before the purchase was complete, the Bluegreen sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)     The Bluegreen timeshare was a prudent investment;
(2)     The Bluegreen timeshare would gain value over time;
(3)     The Bluegreen timeshare could be rented or sold at "any time";
(4)     The 'exclusive' offer to purchase the timeshare was only good for that day;
(5)     The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain the program;
(6)     The Bluegreen sales representatives failed to disclose the interest rate charged on the mortgage; and
(7)     The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain the fees.

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $43,800 (plus closing costs), our Clients made a down payment of $9,190. Bluegreen provided $35,040 in financing at 14.99% interest per annum. The resulting payment plan called for 120 monthly payments of $565, plus monthly maintenance fees of $158. To date, our Clients have made approximately 22 mortgage payments, totaling $12,430, as well as 22 maintenance fee payments, totaling $3,256.

In total, our Clients have paid Bluegreen at least $24,876 for a timeshare which they purchased in reliance on the many material misrepresentations, omissions, and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

### B.  LEGAL ANALYSIS

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Bluegreen Vacation Club
Contract No. 1110130
April 23, 2021
Page 4

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

### 1.   The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute. As a result, the Contract is voidable.

### 2.   The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising. Specifically, Bluegreen sales representatives told our Clients that the "update" would last 90 minutes; however, the hard-sell, high-pressure Bluegreen timeshare sales presentation lasted the entire day, approximately 6-7 hours. Thus, the Contract is voidable.

### C.   CONCLUSION

The Contract is voidable for the foregoing reasons. A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief. In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under the Ca. Bus. Prof. Code § 11283. If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $24,876** to our Clients. In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit.  Please provide a substantive response to this demand on or before **Monday, May 24, 2021,** by close of business.

CARLSBAD005948

Bluegreen Vacation Club
Contract No. 1110130
April 23, 2021
Page 5

We look forward to your response and your anticipated cooperation in resolving this matter.  I am available anytime to discuss this matter.

Very Truly Yours,

J.L. Sean Slattery

JLSS:br

---

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

CARLSBAD005949

# P-1279



CARLSBAD
LAW GROUP, LLP

June 18, 2021

**VIA UPS (Signature Required)**

Legal Department
Bluegreen Vacations Unlimited, Inc.
4960 Conference Way North, Suite 100
Boca Raton, FL 33431

Re:    **Bluegreen Vacations Club Contract # 890595**
       **Dated: March 21, 2015**

As you know, Alabama residents Garry Joe and Deborah S. Barrett ("Clients"), retained our office to represent their interests in connection with the Bluegreen Vacations Club ("Bluegreen"), Contract # 890595, dated March 21, 2015 ("Contract"). Following up on our previous correspondence on August 21, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $12,340.62 to our Clients.**

This dispute is based on the Bluegreen's sales representatives' material misrepresentations and false promises; engagement in fraudulent, misleading, and oppressive sales tactics; and breach of fiduciary duty.

### A. FACTUAL OVERVIEW

In June 2015, our Clients were in New Orleans on vacation when they were approached by a club LA Pension employee who was also an authorized representative of Bluegreen Resorts. Our Clients were invited by the Bluegreen representative to attend a presentation. The Bluegreen representative told our Clients that this presentation would last about 45 minutes. On March 21, 2015, our Clients attention the presentation which contrary to the Bluegreen representatives assertions lasted for over five hours.

During the presentation, the Bluegreen sales agents made many material misrepresentations and placed substantial pressure on our Clients to purchase a Bluegreen timeshare. The Bluegreen representatives told our Clients that the timeshare would allow them to travel to numerous locations throughout the United States through Bluegreen's network of resorts via RCI, but Bluegreen never disclosed the fees, conditions and various charges associated with the RCI program. The Bluegreen sales agents repeatedly described the timeshare as a financial investment – an interest in real property that would appreciate in value, offer substantial tax benefits and could later be sold by our Clients' for a profit.

Bluegreen Vacation Club
Contract # 890595
June 18, 2021
Page 2

The Bluegreen sales agents rushed through the point-based system and did not explain how the system worked. Further, the Bluegreen sales agents repeatedly made representations about the point system which was not true.

Our Clients were not interested in purchasing a timeshare as they were already owners of a Wyndham timeshare they were looking to offload. Our Clients were not satisfied with their Wyndham timeshare. The Bluegreen representatives used this information to their advantage. Our Clients were advised that Bluegreen could assist our Clients in selling their Wyndham timeshare. Moreover, unlike Wyndham, the Bluegreen sales representatives alleged they offered a program wherein our Clients could sell their timeshare back to Bluegreen. This was reassuring for our Clients – they had an out should they become unsatisfied with their Bluegreen timeshare purchase in the future.

The Bluegreen sales agents made material misrepresentations to our Clients in an effort to induce the sale. As stated previously, the Bluegreen sales agents told our Clients this would be a financial investment and that their timeshare would appreciate in value and be worth far more than the exclusive price Bluegreen offered to our Clients only for that day.

The Bluegreen sales agents rushed our Clients through the signing process and failed to adequately explain and discuss material terms of the Contract. The Bluegreen sales agents told our Clients they could use their points to offset the maintenance fee payments, but never disclosed to our Clients that the maintenance fees were subject to annual increases, nor did they disclose the terms and limitations of this point usage. The Bluegreen sales agents also did disclose to our Clients that they had a statutory right to rescind or cancel the Contract within a set period of time.

During the presentation, the Bluegreen sales representatives made the oral representations and engaged in the fraudulent and misleading actions described above and listed below, among others, to coerce our Clients into purchasing the Bluegreen timeshare, in violation of the applicable Federal and California state laws:

(1) The Bluegreen timeshare was a great investment;
(2) The Bluegreen timeshare could be passed down to our Clients' heirs.
(3) The Bluegreen sales representatives told our Clients the Bluegreen timeshare would increase in financial value and have great resale value;
(4) The 'exclusive' offer to purchase the Bluegreen timeshare was only good for that day;
(5) The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain them;
(6) The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain them;
(7) The Bluegreen sales representatives misrepresented the process for booking reservations, including ease and costs and fees;

Bluegreen Vacation Club
Contract # 890595
June 18, 2021
Page 3

     (8)   The Bluegreen sales representatives told our Clients that they could rent out their timeshare to pay for maintenance fees and monthly mortgage payments and even "make money";

     (9)    The Bluegreen sales representatives failed to fully inform our Clients about the debt they were incurring, including clear explanation of the high interest rate; and

     (10)   The Bluegreen sales representatives failed to inform our Clients about their right to rescission / cancellation.

As a result of Bluegreen's improper sales tactics within the high-pressure sales presentation by Bluegreen, our Clients were coerced to execute the Contract. On the Contract, with a purchase price of $9,000, our Clients made a down payment of $4,895. Bluegreen provided $4,550 in financing at a 12.0% annual interest rate. The resulting payment plan called for 120 monthly payments of $63.92, and annual maintenance and assessment fees of $709.30.

To date, our Clients have made at least 61 monthly mortgage payments totaling $3,899.12, maintenance fee payments totaling approximately $3,546.50, and in addition to their initial down payment, our Clients have paid Bluegreen over $12,340.62 for a timeshare which they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives.

Additionally, in the five years of timeshare ownership with Bluegreen – our Clients have **not even used their timeshare _once_**. This is after our Clients have paid over $12,340 to Bluegreen. If not for these fraudulent misrepresentations and the oppressive, high-pressure sales tactics of the Bluegreen sales representatives, our Clients would never have entered into the Contract.

## B. LEGAL ANALYSIS

As stated above, our Clients executed the Contract with Bluegreen, which operates resorts in many destinations, including California. California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

In addition, although this Contract was executed in March 2015, California law holds that in an action based on fraud, an injured party may bring the action more than three years after the

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Contract # 890595
June 18, 2021
Page 4

transaction (the normal statute of limitations) – the three-year period begins when the party discovers the fraud or has reasonable cause to suspect wrongdoing. (Ca. Code of Civ. Proc. § 338(d).) In our Clients' case, this would have been in 2020, so the claim is actionable.

### 1.   The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentation, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Bluegreen timeshare.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." As a result, the Contract is voidable.

### 2.   The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising. Specifically, our Clients were told they would be attending a one-hour presentation, but it was a hard-sell, high-pressure Bluegreen timeshare sales/upgrade presentation which lasted several hours longer than advertised. Accordingly, the Contract is voidable.

### 3.   The Contract is Voidable Because Bluegreen Failed to Disclose the Right to Rescission or Cancellation

The Bluegreen sales representatives failed to disclose to our Clients their right to rescind or cancel the Contract as required by Ca. Bus. & Prof. Code § 11239. As a result, the Contract is voidable.

### C.  CONCLUSION

The Contract is voidable for the foregoing reasons. A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages and/or for injunctive or declaratory relief. In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under Ca. Bus. Prof. Code § 11283. If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund of $12,340.62 to our**

Bluegreen Vacation Club
Contract # 890595
June 18, 2021
Page 5

Clients. In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit. Please provide a substantive response to this demand on or before **Monday, July 19, 2021,** by close of business.

We look forward to your response and your anticipated cooperation in resolving this matter. I am available anytime to discuss this matter.

Very Truly Yours,

J.L Sean Slattery

JLSS: ky

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

P-1287



LAW GROUP, LLP

April 16, 2021

**Via UPS (Return Signature Required)**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N., Suite 100
Boca Raton, FL 33431

> Re:   **Bluegreen Vacation Club**
> **Contract No. 1128307**
> **Date Purchased: June 2, 2018**

Attention: Legal Department

As you know, Samuel Joe Bollinger and Dana Marie Bollinger ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 1128307, dated June 2, 2018 (the "Contract"). Following up on our previous correspondence dated July 10, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $11,625** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, and breach of fiduciary duty. Accordingly, Bluegreen must rescind the Contract.

### A. FACTUAL OVERVIEW

After "winning" a free 3-day/2-night trip from a raffle at Bass Pro Shops, our Clients purchased a Bluegreen timeshare. However, every time they use their timeshare, they were pressured by Bluegreen sales representatives to attend "update" meetings designed solely to lure current owners into purchasing additional timeshare points. In June 2018, upon checking in for their vacation, a Bluegreen sales representative told our Clients that they were required to attend a 60-minute "update" presentation to learn more about the benefits of owning with Bluegreen.

The presentation, which lasted at least four to five hours, was a high-pressure Bluegreen timeshare sales pitch during which multiple Bluegreen sales representatives pressured our Clients to upgrade their existing timeshare by purchasing additional points. During the sales presentation, the Bluegreen sales representatives made several false and/or misleading statements regarding Bluegreen timeshare ownership. For example, the Bluegreen sales representatives repeatedly described Bluegreen timeshare ownership as an "investment" in real property that was deeded, would gain value over time, and could be passed to our Clients' children. Our clients

Bluegreen Vacation Club
Contract No. 1128307
Page 2

also explained the significant issues they experienced when booking their timeshare due to inadequate availability, to which the Bluegreen sales representative answer by claiming that the upgrade would help resolve this issue and would allow them to easily book vacations anytime throughout the year. Leading our Clients to believe that "upgrading" would solve all their timeshare problems.

This was followed by our clients declining several high-priced offers made by the Bluegreen sales representatives, who continued lowering the price of the timeshare and relentlessly pressuring our Clients until they ultimately agreed to purchase an upgrade to their existing timeshare. Our Clients felt particularly pressured to make a purchase on the day of the presentation because the Bluegreen sales representatives told them that the offer was a "special" that was good for "one day only," and that if they came back the next day the same offer would not be available.

When our Clients finally agreed to upgrading their timeshare, the Bluegreen sales representatives rushed our Clients through the process of signing the Contract. In so doing, the Bluegreen sales representatives failed to disclose key information to our Clients. The Bluegreen sales representatives did not disclose that the maintenance fees could substantially increase. The Bluegreen sales representatives also failed to disclose the exorbitant 16.99% interest rate, thereby concealing the true cost of the timeshare purchase (which is, in effect, double the purchase price).

Even with the upgrade, our Clients have not enjoyed the ability to book vacations "anywhere, anytime" as they were promised during the sales presentation. Moreover, when our Clients received their 2019 mortgage statement, they were shocked to discover that they owed more than $12,000 on their mortgage, because they had been told that the upgrade would only cost $7,605, which is what they paid on the day of the June 2018 presentation when they purchased the Contract.

During the presentation, and before the purchase was complete, the sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)     The timeshare was a prudent investment;
(2)     The timeshare would gain value and equity over time;
(3)     The 'exclusive' offer to purchase the timeshare was only good for that day;
(4)     The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain the program;
(5)     The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain the fees; and
(6)     The Bluegreen sales representatives failed to fully inform our Clients about the debt they were incurring, including the financial impact of the exorbitant interest rate.

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Contract No. 1128307
Page 3

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $19,605 (plus closing costs), our Clients made a down payment of $7,605—which they had been led to believe was actually the entire purchase price. Bluegreen provided $12,430 in financing at 16.99% interest per annum. The resulting payment plan called for 120 monthly payments of $178, plus annual maintenance fees of $994. To date, our Clients have made approximately 17 mortgage payments, totaling $3,026, and made one year of maintenance fee payments, totaling $994.

Together with their down payment, our Clients have paid Bluegreen a total of approximately $11,625 for a timeshare which they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

### B. LEGAL ANALYSIS

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

### 1. The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute. As a result, the Contract is voidable.

**CARLSBAD006086**

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

CARLSBAD00005905

Bluegreen Vacation Club
Contract No. 1128307
Page 4

### 2. The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising.  Specifically, Bluegreen sales representatives told our Clients that the presentation would not last more than "one hour"; however, the hard-sell, high-pressure Bluegreen timeshare sales/upgrade presentation lasted for at least four to five hours.  Thus, the Contract is voidable.

### C. CONCLUSION

The Contract is voidable for the foregoing reasons.  A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief.  In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under the Ca. Bus. Prof. Code § 11283.  If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $11,625** to our Clients.  In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit.  Please provide a substantive response to this demand on or before **Monday, May 17, 2021**, by close of business.

We look forward to your response and your anticipated cooperation in resolving this matter.  I am available anytime to discuss this matter.

Very Truly Yours,

J.L. Sean Slattery

JLSS: br

P-1294



# CARLSBAD

## LAW GROUP, LLP

May 29, 2020

**_VIA UPS (Signature Required)_**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**    **_In re Bluegreen Vacation Club Sales Practices_**
              **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contract at issue are:

| | |
|---|---|
| Andrew Thomas Buchanan<br>Angela Justine Buchanan | Timeshare Contract No. 1106819<br>Dated 02.09.2018 |

We hereby demand that BVC, including its agents and affiliate-companies, **_cease and desist_** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for these clients.

We will be sending you our clients' detailed demand letter that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

---

BG-CARLSBAD 001718

Bluegreen Vacation Club
Legal Department
May 15, 2020
Page 2 of 2


In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:dw
Enclosure

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

BG-CARLSBAD 001719



**Third Party Authorization**

Dear Sir or Madam,

Please be advised that the law firm of Carlsbad Law Group, LLP has been retained as legal counsel for Andrew and Angela Buchanan ("Clients") in regard to their timeshare matter. Please consider this a letter of representation.

By signing below, our Clients acknowledge and agree that our law firm shall represent them regarding their timeshare matter and authorize me and/or my associates to negotiate with the timeshare developer or any related third-party including creditors or servicers (or affiliates, agents, employees and successors).

Very truly yours,

J.L. Sean Slattery

I acknowledge that the above is true and correct.

Signed: _____

Print Name: Andrew Buchanan

Dated: 1/2/2020

Signed: _____

Print Name: Angela Buchanan

Dated: 1/2/2020



CARLSBAD LAW GROUP
8587935244
CARLSBAD LAW GROUP
5050 AVENIDA ENCINAS
CARLSBAD CA 92008

1 LBS                          1 OF 1

SHIP TO:
LEGAL DEPARTMENT
8587936244
BLUEGREEN VACATION CLUB
4960 CONFERENCE WAY NORTH
SUITE 100
**BOCA RATON  FL 33431**

**FL 332 6-25**

**UPS GROUND**
TRACKING #: 1Z 76W 323 42 2808 7335

BILLING: P/P
SIGNATURE REQUIRED

Trx Ref No.: Blok, Williams, McNeil, Perello

**UNISHIPPERS®**
THE SHIPPING COMPANY THAT WORKS FOR YOU®



BLUEGREEN VACATION CLUB
4960 CONFERENCE WAY N
STE 100
BOCA RATON FL 33431
P.BLACKZ  S. AAA
**717 - 1352**

RECEIVED

BG-CARLSBAD 001721

P-1314



LAW GROUP, LLP

February 12, 2021

**_VIA UPS (Signature Required)_**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**     ***In re Bluegreen Vacation Club Sales Practices***
             **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Jovante Jamall Aaron | Timeshare Contract No. 2663902<br>Dated: 11.02.2019 |
| Manuel Aguinaga<br>Linda Sue Aguinaga | Timeshare Contract No. 1064055<br>Dated: 06.13.2017 |
| Abdiel DeJesus<br>Elisa DeJesus | Timeshare Contract No. 06042003CM<br>Dated: 04.06.2006 |
| Jonnie Rose Driver<br>Randy Carlton Driver | Timeshare Contract No. 978144<br>Dated: 05.06.2016 |
| Michael Wilson Eldridge<br>Ruth Shepherd Eldridge | Timeshare Contract No. 881914<br>Dated: 01.31.2015 |
| Richard Fisher<br>Cheryl McNeil Fisher | Timeshare Contract No. 976138<br>Dated: 04.27.2016 |
| Pamela G. Franklin | Timeshare Contract No. 2690248<br>Dated: 07.17.2020 |

BG-CARLSBAD 001602

Bluegreen Vacation Club
Legal Department
February 12, 2021
Page 2 of 2

| Brandy Chantel Griffin<br>Kyle Shane Griffin | Timeshare Contract No. 2596865<br>Dated: 11.18.2018 |
|---|---|
| Bobby Allen Harmon<br>Leanna Lane Harmon | Timeshare Contract No. 2613697<br>Dated: 03.10.2019 |
| Aloysius Joseph Kling, Jr.<br>Wanda Sue Kling | Timeshare Contract No. 821019<br>Dated: 03.20.2014 |
| Lisa Allison Maguire | Timeshare Contract No. 1056060<br>Dated: 05.07.2017 |
| Sierra L. Tebeau Sherry<br>Nicholas S. Beardsworth | Timeshare Contract No. 1089362<br>Dated: 10.19.2017 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:mew
Enclosure

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

BG-CARLSBAD 001603



**Third Party Authorization**

Dear Sir or Madam,

Please be advised that the law firm of Carlsbad Law Group, LLP has been retained as legal counsel for Randy Carlton Driver and Jonnie Rose Driver ("Clients") in regard to their timeshare matter. Please consider this a letter of representation.

By signing below, our Clients acknowledge and agree that our law firm shall represent them regarding their timeshare matter and authorize me and/or my associates to negotiate with the timeshare developer or any related third-party including creditors or servicers (or affiliates, agents, employees and successors).

Very truly yours,

J.L. Sean Slattery

I acknowledge that the above is true and correct.

Signed: *Randy Carlton Driver*
Randy Carlton Driver (Feb 11, 2021 20:25 EST)

Print Name: Randy Carlton Driver

Dated: Feb 11, 2021

Signed: *Jonnie Rose Driver*
Jonnie Rose Driver (Feb 11, 2021 20:22 EST)

Print Name: Jonnie Rose Driver

Dated: Feb 11, 2021

BG-CARLSBAD 001604



CARLSBAD LAW GROUP
8587936244
CARLSBAD LAW GROUP
5050 AVENIDA ENCINAS
CARLSBAD CA 92008

1 LBS          1 OF 1

SHIP TO:
LEGAL DEPARTMENT
8587936244
BLUEGREEN VACATION CLUB
4960 CONFERENCE WAY NORTH
SUITE 100
BOCA RATON FL 33431

FL 332 6-25

UPS GROUND
TRACKING #: 1Z 93W 323 42 2461 3951

BILLING: P/P
SIGNATURE REQUIRED

Trx Ref No.: Astencio-Cedeno

P-1335



## CARLSBAD
### LAW GROUP, LLP

March 19, 2021

***VIA UPS (Signature Required)***

Nancy Emara
Compliance Officer/Paralegal
Greenspoon Marder
201 East Pine Street
Suite 500
Orlando, FL 32801

     **Re:**    ***In re Westgate Resorts' Sales Practices***
              **Case/Arbitration Status: Unfiled**

Dear Ms. Emara:

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Westgate Resorts ("WR" or "Your Company"). Our clients and the relevant WR contracts at issue are:

| | |
|---|---|
| Gustavius J. Coleman<br>Kim M. Coleman | Timeshare Contract No. 42674906898-021<br>Dated: 06.23.2015 |
| Brent M. King<br>Lynette G. King | Timeshare Contract No. 66090535692-000<br>Dated: 08.08.2020 |
| Fredrick R. Lewis<br>LaTanya L. Lewis | Timeshare Contract No. 48704655942-075<br>Dated: 01.27.2019 |
| Jack W. Roux, Jr.<br>Lorraine D. Roux<br>Robert J. Cochran, Jr<br>Jeremy A. Stout<br>Rebecca E. Cochran<br>Jacquelynn M. Roux | Timeshare Contract No. 2021006020-020<br>Dated: 12.02.2014 |

CARLSBAD006666

Westgate Resorts
Legal Department
March 19, 2021
Page 2 of 2

We hereby demand that WR, including its agents and affiliate-companies, **_cease and desist_** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients.  Please direct all future communications to our office directly.

Enclosed please find a Third-Party Authorization for these clients.

Please know that we will continue to represent these clients unless we advise you otherwise.  We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients.  Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

We will soon be sending you our clients' detailed demand letter that will set forth the basis of WR's liability and the proper remedy sought by our client.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:mew
Enclosures

P-1340



# CARLSBAD

## LAW GROUP, LLP

May 7, 2021

**Via UPS (Return Signature Required)**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

Re:   **Bluegreen Vacation Club**
      **Contract No. 2674038**
      **Date Purchased: December 31, 2019**

Attention: Legal Department

As you know, Jeremy T. Lathrem and Darla S. Lathrem ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 2674038, dated December 31, 2019 (the "Contract"). Following up on our previous correspondence dated July 31, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $10,591** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, and breach of fiduciary duty. Accordingly, Bluegreen must rescind the Contract.

## A. FACTUAL OVERVIEW

Our Clients have owned a Bluegreen timeshare for several years. Each time they are able to use it, Bluegreen pressures them to attend "owner updates" which are designed solely to pressure existing owners to purchase expensive "upgrades" to their timeshare ownership. Our Clients most recently upgraded their timeshare in December 2019 when they were contacted by Bluegreen's tele-sales division in Utah.

During the timeshare sales meetings, which were always advertised as lasting one hour but ran on for several hours longer than advertised, multiple Bluegreen sales representatives relentlessly pressured our Clients to upgrade their timeshare. The Bluegreen sales agents made several false and/or misleading statements during the presentation. For example, the Bluegreen sales agents repeatedly characterized timeshare ownership as a prudent investment in real estate that was deeded and would gain value and equity over time. The Bluegreen sales agents also told our Clients that they could leave the timeshare to their children in their will. The Bluegreen sales representatives also told our Clients that booking vacations was easy, and that the upgrade would afford them booking priority over lower-tiered members (of course, when our Clients were

Bluegreen Vacation Club
Contract No. 2674038
May 7, 2021
Page 2

lower-tier members themselves, Bluegreen never disclosed that they would have inferior booking power). The Bluegreen sales representatives promised our Clients that the upgrade would extend our Clients' reservation window to 14 months.

The Bluegreen sales representatives told our Clients that they could rent their timeshare to offset expenses or even make a profit and use credit card points to pay for the maintenance fees of their Bluegreen timeshare. During the upgrade presentations, Bluegreen's sales representatives always made multiple offers (starting with exorbitantly priced options), and then increasing the points and "perks" and decreasing the price, until such time as the illusion of a steep discount was established. The Bluegreen sales representatives generated urgency by telling our Clients that these "special" offers were good for "one day only."

During the last upgrade in December 2019, the Bluegreen sales representatives—Duane Broadhead, Brent Holley, and Daniel Chan—pressured our Clients to upgrade by claiming they would receive a large benefit by "consolidating" their contracts into a "single deed." The Bluegreen sales representatives promised our Clients that the only increased cost would be to the annual maintenance fees. The Bluegreen representatives also promised to be "always available" to assist our Clients with any issues relating to their timeshare, and that they would assist our Clients in booking the timeshare. Despite these promises, after the Contract was completed, the Bluegreen representatives never returned our Clients' calls, which included at least 10 separate voicemails left unreturned.

The Bluegreen sales representatives rushed our Clients through the process of signing the Contract. In so doing, the Bluegreen sales representatives never disclosed that the maintenance fees would continue in perpetuity—notably, they never disclosed that when our Clients' children inherited the timeshare, they would be obligated to continue paying the maintenance fees in perpetuity. The Bluegreen sales agents also failed to disclose the accurate interest rate, which was 1% higher than disclosed. Moreover, the Bluegreen sales representatives did not disclose our Clients' right to cancel/rescind the Contract.

Since purchasing the Bluegreen timeshare and the upgrades, our Clients have been disappointed to discover that Bluegreen does not afford owners the availability or quality of accommodations that were promised during the sales presentation. When our Clients complained to Bluegreen, representatives claim that the only solution would be to "buy more points." Of course, this is contrary to the claims made during the sales presentation, at which time our Clients were repeatedly assured of how valuable their points would be and that they could easily vacation with the package they purchased. However, our Clients cannot secure reservations when and where they desire, and they are always forced to settle for undesirable locations and times.

During the presentation, and before the purchase was complete, the sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)     The timeshare was a prudent investment;

**CARLSBAD006726**

CARLSBAD00005928

Bluegreen Vacation Club
Contract No. 2674038
May 7, 2021
Page 3

(2)     The Bluegreen timeshare would gain value and equity over time;

(3)     The Bluegreen timeshare could be rented out to pay for expenses;

(4)     The upgrade would give our Clients greater booking priority and access to more availability;

(5)     The Bluegreen representatives would be our Clients' "personal assistants," but after they bought the Contract, the representatives never returned our Clients' numerous calls;

(6)     The 'exclusive' offer to purchase the timeshare was only good for that day;

(7)     The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain the program;

(8)     The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain the fees;

(9)     The Bluegreen sales representatives did not disclose the correct interest rate; and

(10)    The Bluegreen sales representatives failed to disclose the right to cancel/rescind the Contract.

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $63,360, our Clients traded in $1,930 of equity (and made a total deposit of $6,336). Bluegreen provided $57,024 in financing at 12.99% interest per annum. Bluegreen also charges our Clients $3,757 in annual maintenance fees. To date, our Clients have made approximately five mortgage payments, totaling $4,255.

In total, our Clients have paid Bluegreen at least $10,591 for a timeshare which they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

**B.  LEGAL ANALYSIS**

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

Bluegreen Vacation Club
Contract No. 2674038
May 7, 2021
Page 4

### 1.  The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute. As a result, the Contract is voidable.

### 2.  The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising.  Specifically, Bluegreen sales representatives told our Clients that the "update" would not last more than "60 minutes"; however, the hard-sell, high-pressure Bluegreen timeshare sales presentation lasted for several hours longer than advertised. Thus, the Contract is voidable.

### 3.  The Contract is Voidable Because Bluegreen Failed to Disclose the Right to Rescission or Cancellation

The Bluegreen sales representatives failed to disclose to our Clients their right to rescind or cancel the Contract as required by Ca. Bus. & Prof. Code § 11239. This is yet another reason why the Contract is voidable.

### C.  CONCLUSION

The Contract is voidable for the foregoing reasons. A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief. In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under the Ca. Bus. Prof. Code § 11283. If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $10,591** to our Clients.  In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit. Please provide a substantive response to this demand on or before **Monday, June 7, 2021**, by close of business.

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Contract No. 2674038
May 7, 2021
Page 5


We look forward to your response and your anticipated cooperation in resolving this matter. I am
available anytime to discuss this matter.

Very Truly Yours,

J.L. Sean Slattery

JLSS: br

CARLSBAD006729

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

P-1351



**CARLSBAD**

LAW GROUP, LLP

May 1, 2020

***VIA UPS (Signature Required)***

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**   ***In re Bluegreen Vacation Club Sales Practices***
               **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Wayne Norland<br>Shirley Norland | Timeshare Contract No. 791993<br>Dated 09.21.2013 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

CARLSBAD007153

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Legal Department
May 1, 2020
Page 2 of 2

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:yo
Enclosures

5050 Avenida Encinas, Suite 300 · Carlsbad, CA 92008 · Tel: 858.793.6244 · Fax: 858.793.6005 · www.carlsbadlawgroup.com

P-1356



**CARLSBAD**

LAW GROUP, LLP

January 15, 2021

**Via UPS (Return Signature Required)**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, Florida 33431

> Re:   **Bluegreen Vacation Club**
> **Contract No. 2657728 dated October 3, 2019**

Attention: Legal Department

As you know, Texas residents, James E. Mellen and Patricia A. O'Neal-Mellen, husband and wife ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 2657728, dated October 3, 2019 (the "Contract"). Following up on our previous correspondence dated August 14, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and refund of **$61,200** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, financial elder abuse, and breach of fiduciary duty.  Accordingly, Bluegreen must rescind the Contract.

## A. FACTUAL OVERVIEW

Our Clients first encounter was while shopping at Bass Pro Shop, our Clients were approached by Bluegreen representatives and requested to enter a drawing for a "free" vacation. A few days later, after our Clients had returned to their then home in Springfield, Missouri, our Clients received a phone call that they had won a two night stay in Branson, Missouri. To avail themselves of this offer, our Clients were required to attend a timeshare presentation with Bluegreen. This presentation would be a *no obligation* presentation lasting no more than 60 minutes. Our Clients were willing to give up an hour of their time to attend in exchange for a weekend getaway.

Subsequently, in October 2019, Bluegreen invited our Clients to an "update" meeting in Las Vegas, Nevada.  In reality, the "update" was another high-pressure sales/upgrade meeting, designed solely to coerce our Clients to purchase more Bluegreen timeshare points.  Throughout the upgrade presentation on October 3, 2019, the sales representatives reiterated the same false and/or misleading statements made during the previous presentation.  Our Clients expressed

5050 Avenida Encinas, Suite 300 ◦ Carlsbad, CA 92008 ◦ Tel: 858.793.6244 ◦ Fax: 858.793.6005 ◦ www.carlsbadlawgroup.com

Bluegreen Vacation Club
Contract No. 2657728
January 15, 2021
Page 2

frustration about their inability to book the timeshare for the dates and locations they desired, and the Bluegreen sales representatives claimed that by upgrading, our Clients would have a much better experience with their Bluegreen timeshare. In fact, they claimed that our Clients would have "more booking power" if they purchased additional points, as well as claiming that their interest rate would be reduced.

During the presentation which lasted several hours, our Clients were subjected to intense high-pressure sales tactics while the Bluegreen sales representatives made multiple material representations and omissions in their efforts to convince our Clients to purchase a Bluegreen timeshare. Our Clients are retired and on a fixed income. The skyrocketing maintenance fees in addition to the monthly payments has placed our Clients in a precarious financial position. In addition, Mrs. Mellen suffers from ongoing health issues and Mr. Mellen has complications with his heart health making it difficult for our Clients to travel and make use of their 100,000 points with Bluegreen.

This presentation, which also lasted for more than four hours, was a high-pressure Bluegreen timeshare sales pitch during which multiple Bluegreen sales representatives pressured our Clients to purchase a Bluegreen timeshare. During the sales presentation, the Bluegreen sales representatives made several false and/or misleading statements regarding Bluegreen timeshare ownership. The Bluegreen sales representatives repeatedly described Bluegreen timeshare ownership as an "investment" in real property that was deeded, would gain value over time, and could be passed to our Clients' children. They claimed that the Bluegreen timeshare properties were "easy to book" and that reservations were generally available whenever our Clients desired to travel. To demonstrate how the timeshare would be a good financial decision, the sales representatives asked our Clients about their current vacations and how much they were spending, and then through some questionable mathematics (i.e., grossly inflating the amount our Clients spent on a "typical" vacation), showed our Clients that they would be *saving* money if they purchased a timeshare through Bluegreen.

Our Clients declined several high-priced offers made by the Bluegreen sales representatives, who continued lowering the price of the timeshare and relentlessly pressured our Clients until they ultimately agreed to purchase an upgrade to their existing timeshare. Our Clients felt particularly pressured to make a purchase on the day of the presentation because the Bluegreen sales representatives told them that the discounted offer was a "special" that was good for "one day only." They also "sweetened the deal" by offering our Clients free use of RCI, bonus time, and offer of a Bluegreen credit card, which they claimed our Clients could use to accumulate points to offset the cost of maintenance fees.

The Bluegreen sales representatives rushed our Clients through the process of signing the Contract. In so doing, the Bluegreen sales representatives failed to disclose key information to our Clients. The Bluegreen sales representatives never disclosed that the annual maintenance fees were subject to annual increases, or that they continue in perpetuity—notably, they never disclosed that when our Clients' children inherited the timeshare, they would be obligated to continue paying the maintenance fees in perpetuity.

CARLSBAD006962

Bluegreen Vacation Club
Contract No. 2657728
January 15, 2021
Page 3

Since purchasing the Contract, our Clients have not enjoyed the ability to book vacations "anywhere, anytime" as they were promised during the sales presentation. Instead, the travel dates and accommodations our Clients desire to book are not available and require booking unreasonably far in advance. Moreover, our Clients have learned that Bluegreen properties are not exclusive to timeshare owners, as the sales representatives claimed they were.
During the presentations, and before the purchases were complete, the Bluegreen sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)    The timeshare was a prudent investment;
(2)    The timeshare would gain value and equity;
(3)    The 'exclusive' offer to purchase the timeshare was only good for that day;
(4)    The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain them;
(5)    The Bluegreen sales representatives misrepresented the ease and availability of booking accommodations;
(6)    The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain them; and
(7)    The Bluegreen sales representatives failed to fully inform our Clients about the debt they were incurring, including the financial impact of the exorbitant interest rate, by telling our Clients they could easily refinance.

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $86,750 (plus closing costs) our Clients made a down payment of $58,800. Bluegreen provided $28,380 in financing at 11.99% interest per annum. The resulting payment plan called for 120 monthly payments of $407.01. To date, our Clients have made approximately 6 monthly mortgage payments, totaling $2,442.06.

In total, our Clients have paid Bluegreen at least $61,200 for a timeshare they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

## B.  LEGAL ANALYSIS

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of

Bluegreen Vacation Club
Contract No. 2657728
January 15, 2021
Page 4

2004, Ca. Bus. & Prof. Code §§ 11210-11288.)  Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law.  Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

### 1.   The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation.  The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1).  The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute.  As a result, the Contract is voidable.

### 2.   The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising.  Specifically, Bluegreen sales representatives told our Clients that the presentations would only last "60-90 minutes"; however, the hard-sell, high-pressure Bluegreen timeshare sales presentations lasted for several hours longer than advertised each time.  Thus, the Contract is voidable.

### 3.   Bluegreen has liability under the California Elder Abuse and Dependent Adult Civil Protection Act

Under the California Elder Abuse and Dependent Adult Civil Protection Act, elder financial abuse occurs when a person or entity deprives an elder (65 years or older) of their personal property and the person or entity knew or should have known that this was likely to be harmful to the elder. (Ca. Wel. & Inst. Code § 15610.30.) Our Client, Mr. Mellen was in his 70s when he and his wife attended the Bluegreen timeshare presentation and executed the Contract. The Bluegreen sales representatives coerced our Clients to purchase through their material misrepresentations and oppressive sales tactics, resulting in our Clients paying Bluegreen over $61,200 for the fraudulently presented timeshare.

CARLSBAD006964

Bluegreen Vacation Club
Contract No. 2657728
January 15, 2021
Page 5

## C. CONCLUSION

The Contract is voidable for the foregoing reasons.  A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief.  In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under Ca. Bus. Prof. Code § 11283.  If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $61,200 to our Clients**.  In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit.  Please provide a substantive response to this demand on or before **Monday, February 15, 2021** by close of business.

We look forward to your response and your anticipated cooperation in resolving this matter.  I am available anytime to discuss this matter.

Very Truly Yours,

J.L. Sean Slattery

JLSS: ky

P-1357



## LAW GROUP, LLP

August 14, 2020

***VIA UPS (Signature Required)***

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**    ***In re Bluegreen Vacation Club Sales Practices***
               **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Alice Dukes<br>Raymond Dukes | Timeshare Loan ID. 2626517<br>Dated 05.12.2019 |
| Patricia A. O'Neal-Mellen<br>James E. Mellen | Timeshare Contract No. 2657728<br>Dated 10.03.2019 |
| Marilyn Martinez<br>Edgar Olaya | Timeshare Contract No. 981429<br>Dated 05.20.2016 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

Bluegreen Vacation Club
Legal Department
August 14, 2020
Page 2 of 2

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:pd
Enclosures

CARLSBAD006971

P-1358



### CARLSBAD
#### LAW GROUP, LLP

April 30, 2021

**Via UPS (Return Signature Required)**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**   **Bluegreen Vacation Club**
              **Contract No. 2622407**
              **Date Purchased: April 21, 2019**

Attention: Legal Department

As you know, Ismael Valdespino Ortega and Yesenia Moran Mendoza ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 2622407, dated April 21, 2019 (the "Contract"). Following up on our previous correspondence dated July 2, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $18,364** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, and breach of fiduciary duty. Accordingly, Bluegreen must rescind the Contract.

### A. FACTUAL OVERVIEW

In 2019, our Clients (who already owned a Bluegreen timeshare) were promised a complimentary 3-day/2-night stay at a Bluegreen resort if they agreed to attend a "one hour owner update." Our Clients agreed and attended the presentation on April 21, 2019.

During the timeshare sales meeting, which lasted nearly seven hours, the Bluegreen sales representatives relentlessly pressured our Clients to purchase a timeshare. The Bluegreen sales agents made several false and/or misleading statements during the presentation. For example, the Bluegreen sales agents repeatedly characterized timeshare ownership as a prudent investment in real estate that would gain value and equity over time. The Bluegreen sales agents also told our Clients that they were purchasing "tangible property" that they could leave to their children in their will. The Bluegreen sales representatives also told our Clients that booking vacations was easy. The Bluegreen sales representatives told our Clients that they could rent their timeshare to offset expenses or even make a profit, and that they could easily sell their timeshare for a profit.

---

CARLSBAD007167

CARLSBAD00005935

Bluegreen Vacation Club
Contract No. 2622407
April 30, 2021
Page 2

The Bluegreen representatives also told our Clients they could use the timeshare as a tax-write off.

Bluegreen's sales representatives added to this pressure by making multiple offers (starting with exorbitantly priced timeshares), and then increasing the points and "perks" and decreasing the price, until such time as the illusion of a steep discount was established. The Bluegreen sales representatives generated urgency by telling our Clients that these "special" offers were good for "one day only." The Bluegreen representatives promised that by upgrading, our Clients' maintenance fees would be "fixed" and not subject to increases.

The Bluegreen sales representatives rushed our Clients through the process of signing the Contract. Notably, our Clients—who have poor English and primarily speak Spanish—requested a Spanish-speaking representative to assist with the Contract process. Bluegreen denied them this basic request and thereby would have been aware that our Clients would have difficulty understanding the complicated written Contract, which is entirely in English. The Bluegreen sales representatives never disclosed that maintenance fees were subject to annual increases, or that they continue in perpetuity—notably, they never disclosed that when our Clients' children inherited the timeshare, they would be obligated to continue paying the maintenance fees in perpetuity. The Bluegreen sales representatives also failed to disclose that our Clients had a right to cancel/rescind Contract, instead telling them they had "a day or two" to change their mind. The Bluegreen representatives also did not disclose the fees associated with using RCI, or the exorbitant interest rate charged on the mortgage or the Barclay's card used to fund the deposit.

Since purchasing the Bluegreen timeshare, our Clients have never used it.

During the presentation, and before the purchase was complete, the Bluegreen sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)   The Bluegreen timeshare was a prudent investment;
(2)   The Bluegreen timeshare would gain value and equity over time;
(3)   The Bluegreen timeshare could be rented out;
(4)   The Bluegreen timeshare could be easily sold;
(5)   The 'exclusive' offer to purchase the timeshare was only good for that day;
(6)   The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain the program;
(7)   The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain the fees;
(8)   The Bluegreen sales representatives failed to fully inform our Clients about the debt they were incurring, including the financial impact of the exorbitant interest rate; and
(9)   The Bluegreen sales representatives failed to disclose the right to cancel/rescind the Contract.

CARLSBAD007168

CARLSBAD00005935

Bluegreen Vacation Club
Contract No. 2622407
April 30, 2021
Page 3

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $37,551, our Clients made a down payment of $13,123 (including $9,093 in equity). Bluegreen provided $24,857 in financing at 11.99% interest per annum. The resulting payment plan called for 120 monthly payments of $356, plus annual maintenance fees of $969. To date, our Clients have made approximately 12 mortgage payments, totaling $4,272, and made one annual maintenance fee payment, totaling $969.

Together with their down payment, our Clients have paid Bluegreen a total of approximately $18,364 for a timeshare which they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

### B. LEGAL ANALYSIS

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

### 1. The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the Bluegreen sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the Bluegreen sales representatives as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute. As a result, the Contract is voidable.

CARLSBAD007169

CARLSBAD00005935

Bluegreen Vacation Club
Contract No. 2622407
April 30, 2021
Page 4

### 2. The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising. Specifically, Bluegreen sales representatives told our Clients that the presentation would not last more than "one hour"; however, the hard-sell, high-pressure Bluegreen timeshare sales presentation lasted for nearly seven hours. Thus, the Contract is voidable.

### 3. The Contract is Voidable Because Bluegreen Failed to Disclose the Right to Rescission or Cancellation

The Bluegreen sales representatives failed to disclose to our Clients their right to rescind or cancel the Contract as required by Ca. Bus. & Prof. Code § 11239. This is yet another reason why the Contract is voidable.

### C. CONCLUSION

The Contract is voidable for the foregoing reasons. A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief. In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under the Ca. Bus. Prof. Code § 11283. If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $18,364** to our Clients. In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit. Please provide a substantive response to this demand on or before **Monday, May 31, 2021**, by close of business.

We look forward to your response and your anticipated cooperation in resolving this matter. I am available anytime to discuss this matter.

Very Truly Yours,

J.L. Sean Slattery

JLSS:br

# P-1359



## CARLSBAD
### LAW GROUP, LLP

July 2, 2020

**_VIA UPS (Signature Required)_**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

Re:    ***In re Bluegreen Vacation Club Sales Practices***
       **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Anthony R. Carbajal<br>Irene S. Carbajal | Timeshare Contract No. 2615205<br>Dated 03.17.2019 |
| Baretta R. Casey<br>Charles M. Casey | Timeshare Contract No. 2656673<br>Dated 09.28.2019 |
| Aneka Cheneka Greene<br>Ramon Muriko Greene | Timeshare Contract No. 1030681<br>Dated 12.19.2016 |
| Jorge Menjivar<br>Lucrecia Menjivar | Timeshare Contract No. 2585824<br>Dated 09.19.2018 |
| Ismael Valdespino Ortega<br>Yesenia Moran Mendoza | Timeshare Contract No. 2622470<br>Dated 04.21.2019 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

CARLSBAD007174

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

CARLSBAD00005935

Bluegreen Vacation Club
Legal Department
July 2, 2020
Page 2 of 2

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:pd
Enclosures

P-1361



## CARLSBAD
### LAW GROUP, LLP

April 10, 2020

***VIA UPS (Signature Required)***

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

      **Re:**   ***In re Bluegreen Vacation Club Sales Practices***
             **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Shirley Prosek<br>Paul Prosek | Timeshare Contract No. 939932<br>Dated 10.25.2015 |
| | Timeshare Contract No.<br>Dated |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

---

Bluegreen Vacation Club
Legal Department
April 10, 2020
Page 2 of 2

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:kc
Enclosures

CARLSBAD007271

P-1362



# CARLSBAD

### LAW GROUP, LLP

March 19, 2021

**<u>Via UPS (Return Signature Required)</u>**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N., Suite 100
Boca Raton, Florida 33431

> Re:   **Bluegreen Vacation Club**
> **Contract No. 939932**
> **Date Purchased: October 25, 2015**

Attention: Legal Department

As you know, Shirley and Paul Prosek ("Clients") retained our office to represent their interests in connection with Bluegreen Vacation Club ("Bluegreen") Contract No. 939932, dated October 25, 2015 (the "Contract"). Following up on our previous correspondence dated April 10, 2020, please consider this a demand for cancellation of the Contract, release of our Clients from any and all obligations arising under the Contract, and **refund of $11,758** to our Clients.

Our Clients' dispute is based on Bluegreen sales representatives' material misrepresentations, false promises, employ of fraudulent, misleading, oppressive sales tactics, breach of fiduciary duty, and financial elder abuse. Accordingly, Bluegreen must rescind the Contract.

## A. FACTUAL OVERVIEW

Our Clients have owned Bluegreen timeshares for several years. Every time they use their timeshare, they are pressured by Bluegreen sales representatives to attend "update" meetings designed solely to lure current owners into purchasing additional timeshare points. Our Clients upgraded their timeshare after these meetings on multiple occasions, the most recently occurring in October 2015. Upon checking in for their vacation, a Bluegreen sales representative told our Clients that they were required to attend a 60-minute "upgrade" about their Bluegreen timeshare.

The presentation, which lasted several hours longer than advertised, was a high-pressure Bluegreen timeshare sales pitch during which multiple Bluegreen sales representatives pressured our Clients to upgrade their existing timeshare by purchasing additional points. During the sales presentation, the Bluegreen sales representatives made several false and/or misleading statements regarding Bluegreen timeshare ownership. The Bluegreen sales representatives repeatedly described Bluegreen timeshare ownership as an "investment" in real property that was deeded, would gain value over time, and could be passed to our Clients' children.

Bluegreen Vacation Club
Contract No. 939932
March 19, 2021
Page 2

Our Clients declined several high-priced offers made by the Bluegreen sales representatives, who continued lowering the price of the timeshare and relentlessly pressuring our Clients until they ultimately agreed to purchase an upgrade to their existing timeshare. Our Clients felt particularly pressured to make a purchase on the day of the presentation because the Bluegreen sales representatives told them that the offer was a "special" that was good for "one day only."

The Bluegreen sales representatives rushed our Clients through the process of signing the Contract. In so doing, the Bluegreen sales representatives failed to disclose key information to our Clients. The Bluegreen sales representatives did not disclose that the maintenance fees could substantially increase. The Bluegreen sales representatives also failed to disclose the exorbitant 17.99% interest rate, thereby concealing the true cost of the timeshare purchase (which is, in effect, double the purchase price). Finally, the Bluegreen sales representatives never disclosed that our Clients had a right to cancel/rescind the Contract.

Since upgrading the timeshare in 2015, our Clients have not enjoyed the ability to book vacations "anywhere, anytime" as they were promised during the sales presentation. This is ostensibly due to our Clients being in a "low tier" of membership, which prevents them from obtaining the dates and locations they desire, and instead, they are left with the last pick of vacation options.

During the presentation, and before the purchase was complete, the Bluegreen sales representatives specifically made the following oral representations in violation of the applicable California state law:

(1)    The timeshare was a prudent investment;
(2)    The timeshare would gain value and equity over time;
(3)    The 'exclusive' offer to purchase the timeshare was only good for that day;
(4)    The Bluegreen sales representatives coerced our Clients to purchase 'points' but misrepresented the points program and failed to properly explain the program;
(5)    The Bluegreen sales representatives misrepresented the financial significance of the maintenance fees and failed to properly explain the fees;
(6)    The Bluegreen sales representatives failed to fully inform our Clients about the debt they were incurring, including the financial impact of the exorbitant interest rate; and
(7)    The Bluegreen sales representatives failed to disclose that our Clients had a right to cancel/rescind the Contract

As a result of Bluegreen's sales tactics within the high-pressure scheme created by Bluegreen, our Clients were ultimately coerced to enter into the Contract. On the Contract, with a purchase price of $7,850 (including closing costs), our Clients made a down payment of $750. Bluegreen provided $6,750 in financing at 17.99% interest per annum. The resulting payment plan called for 120 monthly payments of $121, plus annual maintenance fees of $1,300. Our Clients have made approximately 48 mortgage payments, totaling $5,808, and made four years of maintenance fee payments, totaling approximately $5,200.

Bluegreen Vacation Club
Contract No. 939932
March 19, 2021
Page 3

Together with their down payment, our Clients have paid Bluegreen a total of approximately $11,758 for a timeshare which they purchased in reliance on the many material misrepresentations and omissions and false promises made by the Bluegreen sales representatives. Overall, our Clients were misled by the Bluegreen sales representatives, who engaged in fraudulent and oppressive sales tactics and made multiple material misrepresentations and omissions, in violation of Federal and California law.

## B. LEGAL ANALYSIS

California's Vacation Ownership and Time-Share Act of 2004 ("VOTSA") states that the law applies to (1) Time-share plans with an accommodation or component site in this state; (2) Time-share plans without an accommodation or component site in this state, if those time-share plans are sold or offered to be sold to any individual located within this state; and (3) Exchange programs, which means any method, arrangement, or procedure for the voluntary exchange of time-share interests or other property interests. (The Vacation Ownership and Time-Share Act of 2004, Ca. Bus. & Prof. Code §§ 11210-11288.) Bluegreen meets several of these criteria and is thus subject to VOTSA.

Because Bluegreen is subject to VOTSA, a lawsuit is justified in California, applying California law. Nevertheless, whether the dispute is ultimately adjudicated in California or elsewhere, a legal analysis under California law will be instructive given most states have timeshare laws that mirror the timeshare laws of California.

In addition, although the Contract was executed in October 2015, California law holds that in an action based on fraud, an injured party may bring the action more than three years after the transaction (the normal statute of limitations) – the three-year period begins when the party discovers the fraud or has reasonable cause to suspect wrongdoing. (Ca. Code of Civ. Proc. § 338(d).) In our Clients' case, this would have been in 2019, so the claim is actionable.

### 1. The Contract is Voidable Because of Misrepresentation

The misrepresentations made during the sales presentations, as listed above, violate Ca. Bus. & Prof. Code § 11245, which prohibit sales agents from making misrepresentations during the sales presentation. The Bluegreen sales representatives made multiple material misrepresentations and omissions, as described above, and our Clients relied on these misrepresentations in their decision to purchase the Contract.

In addition, the actions of the sales representative as set forth above are clear violations of the federal fraud statute 15 U.S.C. 45(a)(1). The statute states: "Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." The actions of the Bluegreen sales representatives as set forth above are clear violations of this statute. As a result, the Contract is voidable.

Bluegreen Vacation Club
Contract No. 939932
March 19, 2021
Page 4

### 2. The Contract is Voidable Because of Misleading and False Advertisement

Our Clients were lured into the timeshare presentation under false and misleading information which constitutes false advertising in violation of both Ca. Bus. & Prof. Code §§ 11245 and 17500, which prohibit false advertising. Specifically, Bluegreen sales representatives told our Clients that the presentation would not last more than "one hour"; however, the hard-sell, high-pressure Bluegreen timeshare sales presentation lasted for at least two to three hours. Thus, the Contract is voidable.

### 3. The Contract is Voidable Because Bluegreen Failed to Disclose the Right to Rescission or Cancellation

The Bluegreen sales representatives failed to disclose to our Clients their right to rescind or cancel the Contract as required by Ca. Bus. & Prof. Code § 11239. This is yet another reason why the Contract is voidable.

### C. CONCLUSION

The Contract is voidable for the foregoing reasons. A lawsuit is thereby justified under Ca. Bus. & Prof. Code § 11285, which permits an action by our Clients against Bluegreen for damages or for injunctive or declaratory relief. In addition, the Bluegreen sales representatives may be subject to sanctions and suspension under Ca. Bus. Prof. Code § 11283. If not for the fraudulent misrepresentations of Bluegreen and its sales representatives, our Clients would not have entered into the Contract.

As a result, we demand that Bluegreen rescind the Contract with our Clients, release our Clients from any further obligations due and owing under the Contract, and **refund $11,758** to our Clients. In addition, we demand that Bluegreen remove any negative remarks it and/or any of its subsidiaries, affiliates, or financing associates have placed on our Clients' credit. Please provide a substantive response to this demand on or before **Monday, April 19, 2021** by close of business.

We look forward to your response and your anticipated cooperation in resolving this matter. I am available anytime to discuss this matter.

Very Truly Yours,

J.L Sean Slattery

JLSS: ky

5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

P-1365



# CARLSBAD

### LAW GROUP, LLP

March 26, 2021

**VIA UPS (Signature Required)**

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

　　　Re:　***In re Bluegreen Vacation Club Sales Practices***
　　　　　**Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| Stuart Dwayne Roberts<br>Bethany C. Roberts | Timeshare Contract No. 1058522<br>Dated: 05.19.2017 |
|---|---|
| Richard Dean Sherrod<br>Laretha Johnson Sherrod | Timeshare Contract No. 1123927<br>Dated: 05.12.2018 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for these clients.

---

CARLSBAD007325

CARLSBAD00005943

Bluegreen Vacation Club
Legal Department
March 26, 2021
Page 2 of 2

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:mew
Enclosure

# P-1368



# CARLSBAD
### LAW GROUP, LLP

December 13, 2019

***VIA UPS (Signature Required)***

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

**Re:**  ***In re Bluegreen Vacation Club Sales Practices***
          **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contracts with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| | |
|---|---|
| Gene Ballantyne, Jr.<br>Sharon Ballantyne | Timeshare Contract No. 2587013<br>Dated 09.26.2018 |
| James David Schupp<br>Kristin M. Schupp | Timeshare Contract No. 2600623<br>Dated 12.13.2018 |

We hereby demand that BVC, including its agents and affiliate-companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

---

BG-CARLSBAD 002169

Bluegreen Vacation Club
Legal Department
December 13, 2019
Page 2 of 2

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:dw
Enclosures

BG-CARLSBAD 002170



**CARLSBAD**

LAW GROUP, LLP

**Third Party Authorization**

Dear Sir or Madam,

Please be advised that the law firm of Carlsbad Law Group, LLP has been retained as legal counsel for JD and Kristen Schupp ("Clients") in regard to their timeshare matter. Please consider this a letter of representation.

By signing below, our Clients acknowledge and agree that our law firm shall represent them regarding their timeshare matter and authorize me and/or my associates to negotiate with the timeshare developer or any related third-party including creditors or servicers (or affiliates, agents, employees and successors).

Very truly yours,

J.L. Sean Slattery

I acknowledge that the above is true and correct.

Signed: _JD Schupp_

Print Name: JD Schupp

Dated: 11/27/2019

Signed: _kristen Schupp_

Print Name: Kristen Schupp

Dated: 11/27/2019

BG-CARLSBAD 002171



100% Recycled fiber
80% Post-Consumer

BLUEGREEN VACATION CLUB
4960 CONFERENCE WAY N
STE 100
BOCA RATON FL 33431

P: ORANGE  S: IN
218 - 6084
5708

CARLSBAD LAW GROUP
8587936244
CARLSBAD LAW GROUP
5050 AVENIDA ENCINAS
CARLSBAD CA 92008

1 LBS                      1 OF 1

SHIP TO:
LEGAL DEPARTMENT
8587936244
BLUEGREEN VACATION CLUB
4960 CONFERENCE WAY NORTH
SUITE 100
**BOCA RATON  FL 33431**

**FL 332 6-25**

**UPS GROUND**

TRACKING #: 1Z 76W 323 42 9477 5708

BILLING: P/P
SIGNATURE REQUIRED

Trx Ref.No.: Platt, Ballantyne, Schupp

XDL 19.10.10        NV4S 20.0A 10/2019

UNISHIPPERS

1-800-PICK-UPS® (1-800-742-5877)

Insert shipping documents
under window from the top.

BG-CARLSBAD 002172

P-1372



LAW GROUP, LLP

July 17, 2020

***VIA UPS (Signature Required)***

Legal Department
Bluegreen Vacation Club
4960 Conference Way N. Suite 100
Boca Raton, FL 33431

     **Re:**   ***In re Bluegreen Vacation Club Sales Practices***
            **Case/Arbitration Status: Unfiled**

Attention: Legal Department

Please be advised that our law firm was recently retained by the following individuals as it pertains to their respective contract with Bluegreen Vacation Club ("BVC" or "Your Company"). Our clients and the relevant BVC contracts at issue are:

| Joseph Grozik | Timeshare Contract No. 580362 Dated 06.15.2009 |
| Vicki G. Fisher (Power of Attorney) Glenwood C. Simmons | Timeshare Contract No. 1134042 Dated 06.29.2018 |

We hereby demand that BVC, including its agents and affiliate companies, ***cease and desist*** from contacting our clients for any reason including, but not limited to, attempting to collect any monies from our clients. Please direct all future communications to our office directly.

Please know that we will continue to represent these clients unless we advise you otherwise. We often receive correspondence from developers advising that if they do not hear from us within 30 days, they will assume we no longer represent the referenced clients. Please be advised that we will not respond to such letters, as this would generate an endless and unnecessary loop of correspondence reiterating our representation.

Enclosed please find a Third Party Authorization for each of these clients.

We will be sending you our clients' detailed and individual demand letters that will set forth the basis of BVC's liability and the proper remedy sought by our clients.

**CARLSBAD007447**
5050 Avenida Encinas, Suite 300 • Carlsbad, CA 92008 • Tel: 858.793.6244 • Fax: 858.793.6005 • www.carlsbadlawgroup.com

CARLSBAD00005948

Bluegreen Vacation Club
Legal Department
July 17, 2020
Page 2 of 2

In the meantime, do not hesitate to contact me directly if you have any questions or concerns at
sslattery@carlsbadlawgroup.com or 858/210-0361.

Very truly yours,

J.L. Sean Slattery

JLSS:pd
Enclosures

# P-1390

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:20-CV-24681-RNS**

BLUEGREEN VACATIONS UNLIMITED, INC. a
Florida Corporation; and BLUEGREEN VACATIONS
CORPORATION, a Florida corporation,

      Plaintiffs,

vs.

TIMESHARE LAWYERS, P.A. d/b/a FEDERAL
FINANCIAL LAW GROUP,  a Florida corporation;
CARLSBAD LAW GROUP, LLP,  a California limited
liability partnership ; GALLAGHER-CLIFTON, LLC,
a Florida limited liability company; MG&N Group LLC
d/b/a NATIONAL CREDIT REHAB, a Florida limited
liability company; YUGE INTERNET MARKETING,
LLC, a Florida limited liability company; BIGLY
INTERNET MARKETING, LLC, a Florida limited
liability company; PANDORA MARKETING, LLC
d/b/a TIMESHARE COMPLIANCE, a Wyoming
limited liability company; VCF ENTERPRISES, LLC,
a Nevada limited liability company; RICH FOLK, an
individual and resident of the State of California;
WILLIAM WILSON a/k/a Bo Wilson, an individual and
resident of the State of California; JL 'SEAN'
SLATTERY, an individual and resident of the State of
California; PAUL STEWART, an individual and
resident of the State of Florida; PADDY DEIGHAN, an
individual and resident of the State of Nevada; and
PATRICK THOMPSON, an individual and resident of
the State of Florida, and DAVID J. CRADER, an
individual and resident of the State of Florida,

      Defendants
      .

CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 2

<u>**CO-DEFENDANT, PANDORA MARKETING, LLC's RESPONSE**</u>
<u>**TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSION**</u>

Co-Defendant, PANDORA MARKETING, LLC ("Pandora Marketing"), by and through the undersigned counsel, and pursuant to Rules 36 of the Federal Rules of Civil Procedure, hereby responds to the Plaintiffs' First Requests for Admission served on April 12, 2021, as more specifically set forth below.

1.      Admit that Pandora engages in nationwide advertising for its services.

**RESPONSE:  Admitted.**

2.      Admit that Pandora advertises its services to Timeshare Owners.

**RESPONSE:  Admitted.**

3.      Admit that Pandora advertises its services to Bluegreen Owners.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

4.      Admit that Pandora Solicits Timeshare Owners using employees and/or independent contractors.

**RESPONSE: Admitted**

5.      Admit that Pandora Solicits Bluegreen Owners using employees and/or independent contractors.

**RESPONSE: Admitted.**

6.      Admit that Pandora advertises to Timeshare Owners via radio.

**RESPONSE: Admitted.**

7.      Admit that Pandora advertises to Timeshare Owners via television.

**RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 3

    8.    Admit that Pandora, or those acting on Pandora's behalf, Solicits customers through cold-calling.

    **RESPONSE: Admitted.**

    9.    Admit that Pandora, or those acting on Pandora's behalf, Solicits Timeshare Owners via telephone.

    **RESPONSE: Admitted.**

    10.    Admit that Pandora, or those acting on Pandora's behalf, Solicits Timeshare Owners through in-person sales presentations.

    **RESPONSE: Admitted.**

    11.    Admit that Pandora disclosed to defendant Slattery that Pandora sales representatives have, in the past, made sales presentations to Timeshare Owners.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    12.    Admit that Pandora disclosed to defendant Slattery that Pandora sales representatives have, in the past, communicated to Timeshare Owners by telephone for the purpose of making sales presentations.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    13.    Admit that Pandora provided Slattery with a copy of a call script, outline, or sales presentation used in relation to sales presentations to Timeshare Owners.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 4

14.     Admit that Pandora disclosed to Slattery the fact that Pandora Solicits Timeshare Owners through cold-calling.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

15.     Admit that Pandora disclosed to Slattery the fact that Pandora Solicits Timeshare Owners through television commercials.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

16.     Admit that Pandora disclosed to Slattery the fact that Pandora Solicits Timeshare Owners through its website https://timesharecompliance.com.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

17.     Admit that Pandora intended Timeshare Owners referred by Pandora to defendant Slattery or a law firm with which he was associated to retain Slattery or such law firm as an attorney in regard to such owner's timeshare interest.

**RESPONSE:  Admitted.**

18.     Admit that Pandora employees and/or independent contractors utilize a written script in connection with cold-calling Timeshare Owners.

**RESPONSE:  Denied that Pandora employees utilize a written script in connection with cold-calling Timeshare Owners; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

19.     Admit that Pandora employees and/or independent contractors utilize a written script in connection with the Solicitation of Timeshare Owners via telephone.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 5

> **RESPONSE: Admitted.**

20.     Admit that Pandora employees and/or independent contractors utilize a written script in connection with the Solicitation of Timeshare Owners through in-person sales presentations.

> **RESPONSE: Denied that Pandora employees utilize a written script in connection with the solicitation of Timeshare Owners through in-person sales presentations; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

21.     Admit that Folk approves all advertising statements made by Pandora prior to publication.

> **RESPONSE:  Denied**

22.     Admit that Folk has had personal involvement in the creation of Pandora's radio advertisements.

> **RESPONSE: Admitted.**

23.     Admit that Folk has had personal involvement in the creation of Pandora's television advertisements.

> **RESPONSE: Admitted.**

24.     Admit that Folk has had personal involvement in the creation of Pandora's scripts used to Solicit Timeshare Owners.

> **RESPONSE: Admitted.**

25.     Admit that Folk has had personal involvement in the training of Pandora's sales employees and/or independent contractors.

> **RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 6

26.     Admit that Folk has had personal involvement in the supervision of Pandora's sales employees and/or independent contractors.

**RESPONSE:  Admitted.**

27.     Admit that Wilson approves all advertising statements made by Pandora prior to publication.

**RESPONSE:  Denied.**

28.     Admit that Wilson has had personal involvement in the creation of Pandora's radio advertisements.

**RESPONSE:  Admitted.**

29.     Admit that Wilson has had personal involvement in the creation of Pandora's television advertisements.

**RESPONSE:  Admitted.**

30.     Admit that Wilson has had personal involvement in the creation of Pandora's scripts used to Solicit Timeshare Owners.

**RESPONSE:  Admitted.**

31.     Admit that Wilson has had personal involvement in the training of Pandora's sales employees and/or independent contractors.

**RESPONSE:  Admitted.**

32.     Admit that Wilson has had personal involvement in the supervision of Pandora's sales employees and/or independent contractors.

**RESPONSE:  Admitted.**

33.     Admit that Folk personally supervises Pandora's sales personnel.

**RESPONSE:  Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 7

34.    Admit that Wilson personally supervises Pandora's sales personnel.

**RESPONSE:  Denied.**

35.    Admit that Folk approves all advertising statements made by Pandora.

**RESPONSE:  Denied.**

36.    Admit that Wilson approves all advertising statements made by Pandora.

**RESPONSE:  Denied.**

37.    Admit that Folk is personally involved in creating the content of call scripts used during Pandora's telephone solicitations of Timeshare Owners.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

38.    Admit that Wilson is personally involved in creating the content of call scripts used during Pandora's telephone Solicitations of Timeshare Owners.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

39.    Admit that Pandora's radio advertisements affect interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

40.    Admit that Pandora obtained customers from its radio advertisements.

**RESPONSE: Admitted.**

41.    Admit that Pandora's television advertisements affect interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 8

42.     Admit that Pandora has obtained customers from its television advertisements.

**RESPONSE: Admitted.**

43.     Admit that Pandora's telephone advertisements affect interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

44.     Admit that Pandora has obtained customers from its telephone advertisements.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

45.     Admit that Pandora's radio advertisements contain representations regarding timeshare ownership.

**RESPONSE: Admitted.**

46.     Admit that Pandora's television advertisements contain representations regarding timeshare ownership.

**RESPONSE: Admitted.**

47.     Admit that Pandora's website advertisements contain representations regarding timeshare ownership.

**RESPONSE: Admitted.**

48.     Admit that at the time Pandora enters into agreements with its customers, that it does so under the belief that each customer is a party to a writing that purports to create a contract between such customers and a timeshare developer.

**RESPONSE: Admitted.**

49.     Admit that Pandora only enters into agreements with customers who claim to have signed a timeshare contract.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 9

    **RESPONSE: Admitted.**

    50.    Admit that Pandora enters into contracts with customers at in-person sales presentations.

    **RESPONSE: Admitted.**

    51.    Admit that Pandora controls the content of the website https://timesharecompliance.com.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    52.    Admit that Pandora controls the contentof the website https://facebook.com/timesharecompliance.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    53.    Admit that Pandora controls the content of the website https://tsburden.com.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    54.    Admit that Pandora controls the contentof the website https://pandoramarketingllc.com.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

    55.    Admit that Pandora controls the content of the website https://timeshareconformidad.com.

    **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 10

56.     Admit that Pandora, or those acting on Pandora's behalf, Referred Bluegreen

Owners to Carlsbad or Slattery.

**RESPONSE: Admitted Pandora, or those acting on Pandora's behalf, Referred**
**Bluegreen Owners to Carlsbad; otherwise, denied.**

57.     Admit that Pandora, or those acting on Pandora's behalf, Referred Bluegreen

Owners to Timeshare Lawyers, P.A. or Paddy Deighan.

**RESPONSE: Admitted Pandora, or those acting on Pandora's behalf, Referred**
**Bluegreen Owners to Timeshare Lawyers, P.A.; otherwise, denied.**

58.     Admit that Pandora, or those acting on Pandora's behalf, Referred Bluegreen

Owners to Gallagher-Clifton, LLC or Paul Stewart.

**RESPONSE: Admitted Pandora, or those acting on Pandora's behalf, Referred**
**Bluegreen Owners to Gallagher-Clifton, LLC; otherwise, denied.**

59.     Admit that Pandora, or those acting on Pandora's behalf, Referred Bluegreen

Owners to Patrick Thompson.

**RESPONSE: Denied.**

60.     Admit that Pandora has, in the past, accepted Bluegreen Owners as customers.

**RESPONSE: Admitted.**

61.     Admit that Pandora continues, through the present date, to accept Bluegreen

Owners as customers.

**RESPONSE: Admitted.**

62.     Admit that Pandora sales representatives have, in the past, made sales presentations

to Bluegreen Owners.

**RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 11

63.     Admit that Pandora sales representatives continue, through the present date, to make sales presentations to Bluegreen Owners.

**RESPONSE:  Admitted.**

64.     Admit that, at the time Pandora sales representatives give sales presentations to Bluegreen Owners, such Bluegreen Owners have yet to formally sign a contract with Pandora.

**RESPONSE:  Admitted.**

65.     Admit that, at the time Pandora gives a sales presentation to Bluegreen Owners, such Bluegreen Owners have yet to formally make any payment to Pandora.

**RESPONSE:  Admitted.**

66.     Admit that one of Pandora's objectives in giving a sales presentation to a Bluegreen Owners is to obtain that Bluegreen Owner as customers.

**RESPONSE:  Admitted.**

67.     Admit that ongoing contractual obligations exist between Bluegreen and the Bluegreen Owners that retain Pandora's services at the time that such Bluegreen Owners retain Pandora's services.

> **RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request. Admitted that Bluegreen Owners retaining Pandora Marketing's services may believe ongoing contractual obligations with Bluegreen exist.**

68.     Admit that Pandora is aware that ongoing contractual obligations exist between Bluegreen and Bluegreen Owners that retain Pandora's services at the time that such Bluegreen Owner retains Pandora's services.

> **RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request. Admitted that Bluegreen Owners retaining**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 12

> **Pandora Marketing's services may believe ongoing contractual obligations with Bluegreen exist.**

69.     Admit that, with regard to Bluegreen Owners that retain Pandora's services, one of Pandora's objectives is to end the Bluegreen Owners' ongoing contractual obligations associated with his or her timeshare.

**RESPONSE: Denied.**

70.     Admit that Pandora advertises the ability to terminate a Timeshare Owner's obligations under a timeshare contract.

**RESPONSE: Admitted.**

71.     Admit that Pandora advertises the ability to legally release timeshare owners from their timeshare contracts.

> **RESPONSE: Admitted Pandora Marketing advertises a team to remove "all liability from your timeshare contract;" otherwise, denied.**

72.     Admit that Pandora advertises the ability to release Timeshare Owners of future responsibility related to their timeshare ownership.

> **RESPONSE: Admitted Pandora Marketing advertises a team to release a responsibility "for maintenance fees, assessment fees, or payments on debts. Your heirs will no longer be responsible for any liability. You will no longer have any liability for your timeshare contract;" otherwise, denied.**

73.     Admit that if a Bluegreen Owner stops payment of a debt associated with his or her timeshare purchase before the debt is satisfied, Bluegreen receives less money from such Bluegreen Owner than if such Bluegreen Owner had made all payments until satisfaction of the debt.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 13

74.     Admit that Pandora charges Bluegreen Owners a fee in exchange for services.

**RESPONSE: Admitted.**

75.     Admit that Pandora communicates the availability of credit repair services to Bluegreen Owners before they retain Pandora's services.

**RESPONSE: Upon information and belief, admitted that Pandora Marketing may communicate the availability of credit repair services to Timeshare Owners including, but not limited to, Bluegreen Owners before they retain Pandora Marketing's services.**

76.     Admit that Pandora does not charge Bluegreen Owners an additional fee for credit repair services beyond the fees listed in each Bluegreen Owner's respective services agreement with Pandora.

**RESPONSE: Admitted.**

77.     Admit that Tradebloc, Inc. provided credit repair services to Bluegreen Owners that are Pandora customers after such Bluegreen Owners executed a contract with Pandora.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

78.     Admit that Pandora compensated Tradebloc, Inc. for any credit repair services that Tradebloc, Inc. provided to Bluegreen Owners that were Pandora customers.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

79.     Admit that National Credit Rehab provided credit repair services to Bluegreen Owners that are Pandora customers after such Bluegreen Owners executed a contract with Pandora.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 14

> RESPONSE: **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

80.    Admit that Pandora compensated National Credit Rehab for any credit repair services that National Credit Rehab provided to Bluegreen Owners that were Pandora customers.

> RESPONSE: **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

81.    Admit that Tradebloc, Inc. only provided credit repair services to Bluegreen Owners that are Pandora customers after such Bluegreen Owners executed a contract with Pandora.

> RESPONSE: **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

82.    Admit that National Credit Rehab only provided credit repair services to Bluegreen Owners that are Pandora customers after such Bluegreen Owners executed a contract with Pandora.

> RESPONSE: **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

83.    Admit that, for those Bluegreen Owners with remaining loan or financing payments remaining on their timeshare interest, Pandora does not presently utilize any method other than an attorney vendor to either obtain or attempt to obtain an exit of the Bluegreen Owner's timeshare interests.

**RESPONSE:  Admitted**.

84.    Admit that Pandora is not a law firm.

**RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 15

    85.    Admit that Pandora has never hired an attorney as a W-2 employee of Pandora.

**RESPONSE: Admitted.**

    86.    Admit that Pandora communicates to its customers on behalf of its law firm vendors.

**RESPONSE: Admitted.**

    87.    Admit that Timeshare Lawyers, P.A. has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**

    88.    Admit that Carlsbad has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**

    89.    Admit that Gallagher-Clifton, LLC has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**

    90.    Admit that Slattery has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**

    91.    Admit that Paul Stewart has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**

    92.    Admit that Patrick Thompson has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE: Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 16

93.    Admit that Paddy Deighan has given input regarding the manner in which Pandora communicates with Timeshare Owners during its sales presentation.

**RESPONSE:  Denied.**

94.    Admit that Pandora pays a flat fee to Timeshare Lawyers, P.A. for each Timeshare Owner Pandora Refers to Timeshare Lawyers, P.A.

**RESPONSE:  Denied.**

95.    Admit that Pandora pays a flat fee to Carlsbad Law Group, LLP for each Timeshare Owner Pandora Refers to Carlsbad.

**RESPONSE:  Denied.**

96.    Admit that Pandora pays a flat fee to Gallagher-Clifton, LLC for each Timeshare Owner Pandora Refers to Gallagher-Clifton, LLC.

**RESPONSE:  Denied.**

97.    Admit that Pandora pays a flat fee to Patrick Thompson for each Timeshare Owner Pandora Refers to Thompson.

**RESPONSE:  Denied.**

98.    Admit that Pandora pays a flat fee to Paul Stewart for each Timeshare Owner Pandora Refers to Stewart.

**RESPONSE:  Denied.**

99.    Admit that Pandora pays a flat fee to Paddy Deighan for each Timeshare Owner Pandora Refers to Deighan.

**RESPONSE:  Denied.**

100.    Admit that Pandora pays a flat fee to Slattery for each Timeshare Owner Pandora Refers to Slattery.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 17

**RESPONSE:  Denied.**

101.    Admit that Timeshare Lawyers, P.A. compensated Pandora for Referring Timeshare Owners to Timeshare Lawyers, P.A.

**RESPONSE:  Denied.**

102.    Admit that Carlsbad compensated Pandora for Referring Timeshare Owners to Carlsbad.

**RESPONSE:  Denied.**

103.    Admit that Gallagher-Clifton, LLC compensated Pandora for Referring Timeshare Owners to Gallagher-Clifton, LLC.

**RESPONSE:  Denied.**

104.    Admit that Patrick Thompson compensated Pandora for Referring Timeshare Owners to Patrick Thompson.

**RESPONSE:  Denied.**

105.    Admit that Paul Stewart compensated Pandora for Referring Timeshare Owners to Paul Stewart.

**RESPONSE:  Denied.**

106.    Admit that Paddy Deighan compensated Pandora for Referring Timeshare Owners to Paddy Deighan.

**RESPONSE:  Denied.**

107.    Admit that Slattery compensated Pandora for Referring Timeshare Owners to Slattery.

**RESPONSE:  Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 18

108.    Admit that Pandora advised Bluegreen Owners that Timeshare Lawyers, P.A. was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

109.    Admit that Pandora advised Bluegreen Owners that Gallagher-Clifton, LLC was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

110.    Admit that Pandora advised Bluegreen Owners that Carlsbad was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

111.    Admit that Pandora advised Bluegreen Owners that Patrick Thompson was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

112.    Admit that Pandora advised Bluegreen Owners that Paul Stewart was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

113.    Admit that Pandora advised Bluegreen Owners that Slattery was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

114.    Admit that Pandora advised Bluegreen Owners that Paddy Deighan was qualified to address issues related to such Bluegreen Owners' timeshare interests.

**RESPONSE:  Denied.**

115.    Admit that Timeshare Lawyers, P.A. did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Timeshare Lawyers, P.A.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 19

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

116.    Admit that Gallagher-Clifton, LLC did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Gallagher-Clifton, LLC.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

117.    Admit that Carlsbad did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Carlsbad Law Group, LLP.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

118.    Admit that Patrick Thompson did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Patrick Thompson.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

119.    Admit that Paul Stewart did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Paul Stewart.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

120.    Admit that Slattery did not provide any legitimate services to Bluegreen Owners who Pandora Referred to JL "Sean" Slattery.

> **RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 20

121.   Admit that Paddy Deighan did not provide any legitimate services to Bluegreen Owners who Pandora Referred to Paddy Deighan.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

122.   Admit that Pandora caused Timeshare Lawyers, P.A. to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**

123.   Admit that Pandora caused Gallagher-Clifton, LLC to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**

124.   Admit that Pandora caused Carlsbad to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**

125.   Admit that Pandora caused Patrick Thompson to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**

126.   Admit that Pandora caused Paul Stewart to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**

127.   Admit that Pandora caused Slattery to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE: Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 21

128.    Admit that Pandora caused Paddy Deighan to send boilerplate demand letters to Bluegreen on behalf of Pandora's customers.

**RESPONSE:  Denied.**

129.    Admit that the contracts between Bluegreen and Bluegreen Owners do not require payment to Pandora.

**RESPONSE:  Admitted.**

130.    Admit that Pandora used Timeshare Lawyers, P.A. to perform services advertised to Bluegreen Owners.

**RESPONSE:  Admitted.**

131.    Admit that Pandora used Paddy Deighan to perform services advertised to Bluegreen Owners while he was employed with Timeshare Lawyers, P.A.

**RESPONSE:  Denied.**

132.    Admit that Pandora used Patrick Thompson to perform services advertised to Bluegreen Owners while he was employed with Timeshare Lawyers, P.A.

**RESPONSE:  Denied.**

133.    Admit that Pandora Referred Bluegreen Owners to Timeshare Lawyers, P.A.

**RESPONSE:  Admitted.**

134.    Admit that Pandora used Gallagher-Clifton, LLC to perform services advertised to Bluegreen Owners.

**RESPONSE:  Admitted.**

135.    Admit that Pandora used Paul Stewart to perform services advertised to Bluegreen Owners while he was employed with Gallagher-Clifton, LLC.

**RESPONSE:  Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 22

136.    Admit that Pandora Referred Bluegreen Owners to Gallagher-Clifton, LLC.

**RESPONSE: Admitted.**

137.    Admit that Pandora used Carlsbad to perform services advertised to Bluegreen

Owners.

**RESPONSE: Admitted.**

138.    Admit that Pandora used Slattery to perform services advertised to Bluegreen

Owners while he was employed with Carlsbad.

**RESPONSE: Denied.**

139.    Admit that Pandora Referred Bluegreen Owners to Carlsbad.

**RESPONSE: Admitted.**

140.    Admit that services rendered by Pandora to its customers do not change depending

on the identity of a timeshare developer with whom such customers may have a contractual

relationship.

**RESPONSE:  Admitted.**

141.    Admit that Pandora itself has never filed any lawsuits on behalf of its customers.

**RESPONSE: Admitted.**

142.    Admit that Pandora does not have an economic or beneficial interest of its own in

any contract between Bluegreen and any Bluegreen Owner.

> **RESPONSE: Admitted that Pandora Marketing has no economic or beneficial interest of its own in any contract between Bluegreen and any Bluegreen Owner other than when assisting a Bluegreen Owner customer.**

143.    Admit that Pandora is not a third-party beneficiary of any contract between

Bluegreen and any Bluegreen Owner.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 23

**RESPONSE: Admitted.**

144.    Admit that contracts between Bluegreen and Bluegreen Owners do not require payment to Pandora.

**RESPONSE: Admitted.**

145.    Admit that Pandora persuades Bluegreen Owners to cease making payments under their timeshare contracts to Bluegreen.

**RESPONSE: Denied.**

146.    Admit that Pandora instructs Bluegreen Owners to cease making payments under their timeshare contracts to Bluegreen.

**RESPONSE: Denied.**

147.    Admit that Pandora directs Bluegreen Owners to cease making payments under their timeshare contracts to Bluegreen.

**RESPONSE: Denied.**

148.    Admit that Pandora has, on more than one occasion, advised a Bluegreen Owner to stop making payments in connection with his or her Bluegreen timeshare.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

149.    Admit that, as Fla. Stat. § 721.10 is applied to the facts of this case, the "cancellation" of a timeshare contract is a specific, non-waivable rescission right held by Bluegreen Owners that can only be exercised within a certain time period following the execution of a timeshare contract.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 24

150.    Admit that the "cancellation" of a timeshare contract is not a service that can be

advertised, sold, or provided in commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be
readily obtained is insufficient to enable Pandora Marketing to admit
or deny this Request.**

151.    Admit that Pandora partners with David J. Crader, Yuge Internet Marketing, LLC,

and Bigly Internet Marketing, LLC, to advertise Pandora's services.

**RESPONSE: Denied.**

152.    Admit that Pandora compensates David J. Crader, Yuge Internet Marketing, LLC,

and Bigly Internet Marketing, LLC for Referring or directing Timeshare Owners, including

Bluegreen Owners, to Pandora.

**RESPONSE: Admitted.**

153.    Admit that David J. Crader, Yuge Internet Marketing, LLC, and Bigly Internet

Marketing, LLC Solicit Timeshare Owners, including Bluegreen Owners, on Pandora's behalf.

**RESPONSE: Admitted.**

154.    Admit that David J. Crader, Yuge Internet Marketing, LLC, and Bigly Internet

Marketing, LLC Solicit Timeshare Owners, including Bluegreen Owners, on Pandora's behalf via

live chat.

**RESPONSE: Admitted.**

155.    Admit that David J. Crader, Yuge Internet Marketing, LLC, and Bigly Internet

Marketing, LLC Solicit Timeshare Owners, including Bluegreen Owners, on Pandora's behalf via

telephone.

**RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 25

156.    Admit that David J. Crader, Yuge Internet Marketing, LLC, and Bigly Internet
Marketing, LLC have transferred Timeshare Owner Referral leads to Pandora in real time.

**RESPONSE: After a reasonable inquiry, the information known or that can be
readily obtained is insufficient to enable Pandora Marketing to admit
or deny this Request.**

157.    Admit that Gallagher-Clifton, LLC is not a law firm.

**RESPONSE: Denied.**

158.    Admit that Paul Stewart is not a lawyer.

**RESPONSE: After a reasonable inquiry, the information known or that can be
readily obtained is insufficient to enable Pandora Marketing to admit
or deny this Request.**

159.    Admit that Pandora tells Timeshare Owners that their credit will be protected during
the timeshare "exit" process.

**RESPONSE: Admitted.**

160.    Admit that Pandora's written agreements with Timeshare Owners includes a "Block
and Repair Addendum," which sets forth the credit repair services to be provided by Pandora or
other third parties.

**RESPONSE: Denied.**

161.    Admit that Folk directed that the "Block and Repair Addendum" be included in
Pandora's written agreements with Timeshare Owners.

**RESPONSE: Denied.**

162.    Admit that Wilson directed that the "Block and Repair Addendum" be included in
Pandora's written agreements with Timeshare Owners.

**RESPONSE: Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 26

163.    Admit that Pandora makes the claim that its timeshare exit "process is legal," as stated at https://timesharecompliance.com/timeshare-cancellation-process/.

**RESPONSE:  Admitted.**

164.    Admit that Pandora makes the claim that "[a]t Timeshare Compliance our team of specialists, analysts, and other professionals have extensive experience building strong cases that persuade developers on the wisdom of cancelling timeshare contracts that were based on fraudulent misrepresentations," as stated at https://timesharecompliance.com/faqs/ as of November 13, 2020.

**RESPONSE:  Admitted.**

165.    Admit that Pandora makes the claim that "[o]ur team requires between six and 12 months to cancel a timeshare contract," as stated at https://timesharecompliance.com/faqs/ as of November 13, 2020.

**RESPONSE:  Admitted.**

166.    Admit that Pandora makes the claim that Pandora will "completely remove" a Timeshare Owner's "liability from the contract," as stated at https://timesharecompliance.com/faqs/ as of November 13, 2020.

**RESPONSE:  Admitted.**

167.    Admit that Pandora makes the claim "[o]ur team of professionals has more than 50 years of experience in the timeshare industry," as stated at https://timesharecompliance.com/faqs/ as of November 13, 2020.

**RESPONSE:  Admitted.**

168.    Admit that Pandora makes the claim that it can "legally and permanently exit your timeshare," as stated at https://www.youtube.com/watch?v=XwloYYzuwyw.

**RESPONSE:  Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 27

169.    Admit that Pandora makes the claim that "we've helped thousands of timeshare owners just like you," the audio of which may be found at https://www.youtube.com/watch?v=a0Bjwbl6f78 at timestamp 0:30 – 0:34.

**RESPONSE: Admitted.**

170.    Admit that each of the Plaintiffs maintains its principal place of business in the State of Florida.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

171.    Admit that each of the Plaintiffs' principal place of business is located within the judicial district of the United States District Court for the Southern District of Florida.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

172.    Admit that Folk has personally directed Pandora's employees or independent contractors to Solicit Timeshare Owners located in the State of Florida.

**RESPONSE: Denied.**

173.    Admit that Wilson has personally directed Pandora's employees or independent contractors to Solicit Timeshare Owners located in the State of Florida.

**RESPONSE: Denied.**

174.    Admit that Folk has directed Pandora's employees or independent contractors to fly to Florida to meet with Timeshare Owner leads who might be of high value.

**RESPONSE: Denied.**

175.    Admit that Wilson has directed Pandora's employees or independent contractors to fly to Florida to meet with Timeshare Owner leads who might be of high value.



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 28

**RESPONSE:  Denied.**

176.    Admit that Pandora had a regional office in Fort Lauderdale, Florida.

**RESPONSE:  Denied.**

177.    Admit that Pandora's office in Fort Lauderdale, Florida was used with the intent of conducting sales pitches to potential customers.

**RESPONSE:  Admitted.**

178.    Admit that Pandora advertises its services in the State of Florida.

**RESPONSE:  Admitted.**

179.    Admit that Pandora, or those acting on Pandora's behalf, Solicits customers through in-person sales presentations.

**RESPONSE: Admitted.**

180.    Admit that Pandora, or those acting on Pandora's behalf, Solicits customers through in-person sales presentations, some of which have been located in the State of Florida.

**RESPONSE:  Admitted.**

181.    Admit that some of the radio advertisements referenced in the preceding Request were directed to or disseminated in the State of Florida.

**RESPONSE:  Admitted that some of the radio advertisements referenced in the preceding Request should have been directed or disseminated in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

182.    Admit that Pandora's radio advertisements affect interstate commerce.

**RESPONSE:  After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 29

183.    Admit that some of the television advertisements referenced in the preceding Request were directed to or disseminated in the State of Florida.

**RESPONSE: Admitted that some of the television advertisements referenced in the preceding Request should have been directed or disseminated in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

184.    Admit that some of the telephone advertisements referenced in the preceding Request were directed to Timeshare Owners located in the State of Florida.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

185.    Admit that current or past customers of Pandora include individuals who reside in the State of Florida.

**RESPONSE: Admitted.**

186.    Admit that Pandora has received compensation from individuals residing in Florida in exchange for Pandora's services.

**RESPONSE: Admitted.**

187.    Admit that certain of the Bluegreen Owners that are also customers of Pandora reside in California.

**RESPONSE: Admitted.**

188.    Admit that certain of the Bluegreen Owners that are also customers of Pandora reside in Florida.

**RESPONSE: Admitted.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 30

189.    Admit that certain of the Bluegreen Owners that are also customers of Pandora reside in a U.S. State other than California.

**RESPONSE:  Admitted.**

190.    Admit that certain of the Bluegreen Owners that are also customers of Pandora reside in a U.S. State other than California or Florida.

**RESPONSE:  Admitted.**

191.    Admit that Pandora Solicited potential customers while such potential customers resided in California.

**RESPONSE:  Admitted.**

192.    Admit that Pandora Solicited potential customers while such potential customers resided in Florida.

**RESPONSE:  Admitted.**

193.    Admit that Pandora Solicited potential customers while such potential customers resided in any U.S. State other than California or Florida.

**RESPONSE:  Admitted.**

194.    Admit that the services rendered by Pandora to its customers do not change based on where the customer resides.

**RESPONSE:  Admitted.**

195.    Admit that Pandora performed services to customers of Intermarketing Media, LLC on behalf of Intermarketing Media, LLC.

**RESPONSE:  Admitted Pandora Marketing assigned certain personnel to Intermarketing Media, LLC to assist with services to the customers of that company; otherwise, denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 31

196.     Admit that Pandora Solicited Timeshare Owners on behalf of Intermarketing Media, LLC.

**RESPONSE: Admitted Pandora Marketing assisted prior to and during the execution of written agreements resulting from the decisions of certain timeshare owners to employ the services of Intermarketing Media, LLC; otherwise, denied.**

197.     Admit that the manner in which Pandora Solicited Timeshare Owners on behalf of Intermarketing Media, LLC was the same as how Pandora Solicited Timeshare Owners for itself.

**RESPONSE: Denied.**

198.     Admit that the services Pandora provided to Timeshare Owners on behalf of Intermarketing Media, LLC were provided in the same manner as if such Timeshare Owners had executed a written agreement with Pandora.

**RESPONSE: Denied.**

199.     Admit that the website https://timesharecompliance.com is accessible in the State of Florida.

**RESPONSE: Admitted this website should have been accessible in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

200.     Admit that https://timesharecompliance.com affects interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

201.     Admit that the website https://facebook.com/timesharecompliance is accessible in the State of Florida.

**RESPONSE: Admitted this website should have been accessible in the State of Florida; otherwise, after a reasonable inquiry, the information known**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 32

or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.

202.   Admit that https://facebook.com/timesharecompliance affects interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

203.   Admit that the website https://tsburden.com is accessible in the State of Florida.

**RESPONSE:  Admitted this website should have  been accessible in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

204.   Admit that https://tsburden.com affects interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

205.   Admit that the website https://pandoramarketingllc.com is accessible in the State

of Florida.

**RESPONSE: Admitted this website should have been accessible in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

206.   Admit that https://pandoramarketingllc.com affects interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

207.   Admit that the website https://timeshareconformidad.com is accessible in the State

of Florida.

**RESPONSE: Admitted this website should have been accessible in the State of Florida; otherwise, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 33

208.    Admit that https://timeshareconformidad.com affects interstate commerce.

**RESPONSE: After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora Marketing to admit or deny this Request.**

209.    Admit that cold calling performed by Pandora or those acting on Pandora's behalf included making telephone calls to potential customers who reside in the State of Florida.

**RESPONSE: Admitted.**

210.    Admit that cold calling performed by Pandora or those acting on Pandora's behalf included making telephone calls to phone numbers with an area code associated with the State of Florida.

**RESPONSE: Admitted..**

211.    Admit that Pandora maintains contact with customers who are located in the State of Florida through email.

**RESPONSE: Admitted**.

212.    Admit that Pandora maintains contact with customers who are located in the State of Florida through telephone contact.

**RESPONSE: Admitted**.

213.    Admit that Pandora maintains contact with customers who are located in the State of Florida through written correspondence.

**RESPONSE: Admitted.**

214.    Admit that Pandora, or those to whom Pandora referred Bluegreen Owners, caused demand letters on behalf of Bluegreen Owners to be sent to Bluegreen in the State of Florida.

**RESPONSE:  Denied.**



CASE NO: 1:20-CV-24681-RNS
Pandora Marketing's Response to Plaintiffs' First Request for Admission
Page 34

215.     Admit that Caslbad or Slattery sent letters to Bluegreen at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431.

**RESPONSE:  Admitted, Carlsbad sent letters to Bluegreen at 4960 Conference Way North, Suite 100, Boca Raton, FL 33431; otherwise denied.**

216.     Admit that Pandora Solicited potential customers while such customers resided in Florida.

**RESPONSE:  Admitted.**

217.     Admit that VCF Enterprises, LLC is controlled by defendants Rich Folk and William Wilson.

**RESPONSE:  Admitted.**

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that on this 12th day of May, 2021, we electronically served the foregoing document via e-mail to all CM/ECF participants.

Respectfully submitted,

KLEIN PARK & LOWE, P.L.
*Attorneys for Pandora Marketing, LLC, Rich Folk, William "Bo" Wilson and VCF Enterprises, LLC*
9130 S. Dadeland Blvd., Suite 2000
Miami, FL 33156
Tel: 305.670.3700
Fax: 305.670.8592

By:      ***/s/ Houston S. Park, III***
          HOUSTON S. PARK, III
          Fla. Bar No: 958492
          parkh@kleinpark.com
          ROBERT M. KLEIN
          Fla Bar No: 230022
          kleinr@kleinpark.com
          ANDREW M. FELDMAN
          Fla. Bar No. 98948
          feldmana@kleinpark.com



P-1392

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION
#### Case No.: 1:20-cv-24681-RNS

BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation; and BLUEGREEN VACATIONS CORPORATION, a Florida corporation,

                Plaintiffs,

    v.

TIMESHARE LAWYERS, P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, LLP, a Florida Corporation; CARLSBAD LAW GROUP, LLP, a California limited liability partnership; GALLAGHER-CLIFTON, LLC, a Florida limited liability company; MG&N GROUP, LLC d/b/a NATIONAL CREDIT REHAB, a Florida limited liability company; YUGE INTERNET MARKETING, LLC, a Florida limited liability company; BIGLY INTERNET MARKETING, LLC, a Florida limited liability company; PANDORA MARKETING, LLC d/b/a TIMESHARE COMPLIANCE, a Wyoming limited liability company; VCF ENTERPRISES, LLC, a Nevada limited liability company; RICH FOLK, an individual and resident of the State of California; WILLIAM WILSON a/k/a Bo Wilson, an individual and resident of the State of California; J.L. "SEAN" SLATTERY, an individual and resident of the State of California; PAUL STEWART, an individual and resident of the State of Florida; ANGELA CONSALVO, an individual and resident of the State of Florida; PADDY DEIGHAN, an individual and resident of the State of Nevada; and PATRICK THOMPSON, an individual and resident of the State of Florida, and DAVID J. CRADER, an individual and resident of the State of Florida,

                Defendants.

**DEFENDANTS' PANDORA MARKETING, LLC'S REPONSE TO PLAINTIFFS' SECOND REQUEST FOR ADMISSION**

1

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to Plaintiffs' Second Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure, by undersigned counsel, hereby responds to Plaintiffs' Second Requests for Admission dated April 29, 2022, in the above-referenced matter.

## REQUESTS FOR ADMISSION

218.    Admit that Pandora enters into written contracts for its services with each of its customers.

**RESPONSE: Deny. Some Pandora counseling services are provided to customers before written contracts are entered into with customers. Admit that Pandora enters into contracts with some customers for the provision of certain services** .

219.    Admit that each written contract between Pandora and its customers requires such customers to pay at least $1 to Pandora prior to Pandora's completion of services to be rendered pursuant to such contracts.

**RESPONSE : Admit.**

220.    Admit that Pandora may complete the obligations it owes under contracts with its customers by causing a foreclosure of a timeshare owner's timeshare interest.

**RESPONSE :Deny.**

221.    Admit that certain of Pandora's customers owe an outstanding principal loan balance to Bluegreen when such customers retain Pandora.

**RESPONSE :Admitted that certain customers report believe there to be an outstanding principal loan balance but Pandora cannot admit or deny whether that loan balance is legally enforceable, or therefore legally owed, such that Pandora may admit or deny this Request.**

222.    Admit that a timeshare owner with an outstanding principal loan balance owed to Bluegreen must cease payment owed to Bluegreen before Bluegreen can foreclose such owner's timeshare interest.

**RESPONSE :After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

223.    Admit that the contracts entered into between Pandora and its customers reference a specific timeshare interest held by the customer.

**RESPONSE : Admit.**

224.    Admit that Pandora is not the agent of its customers

**RESPONSE : Deny**

225.    Admit that the contracts entered into between Pandora and its customers disclaim the existence of any agency relationship.

2

**RESPONSE : Admit.**

226.   Admit that Pandora's customers do not control the means by which Pandora may comply with its obligations under the contracts entered into between Pandora and its customers.

**RESPONSE : Pandora objects to this request as unreasonably vague and ambiguous. Plaintiffs neither specify what obligation this Request refers to nor the contract to which it refers making a reasonable inquiry and response impossible .**

227.   Admit that Pandora receives live call transfers from third parties generated from such third parties' own leads.

**RESPONSE : Pandora objects to this request as unreasonably vague and ambiguous. Plaintiffs neither specify what third parties this refers to nor defines what it means by leads making a reasonable inquiry and specific response impossible .**

228.   Admit that live calls transferred from third parties are connected to Pandora call centers.

**RESPONSE : Pandora objects to this request as unreasonably vague and ambiguous. This Request appears to refer to any "live call" transferred from any "third party" making inquiry and a reasonably specific response impossible.**

229.   Admit that live calls transferred from third parties and connected to Pandora call centers and answered by Pandora "specialists."

**RESPONSE : Pandora objects to this request as unreasonably vague and ambiguous. This Request appears to refer to any "live call" transferred from any "third party" making inquiry and a reasonably specific response impossible.**

230.   Admit that Pandora engages or has engaged in advertising on Facebook.

**RESPONSE : Admit.**

231.   Admit that Pandora's Facebook advertising generates or has generated inbound sales leads .

**RESPONSE : Admit.**

232.   Admit that sales leads generated from Pandora's Facebook advertising are in the form of inbound telephone calls from potential customers.

**RESPONSE : Admit.**

233.   Admit that Pandora engages or has engaged in advertising on television.

**RESPONSE : Object. Pandora has already responded to this Request. See Pandora's Response to Plaintiffs' Request # 7 and Request # 42.**

234.   Admit that Pandora's television advertising generates or has generated inbound sales leads.

**RESPONSE : Admit.**

235.   Admit that sales leads generated from Pandora's television advertising are in the form of

3

inbound telephone calls from potential customers.

**RESPONSE : Admit.**

236. Admit that Pandora engages or has engaged in in advertising on radio.

**RESPONSE :Object. Pandora has already responded to this Request. See Pandora's Response to Plaintiffs' Request # 40.**

237. Admit that Pandora's radio advertising generates or has generated inbound sales leads.

**RESPONSE : Admit.**

238. Admit that sales leads generated from Pandora's radio advertising are in the form of inbound telephone calls from potential customers.

**RESPONSE :Admit.**

239. Admit that Pandora maintains a website for advertising purposes.

**RESPONSE :Admit.**

240. Admit that Pandora's website generates or has generated inbound sales leads.

**RESPONSE :Admit.**

241. Admit that sales leads generated from Pandora's website are in the form of inbound telephone calls from potential customers .

**RESPONSE :Admit.**

242. Admit that sales leads may take the form of inbound telephone calls from potential customers .

**RESPONSE :Admit.**

243. Admit that inbound telephone calls from potential customers are received by Pandora's "specialists."

**RESPONSE :Admit.**

244. Admit that Pandora's "specialists" lack authority to execute agreements between Pandora and potential customers.

**RESPONSE :Admit.**

245. Admit that Pandora's "specialists" schedule potential customers to speak with Pandora's " analysts."

**RESPONSE :Admit.**

246. Admit that Pandora's "analysts" deliver sales presentations to potential customers.

**RESPONSE : Admit that from time to time "analysts" have delivered sales presentations to potential customers.**

247. Admit that the purpose of Pandora's "analyst" sales presentation is to obtain new customers .

4

**RESPONSE : Admit.**

248.   Admit that Pandora's "analyst" presentations describe the services that Pandora wishes to sell to potential customers.

**RESPONSE : Admit.**

249.   Admit that Pandora's "analysts" provide potential customers with unsigned services agreements for timeshare owners to execute.

**RESPONSE : Admit.**

250.   Admit that Pandora's "analysts" execute services agreements on behalf of Pandora.

**RESPONSE : Admit.**

251.   Admit that Pandora's "analysts" receive a sales commission associated with every timeshare owner they speak with that executes an agreement with Pandora.

**RESPONSE : Admit.**

252.   Admit that Pandora's "specialists" receive a sales commission associated with every timeshare owner they speak with that executes an agreement with Pandora.

**RESPONSE : Admit.**

253.   Admit that Pandora customers executed contracts with Pandora only after the " analyst" sales presentation.

**RESPONSE :Deny** .

254.   Admit that a purpose of the "analyst" sales presentation is to influence timeshare owners to buy Pandora's services .

**RESPONSE : Admit.**

255.   Admit that the analysts that deliver the sales presentations use similar language in each presentation .

**RESPONSE : After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request. Admitted to the extent that Analysts are expected to hue closely to a script that changes over time but Pandora has no reasonable way to review each and every analysis call to admit or deny this request generally.**

256.   Admit that Pandora holds meetings with its "analysts" wherein there is discussion on the content of the "analyst" sales presentation .

**RESPONSE :Admit.**

257.   Admit that Pandora instructs analysts on how to deliver certain portions of the analyst sales presentations .

**RESPONSE :After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

258.   Admit that Pandora's "analyst" sales presentations describe services to be rendered by an attorney.

   **RESPONSE** : **Admit.**

259.   Admit that Pandora's "analyst" sales presentations refer to a potential "case" on behalf of a timeshare owner.

   **RESPONSE** : **Admit.**

260.   Admit that portions of the analyst sales presentations are the same for each potential customer .

   **RESPONSE** : **Admit.**

261.   Admit that all of Pandora's advertising ultimately funnels potential owners to an " analyst" sales presentation.

   **RESPONSE** : **Pandora objects to this request as unreasonably vague and ambiguous.  What Plaintiffs mean by ultimately funnels is unclear and it is also not clear what Plaintiffs refer to when they refer to "advertising" .**

262.   Admit that the act of an attorney, to which Pandora refers its customers, sending a demand letter to a timeshare developer on behalf of such customers is insufficient to relieve such customers of any obligations pursuant to a contract with such developer.

   **RESPONSE** : **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

263.   Admit that Pandora instructs timeshare owners that Pandora and/or the attorneys to which Pandora refers its customers are better able to terminate a timeshare interest if the timeshare owner ceases payment owed on their timeshare interest.

   **RESPONSE** : **Deny.**

264.   Admit that Slattery was aware that Pandora engaged in advertising?

   **RESPONSE** : **Admit.**

265.   Admit that Slattery was aware that Pandora engaged in telephonic solicitation of timeshare owners?

   **RESPONSE** : **Admit.**

266.   Admit that Slattery never placed any restrictions on the content of Pandora's advertising?

   **RESPONSE :Admit.**

267.   Admit that Slattery has advised Pandora that he is more likely to be able to get timeshare owners out of their timeshare interests if they cease payment.

   **RESPONSE :After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

268.   Admit that Pandora could not provide the services it advertises in the "analyst" sales presentation without referral of its customers to an attorney.

**RESPONSE : Admit as to those services requiring an attorney, otherwise denied.**

269.    Admit that the services rendered by Carlsbad Law on behalf of timeshare owners referred from Pandora to Carlsbad Law include only the delivery to timeshare developers of a cease and desist letter and the delivery of a written demand letter.

    **RESPONSE : Deny.**

270.    Admit that Pandora has no contact or communication with timeshare developers on behalf of its customers.

    **RESPONSE :After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

271.    Admit that ultimate goal of services advertised by Pandora is for the potential owner to cease payment owed pursuant to their timeshare interest.

    **RESPONSE : Deny.**

272.    Admit that absent a contract between Pandora's customers and a timeshare developer, such customer's would have no need for Pandora's services.

    **RESPONSE : Deny**

273.    Admit that Pandora drafted scripts related to credit management or credit restoration .

    **RESPONSE : Admit.**

274.    Admit that Pandora has communicated to customers or potential customers an ability to remediate damages to such customer or potential customer's credit profile.

    **RESPONSE :Deny.**

275.    Admit that Pandora employs a practice known as "tradeline blocking".

    **RESPONSE** : **Deny.**

276.    Admit that Pandora referred customers to third-parties that employ a practice known as "tradeline blocking."

    **RESPONSE** : **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

277.    Admit that Slattery has communicated to Pandora that he does not want referrals of customers from Pandora that have not been provided tradeline blocking services .

    **RESPONSE** : **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

278.    Admit that Carlsbad relies on Pandora to advise timeshare owners in regard to the "trade block" services?

    **RESPONSE** : **After a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

279.   Admit that Pandora does not provide its customers with any documentation containing the following language:

"Consumer Credit File Rights Under State and Federal Law

"You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate, negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

"You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

"You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:
              "The Public Reference Branch
              "Federal Trade Commission
              "Washington, D.C. 20580".

**RESPONSE: Pandora objects to this Request as ambiguous because it is unclear whether Plaintiffs are asking whether this language is contained verbatim or in part.**

280.  Admit that written agreements between Pandora and its customers fail to include in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, a statement which reads as follows: "You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

**RESPONSE: Pandora objects to this Request as ambiguous because it is unclear whether Plaintiffs are asking whether this language is contained verbatim or in part.**

Dated: April 29, 2022

NARDELLA & NARDELLA, PLLC

_/s/ John Bennett_
John J. Bennett, Esq.
Email: jbennett@nardellalaw.com
John M. Sykes, Esq.
Email: jsykes@nardellalaw.com
Email: nmacdougall@nardellalaw.com
Email: service@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Telephone: (407) 966-2680

and

BRADFORD EDWARDS AND VARLACK LLP

Patrick A. Bradford, Esq. (Pro Hae Vice)
Email: pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406

_Attorneys for Pandora Marketing, LLC d/b/a Timeshare Compliance, William Wilson a/k/a Bo Wilson, and Rich Folk_

10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of April, 2022, a true and correct copy of the foregoing has been served via email to all CM/ECF participants and otherwise served via U.S. Mail, upon the following non-CM/ECF Participants:

| | |
|---|---|
| Brian L. Wagner, Esq.<br>Email: bwagner@mateerharbert.com<br>Email: semerson@mateerharbert.com<br>W. Scott Gabrielson, Esq.<br>  Email: sgabrielson@mateerharbert.com<br>Email: Mstoutamire@mateerharbert.com<br>**MATEER & HARBERT, P.A.**<br>225 East Robinson Street, Suite 600<br>Orlando, FL 32801-2854<br>Telephone: 407-425-9044<br>Facsimile: 407-423-2016<br><br>*Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery* | Eric C. Christu, Esq.<br>Florida Bar No. 434647<br>echristu@shutts.com<br>**SHUTTS & BOWEN LLP**<br>200 South Biscayne Boulevard, Suite 4100<br>Miami, FL 33131<br>Telephone: (305) 358-6300<br>Facsimile: (305) 381-9982<br><br>*Attorneys for Plaintiffs* |
| Patrick James Thompson, Esq.<br>Email: law@patrickjthompson.com<br>Patrick Thompson Law P.A.<br>7025 County Road 46A PMB 432<br>Lake Mary, FL 32746-4721<br>Telephone: (407) 750-9000<br>Facsimile: (386) 675-1445<br>*Patrick Thompson, Pro Se*<br>Patrick J. Thompson, Esq.<br>Email: law@patrickjthompson.com<br>**PATRICK THOMPSON LAW P.A.**<br>201 Hilda Street, Ste. 23<br>Kissimmee, FL 34 7 41<br>Telephone: 407-750-9000<br>*Attorney for Timeshare Lawyers P.A.* | Alfred J. Bennington, Jr., Esq.<br>Florida Bar No. 0404985<br>bbennington@shutts.com<br>Glennys Ortega Rubin, Esq.<br>Florida Bar No. 556361<br>grubin@shutts.com<br>Michael Quinn, Esq.<br>Florida Bar No. 84587<br>mquinn@shutts.com<br>**SHUTTS & BOWEN LLP**<br>300 South Orange Avenue, Suite 1600<br>Orlando, Florida 32801<br>Telephone: (407) 835-6755<br>Facsimile: (407) 849-7255<br><br>*Attorneys for Plaintiffs* |

**NON-ECF PARTICIPANTS**

| | |
|---|---|
| Angela Consalvo Paul Stewart<br>588 Cobblestone Creek Drive<br>Boynton Beach, Florida 33472 | Paul Stewart<br>508 Harbor Blvd., #401<br>Destin, FL 32541 |
| MG&N Group LLC d/b/a National Credit Rehab<br>c/o Registered Agent Michael Consalvo<br>9502 Sun Pointe Drive Suite 150<br>Boynton Beach, Florida 33437 | VCF Enterprises, LLC<br>Rehab Attn: Catherine Tan<br>26970 Aliso Viejo Parkway, Suite 150<br>Aliso, CA 92656<br>Catherine@TSCompliance.com |
| Gallagher-Clifton LLC<br>508 Harbor Blvd., #401<br>Destin, FL 32541 | Paddy Deighan<br>2000 Fashion Show Drive, Unit 2222<br>Las Vegas, Neva 89109<br>Email: paddy@federalfinanciallawgroup.com |

    */s/ John Bennett*
John J. Bennett, Esq.

12

P-1393

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**Case No.: 1:20-cv-24681-RNS**

| | |
|---|---|
| BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation; and BLUEGREEN VACATIONS CORPORATION, a Florida corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TIMESHARE LAWYERS, P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, LLP, a Florida Corporation, et al., <br><br> Defendants. | |

**DEFENDANT, PANDORA MARKETING, LLC'S AMENDED REPONSES TO PLAINTIFFS' SECOND REQUEST FOR ADMISSIONS**

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's hereby provides its amended responses to certain of Plaintiffs' Second Requests for Admission dated April 29, 2022, in the above-referenced matter.

**AMENDED RESPONSES TO REQUESTS FOR ADMISSION**

228.  Admit that live calls transferred from third parties are connected to Pandora call centers.

 **RESPONSE: Admitted that live calls are transferred to Pandora employees from third parties.**

229.  Admit that live calls transferred from third parties and connected to Pandora call centers and answered by Pandora "specialists."

 **RESPONSE: Admitted that live calls are transferred to Pandora employees, including specialists, from third parties.**

257.  Admit that Pandora instructs analysts on how to deliver certain portions of the analyst sales presentations.

 **RESPONSE: Admitted that analysts are provided and expected to hue closely to a script that changes over time but Pandora has no reasonable way to review each and every analysis call to admit or deny this request generally.  To the extent this request is inquiring whether analysts are provided instructions on how to present their sales presentations beyond the text of a script, Pandora**

1

**admits that from time to time analysts are given advice and suggestions regarding how they should communicate with potential customers including how to deliver the scripted language.**

261.  Admit that all of Pandora's advertising ultimately funnels potential owners to an "analyst" sales presentation.

> **RESPONSE**:      **Pandora objects to this request as unreasonably vague and ambiguous.  What Plaintiffs mean by "ultimately funnels" is unclear and it is also not clear what, specifically, Plaintiffs refer to when they refer to "advertising." To the extent these terms are understood by Pandora, it is admitted that most potential customers who hire Pandora, regardless of how such potential customers comes to learn about Pandora's services, communicate with an analyst who delivers a sales presentation to such potential customers.**

276.  Admit that Pandora referred customers to third-parties that employ a practice known as "tradeline blocking."

> **RESPONSE**: **Admitted that Pandora formerly referred customers to a third party for credit protection services which used a term similar to or comparable to "tradeline blocking."**

277.   Admit that Slattery has communicated to Pandora that he does not want referrals of customers from Pandora that have not been provided tradeline blocking services.

> **RESPONSE**: **Admitted that Slattery requested that he be referred customers who had been offered credit protection services or referred to third parties who offer credit protection services.**

278.  Admit that Carlsbad relies on Pandora to advise timeshare owners in regard to the "trade block" services?

> **RESPONSE**: **Admitted that Slattery, of Carlsbad, requested that he be referred customers who had been offered credit protection services or referred to third parties who offer credit protection services.  To the extent this request is asking whether or not or to what extent Carlsbad "relies" on customers being offered credit protection services or being referred to third parties who offer credit protection services, after a reasonable inquiry, the information known or that can be readily obtained is insufficient to enable Pandora to admit or deny this Request.**

279.  Admit that Pandora does not provide its customers with any documentation containing the following language:

> "Consumer Credit File Rights Under State and Federal Law

> "You have a right to dispute inaccurate information in your credit report by contacting the credit bureau directly. However, neither you nor any 'credit repair' company or credit repair organization has the right to have accurate, current, and verifiable information removed from your credit report. The credit bureau must remove accurate,

2

negative information from your report only if it is over 7 years old. Bankruptcy information can be reported for 10 years.

"You have a right to obtain a copy of your credit report from a credit bureau. You may be charged a reasonable fee. There is no fee, however, if you have been turned down for credit, employment, insurance, or a rental dwelling because of information in your credit report within the preceding 60 days. The credit bureau must provide someone to help you interpret the information in your credit file. You are entitled to receive a free copy of your credit report if you are unemployed and intend to apply for employment in the next 60 days, if you are a recipient of public welfare assistance, or if you have reason to believe that there is inaccurate information in your credit report due to fraud.

"You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.

"You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.

"Credit bureaus are required to follow reasonable procedures to ensure that the information they report is accurate. However, mistakes may occur.

"You may, on your own, notify a credit bureau in writing that you dispute the accuracy of information in your credit file. The credit bureau must then reinvestigate and modify or remove inaccurate or incomplete information. The credit bureau may not charge any fee for this service. Any pertinent information and copies of all documents you have concerning an error should be given to the credit bureau.

"If the credit bureau's reinvestigation does not resolve the dispute to your satisfaction, you may send a brief statement to the credit bureau, to be kept in your file, explaining why you think the record is inaccurate. The credit bureau must include a summary of your statement about disputed information with any report it issues about you.

"The Federal Trade Commission regulates credit bureaus and credit repair organizations. For more information contact:
"The Public Reference
Branch "Federal Trade
Commission "Washington,
D.C. 20580".

**RESPONSE: Admitted that the quoted language does not appear in total, verbatim, in any documentation that Pandora provides to its customers.**

280.   Admit that written agreements between Pandora and its customers fail to include in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, a statement which reads as follows: "You may cancel this contract without penalty or

3

obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right."

**RESPONSE: Admitted that written agreements between Pandora and its customers do not include the quoted language, in total, verbatim.**

Dated: May 24, 2022

**NARDELLA & NARDELLA, PLLC**

*/s/ John J. Bennett*
John J. Bennett, Esq.
Email: jbennett@nardellalaw.com
nmacdougall@nardellalaw.com
service@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Telephone: (407) 966-2680

and

**BRADFORD EDWARDS AND VARLACK LLP**

Patrick A. Bradford, Esq. (Pro Hae Vice)
Email: pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406

*Attorneys for Pandora Marketing, LLC d/b/a
Timeshare Compliance, William Wilson a/k/a
Bo Wilson, and Rich Folk*

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of May, 2022, a true and correct copy of the foregoing has been served via email to all CM/ECF participants and otherwise served via U.S. Mail, postage prepaid, upon the non-CM/ECF Participants as indicated below:

| | |
|---|---|
| Brian L. Wagner, Esq.<br>Email: bwagner@mateerharbert.com<br>Email: semerson@mateerharbert.com<br>W. Scott Gabrielson, Esq.<br>Email: sgabrielson@mateerharbert.com<br>Email: Mstoutamire@mateerharbert.com<br>**MATEER & HARBERT, P.A.**<br>225 East Robinson Street, Suite 600<br>Orlando, FL 32801-2854<br>Telephone: 407-425-9044<br>Facsimile: 407-423-2016<br><br>*Attorneys for Carlsbad Law Group, LLP and JL "Sean " Slattery* | Eric C. Christu, Esq.<br>Florida Bar No. 434647<br>echristu@shutts.com<br>**SHUTTS & BOWEN LLP**<br>200 South Biscayne Boulevard, Suite 4100<br>Miami, FL 33131<br>Telephone: (305) 358-6300<br>Facsimile: (305) 381-9982<br><br>*Attorneys for Plaintiffs* |
| Patrick James Thompson, Esq.<br>Email: law@patrickjthompson.com<br>Patrick Thompson Law P.A.<br>7025 County Road 46A PMB 432<br>Lake Mary, FL 32746-4721<br>Telephone: (407) 750-9000<br>Facsimile: (386) 675-1445<br>*Patrick Thompson, Pro Se*<br>Patrick J. Thompson, Esq.<br>Email: law@patrickjthompson.com<br>**PATRICK THOMPSON LAW P.A.**<br>201 Hilda Street, Ste. 23<br>Kissimmee, FL 34 7 41<br>Telephone: 407-750-9000<br>*Attorney for Timeshare Lawyers P.A.* | Alfred J. Bennington, Jr., Esq.<br>Florida Bar No. 0404985<br>bbennington@shutts.com<br>Glennys Ortega Rubin, Esq.<br>Florida Bar No. 556361<br>grubin@shutts.com<br>Michael Quinn, Esq.<br>Florida Bar No. 84587<br>mquinn@shutts.com<br>**SHUTTS & BOWEN LLP**<br>300 South Orange Avenue, Suite 1600<br>Orlando, Florida 32801<br>Telephone: (407) 835-6755<br>Facsimile: (407) 849-7255<br><br>*Attorneys for Plaintiffs* |

**NON-ECF PARTICIPANTS**

| | |
|---|---|
| Angela Consalvo Paul Stewart<br>588 Cobblestone Creek Drive<br>Boynton Beach, Florida 33472 | Paul Stewart<br>508 Harbor Blvd., #401<br>Destin, FL 32541 |
| MG&N Group LLC d/b/a National Credit Rehab<br>c/o Registered Agent Michael Consalvo<br>9502 Sun Pointe Drive Suite 150<br>Boynton Beach, Florida 33437 | VCF Enterprises, LLC<br>Rehab Attn: Catherine Tan<br>26970 Aliso Viejo Parkway, Suite 150<br>Aliso, CA 92656<br>Catherine@TSCompliance.com |
| Gallagher-Clifton LLC<br>508 Harbor Blvd., #401<br>Destin, FL 32541 | Paddy Deighan<br>2000 Fashion Show Drive, Unit 2222<br>Las Vegas, Neva 89109<br>Email: paddy@federalfinanciallawgroup.com |

*/s/ John J. Bennett*
John J. Bennett, Esq.

P-1395

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

---

BLUEGREEN    VACATIONS    UNLIMITED,
INC., *et al.*,

      Plaintiffs,

v.                                                                 Case No.: 1:20-cv-24681-RNS

TIMESHARE LAWYERS P.A. d/b/a FEDERAL
FINANCIAL LAW GROUP, *et al.*,

      Defendants.

---

**DEFENDANTS' PANDORA MARKETING, LLC'S**
**RESPONSE TO PLAINTIFFS' THIRD REQUEST FOR ADMISSION**

    Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to

Plaintiffs' Third Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure,

by undersigned counsel, hereby responds to Plaintiffs' Third Requests for Admission dated

August 8, 2022, in the above-referenced matter.

**REQUESTS FOR ADMISSION**

281.    Admit that Adan and/or Channell Blevins are or were customers of Pandora Marketing.

    **RESPONSE:  Denied.**

282.    Admit that Albert and/or Nicole Renshaw are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

283.    Admit that Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano are or were customers
of Pandora Marketing.

    **RESPONSE: Admitted.**

284.    Admit that Amanda and/or Eric Olsen are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

285.     Admit that Angela T. and/or Angela J. Buchanan are or were customers of Pandora Marketing.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan.**

286.     Admit that Anthony and/or Ashley Tilahun are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

287.     Admit that Anthony Fisher and/or Senora Harris are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

288.     Admit that Anthony L. and/or Melissa J. Church are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

289.     Admit that Anthony R. Murphy and/or Nancy L. Satterlee are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

290.     Admit that April Joy Worthington, Chad Alan Vincent is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

291.     Admit that Arnold A. Gittens and/or Greta Stuart-Gittens are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

292.     Admit that Autumn Romain is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

293.     Admit that Beatriz Astencio and/or Roberto Cedeno are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

294.     Admit that Betty J. Adams is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

295.     Admit that Billy and/or Mary H. Hays are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

296.     Admit that Billy W. Garner is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

297.     Admit that Bobbie E. and/or Alice L. McNeil are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

298.     Admit that Bobby and/or Leanna Harmon are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

299.     Admit that Bradley and/or Amy Selvey are or were customers of Pandora Marketing.

**RESPONSE: Denied.**

300.     Admit that Brandy and/or Kyle Griffin are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

301.     Admit that Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

302.     Admit that Brent and/or Lynette King are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

303.     Admit that Bryan and/or Elizabeth Catherine Espinosa are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

304.     Admit that Candace Hollins-Brokaw and/or Jeffrey Brokaw are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

305.     Admit that Celestine G Carter and/or Haru Carter Jr. are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

306.     Admit that Chao Xiong is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

307.     Admit that Chao Xiong and/or Aimee Lee are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

308.     Admit that Charlene and/or Charly Brown are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

309.     Admit that Charles and/or Sherry Terry are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

310.     Admit that Charles Govan is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

311.    Admit that Cheresa and/or Jose Ramon are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

312.    Admit that Cheryll Craigie is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

313.    Admit that Christopher Dwayne Shivers and/or Katie Rochelle Shivers are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

314.    Admit that Claribell Soiza is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

315.    Admit that Colleen and/or David Bolanowski are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

316.    Admit that Cyril and/or Debra Guild are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

317.    Admit that Dale Greenley is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

318.    Admit that Damon L. and/or Sherita Perry are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

319.    Admit that Daniel and/or Cheryl Burns are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

320.    Admit that Danny and/or Christina Cormier are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

321.    Admit that Darrin Hartman is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

322.    Admit that David and/or Barbara Mitchell Sr. are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

323.    Admit that David and/or Karen Sprague are or were customers of Pandora Marketing.

**RESPONSE: Denied.**

324.    Admit that Dean and/or Margaretta Garlinghouse are or were customers of Pandora Marketing.

**RESPONSE: Denied.**

325.   Admit that Deborah Leanne Truelove and/or Terry Efurd are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

326.   Admit that Demetrius Baytop and/or Carla Kitchel are or were customers of Pandora Marketing.

    **RESPONSE: Denied.**

327.   Admit that Denise Nelson-Smith and/or Willie E. Smith are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

328.   Admit that Dennis D. and/or Vicki Mitchell are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

329.   Admit that Derrick and/or Debra J. Braswell are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

330.   Admit that Derrick Marshall is or was a customer of Pandora Marketing.

    **RESPONSE: Admitted.**

331.   Admit that Donald and/or Lisa Craig are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

332.   Admit that Donald J. Thomas is or was a customer of Pandora Marketing.

    **RESPONSE: Admitted.**

333.   Admit that Donnie and/or Christine Brown are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

334.   Admit that Dorothy Fizer Lucas and/or Clifton D. Lucas are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

335.   Admit that Dorothy Hale is or was a customer of Pandora Marketing.

    **RESPONSE: Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

336.   Admit that Earl S. and/or Caitlin A. Abercrombie are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

337. Admit that Eduardo A. and/or Stacy L. Rodriguez are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

338. Admit that Edward and/or Maria Streckfus are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

339. Admit that Elijah T. and/or Tiffany K. Ireland are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

340. Admit that Elizabeth and/or Gerardo Sepulveda are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

341. Admit that Emma Stubblefield is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

342. Admit that Erickson Thomas is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

343. Admit that Erin Marconi and/or Jeremy McCoy is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

344. Admit that Ernesto and/or Yolanda S. Pacheco are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

345. Admit that Eugene and/or Brenda K. Combs are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

346. Admit that Eva Steskal Thoms and/or Richard Gordan Thoms are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

347. Admit that Fetu and/or William Bruhnke are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

348. Admit that Fidencio Martinez and/or C. Victoria Llanos are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

349. Admit that Frank J and/or Ingrid H Bernard are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

350.    Admit that Garry and/or Deborah Barrett are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

351.    Admit that Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

352.    Admit that Gene and/or Sharon Ballantyne are or were customers of Pandora Marketing.

    **RESPONSE**: **Admitted.**

353.    Admit that George William and/or Roxane Brown are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

354.    Admit that Gerald and/or Sheila Barnett are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

355.    Admit that Glenda Petersen and/or Michael Bohley are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

356.    Admit that Glenwood C. Simmons and/or Vicki G. Fisher are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

357.    Admit that Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/or William Kenneth McCutcheon are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

358.    Admit that Gregory Cyrus and/or Christy Cyrus are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

359.    Admit that Heather and/or Justin Wiezorek are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

360.    Admit that Herman Shannon and/or Kelly Schmitt are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

361.    Admit that Herschel Lee Shawver and/or Paula Lisle Shawver are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

362.    Admit that Ismael Valdespino Ortega and/or Yesenia Moran Mendoza are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

363.    Admit that Jack A and/or Pamela J Rickett are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

364.    Admit that Jackie Glenn and/or Brenda Carol Furnace are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

365.    Admit that James and/or Debora Davidson are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

366.    Admit that James and/or Debra Loveless are or were customers of Pandora Marketing.

**RESPONSE: Admitted that initial agreements were signed.  Denied as to payment of further acceptance of agreement.**

367.    Admit that James and/or Kristin Schupp are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

368.    Admit that James F. Cullison and/or Amanda L. Reatherford are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

369.    Admit that James L. and/or Debra J. Neideffer are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

370.    Admit that James R. and/or Sheila Waltrip are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

371.    Admit that James Taylor Brooks and/or Jacqueline Smith-Brooks are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

372.    Admit that Jamie Mayle and/or Sahara Alonzo are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

373.    Admit that Jeffrey and/or Anna Westby are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

374.    Admit that Jeffrey and/or Jennifer Clark are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

375.   Admit that Jennifer McCullough is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

376.   Admit that Jeremy and/or Darla Lathrem are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

377.   Admit that Jerene L. Nutter is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

378.   Admit that Jerry and/or Tammy Johnson are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

379.   Admit that Jerry Ray Rosewell and/or Hollye Elaine Rosewell are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

380.   Admit that Jesse and/or Jordan Harding are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

381.   Admit that Jimmy and/or Mary Phillips are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

382.   Admit that Jody and/or Diana Jones are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

383.   Admit that John Beth and/or Cristal Advincula are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

384.   Admit that John T Carey, Jr and/or Samantha M Carey are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

385.   Admit that John Woods and/or Harriet Woods are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

386.   Admit that Jonathan and/or Samantha Castelblanco are or were customers of Pandora Marketing.

**RESPONSE: Denied.**

387.    Admit that Jose Antonio Baez and/or Beronica Ibarra are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

388.    Admit that Joseph and/or Rosalie Laskos are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

389.    Admit that Joseph Bernard and/or Marilou Gamara Tejchman are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

390.    Admit that Joshua and/or Megan Freed are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

391.    Admit that Judith Abbott and/or Brenda Fox are or were customers of Pandora Marketing.

    **RESPONSE: Denied.**

392.    Admit that JudyAnn Jones and/or Harvey Dennis Robinson are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

393.    Admit that Julian Laureano Rosales and/or Guadalupe Coyt are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

394.    Admit that Justin Mason and/or Kaitlyn Pieratt are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

395.    Admit that Karen Tibwell Wallace and/or Aubry Gary Wallace are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

396.    Admit that Keegan Giles and/or Lakisha Giles are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

397.    Admit that Kenneth B, Cardwell and/or Michelle L. Mock are or were customers of Pandora Marketing.

    **RESPONSE: Admitted.**

398.    Admit that Kimberly L. Howard is or was a customer of Pandora Marketing.

    **RESPONSE: Admitted.**

399.    Admit that Kimberly McClain is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

400.    Admit that Kinda Grant is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

401.    Admit that Kristy and/or Greg DeMarcus are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

402.    Admit that Kyle Allen is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

403.    Admit that Lauren and/or Jeffery McCullough are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

404.    Admit that Linda and/or Manuel Aguinaga are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

405.    Admit that Linda Danis and/or William Danis are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

406.    Admit that Linda M. and/or Robert L. Mclaughlin are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

407.    Admit that Lisa Billie is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

408.    Admit that Lisa Oxton is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

409.    Admit that Londa Byrd is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

410.    Admit that Maria and/or Edward Streckfus are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

411.    Admit that Mark and/or Laura Campbell are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

412.    Admit that Mark and/or Sue Brewer are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

413.    Admit that Mark A. Loken and/or Amelia M. Loken are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

414.    Admit that Marvin S. Cook is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

415.    Admit that Mathew L. Spencer and/or Christie N. Fasick are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

416.    Admit that Matthew and/or Nathalia Timmins are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

417.    Admit that Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

418.    Admit that Megan and/or Anthony Bunch are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

419.    Admit that Melissa and/or Erik Pond are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

420.    Admit that Melissa Stenberg is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

421.    Admit that Michael and/or Ruth Eldridge are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

422.    Admit that Michael B. and/or Regilyn P. Johnson are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

423.    Admit that Michael Denis and/or Claudia Leon are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

424.    Admit that Miguel A Astudillo and/or Gloria Elena Astudillo are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

425.    Admit that Mitchell Leigh Marston and/or Megan R. Marston are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

426.   Admit that Nakisha and/or Sandra Lockhart are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

427.   Admit that Nancy Lynn Braun and/or Bobby Earl Braun are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

428.   Admit that Norman K. Athy Jr. and/or Terri L. Leamy are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

429.   Admit that Norris and/or Faye Horton are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

430.   Admit that Pamela Franklin is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

431.   Admit that Patricia O'Neal-Mellen is or was a customer of Pandora Marketing.

**RESPONSE:  Denied.**

432.   Admit that Paul and/or Melinda Jacobs is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

433.   Admit that Paul and/or Shirley Prosek is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

434.   Admit that Randall E. Owens and/or Tanya R. Owens are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

435.   Admit that Randy C. and/or Jonnie S. Driver are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

436.   Admit that Ray Yorker Jr. is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

437.   Admit that Raymond and/or Viola Nault are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

438.   Admit that Rebecca and/or Ricky Jones are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

439.    Admit that Rhonda and/or George Dixon are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

440.    Admit that Ricky and/or Lynn Oberlender are or were customers of Pandora Marketing.

**RESPONSE: Denied.**

441.    Admit that Rita Patient and/or Charles Butler are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

442.    Admit that Robert N. and/or Patricia B. Watson are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

443.    Admit that Robert Scott Yaikow and/or Amy Medders Yaikow are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

444.    Admit that Robert Whitaker and/or Karen Scott are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

445.    Admit that Roger P. and/or Angela B. Hays are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

446.    Admit that Ronald and/or Loretta Hardeman are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

447.    Admit that Ronda and/or Samuel Herrington are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

448.    Admit that Rosana E. Narvaez-Colon is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

449.    Admit that Roy and/or Deborah Ashby are or were customers of Pandora Marketing.

**RESPONSE:  Denied.**

450.    Admit that Ruben Ortega and/or Adriana Cota are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

451.    Admit that Ryan and/or Suzanne Mailhiot are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

452.   Admit that Samuel J. and/or Dana M. Bollinger are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

453.   Admit that Sandra and/or Thomas J. Lawson are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

454.   Admit that Sarah and/or Eric Chambers are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

455.   Admit that Scott and/or Tammy Bomkamp are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

456.   Admit that Shannon and/or William Meredith are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

457.   Admit that Sherry Helton is or was a customer of Pandora Marketing.

   **RESPONSE: Admitted that initial agreements were signed.  Denied as to payment of further acceptance of agreement.**

458.   Admit that Sierra Tebeau Sherry is or was a customer of Pandora Marketing.

   **RESPONSE: Admitted.**

459.   Admit that Sierra Tebeau-Sherri and/or Nikolas Beardsworth are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

460.   Admit that Simbarashe Murengami is or was a customer of Pandora Marketing.

   **RESPONSE: Admitted.**

461.   Admit that Steve and/or Rosalyn Moorehead are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

462.   Admit that Stuart and/or Bethany Roberts are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

463.   Admit that Tamikka Lashaun Portee and/or Vanessa Shavan Porter are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

464.   Admit that Tammy Kay and/or Phillip Lee Salmans are or were customers of Pandora Marketing.

   **RESPONSE: Admitted.**

465.    Admit that Taury Person and/or Shannon Person are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

466.    Admit that Terry and/or Dalila Kennedy are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

467.    Admit that Theresa and/or David Barnewall are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

468.    Admit that Theresa and/or Gregory Dunn are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

469.    Admit that Tim and/or Tina Bullock are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

470.    Admit that Timothy C. and/or Julie A. Creekmur are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

471.    Admit that Urban and/or Cheryl Lanser are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

472.    Admit that Victor Schexnayder is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

473.    Admit that Victoria and/or Donald McKenney are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

474.    Admit that Wayne and/or Shirley Norland are or were customers of Pandora Marketing.

**RESPONSE: Admitted.**

475.    Admit that Wendell B. Taylor is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

476.    Admit that Weylen and/or Emily Gibson are or were customers of Pandora Marketing.

**RESPONSE: Admitted that initial agreements were signed.  Denied as to full customer; client was refunded money.**

477.    Admit that Willie and/or Velma Waters is or was a customer of Pandora Marketing.

**RESPONSE: Admitted.**

Dated:  September 7, 2022.　　　　**NARDELLA & NARDELLA, PLLC**

　　　　　　　　　　　　　　　　*/s/ John J. Bennett*　　　　　　　　　

　　　　　　　　　　　　　　　　John J. Bennett, Esq.
　　　　　　　　　　　　　　　　jbennett@nardellalaw.com
　　　　　　　　　　　　　　　　nmacdougall@nardellalaw.com
　　　　　　　　　　　　　　　　service@nardellalaw.com
　　　　　　　　　　　　　　　　135 W. Central Blvd., Suite 300
　　　　　　　　　　　　　　　　Orlando, FL  32801
　　　　　　　　　　　　　　　　Telephone: (407) 966-2680

　　　　　　　　　　　　　　　　- and –

　　　　　　　　　　　　　　　　**BRADFORD EDWARDS AND VARLACK
　　　　　　　　　　　　　　　　LLP**
　　　　　　　　　　　　　　　　Patrick A. Bradford, Esq. (*Pro Hac Vice*)
　　　　　　　　　　　　　　　　pbradford@bradfordedwards.com
　　　　　　　　　　　　　　　　112 East 49th Street, 11th Floor
　　　　　　　　　　　　　　　　New York, NY 10017
　　　　　　　　　　　　　　　　Telephone: (917) 671-9406

　　　　　　　　　　　　　　　　*Attorneys for Pandora Marketing, LLC d/b/a
　　　　　　　　　　　　　　　　Timeshare Compliance, William Wilson a/k/a Bo
　　　　　　　　　　　　　　　　Wilson, and Rich Folk*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 7TH day of September 2022, a true and correct copy of the foregoing has been served via electronic mail to the following CM/ECF Participants and via U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**　　　　　　　　　**MATEER & HARBERT, P.A.**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
 mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255


*Attorneys for Plaintiffs*

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016


*Attorneys for Carlsbad Law Group, LLP
and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000


*Attorney for Timeshare Lawyers P.A.*

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445


*Patrick Thompson, Pro Se*

## **NON-ECF PARTICIPANTS**

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

*/s/ John Bennett*
**John Bennett, Esq.**

# P-1397

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>TIMESHARE LAWYERS P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, *et al.*,<br><br>    Defendants. | Case No.: 1:20-cv-24681-RNS |

## DEFENDANTS' PANDORA MARKETING, LLC'S
## <u>RESPONSE TO PLAINTIFFS' FOURTH REQUEST FOR ADMISSION</u>

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to Plaintiffs' Fourth Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure, by undersigned counsel, hereby responds to Plaintiffs' Fourth Requests for Admission dated August 8, 2022, in the above-referenced matter.

## <u>REQUESTS FOR ADMISSION</u>

478.  Admit that Adan and/or Channell Blevins executed a "Timeshare Compliance Services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

479.  Admit that Albert and/or Nicole Renshaw executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/13/2019.

**RESPONSE: Admitted.**

480.  Admit that Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/8/2017.

**RESPONSE: Admitted.**

481.    Admit that Amanda and/or Eric Olsen executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/13/2019.

**RESPONSE: Admitted.**

482.    Admit that Angela T. and/or Angela J. Buchanan executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/25/2019.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan.**

483.    Admit that Anthony and/or Ashley Tilahun executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/13/2019.

**RESPONSE: Admitted.**

484.    Admit that Anthony Fisher and/or Senora Harris executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/25/2020.

**RESPONSE: Admitted.**

485.    Admit that Anthony L. and/or Melissa J. Church executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/3/2020.

**RESPONSE: Admitted.**

486.    Admit that Anthony R. Murphy and/or Nancy L. Satterlee executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/30/2018.

**RESPONSE: Admitted.**

487.    Admit that April Joy Worthington and/or Chad Alan Vincent executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/17/2020.

**RESPONSE: Admitted.**

488.    Admit that Arnold A. Gittens and/or Greta Stuart-Gittens executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/4/2018.

**RESPONSE: Admitted.**

489.    Admit that Autumn Romain executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/28/2018.

**RESPONSE: Admitted.**

490.    Admit that Beatriz Astencio and/or Roberto Cedeno executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/24/2020.

**RESPONSE: Admitted.**

491.    Admit that Betty J. Adams executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/8/2020.

**RESPONSE: Admitted.**

492.    Admit that Billy and/or Mary H. Hays executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/2/2019.

**RESPONSE: Admitted.**

493.    Admit that Billy W. Garner executed a "Timeshare Compliance Services Agreement" with Pandora Marketing on 1/18/2019.

**RESPONSE: Admitted.**

494.    Admit that Bobbie E. and/or Alice L. McNeil executed a "Timeshare Compliance Services Agreement" with Pandora Marketing on 2/20/2020.

**RESPONSE: Admitted.**

495.    Admit that Bobby and/or Leanna Harmon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/26/2020.

**RESPONSE: Admitted.**

496.    Admit that Bradley and/or Amy Selvey executed a "Timeshare Compliance Services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

497.    Admit that Brandy and/or Kyle Griffin executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/28/2020.

**RESPONSE: Admitted.**

498.    Admit that Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/11/2019.

**RESPONSE: Admitted.**

499.    Admit that Brent and/or Lynette King executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/9/2020.

**RESPONSE: Admitted.**

500.    Admit that Bryan and/or Elizabeth Catherine Espinosa executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/2/2019.

**RESPONSE: Admitted.**

501.    Admit that Candace Hollins-Brokaw and/or Jeffrey Brokaw executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/16/2020.

**RESPONSE: Admitted.**

502.    Admit that Celestine G Carter and/or Haru Carter Jr. executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/24/2019.

**RESPONSE: Admitted.**

503.    Admit that Chao Xiong executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/11/2021.

**RESPONSE: Admitted.**

504.    Admit that Chao Xiong and/or Aimee Lee executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/11/2021.

**RESPONSE: Admitted.**

505.    Admit that Charlene and/or Charly Brown executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/18/2019.

**RESPONSE: Admitted.**

506.    Admit that Charles and/or Sherry Terry executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/25/2020.

**RESPONSE: Admitted.**

507.   Admit that Charles Govan executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/20/2019.

**RESPONSE: Admitted.**

508.   Admit that Cheresa and/or Jose Ramon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/2/2018.

**RESPONSE: Admitted.**

509.   Admit that Cheryll Craigie executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/3/2018.

**RESPONSE: Admitted.**

510.   Admit that Christopher Dwayne Shivers and/or Katie Rochelle Shivers executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/3/2017.

**RESPONSE: Admitted.**

511.   Admit that Claribell Soiza executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/9/2020.

**RESPONSE: Admitted.**

512.   Admit that Colleen and/or David Bolanowski executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/2/2019.

**RESPONSE: Admitted.**

513.   Admit that Cyril and/or Debra Guild executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/30/2018.

**RESPONSE: Admitted.**

514.   Admit that Dale Greenley executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/15/2018.

**RESPONSE: Admitted.**

515.   Admit that Damon L. and/or Sherita Perry executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/21/2020.

**RESPONSE: Admitted.**

516.     Admit that Daniel and/or Cheryl Burns executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/12/2020.

**RESPONSE: Admitted.**

517.     Admit that Danny and/or Christina Cormier executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/6/2018.

**RESPONSE: Admitted.**

518.     Admit that Darrin Hartman executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/5/2020.

**RESPONSE: Admitted.**

519.     Admit that David and/or Barbara Mitchell Sr. executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/13/2016.

**RESPONSE: Admitted.**

520.     Admit that David and/or Karen Sprague executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/31/2020.

**RESPONSE: Denied.**

521.     Admit that Dean and/or Margaretta Garlinghouse executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/23/2017.

**RESPONSE: Denied.**

522.     Admit that Deborah Leanne Truelove and/or Terry Efurd executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/15/2020.

**RESPONSE: Admitted.**

523.     Admit that Demetrius Baytop and/or Carla Kitchel executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/16/2020.

**RESPONSE: Denied.**

524.     Admit that Denise Nelson-Smith and/or Willie E. Smith executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/15/2020.

**RESPONSE: Admitted.**

525.   Admit that Dennis D. and/or Vicki Mitchell executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/24/2017.

**RESPONSE: Admitted.**

526.   Admit that Derrick and/or Debra J. Braswell executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/14/2020.

**RESPONSE: Admitted.**

527.   Admit that Derrick Marshall executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/24/2020.

**RESPONSE: Admitted.**

528.   Admit that Donald and/or Lisa Craig executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/17/2019.

**RESPONSE: Admitted.**

529.   Admit that Donald J. Thomas executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 1/31/2019.

**RESPONSE: Admitted.**

530.   Admit that Donnie and/or Christine Brown executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/2/2019.

**RESPONSE: Admitted.**

531.   Admit that Dorothy Fizer Lucas and/or Clifton D. Lucas executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/9/2020.

**RESPONSE: Admitted.**

532.   Admit that Dorothy Hale executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/21/2019.

**RESPONSE: Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

533.   Admit that Earl S. and/or Caitlin A. Abercrombie executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/26/2017.

**RESPONSE: Admitted.**

534.    Admit that Eduardo A. and/or Stacy L. Rodriguez executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/30/2019.

**RESPONSE: Admitted.**

535.    Admit that Edward and/or Maria Streckfus executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/21/2017.

**RESPONSE: Admitted.**

536.    Admit that Elijah T. and/or Tiffany K. Ireland executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/26/2019.

**RESPONSE: Admitted.**

537.    Admit that Elizabeth and/or Gerardo Sepulveda executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/19/2019.

**RESPONSE: Admitted.**

538.    Admit that Emma Stubblefield executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/5/2020.

**RESPONSE: Admitted.**

539.    Admit that Erickson Thomas executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/27/2019.

**RESPONSE: Admitted.**

540.    Admit that Erin Marconi and/or Jeremy McCoy executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/21/2020.

**RESPONSE: Admitted.**

541.    Admit that Ernesto and/or Yolanda S. Pacheco executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/6/2020.

**RESPONSE: Admitted.**

542.    Admit that Eugene and/or Brenda K. Combs executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/21/2019.

**RESPONSE: Admitted.**

543.    Admit that Eva Steskal Thoms and/or Richard Gordan Thoms executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/12/2020.

**RESPONSE: Admitted.**

544.    Admit that Fetu and/or William Bruhnke executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/8/2020.

**RESPONSE: Admitted.**

545.    Admit that Fidencio Martinez and/or C. Victoria Llanos executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/10/2019.

**RESPONSE: Admitted.**

546.    Admit that Frank J and/or Ingrid H Bernard executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/29/2018.

**RESPONSE: Admitted.**

547.    Admit that Garry and/or Deborah Barrett executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/3/2020.

**RESPONSE: Admitted.**

548.    Admit that Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/5/2016.

**RESPONSE: Admitted.**

549.    Admit that Gene and/or Sharon Ballantyne executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/9/2019.

**RESPONSE: Admitted.**

550.    Admit that George William and/or Roxane Brown executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/6/2019.

**RESPONSE: Admitted.**

551.    Admit that Gerald and/or Sheila Barnett executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/18/2020.

**RESPONSE: Admitted.**

552.  Admit that Glenda Petersen and/or Michael Bohley executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/6/2019.

**RESPONSE: Admitted.**

553.  Admit that Glenwood C. Simmons and/or Vicki G. Fisher executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/11/2020.

**RESPONSE: Admitted.**

554.  Admit that Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/or William Kenneth McCutcheon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/9/2017.

**RESPONSE: Admitted.**

555.  Admit that Gregory Cyrus and/or Christy Cyrus executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/11/2019.

**RESPONSE: Admitted.**

556.  Admit that Heather and/or Justin Wiezorek executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/9/2020.

**RESPONSE: Admitted.**

557.  Admit that Herman Shannon and/or Kelly Schmitt executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/11/2018.

**RESPONSE: Admitted.**

558.  Admit that Herschel Lee Shawver and/or Paula Lisle Shawver executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/22/2019.

**RESPONSE: Admitted.**

559.  Admit that Ismael Valdespino Ortega and/or Yesenia Moran Mendoza executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/8/2020.

**RESPONSE: Admitted.**

560.    Admit that Jack A and/or Pamela J Rickett executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/11/2016.

**RESPONSE: Admitted.**

561.    Admit that Jackie Glenn and/or Brenda Carol Furnace executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/2/2019.

**RESPONSE: Admitted.**

562.    Admit that James and/or Debora Davidson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/4/2020.

**RESPONSE: Admitted.**

563.    Admit that James and/or Debra Loveless executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/24/2018.

**RESPONSE: Admitted that an Agreement was signed.  Denied as to payment or further acceptance of agreement.**

564.    Admit that James and/or Kristin Schupp executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/2/2019.

**RESPONSE: Admitted.**

565.    Admit that James F. Cullison and/or Amanda L. Reatherford executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/24/2019.

**RESPONSE: Admitted.**

566.    Admit that James L. and/or Debra J. Neideffer executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/31/2020.

**RESPONSE: Admitted.**

567.    Admit that James R. and/or Sheila Waltrip executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/24/2016.

**RESPONSE: Admitted.**

568.    Admit that James Taylor Brooks and/or Jacqueline Smith-Brooks executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/14/2019.

**RESPONSE: Admitted.**

569.   Admit that Jamie Mayle and/or Sahara Alonzo executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/28/2018.

**RESPONSE: Admitted.**

570.   Admit that Jeffrey and/or Anna Westby executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/16/2020.

**RESPONSE: Admitted.**

571.   Admit that Jeffrey and/or Jennifer Clark executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/29/2020.

**RESPONSE: Admitted.**

572.   Admit that Jennifer McCullough executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/25/2020.

**RESPONSE: Admitted.**

573.   Admit that Jeremy and/or Darla Lathrem executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/22/2020.

**RESPONSE: Admitted.**

574.   Admit that Jerene L. Nutter executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/20/2019.

**RESPONSE: Admitted.**

575.   Admit that Jerry and/or Tammy Johnson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/23/2019.

**RESPONSE: Admitted.**

576.   Admit that Jerry Ray Rosewell and/or Hollye Elaine Rosewell executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 1/10/2019.

**RESPONSE: Admitted.**

577.   Admit that Jesse and/or Jordan Harding executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/11/2019.

**RESPONSE: Admitted.**

578.    Admit that Jimmy and/or Mary Phillips executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/22/2020.

**RESPONSE: Admitted.**

579.    Admit that Jody and/or Diana Jones executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/8/2020.

**RESPONSE: Admitted.**

580.    Admit that John Beth and/or Cristal Advincula executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/19/2020.

**RESPONSE: Admitted.**

581.    Admit that John T Carey, Jr and/or Samantha M Carey executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/6/2017.

**RESPONSE: Admitted.**

582.    Admit that John Woods and/or Harriet Woods executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/12/2020.

**RESPONSE: Admitted.**

583.    Admit that Jonathan and/or Samantha Castelblanco executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/8/2020.

**RESPONSE: Admitted.**

584.    Admit that Jose Antonio Baez and/or Beronica Ibarra executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/27/2020.

**RESPONSE: Admitted.**

585.    Admit that Joseph and/or Rosalie Laskos executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/13/2020.

**RESPONSE: Admitted.**

586.    Admit that Joseph Bernard and/or Marilou Gamara Tejchman executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/4/2020.

**RESPONSE: Admitted.**

587.    Admit that Joshua and/or Megan Freed executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/15/2019.

**RESPONSE: Admitted.**

588.    Admit that Judith Abbott and/or Brenda Fox executed a "Timeshare Compliance Services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

589.    Admit that JudyAnn Jones and/or Harvey Dennis Robinson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/6/2018.

**RESPONSE: Admitted.**

590.    Admit that Julian Laureano Rosales and/or Guadalupe Coyt executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/10/2020.

**RESPONSE: Admitted.**

591.    Admit that Justin Mason and/or Kaitlyn Pieratt executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/17/2020.

**RESPONSE: Admitted.**

592.    Admit that Karen Tibwell Wallace and/or Aubry Gary Wallace executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/6/2019.

**RESPONSE: Admitted.**

593.    Admit that Keegan Giles and/or Lakisha Giles executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/28/2019.

**RESPONSE: Admitted.**

594.    Admit that Kenneth B, Cardwell and/or Michelle L. Mock executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/29/2019.

**RESPONSE: Admitted.**

595.    Admit that Kimberly L. Howard executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/31/2020.

**RESPONSE: Admitted.**

596.    Admit that Kimberly McClain executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/13/2020.

**RESPONSE: Admitted.**

597.    Admit that Kinda Grant executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/13/2016.

**RESPONSE: Admitted.**

598.    Admit that Kristy and/or Greg DeMarcus executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/6/2020.

**RESPONSE: Admitted.**

599.    Admit that Kyle Allen executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/28/2016.

**RESPONSE: Admitted.**

600.    Admit that Lauren and/or Jeffery McCullough executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/20/2018.

**RESPONSE: Admitted.**

601.    Admit that Linda and/or Manuel Aguinaga executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/28/2020.

**RESPONSE: Admitted.**

602.    Admit that Linda Danis and/or William Danis executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/13/2020.

**RESPONSE: Admitted.**

603.    Admit that Linda M. and/or Robert L. Mclaughlin executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/26/2020.

**RESPONSE: Admitted.**

604.    Admit that Lisa Billie executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/8/2019.

**RESPONSE: Admitted.**

605. Admit that Lisa Oxton executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 1/30/2020.

**RESPONSE: Admitted.**

606. Admit that Londa Byrd executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/11/2016.

**RESPONSE: Admitted.**

607. Admit that Maria and/or Edward Streckfus executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/21/2017.

**RESPONSE: Admitted.**

608. Admit that Mark and/or Laura Campbell executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/25/2018.

**RESPONSE: Admitted.**

609. Admit that Mark and/or Sue Brewer executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/8/2017.

**RESPONSE: Admitted.**

610. Admit that Mark A. Loken and/or Amelia M. Loken executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/8/2019.

**RESPONSE: Admitted.**

611. Admit that Marvin S. Cook executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/26/2017.

**RESPONSE: Admitted.**

612. Admit that Mathew L. Spencer and/or Christie N. Fasick executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/3/2020.

**RESPONSE: Admitted.**

613. Admit that Matthew and/or Nathalia Timmins executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/20/2019.

**RESPONSE: Admitted.**

614.   Admit that Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/9/2016.

**RESPONSE: Admitted.**

615.   Admit that Megan and/or Anthony Bunch executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/3/2019.

**RESPONSE: Admitted.**

616.   Admit that Melissa and/or Erik Pond executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/1/2018.

**RESPONSE: Admitted.**

617.   Admit that Melissa Stenberg executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/31/2021.

**RESPONSE: Admitted.**

618.   Admit that Michael and/or Ruth Eldridge executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/13/2020.

**RESPONSE: Admitted.**

619.   Admit that Michael B. and/or Regilyn P. Johnson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/6/2020.

**RESPONSE: Admitted.**

620.   Admit that Michael Denis and/or Claudia Leon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/1/2017.

**RESPONSE: Admitted.**

621.   Admit that Miguel A Astudillo and/or Gloria Elena Astudillo executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/20/2019.

**RESPONSE: Admitted.**

622.   Admit that Mitchell Leigh Marston and/or Megan R. Marston executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/7/2019.

**RESPONSE: Admitted.**

623.    Admit that Nakisha and/or Sandra Lockhart executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/30/2017.

**RESPONSE: Admitted.**

624.    Admit that Nancy Lynn Braun and/or Bobby Earl Braun executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/19/2020.

**RESPONSE: Admitted.**

625.    Admit that Norman K. Athy Jr. and/or Terri L. Leamy executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/23/2020.

**RESPONSE: Admitted.**

626.    Admit that Norris and/or Faye Horton executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 7/31/2020.

**RESPONSE: Admitted.**

627.    Admit that Pamela Franklin executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/30/2020.

**RESPONSE: Admitted.**

628.    Admit that Patricia O'Neal-Mellen executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/26/2020.

**RESPONSE:  Denied.**

629.    Admit that Paul and/or Melinda Jacobs executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/18/2017.

**RESPONSE: Admitted.**

630.    Admit that Paul and/or Shirley Prosek executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 1/3/2020.

**RESPONSE: Admitted.**

631.    Admit that Randall E. Owens and/or Tanya R. Owens executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/2/2019.

**RESPONSE: Admitted.**

632.    Admit that Randy C. and/or Jonnie S. Driver executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/14/2020.

**RESPONSE: Admitted.**

633.    Admit that Ray Yorker Jr. executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/29/2018.

**RESPONSE: Admitted.**

634.    Admit that Raymond and/or Viola Nault executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/12/2019.

**RESPONSE: Admitted.**

635.    Admit that Rebecca and/or Ricky Jones executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/28/2019.

**RESPONSE: Admitted.**

636.    Admit that Rhonda and/or George Dixon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/2/2020.

**RESPONSE: Admitted.**

637.    Admit that Ricky and/or Lynn Oberlender executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/22/2020.

**RESPONSE:  Denied.**

638.    Admit that Rita Patient and/or Charles Butler executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/28/2020.

**RESPONSE: Admitted.**

639.    Admit that Robert N. and/or Patricia B. Watson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/10/2016.

**RESPONSE: Admitted.**

640.    Admit that Robert Scott Yaikow and/or Amy Medders Yaikow executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/15/2019.

**RESPONSE: Admitted.**

641.   Admit that Robert Whitaker and/or Karen Scott executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/20/2018.

**RESPONSE: Admitted.**

642.   Admit that Roger P. and/or Angela B. Hays executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/1/2020.

**RESPONSE: Admitted.**

643.   Admit that Ronald and/or Loretta Hardeman executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/20/2020.

**RESPONSE: Admitted.**

644.   Admit that Ronda and/or Samuel Herrington executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/26/2020.

**RESPONSE: Admitted.**

645.   Admit that Rosana E. Narvaez-Colon executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/28/2020.

**RESPONSE: Admitted.**

646.   Admit that Roy and/or Deborah Ashby executed a "Timeshare Compliance Services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

647.   Admit that Ruben Ortega and/or Adriana Cota executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/24/2020.

**RESPONSE: Admitted.**

648.   Admit that Ryan and/or Suzanne Mailhiot executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/1/2019.

**RESPONSE: Admitted.**

649.   Admit that Samuel J. and/or Dana M. Bollinger executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/14/2020.

**RESPONSE: Admitted.**

650.    Admit that Sandra and/or Thomas J. Lawson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/29/2016.

**RESPONSE: Admitted.**

651.    Admit that Sarah and/or Eric Chambers executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/1/2019.

**RESPONSE: Admitted.**

652.    Admit that Scott and/or Tammy Bomkamp executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/28/2019.

**RESPONSE: Admitted.**

653.    Admit that Shannon and/or William Meredith executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/23/2019.

**RESPONSE: Admitted.**

654.    Admit that Sherry Helton executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/30/2020.

**RESPONSE: Admitted as to Agreement executed.  Denied, as to fulfillment with agreement as monies refunded midway through service.**

655.    Admit that Sierra Tebeau Sherry executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/6/2020.

**RESPONSE: Admitted.**

656.    Admit that Sierra Tebeau-Sherri and/or Nikolas Beardsworth executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/6/2020.

**RESPONSE: Admitted.**

657.    Admit that Simbarashe Murengami executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 5/26/2020.

**RESPONSE: Admitted.**

658.    Admit that Steve and/or Rosalyn Moorehead executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/30/2017.

**RESPONSE: Admitted.**

659.    Admit that Stuart and/or Bethany Roberts executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 1/11/2021.

**RESPONSE: Admitted.**

660.    Admit that Tamikka Lashaun Portee and/or Vanessa Shavan Porter executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/30/2019.

**RESPONSE: Admitted.**

661.    Admit that Tammy Kay and/or Phillip Lee Salmans executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/5/2020.

**RESPONSE: Admitted.**

662.    Admit that Taury Person and/or Shannon Person executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/6/2017.

**RESPONSE: Admitted.**

663.    Admit that Terry and/or Dalila Kennedy executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 8/16/2016.

**RESPONSE: Admitted.**

664.    Admit that Theresa and/or David Barnewall executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/23/2020.

**RESPONSE: Admitted.**

665.    Admit that Theresa and/or Gregory Dunn executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 6/28/2020.

**RESPONSE: Admitted.**

666.    Admit that Tim and/or Tina Bullock executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/10/2016.

**RESPONSE: Admitted.**

667. Admit that Timothy C. and/or Julie A. Creekmur executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 11/2/2019.

**RESPONSE: Admitted.**

668. Admit that Urban and/or Cheryl Lanser executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/26/2019.

**RESPONSE: Admitted.**

669. Admit that Victor Schexnayder executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 3/4/2019.

**RESPONSE: Admitted.**

670. Admit that Victoria and/or Donald McKenney executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 10/10/2020.

**RESPONSE: Admitted.**

671. Admit that Wayne and/or Shirley Norland executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 2/6/2020.

**RESPONSE: Admitted.**

672. Admit that Wendell B. Taylor executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 9/29/2020.

**RESPONSE: Admitted.**

673. Admit that Weylen and/or Emily Gibson executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 12/22/2018.

**RESPONSE: Admitted as to Agreement executed.  Denied, as to fulfillment with agreement as monies refunded midway through service.**

674. Admit that Willie and/or Velma Waters executed a "Timeshare Compliance Services Agreement" with Pandora Marketing dated 4/10/2018.

**RESPONSE: Admitted.**

Dated:  September 7, 2022.          **NARDELLA & NARDELLA, PLLC**

                                    */s/ John J. Bennett*

                                    John J. Bennett, Esq.
                                    jbennett@nardellalaw.com
                                    nmacdougall@nardellalaw.com
                                    service@nardellalaw.com
                                    135 W. Central Blvd., Suite 300
                                    Orlando, FL  32801
                                    Telephone: (407) 966-2680

                                    - and –

                                    **BRADFORD EDWARDS AND**

                                    **VARLACK LLP**

                                    Patrick A. Bradford, Esq. (*Pro Hac Vice*)
                                    pbradford@bradfordedwards.com
                                    112 East 49th Street, 11th Floor
                                    New York, NY 10017
                                    Telephone: (917) 671-9406

                                    *Attorneys for Pandora Marketing, LLC d/b/a*
                                    *Timeshare Compliance, William Wilson a/k/a Bo*
                                    *Wilson, and Rich Folk*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7TH day of September 2022, a true and correct copy of

the foregoing has been served via electronic mail to the following CM/ECF Participants and via

U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

   **SHUTTS & BOWEN LLP**              **MATEER & HARBERT, P.A.**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Plaintiffs*

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

*Attorney for Timeshare Lawyers P.A.*

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

*Patrick Thompson, Pro Se*

## **NON-ECF PARTICIPANTS**

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

*/s/ John Bennett*
**John Bennett, Esq.**

P-1401

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*,<br><br>　　　Plaintiffs,<br><br>v.<br><br>TIMESHARE LAWYERS P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, *et al.*,<br><br>　　　Defendants. | Case No.: 1:20-cv-24681-RNS |

**DEFENDANTS' PANDORA MARKETING, LLC'S**
**RESPONSE TO PLAINTIFFS' SIXTH REQUEST FOR ADMISSION**

　　　Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to Plaintiffs' Sixth Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure, by undersigned counsel, hereby responds to Plaintiffs' Sixth Requests for Admission dated August 8, 2022, in the above-referenced matter.

**REQUESTS FOR ADMISSION**

872.　Admit that Pandora Marketing communicated with Adan and/or Channell Blevins prior to 9/6/2019.

**RESPONSE:  Denied**

873.　Admit that Pandora Marketing communicated with Albert and/or Nicole Renshaw prior to 10/16/2019.

**RESPONSE: Admitted.**

874.　Admit that Pandora Marketing communicated with Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano prior to 6/29/2017.

**RESPONSE: Admitted.**

875.    Admit that Pandora Marketing communicated with Amanda and/or Eric Olsen prior to 1/13/2020.

**RESPONSE: Admitted.**

876.    Admit that Pandora Marketing communicated with Angela T. and/or Angela J. Buchanan prior to 7/5/2019.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan.**

877.    Admit that Pandora Marketing communicated with Anthony and/or Ashley Tilahun prior to 9/13/2019.

**RESPONSE: Admitted.**

878.    Admit that Pandora Marketing communicated with Anthony Fisher and/or Senora Harris prior to 11/6/2020.

**RESPONSE: Admitted.**

879.    Admit that Pandora Marketing communicated with Anthony L. and/or Melissa J. Church prior to 9/8/2020.

**RESPONSE: Admitted.**

880.    Admit that Pandora Marketing communicated with Anthony R. Murphy and/or Nancy L. Satterlee prior to 7/21/2018.

**RESPONSE: Admitted.**

881.    Admit that Pandora Marketing communicated with April Joy Worthington, Chad Alan Vincent prior to 8/6/2020.

**RESPONSE: Admitted.**

882.    Admit that Pandora Marketing communicated with Arnold A. Gittens and/or Greta Stuart Gittens prior to 9/29/2019.

**RESPONSE: Admitted.**

883.    Admit that Pandora Marketing communicated with Autumn Romain prior to 5/27/2018.

**RESPONSE: Admitted.**

884.   Admit that Pandora Marketing communicated with Beatriz Astencio and/or Roberto Cedeno prior to 6/8/2020.

**RESPONSE: Admitted.**

885.   Admit that Pandora Marketing communicated with Betty J. Adams prior to 9/7/2020.

**RESPONSE: Admitted.**

886.   Admit that Pandora Marketing communicated with Billy and/or Mary H. Hays prior to 5/18/2019.

**RESPONSE: Admitted.**

887.   Admit that Pandora Marketing communicated with Billy W. Garner prior to 2/9/2019.

**RESPONSE: Admitted.**

888.   Admit that Pandora Marketing communicated with Bobbie E. and/or Alice L. McNeil prior to 2/25/2020.

**RESPONSE: Admitted.**

889.   Admit that Pandora Marketing communicated with Bobby and/or Leanna Harmon prior to 1/10/2021.

**RESPONSE: Admitted.**

890.   Admit that Pandora Marketing communicated with Bradley and/or Amy Selvey prior to 11/1/2019.

**RESPONSE:  Denied.**

891.   Admit that Pandora Marketing communicated with Brandy and/or Kyle Griffin prior to 8/19/2020.

**RESPONSE: Admitted.**

892.   Admit that Pandora Marketing communicated with Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern prior to 11/3/2019.

**RESPONSE: Admitted.**

893.    Admit that Pandora Marketing communicated with Brent and/or Lynette King prior to 3/1/2021.

**RESPONSE: Admitted.**

894.    Admit that Pandora Marketing communicated with Bryan and/or Elizabeth Catherine Espinosa prior to 12/18/2019.

**RESPONSE: Admitted.**

895.    Admit that Pandora Marketing communicated with Candace Hollins-Brokaw and/or Jeffrey Brokaw prior to 1/6/2021.

**RESPONSE: Admitted.**

896.    Admit that Pandora Marketing communicated with Celestine G Carter and/or Haru Carter Jr. prior to 9/28/2019.

**RESPONSE: Admitted.**

897.    Admit that Pandora Marketing communicated with Chao Xiong prior to 7/24/2021.

**RESPONSE: Admitted.**

898.    Admit that Pandora Marketing communicated with Chao Xiong and/or Aimee Lee prior to 7/7/2021.

**RESPONSE: Admitted.**

899.    Admit that Pandora Marketing communicated with Charlene and/or Charly Brown prior to 8/6/2019.

**RESPONSE: Admitted.**

900.    Admit that Pandora Marketing communicated with Charles and/or Sherry Terry prior to 12/14/2020.

**RESPONSE: Admitted.**

901.    Admit that Pandora Marketing communicated with Charles Govan prior to 1/22/2020.

**RESPONSE: Admitted.**

902.    Admit that Pandora Marketing communicated with Cheresa and/or Jose Ramon prior to 4/2/2018.

**RESPONSE: Admitted.**

903.    Admit that Pandora Marketing communicated with Cheryll Craigie prior to 8/22/2018.

**RESPONSE: Admitted.**

904.    Admit that Pandora Marketing communicated with Christopher Dwayne Shivers and/or Katie Rochelle Shivers prior to 11/1/2017.

**RESPONSE: Admitted.**

905.    Admit that Pandora Marketing communicated with Claribell Soiza prior to 12/31/2020.

**RESPONSE: Admitted.**

906.    Admit that Pandora Marketing communicated with Colleen and/or David Bolanowski prior to 5/28/2019.

**RESPONSE: Admitted.**

907.    Admit that Pandora Marketing communicated with Cyril and/or Debra Guild prior to 7/10/2018.

**RESPONSE: Admitted.**

908.    Admit that Pandora Marketing communicated with Dale Greenley prior to 12/2/2018.

**RESPONSE: Admitted.**

909.    Admit that Pandora Marketing communicated with Damon L. and/or Sherita Perry prior to 9/10/2020.

**RESPONSE: Admitted.**

910.    Admit that Pandora Marketing communicated with Daniel and/or Cheryl Burns prior to 10/23/2020.

**RESPONSE: Admitted.**

911.    Admit that Pandora Marketing communicated with Danny and/or Christina Cormier prior to 12/20/2018.

**RESPONSE: Admitted.**

912.    Admit that Pandora Marketing communicated with Darrin Hartman prior to 11/8/2020.

**RESPONSE: Admitted.**

913.    Admit that Pandora Marketing communicated with David and/or Barbara Mitchell Sr. prior to 10/19/2016.

**RESPONSE: Admitted.**

914.    Admit that Pandora Marketing communicated with David and/or Karen Sprague prior to 9/21/2020.

**RESPONSE:  Denied.**

915.    Admit that Pandora Marketing communicated with Dean and/or Margaretta Garlinghouse prior to 11/27/2017.

**RESPONSE:  Denied.**

916.    Admit that Pandora Marketing communicated with Deborah Leanne Truelove and/or Terry Efurd prior to 8/6/2020.

**RESPONSE: Admitted.**

917.    Admit that Pandora Marketing communicated with Demetrius Baytop and/or Carla Kitchel prior to 4/11/2020.

**RESPONSE:  Denied.**

918.    Admit that Pandora Marketing communicated with Denise Nelson-Smith and/or Willie E. Smith prior to 10/30/2020.

**RESPONSE: Admitted.**

919.    Admit that Pandora Marketing communicated with Dennis D. and/or Vicki Mitchell prior to 9/6/2018.

**RESPONSE: Admitted.**

920.    Admit that Pandora Marketing communicated with Derrick and/or Debra J. Braswell prior to 9/15/2020.

**RESPONSE: Admitted.**

921.    Admit that Pandora Marketing communicated with Derrick Marshall prior to 8/25/2020.

**RESPONSE: Admitted.**

922.    Admit that Pandora Marketing communicated with Donald and/or Lisa Craig prior to 5/26/2019.

**RESPONSE: Admitted.**

923.    Admit that Pandora Marketing communicated with Donald J. Thomas prior to 5/9/2019.

**RESPONSE: Admitted.**

924.    Admit that Pandora Marketing communicated with Donnie and/or Christine Brown prior to 9/17/2019.

**RESPONSE: Admitted.**

925.    Admit that Pandora Marketing communicated with Dorothy Fizer Lucas and/or Clifton D. Lucas prior to 11/14/2020.

**RESPONSE: Admitted.**

926.    Admit that Pandora Marketing communicated with Dorothy Hale prior to 9/11/2019.

**RESPONSE:  Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

927.    Admit that Pandora Marketing communicated with Earl S. and/or Caitlin A. Abercrombie prior to 7/16/2017.

**RESPONSE:  Admitted.**

928.    Admit that Pandora Marketing communicated with Eduardo A. and/or Stacy L. Rodriguez prior to 7/18/2019.

**RESPONSE: Admitted.**

929.    Admit that Pandora Marketing communicated with Edward and/or Maria Streckfus prior to 7/5/2017.

**RESPONSE: Admitted.**

930.   Admit that Pandora Marketing communicated with Elijah T. and/or Tiffany K. Ireland prior to 2/4/2021.

**RESPONSE: Admitted.**

931.   Admit that Pandora Marketing communicated with Elizabeth and/or Gerardo Sepulveda prior to 7/12/2019.

**RESPONSE: Admitted.**

932.   Admit that Pandora Marketing communicated with Emma Stubblefield prior to 2/18/2020.

**RESPONSE: Admitted.**

933.   Admit that Pandora Marketing communicated with Erickson Thomas prior to 8/18/2019.

**RESPONSE: Admitted.**

934.   Admit that Pandora Marketing communicated with Erin Marconi and/or Jeremy McCoy prior to 1/23/2021.

**RESPONSE: Admitted.**

935.   Admit that Pandora Marketing communicated with Ernesto and/or Yolanda S. Pacheco prior to 10/16/2021.

**RESPONSE: Admitted.**

936.   Admit that Pandora Marketing communicated with Eugene and/or Brenda K. Combs prior to 11/25/2019.

**RESPONSE: Admitted.**

937.   Admit that Pandora Marketing communicated with Eva Steskal Thoms and/or Richard Gordan Thoms prior to 6/13/2020.

**RESPONSE: Admitted.**

938.   Admit that Pandora Marketing communicated with Fetu and/or William Bruhnke prior to 12/15/2020.

**RESPONSE: Admitted.**

939.   Admit that Pandora Marketing communicated with Fidencio Martinez and/or C. Victoria Llanos prior to 12/28/2019.

**RESPONSE: Admitted.**

940.   Admit that Pandora Marketing communicated with Frank J and/or Ingrid H Bernard prior to 2/14/2019.

**RESPONSE: Admitted.**

941.   Admit that Pandora Marketing communicated with Garry and/or Deborah Barrett prior to 5/21/2020.

**RESPONSE: Admitted.**

942.   Admit that Pandora Marketing communicated with Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes prior to 11/19/2019.

**RESPONSE: Admitted.**

943.   Admit that Pandora Marketing communicated with Gene and/or Sharon Ballantyne prior to 10/27/2019.

**RESPONSE: Admitted.**

944.   Admit that Pandora Marketing communicated with George William and/or Roxane Brown prior to 3/10/2019.

**RESPONSE: Admitted.**

945.   Admit that Pandora Marketing communicated with Gerald and/or Sheila Barnett prior to 3/22/2020.

**RESPONSE: Admitted.**

946.   Admit that Pandora Marketing communicated with Glenda Petersen and/or Michael Bohley prior to 11/23/2019.

**RESPONSE:  Admitted.**

947.   Admit that Pandora Marketing communicated with Glenwood C. Simmons and/or Vicki G. Fisher prior to 4/30/2020.

**RESPONSE: Admitted.**

948.   Admit that Pandora Marketing communicated with Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/or William Kenneth McCutcheon prior to 7/17/2017.

**RESPONSE: Admitted.**

949.   Admit that Pandora Marketing communicated with Gregory Cyrus and/or Christy Cyrus prior to 6/3/2019.

**RESPONSE: Admitted.**

950.   Admit that Pandora Marketing communicated with Heather and/or Justin Wiezorek prior to 8/19/2020.

**RESPONSE: Admitted.**

951.   Admit that Pandora Marketing communicated with Herman Shannon and/or Kelly Schmitt prior to 5/19/2018.

**RESPONSE: Admitted.**

952.   Admit that Pandora Marketing communicated with Herschel Lee Shawver and/or Paula Lisle Shawver prior to 7/16/2019.

**RESPONSE: Admitted.**

953.   Admit that Pandora Marketing communicated with Ismael Valdespino Ortega and/or Yesenia Moran Mendoza prior to 5/22/2020.

**RESPONSE: Admitted.**

954.   Admit that Pandora Marketing communicated with Jack A and/or Pamela J Rickett prior to 12/1/2016.

**RESPONSE: Admitted.**

955.   Admit that Pandora Marketing communicated with Jackie Glenn and/or Brenda Carol Furnace prior to 7/20/2019.

**RESPONSE: Admitted.**

956.   Admit that Pandora Marketing communicated with James and/or Debora Davidson prior to 2/20/2021.

**RESPONSE: Admitted.**

957.    Admit that Pandora Marketing communicated with James and/or Debra Loveless prior to 4/13/2020.

**RESPONSE:  Admitted.**

958.    Admit that Pandora Marketing communicated with James and/or Kristin Schupp prior to 8/13/2019.

**RESPONSE: Admitted.**

959.    Admit that Pandora Marketing communicated with James F. Cullison and/or Amanda L. Reatherford prior to 11/25/2019.

**RESPONSE: Admitted.**

960.    Admit that Pandora Marketing communicated with James L. and/or Debra J. Neideffer prior to 10/1/2020.

**RESPONSE: Admitted.**

961.    Admit that Pandora Marketing communicated with James R. and/or Sheila Waltrip prior to 10/2/2016.

**RESPONSE: Admitted.**

962.    Admit that Pandora Marketing communicated with James Taylor Brooks and/or Jacqueline Smith-Brooks prior to 8/29/2019.

**RESPONSE: Admitted.**

963.    Admit that Pandora Marketing communicated with Jamie Mayle and/or Sahara Alonzo prior to 2/4/2019.

**RESPONSE: Admitted.**

964.    Admit that Pandora Marketing communicated with Jeffrey and/or Anna Westby prior to 1/5/2021.

**RESPONSE: Admitted.**

965.    Admit that Pandora Marketing communicated with Jeffrey and/or Jennifer Clark prior to 11/13/2020.

**RESPONSE:  Admitted.**

966.   Admit that Pandora Marketing communicated with Jennifer McCullough prior to 9/22/2020.

**RESPONSE: Admitted.**

967.   Admit that Pandora Marketing communicated with Jeremy and/or Darla Lathrem prior to 6/23/2020.

**RESPONSE: Admitted.**

968.   Admit that Pandora Marketing communicated with Jerene L. Nutter prior to 10/22/2019.

**RESPONSE: Admitted.**

969.   Admit that Pandora Marketing communicated with Jerry and/or Tammy Johnson prior to 8/13/2019.

**RESPONSE: Admitted.**

970.   Admit that Pandora Marketing communicated with Jerry Ray Rosewell and/or Hollye Elaine Rosewell prior to 1/13/2019.

**RESPONSE: Admitted.**

971.   Admit that Pandora Marketing communicated with Jesse and/or Jordan Harding prior to 1/8/2020.

**RESPONSE: Admitted.**

972.   Admit that Pandora Marketing communicated with Jimmy and/or Mary Phillips prior to 8/7/2020.

**RESPONSE: Admitted.**

973.   Admit that Pandora Marketing communicated with Jody and/or Diana Jones prior to 10/18/2020.

**RESPONSE: Admitted.**

974.   Admit that Pandora Marketing communicated with John Beth and/or Cristal Advincula prior to 10/25/2020.

**RESPONSE: Admitted.**

975.   Admit that Pandora Marketing communicated with John T Carey, Jr and/or Samantha M Carey prior to 1/27/2018.

**RESPONSE: Admitted.**

976.   Admit that Pandora Marketing communicated with John Woods and/or Harriet Woods prior to 4/14/2021.

**RESPONSE: Admitted.**

977.   Admit that Pandora Marketing communicated with Jonathan and/or Samantha Castelblanco prior to 9/13/2020.

**RESPONSE: Admitted.**

978.   Admit that Pandora Marketing communicated with Jose Antonio Baez and/or Beronica Ibarra prior to 5/11/2020.

**RESPONSE: Admitted.**

979.   Admit that Pandora Marketing communicated with Joseph and/or Rosalie Laskos prior to 3/18/2020.

**RESPONSE: Admitted.**

980.   Admit that Pandora Marketing communicated with Joseph Bernard and/or Marilou Gamara Tejchman prior to 8/10/2020.

**RESPONSE: Admitted.**

981.   Admit that Pandora Marketing communicated with Joshua and/or Megan Freed prior to 4/16/2019.

**RESPONSE: Admitted.**

982.   Admit that Pandora Marketing communicated with Judith Abbott and/or Brenda Fox prior to 11/18/2019.

**RESPONSE:  Denied.**

983.   Admit that Pandora Marketing communicated with JudyAnn Jones and/or Harvey Dennis Robinson prior to 3/22/2018.

**RESPONSE: Admitted.**

984.   Admit that Pandora Marketing communicated with Julian Laureano Rosales and/or Guadalupe Coyt prior to 7/26/2020.

**RESPONSE: Admitted.**

985.   Admit that Pandora Marketing communicated with Justin Mason and/or Kaitlyn Pieratt prior to 6/23/2020.

**RESPONSE: Admitted.**

986.   Admit that Pandora Marketing communicated with Karen Tibwell Wallace and/or Aubry Gary Wallace prior to 8/1/2019.

**RESPONSE: Admitted.**

987.   Admit that Pandora Marketing communicated with Keegan Giles and/or Lakisha Giles prior to 6/28/2019.

**RESPONSE: Admitted.**

988.   Admit that Pandora Marketing communicated with Kenneth B, Cardwell and/or Michelle L. Mock prior to 6/7/2019.

**RESPONSE: Admitted.**

989.   Admit that Pandora Marketing communicated with Kimberly L. Howard prior to 8/16/2020.

**RESPONSE: Admitted.**

990.   Admit that Pandora Marketing communicated with Kimberly McClain prior to 7/8/2020.

**RESPONSE: Admitted.**

991.   Admit that Pandora Marketing communicated with Kinda Grant prior to 10/16/2016.

**RESPONSE: Admitted.**

992.   Admit that Pandora Marketing communicated with Kristy and/or Greg DeMarcus prior to 12/22/2020.

**RESPONSE: Admitted.**

993.   Admit that Pandora Marketing communicated with Kyle Allen prior to 7/25/2016.

**RESPONSE: Admitted.**

994.    Admit that Pandora Marketing communicated with Lauren and/or Jeffery McCullough prior to 6/8/2018.

**RESPONSE: Admitted.**

995.    Admit that Pandora Marketing communicated with Linda and/or Manuel Aguinaga prior to 11/14/2020.

**RESPONSE: Admitted.**

996.    Admit that Pandora Marketing communicated with Linda Danis and/or William Danis prior to 5/13/2020.

**RESPONSE: Admitted.**

997.    Admit that Pandora Marketing communicated with Linda M. and/or Robert L. Mclaughlin prior to 6/5/2020.

**RESPONSE: Admitted.**

998.    Admit that Pandora Marketing communicated with Lisa Billie prior to 12/3/2019.

**RESPONSE: Admitted.**

999.    Admit that Pandora Marketing communicated with Lisa Oxton prior to 2/19/2020.

**RESPONSE: Admitted.**

1000.   Admit that Pandora Marketing communicated with Londa Byrd prior to 9/15/2016.

**RESPONSE: Admitted.**

1001.   Admit that Pandora Marketing communicated with Maria and/or Edward Streckfus prior to 7/12/2017.

**RESPONSE: Admitted.**

1002.   Admit that Pandora Marketing communicated with Mark and/or Laura Campbell prior to 10/8/2018.

**RESPONSE: Admitted.**

1003.   Admit that Pandora Marketing communicated with Mark and/or Sue Brewer prior to 12/26/2017.

**RESPONSE: Admitted.**

1004.   Admit that Pandora Marketing communicated with Mark A. Loken and/or Amelia M. Loken prior to 9/26/2019.

**RESPONSE: Admitted.**

1005.   Admit that Pandora Marketing communicated with Marvin S. Cook prior to 1/2/2018.

**RESPONSE: Admitted.**

1006.   Admit that Pandora Marketing communicated with Mathew L. Spencer and/or Christie N. Fasick prior to 10/28/2020.

**RESPONSE: Admitted.**

1007.   Admit that Pandora Marketing communicated with Matthew and/or Nathalia Timmins prior to 6/24/2019.

**RESPONSE: Admitted.**

1008.   Admit that Pandora Marketing communicated with Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux prior to 1/12/2017.

**RESPONSE: Admitted.**

1009.   Admit that Pandora Marketing communicated with Megan and/or Anthony Bunch prior to 9/19/2019.

**RESPONSE: Admitted.**

1010.   Admit that Pandora Marketing communicated with Melissa and/or Erik Pond prior to 10/12/2018.

**RESPONSE: Admitted.**

1011.   Admit that Pandora Marketing communicated with Melissa Stenberg prior to 9/14/2021.

**RESPONSE: Admitted.**

1012.   Admit that Pandora Marketing communicated with Michael and/or Ruth Eldridge prior to 1/27/2021.

**RESPONSE: Admitted.**

1013.   Admit that Pandora Marketing communicated with Michael B. and/or Regilyn P. Johnson prior to 8/20/2020.

**RESPONSE: Admitted.**

1014.   Admit that Pandora Marketing communicated with Michael Denis and/or Claudia Leon prior to 7/3/2017.

**RESPONSE: Admitted.**

1015.   Admit that Pandora Marketing communicated with Miguel A Astudillo and/or Gloria Elena Astudillo prior to 8/22/2019.

**RESPONSE: Admitted.**

1016.   Admit that Pandora Marketing communicated with Mitchell Leigh Marston and/or Megan R. Marston prior to 10/7/2019.

**RESPONSE: Admitted.**

1017.   Admit that Pandora Marketing communicated with Nakisha and/or Sandra Lockhart prior to 6/17/2017.

**RESPONSE: Admitted.**

1018.   Admit that Pandora Marketing communicated with Nancy Lynn Braun and/or Bobby Earl Braun prior to 12/16/2020.

**RESPONSE: Admitted.**

1019.   Admit that Pandora Marketing communicated with Norman K. Athy Jr. and/or Terri L. Leamy prior to 11/22/2020.

**RESPONSE: Admitted.**

1020.   Admit that Pandora Marketing communicated with Norris and/or Faye Horton prior to 8/19/2020.

**RESPONSE: Admitted.**

1021.   Admit that Pandora Marketing communicated with Pamela Franklin prior to 11/17/2020.

**RESPONSE: Admitted.**

1022.   Admit that Pandora Marketing communicated with Patricia O'Neal-Mellen prior to 9/3/2020.

**RESPONSE: Denied.**

1023.   Admit that Pandora Marketing communicated with Paul and/or Melinda Jacobs prior to 11/19/2017.

**RESPONSE: Admitted.**

1024.   Admit that Pandora Marketing communicated with Paul and/or Shirley Prosek prior to 1/25/2020.

**RESPONSE: Admitted.**

1025.   Admit that Pandora Marketing communicated with Randall E. Owens and/or Tanya R. Owens prior to 7/3/2019.

**RESPONSE: Admitted.**

1026.   Admit that Pandora Marketing communicated with Randy C. and/or Jonnie S. Driver prior to 1/6/2021.

**RESPONSE: Admitted.**

1027.   Admit that Pandora Marketing communicated with Ray Yorker Jr. prior to 5/21/2019.

**RESPONSE: Admitted.**

1028.   Admit that Pandora Marketing communicated with Raymond and/or Viola Nault prior to 2/22/2019.

**RESPONSE: Admitted.**

1029.   Admit that Pandora Marketing communicated with Rebecca and/or Ricky Jones prior to 5/13/2019.

**RESPONSE: Admitted.**

1030.   Admit that Pandora Marketing communicated with Rhonda and/or George Dixon prior to 3/16/2020.

**RESPONSE: Admitted.**

1031.   Admit that Pandora Marketing communicated with Ricky and/or Lynn Oberlender prior to 8/7/2020.

**RESPONSE:  Denied.**

1032.   Admit that Pandora Marketing communicated with Rita Patient and/or Charles Butler prior to 3/17/2021.

**RESPONSE: Admitted.**

1033.   Admit that Pandora Marketing communicated with Robert N. and/or Patricia B. Watson prior to 10/26/2017.

**RESPONSE: Admitted.**

1034.   Admit that Pandora Marketing communicated with Robert Scott Yaikow and/or Amy Medders Yaikow prior to 5/18/2019.

**RESPONSE: Admitted.**

1035.   Admit that Pandora Marketing communicated with Robert Whitaker and/or Karen Scott prior to 11/3/2018.

**RESPONSE: Admitted.**

1036.   Admit that Pandora Marketing communicated with Roger P. and/or Angela B. Hays prior to 11/26/2020.

**RESPONSE: Admitted.**

1037.   Admit that Pandora Marketing communicated with Ronald and/or Loretta Hardeman prior to 11/14/2020.

**RESPONSE: Admitted.**

1038.   Admit that Pandora Marketing communicated with Ronda and/or Samuel Herrington prior to 10/29/2020.

**RESPONSE: Admitted.**

1039.   Admit that Pandora Marketing communicated with Rosana E. Narvaez-Colon prior to 5/22/2020.

**RESPONSE: Admitted.**

1040.   Admit that Pandora Marketing communicated with Roy and/or Deborah Ashby prior to 8/27/2019.

**RESPONSE:  Denied.**

1041.   Admit that Pandora Marketing communicated with Ruben Ortega and/or Adriana Cota prior to 3/13/2020.

**RESPONSE: Admitted.**

1042.   Admit that Pandora Marketing communicated with Ryan and/or Suzanne Mailhiot prior to 3/12/2019.

**RESPONSE: Admitted.**

1043.   Admit that Pandora Marketing communicated with Samuel J. and/or Dana M. Bollinger prior to 12/3/2020.

**RESPONSE: Admitted.**

1044.   Admit that Pandora Marketing communicated with Sandra and/or Thomas J. Lawson prior to 1/31/2017.

**RESPONSE: Admitted.**

1045.   Admit that Pandora Marketing communicated with Sarah and/or Eric Chambers prior to 5/26/2019.

**RESPONSE: Admitted.**

1046.   Admit that Pandora Marketing communicated with Scott and/or Tammy Bomkamp prior to 5/8/2019.

**RESPONSE: Admitted.**

1047.   Admit that Pandora Marketing communicated with Shannon and/or William Meredith prior to 8/2/2019.

**RESPONSE: Admitted.**

1048.   Admit that Pandora Marketing communicated with Sherry Helton prior to 6/11/2020.

**RESPONSE: Admitted.**

1049.   Admit that Pandora Marketing communicated with Sierra Tebeau Sherry prior to 3/5/2021.

**RESPONSE: Admitted.**

1050.   Admit that Pandora Marketing communicated with Sierra Tebeau-Sherri and/or Nikolas Beardsworth prior to 2/19/2021.

**RESPONSE: Admitted.**

1051.   Admit that Pandora Marketing communicated with Simbarashe Murengami prior to 6/4/2020.

**RESPONSE: Admitted.**

1052.   Admit that Pandora Marketing communicated with Steve and/or Rosalyn Moorehead prior to 7/20/2017.

**RESPONSE: Admitted.**

1053.   Admit that Pandora Marketing communicated with Stuart and/or Bethany Roberts prior to 1/19/2021.

**RESPONSE: Admitted.**

1054.   Admit that Pandora Marketing communicated with Tamikka Lashaun Portee and/or Vanessa Shavan Porter prior to 4/9/2020.

**RESPONSE: Admitted.**

1055.   Admit that Pandora Marketing communicated with Tammy Kay and/or Phillip Lee Salmans prior to 10/24/2020.

**RESPONSE: Admitted.**

1056.   Admit that Pandora Marketing communicated with Taury Person and/or Shannon Person prior to 4/24/2017.

**RESPONSE: Admitted.**

1057.   Admit that Pandora Marketing communicated with Terry and/or Dalila Kennedy prior to 8/19/2016.

**RESPONSE: Admitted.**

1058.   Admit that Pandora Marketing communicated with Theresa and/or David Barnewall prior to 11/1/2020.

**RESPONSE: Admitted.**

1059.   Admit that Pandora Marketing communicated with Theresa and/or Gregory Dunn prior to 7/17/2020.

**RESPONSE: Admitted.**

1060.   Admit that Pandora Marketing communicated with Tim and/or Tina Bullock prior to 8/24/2017.

**RESPONSE: Admitted.**

1061.   Admit that Pandora Marketing communicated with Timothy C. and/or Julie A. Creekmur prior to 11/15/2019.

**RESPONSE: Admitted.**

1062.   Admit that Pandora Marketing communicated with Urban and/or Cheryl Lanser prior to 3/10/2019.

**RESPONSE:  Admitted.**

1063.   Admit that Pandora Marketing communicated with Victor Schexnayder prior to 4/19/2019.

**RESPONSE:  Admitted.**

1064.   Admit that Pandora Marketing communicated with Victoria and/or Donald McKenney prior to 12/5/2020.

**RESPONSE:  Admitted.**

1065.   Admit that Pandora Marketing communicated with Wayne and/or Shirley Norland prior to 3/22/2020.

**RESPONSE:  Admitted.**

1066.   Admit that Pandora Marketing communicated with Wendell B. Taylor prior to 12/28/2020.

**RESPONSE: Admitted.**

1067.   Admit that Pandora Marketing communicated with Weylen and/or Emily Gibson prior to 2/7/2019.

**RESPONSE: Admitted.**

1068.   Admit that Pandora Marketing communicated with Willie and/or Velma Waters prior to 5/12/2018.

**RESPONSE: Admitted.**


Dated:  September 7, 2022.                **NARDELLA & NARDELLA, PLLC**

                                          */s/ John J. Bennett*

                                          John J. Bennett, Esq.
                                          Florida Bar: 98257
                                          Paul N. Mascia, Esq.
                                          Florida Bar: 489670
                                          jbennett@nardellalaw.com
                                          nmacdougall@nardellalaw.com
                                          service@nardellalaw.com
                                          135 W. Central Blvd., Suite 300
                                          Orlando, FL  32801
                                          Telephone: (407) 966-2680

                                          - and –

                                          **BRADFORD EDWARDS AND VARLACK
                                          LLP**
                                          Patrick A. Bradford, Esq. (*Pro Hac Vice*)
                                          pbradford@bradfordedwards.com
                                          112 East 49th Street, 11th Floor
                                          New York, NY 10017
                                          Telephone: (917) 671-9406

                                          *Attorneys for Pandora Marketing, LLC d/b/a*
                                          *Timeshare Compliance, William Wilson a/k/a Bo*
                                          *Wilson, and Rich Folk*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7TH day of September 2022, a true and correct copy of the foregoing has been served via electronic mail to the following CM/ECF Participants and via U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Plaintiffs*

**MATEER & HARBERT, P.A.**

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

24

*Attorney for Timeshare Lawyers P.A.*          *Patrick Thompson, Pro Se*

## **NON-ECF PARTICIPANTS**

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

*/s/ John Bennett*
**John Bennett, Esq.**

# P-1403

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BLUEGREEN     VACATIONS     UNLIMITED,
INC., *et al.*,

     Plaintiffs,

v.

TIMESHARE LAWYERS P.A. d/b/a FEDERAL
FINANCIAL LAW GROUP, *et al.*,

     Defendants.

Case No.: 1:20-cv-24681-RNS

**DEFENDANTS' PANDORA MARKETING, LLC'S
RESPONSE TO PLAINTIFFS' SEVENTH REQUEST FOR ADMISSION**

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to

Plaintiffs' Seventh Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure,

by undersigned counsel, hereby responds to Plaintiffs' Seventh Requests for Admission dated

August 8, 2022, in the above-referenced matter.

**REQUESTS FOR ADMISSION**

1069.  Admit that Adan and/or Channell Blevins are parties to a writing that purports to be a
written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Adan
and/or Channell Blevins were never customers of Defendant.**

1070.  Admit that Albert and/or Nicole Renshaw are parties to a writing that purports to be a
written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1071.  Admit that Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano are parties to a writing
that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1072.   Admit that Amanda and/or Eric Olsen are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1073.   Admit that Angela T. and/or Angela J. Buchanan are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1074.   Admit that Anthony and/or Ashley Tilahun are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1075.   Admit that Anthony Fisher and/or Senora Harris are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1076.   Admit that Anthony L. and/or Melissa J. Church are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1077.   Admit that Anthony R. Murphy and/or Nancy L. Satterlee are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1078.   Admit that April Joy Worthington, Chad Alan Vincent are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1079.   Admit that Arnold A. Gittens and/or Greta Stuart-Gittens are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1080.   Admit that Autumn Romain are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1081.   Admit that Beatriz Astencio and/or Roberto Cedeno are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1082.   Admit that Betty J. Adams are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1083.   Admit that Billy and/or Mary H. Hays are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1084.   Admit that Billy W. Garner are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1085.   Admit that Bobbie E. and/or Alice L. McNeil are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1086.   Admit that Bobby and/or Leanna Harmon are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1087.   Admit that Bradley and/or Amy Selvey are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  Denied.**

1088.   Admit that Brandy and/or Kyle Griffin are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1089.   Admit that Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1090.   Admit that Brent and/or Lynette King are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1091.   Admit that Bryan and/or Elizabeth Catherine Espinosa are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1092.   Admit that Candace Hollins-Brokaw and/or Jeffrey Brokaw are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1093.   Admit that Celestine G Carter and/or Haru Carter Jr. are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1094.   Admit that Chao Xiong is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1095.   Admit that Chao Xiong and/or Aimee Lee are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1096.   Admit that Charlene and/or Charly Brown are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1097.   Admit that Charles and/or Sherry Terry are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1098.   Admit that Charles Govan is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1099.   Admit that Cheresa and/or Jose Ramon are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1100.   Admit that Cheryll Craigie is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1101.   Admit that Christopher Dwayne Shivers and/or Katie Rochelle Shivers are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1102.   Admit that Claribell Soiza is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1103.   Admit that Colleen and/or David Bolanowski are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1104.   Admit that Cyril and/or Debra Guild are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1105.   Admit that Dale Greenley is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1106.   Admit that Damon L. and/or Sherita Perry are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1107.   Admit that Daniel and/or Cheryl Burns are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1108.   Admit that Danny and/or Christina Cormier are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1109.   Admit that Darrin Hartman is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1110.   Admit that David and/or Barbara Mitchell Sr. are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1111.   Admit that David and/or Karen Sprague are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as David and/or Karen Sprague were never customers of Defendant.**

1112.   Admit that Dean and/or Margaretta Garlinghouse are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Dean and/or Margaretta Garlinghouse were never customers of Defendant.**

1113.   Admit that Deborah Leanne Truelove and/or Terry Efurd are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1114.   Admit that Demetrius Baytop and/or Carla Kitchel are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Demetrius Baytop and/or Carla Kitchel were never customers of Defendant.**

1115.   Admit that Denise Nelson-Smith and/or Willie E. Smith are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1116.   Admit that Dennis D. and/or Vicki Mitchell are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1117.   Admit that Derrick and/or Debra J. Braswell are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1118.   Admit that Derrick Marshall is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1119.   Admit that Donald and/or Lisa Craig are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1120.   Admit that Donald J. Thomas is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1121.   Admit that Donnie and/or Christine Brown are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1122.   Admit that Dorothy Fizer Lucas and/or Clifton D. Lucas are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1123.   Admit that Dorothy Hale is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

1124.   Admit that Earl S. and/or Caitlin A. Abercrombie are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1125.   Admit that Eduardo A. and/or Stacy L. Rodriguez are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1126.   Admit that Edward and/or Maria Streckfus are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1127.   Admit that Elijah T. and/or Tiffany K. Ireland are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1128.   Admit that Elizabeth and/or Gerardo Sepulveda are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1129.   Admit that Emma Stubblefield is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1130.   Admit that Erickson Thomas is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1131.   Admit that Erin Marconi and/or Jeremy McCoy are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1132.   Admit that Ernesto and/or Yolanda S. Pacheco are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1133.   Admit that Eugene and/or Brenda K. Combs are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1134.   Admit that Eva Steskal Thoms and/or Richard Gordan Thoms are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1135.   Admit that Fetu and/or William Bruhnke are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1136.   Admit that Fidencio Martinez and/or C. Victoria Llanos are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1137.   Admit that Frank J and/or Ingrid H Bernard are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1138.   Admit that Garry and/or Deborah Barrett are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1139.   Admit that Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1140.   Admit that Gene and/or Sharon Ballantyne are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1141.   Admit that George William and/or Roxane Brown are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1142.   Admit that Gerald and/or Sheila Barnett are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1143.   Admit that Glenda Petersen and/or Michael Bohley are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1144.   Admit that Glenwood C. Simmons and/or Vicki G. Fisher are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1145.   Admit that Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/or William Kenneth McCutcheon are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1146.   Admit that Gregory Cyrus and/or Christy Cyrus are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1147.   Admit that Heather and/or Justin Wiezorek are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1148.   Admit that Herman Shannon and/or Kelly Schmitt are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1149.   Admit that Herschel Lee Shawver and/or Paula Lisle Shawver are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1150.   Admit that Ismael Valdespino Ortega and/or Yesenia Moran Mendoza are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1151.   Admit that Jack A and/or Pamela J Rickett are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1152.   Admit that Jackie Glenn and/or Brenda Carol Furnace are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1153.   Admit that James and/or Debora Davidson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1154.   Admit that James and/or Debra Loveless are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  Denied.**

1155.   Admit that James and/or Kristin Schupp are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1156.   Admit that James F. Cullison and/or Amanda L. Reatherford are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1157.   Admit that James L. and/or Debra J. Neideffer are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1158.   Admit that James R. and/or Sheila Waltrip are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1159.   Admit that James Taylor Brooks and/or Jacqueline Smith-Brooks are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1160.   Admit that Jamie Mayle and/or Sahara Alonzo are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1161.   Admit that Jeffrey and/or Anna Westby are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1162.   Admit that Jeffrey and/or Jennifer Clark are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1163.   Admit that Jennifer McCullough is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1164.   Admit that Jeremy and/or Darla Lathrem are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1165.   Admit that Jerene L. Nutter is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1166.   Admit that Jerry and/or Tammy Johnson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1167.   Admit that Jerry Ray Rosewell and/or Hollye Elaine Rosewell are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1168.   Admit that Jesse and/or Jordan Harding are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1169.   Admit that Jimmy and/or Mary Phillips are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1170.   Admit that Jody and/or Diana Jones are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1171.   Admit that John Beth and/or Cristal Advincula are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1172.   Admit that John T Carey, Jr and/or Samantha M Carey are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1173.   Admit that John Woods and/or Harriet Woods are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Ad Denied mitted.**

1174.   Admit that Jonathan and/or Samantha Castelblanco are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Jonathan and/or Samantha Castelblanco were never customers of Defendant.**

1175.   Admit that Jose Antonio Baez and/or Beronica Ibarra are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1176.   Admit that Joseph and/or Rosalie Laskos are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1177.   Admit that Joseph Bernard and/or Marilou Gamara Tejchman are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1178.   Admit that Joshua and/or Megan Freed are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1179.   Admit that Judith Abbott and/or Brenda Fox are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Judith Abbott and/or Brenda Fox were never customers of Defendant.**

1180.   Admit that JudyAnn Jones and/or Harvey Dennis Robinson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1181.   Admit that Julian Laureano Rosales and/or Guadalupe Coyt are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1182.   Admit that Justin Mason and/or Kaitlyn Pieratt are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1183.   Admit that Karen Tibwell Wallace and/or Aubry Gary Wallace are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1184.   Admit that Keegan Giles and/or Lakisha Giles are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1185.   Admit that Kenneth B, Cardwell and/or Michelle L. Mock are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1186.   Admit that Kimberly L. Howard is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1187.   Admit that Kimberly McClain is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1188.   Admit that Kinda Grant is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1189.   Admit that Kristy and/or Greg DeMarcus are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1190.   Admit that Kyle Allen is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1191.   Admit that Lauren and/or Jeffery McCullough are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1192.   Admit that Linda and/or Manuel Aguinaga are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1193.  Admit that Linda Danis and/or William Danis are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1194.  Admit that Linda M. and/or Robert L. Mclaughlin are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1195.  Admit that Lisa Billie is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1196.  Admit that Lisa Oxton is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1197.  Admit that Londa Byrd is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1198.  Admit that Maria and/or Edward Streckfus are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1199.  Admit that Mark and/or Laura Campbell are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1200.  Admit that Mark and/or Sue Brewer are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1201.  Admit that Mark A. Loken and/or Amelia M. Loken are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1202.  Admit that Marvin S. Cook is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1203.  Admit that Mathew L. Spencer and/or Christie N. Fasick are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1204.  Admit that Matthew and/or Nathalia Timmins are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs. Admit that Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1205.  Admit that Megan and/or Anthony Bunch are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1206.  Admit that Melissa and/or Erik Pond are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1207.  Admit that Melissa Stenberg is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1208.  Admit that Michael and/or Ruth Eldridge are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1209.  Admit that Michael B. and/or Regilyn P. Johnson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1210.   Admit that Michael Denis and/or Claudia Leon are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1211.   Admit that Miguel A Astudillo and/or Gloria Elena Astudillo are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1212.   Admit that Mitchell Leigh Marston and/or Megan R. Marston are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1213.   Admit that Nakisha and/or Sandra Lockhart are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1214.   Admit that Nancy Lynn Braun and/or Bobby Earl Braun are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1215.   Admit that Norman K. Athy Jr. and/or Terri L. Leamy are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1216.   Admit that Norris and/or Faye Horton are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1217.   Admit that Pamela Franklin is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1218.   Admit that Patricia O'Neal-Mellen is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: After reasonable inquiry, Defendant is unable to admit or deny as Patricia O'Neal-Mellen was never a customer of Defendant.**

1219.   Admit that Paul and/or Melinda Jacobs are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1220.   Admit that Paul and/or Shirley Prosek are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1221.   Admit that Randall E. Owens and/or Tanya R. Owens are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1222.   Admit that Randy C. and/or Jonnie S. Driver are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1223.   Admit that Ray Yorker Jr. is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1224.   Admit that Raymond and/or Viola Nault are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1225.   Admit that Rebecca and/or Ricky Jones are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1226.   Admit that Rhonda and/or George Dixon are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1227.   Admit that Ricky and/or Lynn Oberlender are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: After reasonable inquiry, Defendant is unable to admit or deny as Ricky and/or Lynn Oberlender were never customers of Defendant.**

1228.   Admit that Rita Patient and/or Charles Butler are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1229.   Admit that Robert N. and/or Patricia B. Watson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1230.   Admit that Robert Scott Yaikow and/or Amy Medders Yaikow are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1231.   Admit that Robert Whitaker and/or Karen Scott are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1232.   Admit that Roger P. and/or Angela B. Hays are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1233.   Admit that Ronald and/or Loretta Hardeman are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1234.   Admit that Ronda and/or Samuel Herrington are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1235.   Admit that Rosana E. Narvaez-Colon is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1236.   Admit that Roy and/or Deborah Ashby are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  After reasonable inquiry, Defendant is unable to admit or deny as Roy and/or Deborah Ashby were never customers of Defendant.**

1237.   Admit that Ruben Ortega and/or Adriana Cota are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1238.   Admit that Ryan and/or Suzanne Mailhiot are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1239.   Admit that Samuel J. and/or Dana M. Bollinger are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1240.   Admit that Sandra and/or Thomas J. Lawson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1241.   Admit that Sarah and/or Eric Chambers are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1242.   Admit that Scott and/or Tammy Bomkamp are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1243.   Admit that Shannon and/or William Meredith are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1244.   Admit that Sherry Helton is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1245.   Admit that Sierra Tebeau Sherry is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1246.   Admit that Sierra Tebeau-Sherri and/or Nikolas Beardsworth are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1247.   Admit that Simbarashe Murengami is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1248.   Admit that Steve and/or Rosalyn Moorehead are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1249.   Admit that Stuart and/or Bethany Roberts are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1250.   Admit that Tamikka Lashaun Portee and/or Vanessa Shavan Porter are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1251.   Admit that Tammy Kay and/or Phillip Lee Salmans are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1252.   Admit that Taury Person and/or Shannon Person are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1253.   Admit that Terry and/or Dalila Kennedy are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1254.   Admit that Theresa and/or David Barnewall are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1255.   Admit that Theresa and/or Gregory Dunn are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1256.   Admit that Tim and/or Tina Bullock are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1257.   Admit that Timothy C. and/or Julie A. Creekmur are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1258.   Admit that Urban and/or Cheryl Lanser are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE:  Denied.**

1259.   Admit that Victor Schexnayder is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1260.   Admit that Victoria and/or Donald McKenney are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1261.   Admit that Wayne and/or Shirley Norland are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1262.  Admit that Wendell B. Taylor is party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Denied.**

1263.  Admit that Weylen and/or Emily Gibson are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**

1264.  Admit that Willie and/or Velma Waters are parties to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs.

**RESPONSE: Admitted.**


Dated:  September 7, 2022.                    **NARDELLA & NARDELLA, PLLC**

                                              */s/ John J. Bennett*

                                              John J. Bennett, Esq.
                                              Florida Bar: 98257
                                              Paul N. Mascia, Esq.
                                              Florida Bar: 489670
                                              jbennett@nardellalaw.com
                                              pmascia@nardellalaw.com
                                              nmacdougall@nardellalaw.com
                                              135 W. Central Blvd., Suite 300
                                              Orlando, FL  32801
                                              Telephone: (407) 966-2680

                                              - and –

                                              **BRADFORD  EDWARDS  AND  VARLACK
                                              LLP**
                                              Patrick A. Bradford, Esq. (*Pro Hac Vice*)
                                              pbradford@bradfordedwards.com
                                              112 East 49th Street, 11th Floor
                                              New York, NY 10017
                                              Telephone: (917) 671-9406

                                              *Attorneys for Pandora Marketing, LLC d/b/a*
                                              *Timeshare Compliance, William Wilson a/k/a Bo*
                                              *Wilson, and Rich Folk*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7TH day of September, 2022, a true and correct copy of the foregoing has been served via electronic mail to the following CM/ECF Participants and via U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
 mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255
*Attorneys for Plaintiffs*

**MATEER & HARBERT, P.A.**

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**
Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

*Attorney for Timeshare Lawyers P.A.*

**PATRICK THOMPSON LAW P.A.**
Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

*Patrick Thompson, Pro Se*

## **NON-ECF PARTICIPANTS**

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

*/s/ John Bennett*
**John Bennett, Esq.**

P-1405

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

| | |
|---|---|
| BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*,<br><br>     Plaintiffs,<br><br>v.<br><br>TIMESHARE LAWYERS P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, *et al.*,<br><br>     Defendants. | Case No.: 1:20-cv-24681-RNS |

## DEFENDANTS' PANDORA MARKETING, LLC'S
## RESPONSE TO PLAINTIFFS' EIGHTH REQUEST FOR ADMISSION

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to Plaintiffs' Eighth Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure, by undersigned counsel, hereby responds to Plaintiffs' Eighth Requests for Admission dated August 8, 2022, in the above-referenced matter.

## REQUESTS FOR ADMISSION

1266.  Admit that Pandora Marketing had knowledge that Adan and/or Channell Blevins were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1267.  Admit that Pandora Marketing had knowledge that Albert and/or Nicole Renshaw were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1268.   Admit that Pandora Marketing had knowledge that Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1269.   Admit that Pandora Marketing had knowledge that Amanda and/or Eric Olsen were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1270.   Admit that Pandora Marketing had knowledge that Angela T. and/or Angela J. Buchanan were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan.**

1271.   Admit that Pandora Marketing had knowledge that Anthony and/or Ashley Tilahun were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1272.   Admit that Pandora Marketing had knowledge that Anthony Fisher and/or Senora Harris were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1273.   Admit that Pandora Marketing had knowledge that Anthony L. and/or Melissa J. Church were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1274.   Admit that Pandora Marketing had knowledge that Anthony R. Murphy and/or Nancy L. Satterlee were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1275.   Admit that Pandora Marketing had knowledge that April Joy Worthington and/or Chad Alan Vincent were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1276.   Admit that Pandora Marketing had knowledge that Arnold A. Gittens and/or Greta Stuart-Gittens were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1277.   Admit that Pandora Marketing had knowledge that Autumn Romain was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1278.   Admit that Pandora Marketing had knowledge that Beatriz Astencio and/or Roberto Cedeno were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1279.   Admit that Pandora Marketing had knowledge that Betty J. Adams was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1280.   Admit that Pandora Marketing had knowledge that Billy and/or Mary H. Hays were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1281.   Admit that Pandora Marketing had knowledge that Billy W. Garner was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1282.   Admit that Pandora Marketing had knowledge that Bobbie E. and/or Alice L. McNeil were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1283.   Admit that Pandora Marketing had knowledge that Bobby and/or Leanna Harmon were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1284.   Admit that Pandora Marketing had knowledge that Bradley and/or Amy Selvey were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1285.   Admit that Pandora Marketing had knowledge that Brandy and/or Kyle Griffin were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1286.   Admit that Pandora Marketing had knowledge that Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1287.   Admit that Pandora Marketing had knowledge that Brent and/or Lynette King were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1288.   Admit that Pandora Marketing had knowledge that Bryan and/or Elizabeth Catherine Espinosa were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1289.   Admit that Pandora Marketing had knowledge that Candace Hollins-Brokaw and/or Jeffrey Brokaw were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1290.   Admit that Pandora Marketing had knowledge that Celestine G Carter and/or Haru Carter Jr. were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1291.   Admit that Pandora Marketing had knowledge that Chao Xiong was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1292.   Admit that Pandora Marketing had knowledge that Chao Xiong and/or Aimee Lee were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1293. Admit that Pandora Marketing had knowledge that Charlene and/or Charly Brown were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1294.   Admit that Pandora Marketing had knowledge that Charles and/or Sherry Terry were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1295.   Admit that Pandora Marketing had knowledge that Charles Govan was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1296.   Admit that Pandora Marketing had knowledge that Cheresa and/or Jose Ramon were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1297.   Admit that Pandora Marketing had knowledge that Cheryll Craigie was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1298.   Admit that Pandora Marketing had knowledge that Christopher Dwayne Shivers and/or Katie Rochelle Shivers were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1299.   Admit that Pandora Marketing had knowledge that Claribell Soiza was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1300.   Admit that Pandora Marketing had knowledge that Colleen and/or David Bolanowski were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1301.   Admit that Pandora Marketing had knowledge that Cyril and/or Debra Guild were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1302.   Admit that Pandora Marketing had knowledge that Dale Greenley was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1303.   Admit that Pandora Marketing had knowledge that Damon L. and/or Sherita Perry were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1304.   Admit that Pandora Marketing had knowledge that Daniel and/or Cheryl Burns were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1305.   Admit that Pandora Marketing had knowledge that Danny and/or Christina Cormier were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1306. Admit that Pandora Marketing had knowledge that Darrin Hartman was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1307.   Admit that Pandora Marketing had knowledge that David and/or Barbara Mitchell Sr. were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1308.   Admit that Pandora Marketing had knowledge that David and/or Karen Sprague were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1309.   Admit that Pandora Marketing had knowledge that Dean and/or Margaretta Garlinghouse were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1310.   Admit that Pandora Marketing had knowledge that Deborah Leanne Truelove and/or Terry Efurd were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1311.   Admit that Pandora Marketing had knowledge that Demetrius Baytop and/or Carla Kitchel were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1312.   Admit that Pandora Marketing had knowledge that Denise Nelson-Smith and/or Willie E. Smith were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1313.   Admit that Pandora Marketing had knowledge that Dennis D. and/or Vicki Mitchell were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1314.   Admit that Pandora Marketing had knowledge that Derrick and/or Debra J. Braswell were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1315.   Admit that Pandora Marketing had knowledge that Derrick Marshall was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1316.   Admit that Pandora Marketing had knowledge that Donald and/or Lisa Craig were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1317.   Admit that Pandora Marketing had knowledge that Donald J. Thomas was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1318.   Admit that Pandora Marketing had knowledge that Donnie and/or Christine Brown were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1319. Admit that Pandora Marketing had knowledge that Dorothy Fizer Lucas and/or Clifton D. Lucas were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1320.   Admit that Pandora Marketing had knowledge that Dorothy Hale was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

1321.   Admit that Pandora Marketing had knowledge that Earl S. and/or Caitlin A. Abercrombie were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1322.   Admit that Pandora Marketing had knowledge that Eduardo A. and/or Stacy L. Rodriguez were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1323.   Admit that Pandora Marketing had knowledge that Edward and/or Maria Streckfus were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1324.   Admit that Pandora Marketing had knowledge that Elijah T. and/or Tiffany K. Ireland were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1325.   Admit that Pandora Marketing had knowledge that Elizabeth and/or Gerardo Sepulveda were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1326.   Admit that Pandora Marketing had knowledge that Emma Stubblefield was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1327.   Admit that Pandora Marketing had knowledge that Erickson Thomas was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1328.   Admit that Pandora Marketing had knowledge that Erin Marconi and/or Jeremy McCoy were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1329.   Admit that Pandora Marketing had knowledge that Ernesto and/or Yolanda S. Pacheco were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1330.   Admit that Pandora Marketing had knowledge that Eugene and/or Brenda K. Combs were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1331.   Admit that Pandora Marketing had knowledge that Eva Steskal Thoms and/or Richard Gordan Thoms were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1332.   Admit that Pandora Marketing had knowledge that Fetu and/or William Bruhnke were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1333.   Admit that Pandora Marketing had knowledge that Fidencio Martinez and/or C. Victoria Llanos were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1334.   Admit that Pandora Marketing had knowledge that Frank J and/or Ingrid H Bernard were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1335.   Admit that Pandora Marketing had knowledge that Garry and/or Deborah Barrett were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1336.   Admit that Pandora Marketing had knowledge that Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1337.   Admit that Pandora Marketing had knowledge that Gene and/or Sharon Ballantyne were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1338.   Admit that Pandora Marketing had knowledge that George William and/or Roxane Brown were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1339.   Admit that Pandora Marketing had knowledge that Gerald and/or Sheila Barnett were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1340.   Admit that Pandora Marketing had knowledge that Glenda Petersen and/or Michael Bohley were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1341.   Admit that Pandora Marketing had knowledge that Glenwood C. Simmons and/or Vicki G. Fisher were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1342.  Admit that Pandora Marketing had knowledge that Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/or William Kenneth McCutcheon were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1343.   Admit that Pandora Marketing had knowledge that Gregory Cyrus and/or Christy Cyrus were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1344.   Admit that Pandora Marketing had knowledge that Heather and/or Justin Wiezorek were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1345.   Admit that Pandora Marketing had knowledge that Herman Shannon and/or Kelly Schmitt were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1346.   Admit that Pandora Marketing had knowledge that Herschel Lee Shawver and/or Paula Lisle Shawver were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1347.   Admit that Pandora Marketing had knowledge that Ismael Valdespino Ortega and/or Yesenia Moran Mendoza were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1348.   Admit that Pandora Marketing had knowledge that Jack A and/or Pamela J Rickett were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1349.   Admit that Pandora Marketing had knowledge that Jackie Glenn and/or Brenda Carol Furnace were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1350.   Admit that Pandora Marketing had knowledge that James and/or Debora Davidson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1351.   Admit that Pandora Marketing had knowledge that James and/or Debra Loveless were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1352.   Admit that Pandora Marketing had knowledge that James and/or Kristin Schupp were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1353.   Admit that Pandora Marketing had knowledge that James F. Cullison and/or Amanda L. Reatherford were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1354.   Admit that Pandora Marketing had knowledge that James L. and/or Debra J. Neideffer were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1355.   Admit that Pandora Marketing had knowledge that James R. and/or Sheila Waltrip were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1356.   Admit that Pandora Marketing had knowledge that James Taylor Brooks and/or Jacqueline Smith-Brooks were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1357.   Admit that Pandora Marketing had knowledge that Jamie Mayle and/or Sahara Alonzo were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1358.   Admit that Pandora Marketing had knowledge that Jeffrey and/or Anna Westby were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1359.   Admit that Pandora Marketing had knowledge that Jeffrey and/or Jennifer Clark were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1360.   Admit that Pandora Marketing had knowledge that Jennifer McCullough was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1361.   Admit that Pandora Marketing had knowledge that Jeremy and/or Darla Lathrem were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1362.   Admit that Pandora Marketing had knowledge that Jerene L. Nutter was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1363.   Admit that Pandora Marketing had knowledge that Jerry and/or Tammy Johnson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1364. Admit that Pandora Marketing had knowledge that Jerry Ray Rosewell and/or Hollye Elaine Rosewell were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1365.   Admit that Pandora Marketing had knowledge that Jesse and/or Jordan Harding were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1366.  Admit that Pandora Marketing had knowledge that Jimmy and/or Mary Phillips were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1367.  Admit that Pandora Marketing had knowledge that Jody and/or Diana Jones were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1368.  Admit that Pandora Marketing had knowledge that John Beth and/or Cristal Advincula were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1369.  Admit that Pandora Marketing had knowledge that John T Carey, Jr and/or Samantha M Carey were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1370.  Admit that Pandora Marketing had knowledge that John Woods and/or Harriet Woods were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1371.  Admit that Pandora Marketing had knowledge that Jonathan and/or Samantha Castelblanco were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE:**

1372.  Admit that Pandora Marketing had knowledge that Jose Antonio Baez and/or Beronica Ibarra were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1373.   Admit that Pandora Marketing had knowledge that Joseph and/or Rosalie Laskos were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1374.   Admit that Pandora Marketing had knowledge that Joseph Bernard and/or Marilou Gamara Tejchman were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1375.   Admit that Pandora Marketing had knowledge that Joshua and/or Megan Freed were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1376.   Admit that Pandora Marketing had knowledge that Judith Abbott and/or Brenda Fox were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1377. Admit that Pandora Marketing had knowledge that JudyAnn Jones and/or Harvey Dennis Robinson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1378.   Admit that Pandora Marketing had knowledge that Julian Laureano Rosales and/or Guadalupe Coyt were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1379.   Admit that Pandora Marketing had knowledge that Justin Mason and/or Kaitlyn Pieratt were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1380. Admit that Pandora Marketing had knowledge that Karen Tibwell Wallace and/or Aubry Gary Wallace were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1381. Admit that Pandora Marketing had knowledge that Keegan Giles and/or Lakisha Giles were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1382. Admit that Pandora Marketing had knowledge that Kenneth B, Cardwell and/or Michelle L. Mock were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1383. Admit that Pandora Marketing had knowledge that Kimberly L. Howard was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1384. Admit that Pandora Marketing had knowledge that Kimberly McClain was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1385. Admit that Pandora Marketing had knowledge that Kinda Grant was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1386. Admit that Pandora Marketing had knowledge that Kristy and/or Greg DeMarcus were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1387.  Admit that Pandora Marketing had knowledge that Kyle Allen was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1388.  Admit that Pandora Marketing had knowledge that Lauren and/or Jeffery McCullough were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1389.  Admit that Pandora Marketing had knowledge that Linda and/or Manuel Aguinaga were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1390. Admit that Pandora Marketing had knowledge that Linda Danis and/or William Danis were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1391.  Admit that Pandora Marketing had knowledge that Linda M. and/or Robert L. Mclaughlin were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1392.  Admit that Pandora Marketing had knowledge that Lisa Billie was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1393.  Admit that Pandora Marketing had knowledge that Lisa Oxton was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1394.  Admit that Pandora Marketing had knowledge that Londa Byrd was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1395.   Admit that Pandora Marketing had knowledge that Maria and/or Edward Streckfus were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1396.   Admit that Pandora Marketing had knowledge that Mark and/or Laura Campbell were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1397.   Admit that Pandora Marketing had knowledge that Mark and/or Sue Brewer were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1398.   Admit that Pandora Marketing had knowledge that Mark A. Loken and/or Amelia M. Loken were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1399.   Admit that Pandora Marketing had knowledge that Marvin S. Cook were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1400.   Admit that Pandora Marketing had knowledge that Mathew L. Spencer and/or Christie N. Fasick were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1401.   Admit that Pandora Marketing had knowledge that Matthew and/or Nathalia Timmins were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1402.  Admit that Pandora Marketing had knowledge that Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1403.  Admit that Pandora Marketing had knowledge that Megan and/or Anthony Bunch were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1404.  Admit that Pandora Marketing had knowledge that Melissa and/or Erik Pond were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1405.  Admit that Pandora Marketing had knowledge that Melissa Stenberg was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1406.  Admit that Pandora Marketing had knowledge that Michael and/or Ruth Eldridge were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1407.  Admit that Pandora Marketing had knowledge that Michael B. and/or Regilyn P. Johnson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1408.  Admit that Pandora Marketing had knowledge that Michael Denis and/or Claudia Leon were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1409.   Admit that Pandora Marketing had knowledge that Miguel A Astudillo and/or Gloria Elena Astudillo were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1410.   Admit that Pandora Marketing had knowledge that Mitchell Leigh Marston and/or Megan R. Marston were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1411.   Admit that Pandora Marketing had knowledge that Nakisha and/or Sandra Lockhart were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1412.   Admit that Pandora Marketing had knowledge that Nancy Lynn Braun and/or Bobby Earl Braun were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1413.   Admit that Pandora Marketing had knowledge that Norman K. Athy Jr. and/or Terri L. Leamy were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1414.   Admit that Pandora Marketing had knowledge that Norris and/or Faye Horton were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1415.   Admit that Pandora Marketing had knowledge that Pamela Franklin was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1416.   Admit that Pandora Marketing had knowledge that Patricia O'Neal-Mellen was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1417.   Admit that Pandora Marketing had knowledge that Paul and/or Melinda Jacobs were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1418.   Admit that Pandora Marketing had knowledge that Paul and/or Shirley Prosek were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1419.   Admit that Pandora Marketing had knowledge that Randall E. Owens and/or Tanya R. Owens were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1420.   Admit that Pandora Marketing had knowledge that Randy C. and/or Jonnie S. Driver were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1421.   Admit that Pandora Marketing had knowledge that Ray Yorker Jr. was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1422.   Admit that Pandora Marketing had knowledge that Raymond and/or Viola Nault were party to a writing that purports to be a written agreement between such individual(s) and one of

the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1423.   Admit that Pandora Marketing had knowledge that Rebecca and/or Ricky Jones were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1424.   Admit that Pandora Marketing had knowledge that Rhonda and/or George Dixon were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1425.   Admit that Pandora Marketing had knowledge that Ricky and/or Lynn Oberlender were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1426.   Admit that Pandora Marketing had knowledge that Rita Patient and/or Charles Butler were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1427.   Admit that Pandora Marketing had knowledge that Robert N. and/or Patricia B. Watson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1428.   Admit that Pandora Marketing had knowledge that Robert Scott Yaikow and/or Amy Medders Yaikow were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1429.   Admit that Pandora Marketing had knowledge that Robert Whitaker and/or Karen Scott were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1430.   Admit that Pandora Marketing had knowledge that Roger P. and/or Angela B. Hays were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1431.   Admit that Pandora Marketing had knowledge that Ronald and/or Loretta Hardeman were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1432.   Admit that Pandora Marketing had knowledge that Ronda and/or Samuel Herrington were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1433.   Admit that Pandora Marketing had knowledge that Rosana E. Narvaez-Colon was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1434.   Admit that Pandora Marketing had knowledge that Roy and/or Deborah Ashby were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Denied.**

1435.   Admit that Pandora Marketing had knowledge that Ruben Ortega and/or Adriana Cota were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1436.   Admit that Pandora Marketing had knowledge that Ryan and/or Suzanne Mailhiot were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1437.   Admit that Pandora Marketing had knowledge that Samuel J. and/or Dana M. Bollinger were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1438.   Admit that Pandora Marketing had knowledge that Sandra and/or Thomas J. Lawson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1439.   Admit that Pandora Marketing had knowledge that Sarah and/or Eric Chambers were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1440.   Admit that Pandora Marketing had knowledge that Scott and/or Tammy Bomkamp were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1441.   Admit that Pandora Marketing had knowledge that Shannon and/or William Meredith were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1442.   Admit that Pandora Marketing had knowledge that Sherry Helton was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

RESPONSE: Admitted.

1443.   Admit that Pandora Marketing had knowledge that Sierra Tebeau Sherry was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1444.   Admit that Pandora Marketing had knowledge that Sierra Tebeau-Sherri and/or Nikolas Beardsworth were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1445.   Admit that Pandora Marketing had knowledge that Simbarashe Murengami was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1446.   Admit that Pandora Marketing had knowledge that Steve and/or Rosalyn Moorehead were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1447.   Admit that Pandora Marketing had knowledge that Stuart and/or Bethany Roberts were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1448.   Admit that Pandora Marketing had knowledge that Tamikka Lashaun Portee and/or Vanessa Shavan Porter were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1449.   Admit that Pandora Marketing had knowledge that Tammy Kay and/or Phillip Lee Salmans were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1450.   Admit that Pandora Marketing had knowledge that Taury Person and/or Shannon Person were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1451.   Admit that Pandora Marketing had knowledge that Terry and/or Dalila Kennedy were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1452.   Admit that Pandora Marketing had knowledge that Theresa and/or David Barnewall were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1453.   Admit that Pandora Marketing had knowledge that Theresa and/or Gregory Dunn were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1454.   Admit that Pandora Marketing had knowledge that Tim and/or Tina Bullock were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1455.   Admit that Pandora Marketing had knowledge that Timothy C. and/or Julie A. Creekmur were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1456.   Admit that Pandora Marketing had knowledge that Urban and/or Cheryl Lanser were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1457.   Admit that Pandora Marketing had knowledge that Victor Schexnayder was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1458.  Admit that Pandora Marketing had knowledge that Victoria and/or Donald McKenney were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1459.  Admit that Pandora Marketing had knowledge that Wayne and/or Shirley Norland were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1460.  Admit that Pandora Marketing had knowledge that Wendell B. Taylor was party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1461.  Admit that Pandora Marketing had knowledge that Weylen and/or Emily Gibson were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

1462.  Admit that Pandora Marketing had knowledge that Willie and/or Velma Waters were party to a writing that purports to be a written agreement between such individual(s) and one of the Plaintiffs when such individual(s) executed a "Timeshare Compliance services Agreement" with Pandora Marketing.

**RESPONSE: Admitted.**

Dated:  September 7, 2022.                    **NARDELLA & NARDELLA, PLLC**

                                             */s/ John J. Bennett*

                                             John J. Bennett, Esq.
                                             Florida Bar: 98257
                                             Paul N. Mascia, Esq.
                                             Florida Bar: 489670

jbennett@nardellalaw.com
pmascia@nardellalaw.com
nmacdougall@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL  32801
Telephone: (407) 966-2680

- and –

**BRADFORD  EDWARDS  AND  VARLACK
LLP**
Patrick A. Bradford, Esq. (*Pro Hac Vice*)
pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406

*Attorneys for Pandora Marketing, LLC d/b/a
Timeshare Compliance, William Wilson a/k/a Bo
Wilson, and Rich Folk*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7TH day of September 2022, a true and correct copy of

the foregoing has been served via electronic mail to the following CM/ECF Participants and via

U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**                    **MATEER & HARBERT, P.A.**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
 mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Plaintiffs*

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group, LLP
and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

*Attorney for Timeshare Lawyers P.A.*

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

*Patrick Thompson, Pro Se*

## NON-ECF PARTICIPANTS

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

31

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

*/s/ John Bennett*
**John Bennett, Esq.**

P-1407

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

BLUEGREEN     VACATIONS     UNLIMITED,
INC., *et al.*,

      Plaintiffs,

v.                                                        Case No.: 1:20-cv-24681-RNS

TIMESHARE LAWYERS P.A. d/b/a FEDERAL
FINANCIAL LAW GROUP, *et al.*,

      Defendants.

**DEFENDANTS' PANDORA MARKETING, LLC'S
RESPONSE TO PLAINTIFFS' NINTH REQUEST FOR ADMISSION**

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to

Plaintiffs' Ninth Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure,

by undersigned counsel, hereby responds to Plaintiffs' Eighth Requests for Admission dated

August 8, 2022, in the above-referenced matter.

**REQUESTS FOR ADMISSION**

1463. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services
Agreement", Pandora Marketing communicated to Adan and/or Channell Blevins that it could
offer services that would terminate such individual(s) obligation to make future monetary payment
to one of the Plaintiffs.

**RESPONSE: Denied.**

1464. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services
Agreement", Pandora Marketing communicated to Albert and/or Nicole Renshaw that it could
offer services that would terminate such individual(s) obligation to make future monetary payment
to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's
services are explained to the customer.  One component of Pandora's services includes the
customer ultimately being relieved of their timeshare payment obligations.**

1465.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Alfonso Lascano Jr and/or Loretta Ann Wilson Lascano that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1466.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Amanda and/or Eric Olsen that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1467.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Angela T. and/or Angela J. Buchanan that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1468.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Anthony and/or Ashley Tilahun that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1469.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Anthony Fisher and/or Senora Harris that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1470.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Anthony L. and/or Melissa J. Church that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1471.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Anthony R. Murphy and/or Nancy L. Satterlee that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1472.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to April Joy Worthington and/or Chad Alan Vincent that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1473.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Arnold A. Gittens and/or Greta Stuart Gittens that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1474.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Autumn Romain that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1475.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Beatriz Astencio and/or Roberto

Cedeno that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1476.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Betty J. Adams that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1477. Agreement", Pandora Marketing communicated to Billy and/or Mary H. Hays that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1478.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Billy W. Garner that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1479.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Bobbie E. and/or Alice L. McNeil that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1480.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Bobby and/or Leanna Harmon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1481.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Bradley and/or Amy Selvey that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1482.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Brandy and/or Kyle Griffin that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1483.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1484.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Brent and/or Lynette King that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1485.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Bryan and/or Elizabeth Catherine Espinosa that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1486.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Candace Hollins-Brokaw and/or Jeffrey Brokaw that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1487.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Celestine G Carter and/or Haru Carter Jr. that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1488.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Chao Xiong that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1489.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Chao Xiong and/or Aimee Lee that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1490. Agreement", Pandora Marketing communicated to Charlene and/or Charly Brown that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1491.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Charles and/or Sherry Terry that it

could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1492.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Charles Govan that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1493.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Cheresa and/or Jose Ramon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1494.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Cheryll Craigie that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1495.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Christopher Dwayne Shivers and/or Katie Rochelle Shivers that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1496.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Claribell Soiza that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1497.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Colleen and/or David Bolanowski that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1498.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Cyril and/or Debra Guild that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1499.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Dale Greenley that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1500.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Damon L. and/or Sherita Perry that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1501.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Daniel and/or Cheryl Burns that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1502.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Danny and/or Christina Cormier that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1503. Agreement", Pandora Marketing communicated to Darrin Hartman that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1504.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to David and/or Barbara Mitchell Sr. that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1505.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to David and/or Karen Sprague that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1506.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Dean and/or Margaretta Garlinghouse that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1507.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Deborah Leanne Truelove and/or

Terry Efurd that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1508.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Demetrius Baytop and/or Carla Kitchel that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1509.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Denise Nelson-Smith and/or Willie E. Smith that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1510.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Dennis D. and/or Vicki Mitchell that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1511.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Derrick and/or Debra J. Braswell that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1512.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Derrick Marshall that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1513.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Donald and/or Lisa Craig that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1514.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Donald J. Thomas that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1515.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Donnie and/or Christine Brown that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1516. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Dorothy Fizer Lucas and/or Clifton D. Lucas that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1517.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Dorothy Hale that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted as to Henry L. Smith and Dorothy A. Hale-Smith to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One**

component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.

1518.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Earl S. and/or Caitlin A. Abercrombie that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1519.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Eduardo A. and/or Stacy L. Rodriguez that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1520.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Edward and/or Maria Streckfus that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1521.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Elijah T. and/or Tiffany K. Ireland that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1522.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Elizabeth and/or Gerardo Sepulveda that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1523. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Emma Stubblefield that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1524. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Erickson Thomas that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1525. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Erin Marconi and/or Jeremy McCoy that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1526. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ernesto and/or Yolanda S. Pacheco that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1527. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Eugene and/or Brenda K. Combs that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1528. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Eva Steskal Thoms and/or Richard

Gordan Thoms that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1529. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Fetu and/or William Bruhnke that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1530.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Fidencio Martinez and/or C. Victoria Llanos that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1531.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Frank J and/or Ingrid H Bernard that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1532.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Garry and/or Deborah Barrett that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1533.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Gayle Turner, Stanley Singleton, Equalla Agee, and/or Anthony Sykes that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1534. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Gene and/or Sharon Ballantyne that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1535. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to George William and/or Roxane Brown that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1536. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Gerald and/or Sheila Barnett that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1537. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Glenda Petersen and/or Michael Bohley that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1538. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Glenwood C. Simmons and/or Vicki G. Fisher that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1539.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Gloria Jean McCutcheon and/or Cynthia A. Timberlake and/orWilliam Kenneth McCutcheon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1540.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Gregory Cyrus and/or Christy Cyrus that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1541.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Heather and/or Justin Wiezorek that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1542.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Herman Shannon and/or Kelly Schmitt that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1543.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Herschel Lee Shawver and/or Paula Lisle Shawver that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1544. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ismael Valdespino Ortega and/or Yesenia Moran Mendoza that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1545. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jack A and/or Pamela J Rickett that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1546. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jackie Glenn and/or Brenda Carol Furnace that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1547. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James and/or Debora Davidson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1548. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James and/or Debra Loveless that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE:  Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1549.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James and/or Kristin Schupp that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1550.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James F. Cullison and/or Amanda L. Reatherford that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1551.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James L. and/or Debra J. Neideffer that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1552.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James R. and/or Sheila Waltrip that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1553.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to James Taylor Brooks and/or Jacqueline Smith-Brooks that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1554. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jamie Mayle and/or Sahara Alonzo that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1555. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jeffrey and/or Anna Westby that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1556. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jeffrey and/or Jennifer Clark that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1557. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jennifer McCullough that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1558. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jeremy and/or Darla Lathrem that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1559.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jerene L. Nutter that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1560.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jerry and/or Tammy Johnson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1561. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jerry Ray Rosewell and/or Hollye Elaine Rosewell that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1562.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jesse and/or Jordan Harding that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1563.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jimmy and/or Mary Phillips that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1564. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jody and/or Diana Jones that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1565. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to John Beth and/or Cristal Advincula that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1566. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to John T Carey, Jr and/or Samantha M Carey that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1567. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to John Woods and/or Harriet Woods that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1568. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jonathan and/or Samantha Castelblanco that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1569.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Jose Antonio Baez and/or Beronica Ibarra that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1570.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Joseph and/or Rosalie Laskos that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1571.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Joseph Bernard and/or Marilou Gamara Tejchman that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1572.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Joshua and/or Megan Freed that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1573.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Judith Abbott and/or Brenda Fox that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1574. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to JudyAnn Jones and/or Harvey Dennis Robinson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1575.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Julian Laureano Rosales and/or Guadalupe Coyt that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1576.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Justin Mason and/or Kaitlyn Pieratt that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1577.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Karen Tibwell Wallace and/or Aubry Gary Wallace that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1578.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Keegan Giles and/orLakisha Giles that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1579.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kenneth B, Cardwell and/o rMichelle L. Mock that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1580.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kimberly L. Howard that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1581.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kimberly McClain that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1582.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kinda Grant that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1583.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kristy and/or Greg DeMarcus that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1584.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Kyle Allen that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1585.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Lauren and/or Jeffery McCullough that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1586.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Linda and/or Manuel Aguinaga that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1587. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Linda Danis and/or William Danis that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1588.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Linda M. and/or Robert L. Mclaughlin that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1589.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Lisa Billie that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1590.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Lisa Oxton that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1591.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Londa Byrd that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1592.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Maria and/or Edward Streckfus that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1593.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Mark and/or Laura Campbell that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1594.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Mark and/or Sue Brewer that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1595.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Mark A. Loken and/or Amelia M. Loken that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1596.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Marvin S. Cook that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1597.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Mathew L. Spencer and/or Christie N. Fasick that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1598.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Matthew and/or Nathalia Timmins that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1599.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Matthew Cody LaDeaux and/or Stephanie Michelle LaDeaux that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1600. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Megan and/or Anthony Bunch that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1601. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Melissa and/or Erik Pond that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1602. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Melissa Stenberg that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1603. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Michael and/or Ruth Eldridge that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1604. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Michael B. and/or Regilyn P. Johnson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1605.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Michael Denis and/or Claudia Leon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1606.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Miguel A Astudillo and/or Gloria Elena Astudillo that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1607.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Mitchell Leigh Marston and/or Megan R. Marston that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1608.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Nakisha and/or Sandra Lockhart that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1609.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Nancy Lynn Braun and/or Bobby Earl Braun that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1610.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Norman K. Athy Jr. and/or Terri L. Leamy that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1611.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Norris and/or Faye Horton that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1612.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Pamela Franklin that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE:  Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1613. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Patricia O'Neal-Mellen that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1614.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Paul and/or Melinda Jacobs that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1615. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Paul and/or Shirley Prosek that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1616. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Randall E. Owens and/or Tanya R. Owens that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1617. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Randy C. and/or Jonnie S. Driver that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1618. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ray Yorker Jr. that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1619. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Raymond and/or Viola Nault that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1620. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Rebecca and/or Ricky Jones that it

could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1621.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Rhonda and/or George Dixon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1622.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ricky and/or Lynn Oberlender that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1623.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Rita Patient and/or Charles Butler that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1624.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Robert N. and/or Patricia B. Watson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1625.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Robert Scott Yaikow and/or Amy Medders Yaikow that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1626. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Robert Whitaker and/or Karen Scott that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1627. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Roger P. and/or Angela B. Hays that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1628. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ronald and/or Loretta Hardeman that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1629. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ronda and/or Samuel Herrington that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1630. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Rosana E. Narvaez-Colon that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1631.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Roy and/or Deborah Ashby that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Denied.**

1632.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ruben Ortega and/or Adriana Cota that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1633.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Ryan and/or Suzanne Mailhiot that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1634.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Samuel J. and/or Dana M. Bollinger that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1635.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Sandra and/or Thomas J. Lawson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1636. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Sarah and/or Eric Chambers that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1637. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Scott and/or Tammy Bomkamp that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1638. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Shannon and/or William Meredith that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1639. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Sherry Helton that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1640. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Sierra Tebeau Sherry that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1641. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Sierra Tebeau-Sherri and/or Nikolas

Beardsworth that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1642.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Simbarashe Murengami that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1643.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Steve and/or Rosalyn Moorehead that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1644.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Stuart and/or Bethany Roberts that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1645.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Tamikka Lashaun Portee and/or Vanessa Shavan Porter that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer. One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1646.   Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Tammy Kay and/or Phillip Lee Salmans that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1647.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Taury Person and/or Shannon Person that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1648.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Terry and/or Dalila Kennedy that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1649.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Theresa and/or David Barnewall that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1650.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Theresa and/or Gregory Dunn that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1651.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Tim and/or Tina Bullock that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1652. Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Timothy C. and/or Julie A. Creekmur that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1653.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Urban and/or Cheryl Lanser that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1654.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Victor Schexnayder that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1655.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Victoria and/or Donald McKenney that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1656.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Wayne and/or Shirley Norland that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1657.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Wendell B. Taylor that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1658.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Weylen and/or Emily Gibson that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

1659.  Admit that, prior to such individual(s) executing a "Timeshare Compliance Services Agreement", Pandora Marketing communicated to Willie & Velma Waters that it could offer services that would terminate such individual(s) obligation to make future monetary payment to one of the Plaintiffs.

**RESPONSE: Admitted to the extent that prior to executing an agreement, Pandora's services are explained to the customer.  One component of Pandora's services includes the customer ultimately being relieved of their timeshare payment obligations.**

Dated:  September 7, 2022.     **NARDELLA & NARDELLA, PLLC**

*/s/ John J. Bennett*

John J. Bennett, Esq.
Florida Bar: 98257
Paul N. Mascia, Esq.
Florida Bar: 489670
jbennett@nardellalaw.com
pmascia@nardellalaw.com
nmacdougall@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL  32801
Telephone: (407) 966-2680

- and –

**BRADFORD EDWARDS AND VARLACK LLP**
Patrick A. Bradford, Esq. (*Pro Hac Vice*)
pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406
*Attorneys for Pandora Marketing, LLC d/b/a Timeshare Compliance, William Wilson a/k/a Bo Wilson, and Rich Folk*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 7TH day of September, 2022, a true and correct copy of the foregoing has been served via electronic mail to the following CM/ECF Participants and via U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

| **SHUTTS & BOWEN LLP** | **MATEER & HARBERT, P.A.** |
|---|---|
| Eric C. Christu, Esq. | Brian L. Wagner, Esq. |
| Florida Bar No. 434647 | bwagner@mateerharbert.com |
| echristu@shutts.com | semerson@mateerharbert.com |
| 200 South Biscayne Boulevard, Suite 4100 | W. Scott Gabrielson, Esq. |
| Miami, FL 33131 | sgabrielson@mateerharbert.com |
| Telephone: (305) 358-6300 | Mstoutamire@mateerharbert.com |
| Facsimile: (305) 381-9982 | 225 East Robinson Street, Suite 600 |
| -and- | Orlando, FL 32801-2854 |
| Alfred J. Bennington, Jr., Esq. | Telephone: 407-425-9044 |
| Florida Bar No. 0404985 | Facsimile: 407-423-2016 |
| bbennington@shutts.com | |
| Glennys Ortega Rubin, Esq. | *Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery* |
| Florida Bar No. 556361 | |
| grubin@shutts.com | |
| Michael J. Quinn, Esq. | |

40

Florida Bar No. 084587
mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255
*Attorneys for Plaintiffs*

| **PATRICK THOMPSON LAW P.A.** | **PATRICK THOMPSON LAW P.A.** |
|---|---|
| Patrick J. Thompson, Esq. | Patrick James Thompson, Esq. |
| law@patrickjthompson.com | law@patrickjthompson.com |
| Patrick Thompson Law P.A. | 7025 County Road 46A PMB 432 |
| 201 Hilda Street, Ste. 23 | Lake Mary, FL 32746-4721 |
| Kissimmee, FL 34741 | Telephone: (407) 750-9000 |
| Telephone: 407-750-9000 | Facsimile: (386) 675-1445 |
| | |
| *Attorney for Timeshare Lawyers P.A.* | *Patrick Thompson, Pro Se* |

## NON-ECF PARTICIPANTS

| | |
|---|---|
| Angela Consalvo | Paddy Deighan |
| 588 Cobblestone Creek Drive | 2000 Fashion Show Drive, Unit 2222 |
| Boynton Beach, Florida 33472 | Las Vegas, Nevada 89109 |
| | paddy@federalfinanciallawgroup.com |
| | |
| Paul Stewart | Gallagher-Clifton, LLC |
| 508 Harbor Blvd., #401 | 508 Harbor Blvd., #401 |
| Destin, FL 32541 | Destin, FL 32541 |
| | |
| MG&N Group LLC d/b/a National Credit Rehab | |
| c/o Registered Agent Michael Consalvo | |
| 9502 Sun Pointe Drive | |
| Boynton Beach, Florida 33437 | |

/s/ John Bennett
**John Bennett, Esq.**

P-1409

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

BLUEGREEN      VACATIONS      UNLIMITED,
INC., *et al.*,

     Plaintiffs,

v.

TIMESHARE LAWYERS P.A. d/b/a FEDERAL
FINANCIAL LAW GROUP, *et al.*,

     Defendants.

Case No.: 1:20-cv-24681-RNS

## DEFENDANTS' PANDORA MARKETING, LLC'S
## RESPONSE TO PLAINTIFFS' TENTH REQUEST FOR ADMISSION

Defendants, Pandora Marketing, LLC d/b/a Timeshare Compliance's Response to

Plaintiffs' Tenth Request for Admission, pursuant to Rule 34, Federal Rule of Civil Procedure,

by undersigned counsel, hereby responds to Plaintiffs' Tenth Requests for Admission dated

August 8, 2022, in the above-referenced matter.

## REQUESTS FOR ADMISSION

1660.  Admit that Pandora Marketing referred Adan and/or Channell Blevins to Carlsbad Law
Group.

     **RESPONSE: Denied.**

1661.  Admit that Pandora Marketing referred Albert and/or Nicole Renshaw to Carlsbad Law
Group.

     **RESPONSE: Admitted.**

1662.  Admit that Pandora Marketing referred Amanda and/or Eric Olsen to Carlsbad Law Group.

     **RESPONSE: Admitted.**

1663.   Admit that Pandora Marketing referred Angela T. and/or Angela J. Buchanan to Carlsbad Law Group.

**RESPONSE: Denied as to Angela T. & Angela J. Buchanan.  Admitted as to Andrew T. & Angela J. Buchanan.**

1664.   Admit that Pandora Marketing referred Anthony and/or Ashley Tilahun to Carlsbad Law Group.

**RESPONSE: Admitted.**

1665.   Admit that Pandora Marketing referred April Joy Worthington and/or Chad Alan Vincent to Carlsbad Law Group.

**RESPONSE: Admitted.**

1666.   Admit that Pandora Marketing referred Beatriz Astencio and/or Roberto Cedeno to Carlsbad Law Group.

**RESPONSE: Admitted.**

1667.   Admit that Pandora Marketing referred Billy and/or Mary H. Hays to Carlsbad Law Group.

**RESPONSE: Admitted.**

1668.   Admit that Pandora Marketing referred Bobbie E. and/or Alice L. McNeil to Carlsbad Law Group.

**RESPONSE: Admitted.**

1669.   Admit that Pandora Marketing referred Bobby and/or Leanna Harmon to Carlsbad Law Group.

**RESPONSE: Admitted.**

1670.   Admit that Pandora Marketing referred Bradley and/or Amy Selvey to Carlsbad Law Group.

**RESPONSE:  Denied.**

1671.   Admit that Pandora Marketing referred Brandy and/or Kyle Griffin to Carlsbad Law Group.

**RESPONSE: Admitted.**

1672.   Admit that Pandora Marketing referred Brenda K. Kern, Cameron Elizabeth Kern, Lyle D. Kern and/or Lyndon Weslie Kern to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1673.   Admit that Pandora Marketing referred Brent and/or Lynette King to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1674.   Admit that Pandora Marketing referred Bryan and/or Elizabeth Catherine Espinosa to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1675.   Admit that Pandora Marketing referred Charlene and/or Charly Brown to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1676.   Admit that Pandora Marketing referred Colleen and/or David Bolanowski to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1677.   Admit that Pandora Marketing referred Daniel and/or Cheryl Burns to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1678.   Admit that Pandora Marketing referred Darrin Hartman to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1679.   Admit that Pandora Marketing referred David and/or Barbara Mitchell Sr. to Carlsbad Law Group.

   **RESPONSE: Admitted.**

1680.   Admit that Pandora Marketing referred David and/or Karen Sprague to Carlsbad Law Group.

   **RESPONSE: Denied.**

1681.  Admit that Pandora Marketing referred Demetrius Baytop and/or Carla Kitchel to Carlsbad Law Group.

**RESPONSE: Denied.**

1682.  Admit that Pandora Marketing referred Derrick and/or Debra J. Braswell to Carlsbad Law Group.

**RESPONSE: Admitted.**

1683.  Admit that Pandora Marketing referred Donald and/or Lisa Craig to Carlsbad Law Group.

**RESPONSE: Admitted.**

1684.  Admit that Pandora Marketing referred Donald J. Thomas to Carlsbad Law Group.

**RESPONSE: Admitted.**

1685.  Admit that Pandora Marketing referred Donnie and/or Christine Brown to Carlsbad Law Group.

**RESPONSE: Admitted.**

1686.  Admit that Pandora Marketing referred Dorothy Hale to Carlsbad Law Group.

**RESPONSE: Admitted as to Henry L. Smith and Dorothy A. Hale-Smith.**

1687.  Admit that Pandora Marketing referred Edward and/or Maria Streckfus to Carlsbad Law Group.

**RESPONSE: Admitted.**

1688.  Admit that Pandora Marketing referred Emma Stubblefield to Carlsbad Law Group.

**RESPONSE: Admitted.**

1689.  Admit that Pandora Marketing referred Erickson Thomas to Carlsbad Law Group.

**RESPONSE: Admitted.**

1690.  Admit that Pandora Marketing referred Eugene and/or Brenda K. Combs to Carlsbad Law Group.

**RESPONSE: Admitted.**

1691.   Admit that Pandora Marketing referred Fidencio Martinez and/or C. Victoria Llanos to Carlsbad Law Group.

**RESPONSE: Admitted.**

1692.   Admit that Pandora Marketing referred Garry and/or Deborah Barrett to Carlsbad Law Group.

**RESPONSE: Admitted.**

1693.   Admit that Pandora Marketing referred Gene and/or Sharon Ballantyne to Carlsbad Law Group.

**RESPONSE: Admitted.**

1694.   Admit that Pandora Marketing referred Gerald and/or Sheila Barnett to Carlsbad Law Group.

**RESPONSE: Admitted.**

1695.   Admit that Pandora Marketing referred Glenwood C. Simmons and/or Vicki G. Fisher to Carlsbad Law Group.

**RESPONSE: Admitted.**

1696.   Admit that Pandora Marketing referred Ismael Valdespino Ortega and/or Yesenia Moran Mendoza to Carlsbad Law Group.

**RESPONSE: Admitted.**

1697.   Admit that Pandora Marketing referred James and/or Debora Davidson to Carlsbad Law Group.

**RESPONSE: Admitted.**

1698.   Admit that Pandora Marketing referred James and/or Kristin Schupp to Carlsbad Law Group.

**RESPONSE: Admitted.**

1699.   Admit that Pandora Marketing referred James F. Cullison and/or Amanda L. Reatherford to Carlsbad Law Group.

**RESPONSE: Admitted.**

1700.   Admit that Pandora Marketing referred Jeffrey and/or Jennifer Clark to Carlsbad Law Group.

**RESPONSE: Admitted.**

1701.   Admit that Pandora Marketing referred Jeremy and/or Darla Lathrem to Carlsbad Law Group.

**RESPONSE: Admitted.**

1702.   Admit that Pandora Marketing referred Jerry and/or Tammy Johnson to Carlsbad Law Group.

**RESPONSE: Admitted.**

1703.   Admit that Pandora Marketing referred Jimmy and/or Mary Phillips to Carlsbad Law Group.

**RESPONSE: Admitted.**

1704.   Admit that Pandora Marketing referred Jonathan and/or Samantha Castelblanco to Carlsbad Law Group.

**RESPONSE: Admitted.**

1705.   Admit that Pandora Marketing referred Joseph and/or Rosalie Laskos to Carlsbad Law Group.

**RESPONSE: Admitted.**

1706.   Admit that Pandora Marketing referred Joseph Bernard and/or Marilou Gamara Tejchman to Carlsbad Law Group.

**RESPONSE: Admitted.**

1707.   Admit that Pandora Marketing referred Joshua and/or Megan Freed to Carlsbad Law Group.

**RESPONSE: Admitted.**

1708.   Admit that Pandora Marketing referred Judith Abbott and/or Brenda Fox to Carlsbad Law Group.

**RESPONSE: Denied.**

1709.  Admit that Pandora Marketing referred Kenneth B, Cardwell and/or Michelle L. Mock to
Carlsbad Law Group.

**RESPONSE: Admitted.**

1710.  Admit that Pandora Marketing referred Kimberly L. Howard to Carlsbad Law Group.

**RESPONSE: Admitted.**

1711.  Admit that Pandora Marketing referred Linda and/or Manuel Aguinaga to Carlsbad Law
Group.

**RESPONSE: Admitted.**

1712.  Admit that Pandora Marketing referred Linda Danis and/or William Danis to Carlsbad Law
Group.

**RESPONSE: Admitted.**

1713.  Admit that Pandora Marketing referred Lisa Billie to Carlsbad Law Group.

**RESPONSE: Admitted.**

1714.  Admit that Pandora Marketing referred Lisa Oxton to Carlsbad Law Group.

**RESPONSE: Admitted.**

1715.  Admit that Pandora Marketing referred Maria and/or Edward Streckfus to Carlsbad Law
Group.

**RESPONSE: Admitted.**

1716.  Admit that Pandora Marketing referred Mark and/or Laura Campbell to Carlsbad Law
Group.

**RESPONSE: Admitted.**

1717.  Admit that Pandora Marketing referred Mark A. Loken and/or Amelia M. Loken to
Carlsbad Law Group.

**RESPONSE: Admitted.**

1718.  Admit that Pandora Marketing referred Megan and/or Anthony Bunch to Carlsbad Law
Group.

**RESPONSE: Admitted.**

1719.   Admit that Pandora Marketing referred Michael and/or Ruth Eldridge to Carlsbad Law Group.

**RESPONSE: Admitted.**

1720.   Admit that Pandora Marketing referred Norris and/or Faye Horton to Carlsbad Law Group.

**RESPONSE: Admitted.**

1721.   Admit that Pandora Marketing referred Pamela Franklin to Carlsbad Law Group.

**RESPONSE: Admitted.**

1722.   Admit that Pandora Marketing referred Patricia O'Neal-Mellen to Carlsbad Law Group.

**RESPONSE: Denied.**

1723.   Admit that Pandora Marketing referred Paul and/or Shirley Prosek to Carlsbad Law Group.

**RESPONSE: Admitted.**

1724.   Admit that Pandora Marketing referred Randy C. and/or Jonnie S. Driver to Carlsbad Law Group.

**RESPONSE: Admitted.**

1725.   Admit that Pandora Marketing referred Rebecca and/or Ricky Jones to Carlsbad Law Group.

**RESPONSE: Admitted.**

1726.   Admit that Pandora Marketing referred Ricky and/or Lynn Oberlender to Carlsbad Law Group.

**RESPONSE: Denied.**

1727.   Admit that Pandora Marketing referred Ronald and/or Loretta Hardeman to Carlsbad Law Group.

**RESPONSE: Admitted.**

1728. Admit that Pandora Marketing referred Roy and/or Deborah Ashby to Carlsbad Law Group.

**RESPONSE: Denied.**

1729. Admit that Pandora Marketing referred Ryan and/or Suzanne Mailhiot to Carlsbad Law Group.

**RESPONSE: Admitted.**

1730. Admit that Pandora Marketing referred Samuel J. and/or Dana M. Bollinger to Carlsbad Law Group.

**RESPONSE: Admitted.**

1731. Admit that Pandora Marketing referred Scott and/or Tammy Bomkamp to Carlsbad Law Group.

**RESPONSE: Admitted.**

1732. Admit that Pandora Marketing referred Shannon and/or William Meredith to Carlsbad Law Group.

**RESPONSE: Admitted.**

1733. Admit that Pandora Marketing referred Sierra Tebeau Sherry to Carlsbad Law Group.

**RESPONSE: Admitted.**

1734. Admit that Pandora Marketing referred Sierra Tebeau-Sherri and/or Nikolas Beardsworth to Carlsbad Law Group.

**RESPONSE: Admitted.**

1735. Admit that Pandora Marketing referred Simbarashe Murengami to Carlsbad Law Group.

**RESPONSE: Admitted.**

1736. Admit that Pandora Marketing referred Stuart and/or Bethany Roberts to Carlsbad Law Group.

**RESPONSE: Admitted.**

1737.  Admit that Pandora Marketing referred Timothy C. and/or Julie A. Creekmur to Carlsbad Law Group.

**RESPONSE: Admitted.**

1738.  Admit that Pandora Marketing referred Victor Schexnayder to Carlsbad Law Group.

**RESPONSE: Admitted.**

1739.  Admit that Pandora Marketing referred Wayne and/or Shirley Norland to Carlsbad Law Group.

**RESPONSE: Admitted.**

1740.  Admit that Pandora Marketing referred Weylen and/or Emily Gibson to Carlsbad Law Group.

**RESPONSE: Denied.**


Dated:  September 7, 2022.                    **NARDELLA & NARDELLA, PLLC**

_/s/ John J. Bennett_

John J. Bennett, Esq.
Florida Bar: 98257
Paul N. Mascia, Esq.
Florida Bar: 489670
jbennett@nardellalaw.com
pmascia@nardellalaw.com
nmacdougall@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL  32801
Telephone: (407) 966-2680

- and –

**BRADFORD EDWARDS AND VARLACK LLP**
Patrick A. Bradford, Esq. (*Pro Hac Vice*)
pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406

*Attorneys for Pandora Marketing, LLC d/b/a Timeshare Compliance, William Wilson a/k/a Bo Wilson, and Rich Folk*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7TH day of September 2022, a true and correct copy of the foregoing has been served via electronic mail to the following CM/ECF Participants and via U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Attorneys for Plaintiffs*

**MATEER & HARBERT, P.A.**

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group, LLP and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

*Attorney for Timeshare Lawyers P.A.*

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

*Patrick Thompson, Pro Se*

## <u>NON-ECF PARTICIPANTS</u>

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

*/s/ John Bennett*
**John Bennett, Esq.**

P-1438

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| |
|---|
| BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*, <br><br>       Plaintiffs, <br><br> v. <br><br> TIMESHARE LAWYERS P.A. d/b/a FEDERAL FINANCIAL LAW GROUP, *et al.*, <br><br>       Defendants. |

Case No.: 1:20-cv-24681-RNS

**DEFENDANT, PANDORA MARKETING, LLC'S THIRD SUPPLEMENTAL RESPONSE TO PLAINTIFF, BLUEGREEN VACATIONS UNLIMITED, INC.'S SECOND SET OF INTERROGATORIES**

Defendant, PANDORA MARKETING, LLC d/b/a Timeshare Compliance's third supplemental answers to Plaintiff, Bluegreen Vacations Unlimited, Inc's Second Set of Interrogatories, pursuant to Rule 33 of the Federal Rules of Civil Procedure, by and through the undersigned counsel hereby responds to the Plaintiff, Bluegreen Vacations Unlimited, Inc.'s Second Set of Interrogatories, # 19-21, served on August 16, 2022, as modified by this Court's Order dated October 17, 2022 (DE 247), in the above-referenced matter.

**ANSWERS**

19.      For each Bluegreen Owner for which Pandora considers the Bluegreen Owner's timeshare interest to be exited, cancelled, terminated, or otherwise resolved, please describe the manner in which the timeshare interest was exited, cancelled, terminated, or otherwise resolved. This includes, without limitation, whether the interest was terminated for non-payment, whether the matter was settled, or any other category of resolution that might exist.

**ANSWER:**

To the best of Pandora's knowledge based on available information, as to each owner identified in response to Interrogatory #18 that has a "Complete" status, including any owner which has been disclosed in discovery to have been issued a 1099 from Bluegreen, such owner's contract was terminated with Bluegreen as a consequence of Bluegreen's refusal to negotiate with the customer's agents and attorneys and was released from its contractual obligations by voluntarily breaching its contracts resulting in Bluegreen recovering the collateral securing the loan by one or another various in rem procedures and without a judicial proceeding, resulting in all obligations between the owner and Bluegreen being extinguished including the satisfaction of all monetary debt between the owner and Bluegreen.

20.     Please identify each Bluegreen Owner that Pandora has knowledge of that (1) continued to pay an outstanding loan balance after retaining Pandora's services, and (2) was released from his or her Bluegreen timeshare contract through the efforts of Pandora or one of Pandora's attorney referrals.  If Pandora lacks knowledge of any such Bluegreen Owner, please state that Pandora lacks such knowledge.

**ANSWER:**

Pandora is unaware of any Bluegreen Owner that hired Pandora that was released from his or her Bluegreen timeshare contract who was also continuing to pay Bluegreen while Pandora and such Bluegreen Owner maintained their service relationship.  Moreover, Pandora is infrequently informed by its customers of whether or not they will continue to pay a timeshare developer or not following entering into service relationship with Pandora.

21.     For each Bluegreen Owner identified on Bluegreen's Second Amended Rule 26 Disclosure, if Pandora contends that it was privileged or justified in interfering with that Bluegreen Owner's contract, state the basis for such justification or interference.

**ANSWER:**

Justification

Pandora denies that it has interfered with any of Plaintiffs' contracts.  Without waiver of Pandora's denial that Pandora, in fact, interferes with Plaintiffs' contracts—and to the extent Plaintiffs had

2

contracts with the owners at issue at all during at the time relevant to each owner or when this lawsuit was filed—Pandora was justified to do so. Specifically, for purposes of this affirmative defense, Plaintiffs' allegation that Pandora is a competitor to Plaintiffs (Complaint (DE 1), ¶ 172), and that Pandora's actions cause Plaintiffs' customers to divert funds to Pandora instead of Plaintiffs (Complaint (DE 1), ¶ 4), establishes that Pandora is justified to interfere with Plaintiffs' contracts, if any, by competing for its customer's business. Moreover, Pandora is justified to interfere because Plaintiffs' customers are adults and are free to contract with whom they please and to the extent they voluntarily choose to breach their own contracts with Plaintiffs after their own, personal, unique, cost-benefit analysis attendant to such breach, Pandora is justified in providing information to such customers that may increase their likelihood of choosing to voluntarily breach. More specifically, because Pandora knows that Bluegreen does not seek monetary damages against customers who breach contracts for Bluegreen Timeshares—seeking, for example but without limitation, only in rem relief via non-judicial foreclosure, deed-in-lieu, or trustee foreclosures—Pandora is justified in telling owners that, in Pandora's opinion, the benefits of breaching the contract and never paying Bluegreen another penny, appear to outweigh the risks of the breach's consequences. This is moreover the case where Pandora's contracts with its own customers clearly indicate that breach may come with consequences, including affecting the customer's credit. Accordingly, Pandora is justified in providing good information to Bluegreen customers and allowing those owners to make their own decision upon learning such information. Moreover, Pandora incorporates its amended response to Bluegreen Vacations Corporation's Third Set of Interrogatories, #25, as modified by this Court's Order dated October 17, 2022 (DE 247), served on even date herewith, to the extent those facts show that Pandora is justified in providing information to the owners that might weigh in favor of their voluntary decision to breach.

## Privilege

Pandora denies that it has interfered with any of Plaintiffs' contracts. Without waiver of Pandora's denial that Pandora, in fact, interferes with Plaintiffs' contracts—and to the extent Plaintiffs had contracts with the owners at issue at all during at the time relevant to each owner or when this lawsuit was filed—Pandora was privileged to do so. Pursuant to Pandora's contracts with its customers it has a duty to inform the customer of all information pertinent to successfully getting out of its timeshare contract. Such information includes that which may motivate the customer to voluntarily choose to breach their own contracts with Plaintiffs after their own, personal, unique, cost-benefit analysis attendant to such breach. Pandora is required to provide information to such customers that may increase their likelihood of choosing to voluntarily breach. More specifically, because Pandora knows that Bluegreen does not seek monetary damages against customers who breach contracts for Bluegreen Timeshares—seeking, for example but without limitation, only in rem relief via non-judicial foreclosure, deed-in-lieu, or trustee foreclosures—Pandora is required to tell its customers that, in Pandora's opinion, the benefits of breaching the contract and never paying Bluegreen another penny, appear to outweigh the risks of the breach's consequences. This is moreover the case where Pandora's contracts with its own customers clearly indicate that breach may come with credit and other adverse consequences that the customer must consider for themselves. Furthermore, Pandora, as a conduit of information from the customer's attorney, is required to convey information about the customers' case that it receives from the attorney. This

may include, for example but without limitation, that in the attorney's opinion, the customer is more likely to be released from its contractual obligations with Bluegreen if it stops paying and that if the customer continues to remain current on its payments to Bluegreen this will reduce the likelihood of getting out of its contract with Bluegreen if Bluegreen refuses to negotiate in good faith or at all. Such acts undertaken for the benefit of Pandora's customers are done as the agent of those customers and make Pandora privileged to interfere to the extent its acts on the customer's behalf did cause interference with the customer's contracts with Bluegreen, if any. Moreover, Pandora incorporates its amended response to Bluegreen Vacations Corporation's Third Set of Interrogatories, #25, as modified by this Court's Order dated October 17, 2022 (DE 247), served on even date herewith, to the extent those facts show that Pandora is privileged to provide information to the owners that might weigh in favor of their voluntary decision to breach.

Dated October 28, 2022          **NARDELLA & NARDELLA, PLLC**

/s/ John J. Bennett
John J. Bennett, Esq.
Florida Bar: 98257
Paul N. Mascia, Esq.
Florida Bar: 489670
jbennett@nardellalaw.com
pmascia@nardellalaw.com
nmacdougall@nardellalaw.com
135 W. Central Blvd., Suite 300
Orlando, FL 32801
Telephone: (407) 966-2680

- and –

**BRADFORD EDWARDS AND VARLACK LLP**
Patrick A. Bradford, Esq. (*Pro Hac Vice*)
pbradford@bradfordedwards.com
112 East 49th Street, 11th Floor
New York, NY 10017
Telephone: (917) 671-9406
*Attorneys for Pandora Marketing, LLC d/b/a Timeshare Compliance, William Wilson a/k/a Bo Wilson, and Rich Folk*

4

## <u>VERIFICATION</u>

Pursuant to 28 U.S. Code § 1746, I hereby verify on behalf of Pandora Marketing, LLC, as its managing member, under penalty of perjury that the foregoing answers to Bluegreen Vacations Unlimited, Inc.'s Second Set of Interrogatories are true and correct.

**PANDORA MARKETING, LLC**
California, a limited liability company

By: William Wilson (Oct 28, 2022 16:46 PDT)

Printed  William Wilson
Title:  Managing Member
Dated:  10/28/2022

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2022, a true and correct copy of

the foregoing has been served via electronic mail to the following CM/ECF Participants and via

U.S. Mail, postage prepaid, to the following non-CM/ECF Participants:

**SHUTTS & BOWEN LLP**

Eric C. Christu, Esq.
Florida Bar No. 434647
echristu@shutts.com
200 South Biscayne Boulevard, Suite 4100
Miami, FL 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

-and-

Alfred J. Bennington, Jr., Esq.
Florida Bar No. 0404985
bbennington@shutts.com
Glennys Ortega Rubin, Esq.
Florida Bar No. 556361
grubin@shutts.com
Michael J. Quinn, Esq.
Florida Bar No. 084587
 mquinn@shutts.com
Christian M. Leger, Esq.
Florida Bar No. 0100562
cleger@shutts.com
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255
*Attorneys for Plaintiffs*

**MATEER & HARBERT, P.A.**

Brian L. Wagner, Esq.
bwagner@mateerharbert.com
semerson@mateerharbert.com
W. Scott Gabrielson, Esq.
sgabrielson@mateerharbert.com
Mstoutamire@mateerharbert.com
225 East Robinson Street, Suite 600
Orlando, FL 32801-2854
Telephone: 407-425-9044
Facsimile: 407-423-2016

*Attorneys for Carlsbad Law Group,
LLP and JL "Sean" Slattery*

**PATRICK THOMPSON LAW P.A.**

Patrick J. Thompson, Esq.
law@patrickjthompson.com
Patrick Thompson Law P.A.
201 Hilda Street, Ste. 23
Kissimmee, FL 34741
Telephone: 407-750-9000

**PATRICK THOMPSON LAW P.A.**

Patrick James Thompson, Esq.
law@patrickjthompson.com
7025 County Road 46A PMB 432
Lake Mary, FL 32746-4721
Telephone: (407) 750-9000
Facsimile: (386) 675-1445

6

*Attorney for Timeshare Lawyers P.A.*          *Patrick Thompson, Pro Se*

## **NON-ECF PARTICIPANTS**

Angela Consalvo
588 Cobblestone Creek Drive
Boynton Beach, Florida 33472

Paul Stewart
508 Harbor Blvd., #401
Destin, FL 32541

MG&N Group LLC d/b/a National Credit
Rehab
c/o Registered Agent Michael Consalvo
9502 Sun Pointe Drive
Boynton Beach, Florida 33437

Paddy Deighan
2000 Fashion Show Drive, Unit 2222
Las Vegas, Nevada 89109
paddy@federalfinanciallawgroup.com

Gallagher-Clifton, LLC
508 Harbor Blvd., #401
Destin, FL 32541

*/s/ John Bennett*
John Bennett, Esq.

# P-1884

Message

| | |
|---|---|
| **From:** | David Kong [david@tscompliance.com] |
| **Sent:** | 1/22/2021 8:21:32 PM |
| **To:** | Ashley Munoz [amunoz@tscompliance.com]; Sebatian Ecker [sebastian@tscompliance.com]; Emanuel Marin [emanuel@tscompliance.com]; Lauren Jones [lauren@tscompliance.com]; Melissa Montes [mmontes@tscompliance.com]; Daisy Rochin [daisy@tscompliance.com]; Ashleigh Matua [ashleigh@tscompliance.com]; Karla Cabanas [karla@tscompliance.com]; Josefina Diaz-Rodriquez [josefina@tscompliance.com]; Lenaya Jones [lenaya@tscompliance.com] |

Hi Ashleigh/Lauren, just so I know, what is currently being told to clients who tell you they are/were on automatic card payments with their developer? I know we tell them to stop making payments, but wouldn't stopping their payment just cause the developer to charge whatever card they already have saved to their file to collect their payment? Do we have a way to prevent clients from being charged without their permission if they choose to stop paying?

P-1885

Message

| | |
|---|---|
| **From:** | David Kong [david@tscompliance.com] |
| **Sent:** | 1/22/2021 8:27:59 PM |
| **To:** | Ashley Munoz [amunoz@tscompliance.com]; Sebastian Ecker [sebastian@tscompliance.com]; Emanuel Marin [emanuel@tscompliance.com]; Lauren Jones [lauren@tscompliance.com]; Melissa Montes [mmontes@tscompliance.com]; Daisy Rochin [daisy@tscompliance.com]; Ashleigh Matua [ashleigh@tscompliance.com]; Karla Cabanas [karla@tscompliance.com]; Josefina Diaz-Rodriquez [josefina@tscompliance.com]; Lenaya Jones [lenaya@tscompliance.com] |

do you think it's possible when speaking to clients in the engagement process and when we tell them to stop their payments to the developer to also mention if they are on autopay to call the developer to get off of autopay?

# P-1978

**From:** "Ashleigh Matua" </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE
GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=4D594A8F2A3343CA88BD4C1E0F682
9E9-ASHLEIGH>

**To:** "angela consalvo" <angela@disputecare.com>

**Subject:** Douglas and Sue Barden

**Date:** 2018-09-05 13:33:20 -0400

**Importance:** Normal

**Inline-Images:** image001.jpg



Witness: Angela Consalvo
**PLFT EXHIBIT**
**22**
Rick Greenspan, CM, FAPR
Mar 26, 2021

---

Hi Angela,

Yes, I completely understand. I've brought this up many times and also recently advised in the analyst meeting and I hope that it stops soon.

Can we help the client with attempting to remove the mark or will this be an additional cost?

**From:** angela consalvo [mailto:angela@disputecare.com]
**Sent:** Wednesday, September 05, 2018 10:28 AM
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** Re: Douglas and Sue Barden

Hey Ash,

This is a perfect example as to why it is to be made clear that the process has to be presented as an ATTEMPT. By not doing this it puts not only your reputation at risk but ours as well we work very hard at making sure all of our clients understand this.

I would send her an email explaining that the process is guaranteed and that it is an Attempt.

On Wed, Sep 5, 2018 at 1:20 PM Ashleigh Matua <ashleigh@tscompliance.com> wrote:

Hi Angela,
Please see the attached document from clients Douglas and Sue Barden. How can we proceed?

Warmest Regards,

**Ashleigh Matua**
Client Services Director
(714) 643-6190 Direct
(949) 309-2475 Fax
3333 Michelson Drive, Suite 500
Irvine, CA 92612
Www.TimeshareCompliance.com



**From:** Mike Carr
**Sent:** Tuesday, September 04, 2018 10:28 AM
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** FW: Credit Score

An Email from Mr. Barden

**From:** Douglas Barden <douglas.e.barden@gmail.com>
**Sent:** Monday, September 3, 2018 5:28 PM
**To:** Mike Carr <mcarr@tscompliance.com>
**Subject:** Credit Score

Assuming you're still with TimeShare Compliance, you would be the only constant since I gave you the money to arrange the termination of my Wyndham Timeshare ownership. As such I am sending you the latest credit report info which shows my credit report has tanked and Wyndham continues to report me as delinquent! Please send it to the appropriate department/person. From the very beginning I made it clear protecting my credit score was of the greatest importance and from the very beginning you assured me TimeShare Compliance would protect it. Somehow the system is failing me and it is of the utmost importance we rectify this situation immediately.

I will be honest, and if I'm wrong I'll address it in my 10th step, but I'm still not 100% confident in TimeShare Compliance or the process. I understand people leave for other opportunities and young women do take time to have babies (and young fathers also, which is something you and I never thought we'd see!) but I base my lack of confidence on the following:
   > An apparent large personnel turnover which has lead to lack of continuity of service.
   > Continued deterioration of my credit caused solely by Wyndham reporting the nonpayment TimeShare Compliance advised me not to make.
   > To a lesser degree, lack of communication from your lawyer. To date I've only received an auto-generated form letter. Maybe she doesn't have to be involved at this time, but I would have at least expected confirmation of the payment I sent. Perhaps you just do things differently in California, but in the mid-west such a practice would bring a rapid end to the business relationship.

Let's get this fixed so I can rejoice to being wrong and promptly admitting it!  Hope to hear from you soon.

Doug Barden

--
Best Regards,

Angela Consalvo

# P-1979

**Sent:** Fri, 15 Mar 2019 21:01:05 +0000
**From:** TimeShare Admin </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP
(FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C43CDA89F72B4257B16240E353018E91-TIMESHARE A">
**To:** Aurora <aurora@resortag.com>
**Subject:** RE: Resort Advisory Group - Checking In
image001.jpg

Hi Aurora,

As I explained in the email to John and Susan, CLG will not tell the clients to "not make their payments." That is a liability issue for us as a law firm. What CLG can tell them is that if there is a trade block in place, it would be safe for them to stop payments. However, what I will tell you is that if the clients continue to make their payments, they will never get out of their contract. Therefore, we rely on RAG to advise the clients to stop payment.

If you need further explanation, please call Attorney Sean.

Thanks.

Debbie White

Case Coordinator

_____



5050 Avenida Encinas, Suite 300
Carlsbad |CA |92008
T: 858.793.6244 |F: 858.793.6005

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

**From:** GI Jane <gijaneusa@gmail.com>
**Sent:** Friday, March 15, 2019 1:46 PM
**To:** 'Aurora' <aurora@resortag.com>
**Cc:** TimeShare Admin <admin@carlsbadlg.com>
**Subject:** RE: Resort Advisory Group - Checking In

Thank you

**From:** Aurora [mailto:aurora@resortag.com]
**Sent:** Friday, March 15, 2019 1:43 PM
**To:** GI Jane <gijaneusa@gmail.com>
**Cc:** admin@carlsbadlg.com
**Subject:** RE: Resort Advisory Group - Checking In

Your attorney would be the best to ask in regards to the payments associated with your Diamond Contract. Their phone number is 858-210-0361

Best,

*Aurora A. Valenzuela*
Director of Client Services
Resort Advisory Group
1800 Thibodo Rd. Ste 100

Exhibit 1

π **EXHIBIT**

**1**

White
3.29.21

PROD15878

Vista, CA 92081
(760)842-8140 Office
(760)842-8082 Direct
(760)295-8495 Fax
aurora@resortag.com
www.resortag.com

---

**From:** GI Jane [mailto:gijaneusa@gmail.com]
**Sent:** Friday, March 15, 2019 1:33 PM
**To:** Aurora
**Cc:** 'GI Jane'; admin@carlsbadlg.com
**Subject:** RE: Resort Advisory Group - Checking In

Good afternoon Aurora,

GREAT MINDS think alike.

I was about to send an email requesting the status.

Can you or the Carlsbad Law Group please advise WHEN, we can STOP payment to DRI?

Now that I'm retired from Dept. of Homeland Security, we are scraping by.

Thank you kindly for the update.

Susan and John
48.332.1828

---

**From:** Aurora [mailto:aurora@resortag.com]
**Sent:** Friday, March 15, 2019 12:10 PM
**To:** GIjaneusa@gmail.com; Susan <Susan007@q.com>
**Subject:** Resort Advisory Group - Checking In

Hello John & Susan, I hope this email finds you well. At this moment I do not have an update to provide, just checking in on you to see how you are doing. Per your attorney's office, they are currently waiting on Diamond's response to the Cease and Desist that was sent out on 03/11/2019. As soon as any news becomes available your attorney will reach out to you. Should you have any questions or concerns feel free to contact us here in Client Services or you may contact your attorney directly at admin@carlsbadlg.com

Kind Regards,

*Aurora A. Valenzuela*
Director of Client Services
Resort Advisory Group
1800 Thibodo Rd. Ste 100
Vista, CA 92081
(760)842-8140 Office
(760)842-8082 Direct
(760)295-8495 Fax
aurora@resortag.com
www.resortag.com

Exhibit 1

P-1990

**Sent:** Mon, 19 Nov 2018 17:06:43 +0000
**From:** Deborah White </O=DMLG/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=9F90D2DC51964D72B7A9D33A082B4C73-DEBRA WHITE">
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** RE: Jason and Renee Sowers
image001.jpg

Hi Ashleigh,

Thanks for further info.

Again, I apologize and, rest assured, I learned from this mistake!!

Debbie

---

**From:** Ashleigh Matua [mailto:ashleigh@tscompliance.com]
**Sent:** Monday, November 19, 2018 8:53 AM
**To:** Deborah White <DWhite@delmarlawgroup.com>
**Subject:** Jason and Renee Sowers

Hi Debbie,

Yes, less is more when it comes to clients honestly. They already feel like we're a scam because of their history with the developer so we try to lieu them away from that feeling by letting them know all is good as long as they aren't hearing from the developer and if the trade block is in place (for debt clients).

Yes, she was told that she may stop payments if she chooses, however she never wanted to. I let her know this may be why the developer is not abiding which she did not want to hear. She requested a refund and chose to keep it.

Warmest Regards,

**Ashleigh Matua**
Client Services Director
(714) 643-6190 Direct
(949) 309-2475 Fax
26970 Aliso Viejo Parkway, Suite #150
Aliso Viejo, CA 92656
Www.TimeshareCompliance.com



---

**From:** Deborah White [mailto:DWhite@delmarlawgroup.com]
**Sent:** Friday, November 16, 2018 3:56 PM
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** RE: Jason and Renee Sowers

Ashleigh,

My bad. I don't typically talk to a client at this length. However, she kept insisting on further explanation. In retrospect, I should have kept her to a minimum. It's not always easy speaking with these disgruntled clients. I apologize. Lesson learned.

I did also tell her that we continue to monitor the file. Was she told by TSC to stop making payments?

Debbie

---

**From:** Ashleigh Matua [mailto:ashleigh@tscompliance.com]

Hi Debbie,

Just an FYI -

I had a lengthy conversation with this client. She mentioned that when she spoke to you, you mentioned that DMLG only sends out two letters and then no further work is done on a file. She stated that you also mentioned the reason is because the attorneys at DMLG are only receiving minimal pay. She was extremely upset that she paid money to have this cancelled and now knows direct from the firm that only two letters were sent out, a denial letter was received in return and no further work would be done on her case. She said that she's current on payments so she wouldn't even fall into foreclosure any time soon.

Please know that we do not want this information mentioned to clients. Whenever we ask the firm to contact a client, we are doing so in hopes that the firm reassures a client that they're doing all that they can to help cancel, not that they aren't doing anything else on the file besides sending out two letters. This client expressed that she completely lost hope in our process after speaking to the firm directly handling her file.

We will be refunding this client.

Warmest Regards,

**Ashleigh Matua**
Client Services Director
(714) 643-6190 Direct
(949) 309-2475 Fax
26970 Aliso Viejo Parkway, Suite #150
Aliso Viejo, CA 92656
Www.TimeshareCompliance.com



---

**From:** Deborah White [mailto:DWhite@delmarlawgroup.com]
**Sent:** Thursday, November 15, 2018 3:37 PM
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** RE: Jason and Renee Sowers

Ashleigh,

Yes, we'll let it go into foreclosure. I explained all of the this to her (at length). She was not comfortable with the Trade Block and was worried that her credit would be badly affected. Thus, the anticipated call to you. I guess she making sure that we are both on the same page...

Debbie

---

**From:** Ashleigh Matua [mailto:ashleigh@tscompliance.com]
**Sent:** Thursday, November 15, 2018 1:23 PM
**To:** Deborah White <DWhite@delmarlawgroup.com>
**Subject:** Jason and Renee Sowers

Hi Debbie,

She sent me an email after your phone call asking what the next steps will be. After this letter, will DMLG let this fall into foreclosure?

Warmest Regards,

**Ashleigh Matua**
Client Services Director
(714) 643-6190 Direct
(949) 309-2475 Fax
3333 Michelson Drive, Suite 500
Irvine, CA 92612
Www.TimeshareCompliance.com



---

**From:** Deborah White [mailto:DWhite@delmarlawgroup.com]
**Sent:** Thursday, November 15, 2018 1:18 PM
**To:** Ashleigh Matua <ashleigh@tscompliance.com>
**Subject:** RE: Jason and Renee Sowers

Hi Ashleigh,

Yes, I had a lengthy discussion with Renee yesterday in which we addressed all her concerns. She was going to call you to discuss the Trade Block.

Debbie

---

**From:** Ashleigh Matua [mailto:ashleigh@tscompliance.com]
**Sent:** Thursday, November 15, 2018 1:14 PM
**To:** Deborah White <DWhite@delmarlawgroup.com>
**Subject:** Jason and Renee Sowers

Hi Debbie,

In regards to the Sowers, they were advised that a letter was received from the developer denying the request. They are asking what is typically the next step in the process.

As I know you spoke to the clients, did you provide them with an answer to that? I want to make sure we are in sync with our process and answers.

If not, please advise what DMLG's next step will be for this process.

Thank you!

Warmest Regards,

**Ashleigh Matua**
Client Services Director
(714) 643-6190 Direct
(949) 309-2475 Fax
3333 Michelson Drive, Suite 500
Irvine, CA 92612
Www.TimeshareCompliance.com

PROD05967

TIMESHARE COMPLIANCE

PROD05967