**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 20-CV-24681-SCOLA/GOODMAN**

BLUEGREEN VACATIONS
UNLIMITED, INC., et al.,

     Plaintiffs,

v.

TIMESHARE LAWYERS P.A.
d/b/a FEDERAL FINANCIAL
LAW GROUP, et al.,

     Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON BLUEGREEN'S MOTION FOR**
**ATTORNEYS' FEES AND NON-TAXABLE COSTS**

Plaintiffs Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation (collectively, "Bluegreen" or "Plaintiffs") are timeshare developers based in Florida. [ECF No. 561, p. 2].[1] Defendants Pandora Marketing, LLC, and its owners, Rich Folk and William Wilson (collectively, the "Marketing Defendants"), operate a timeshare exit company where the Marketing Defendants advertise their purported ability to terminate owner obligations under timeshare contracts. *Id*. at 4.

---

[1]    In this Report and Recommendations, the Undersigned cites to the page numbers automatically assigned by the Court's CM/ECF system, appearing at the top, right-hand side of each page.

Bluegreen filed suit to hold the Marketing Defendants liable for false advertising under the Lanham Act, tortious interference with contractual obligations, civil conspiracy to commit tortious interference, and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). [ECF No. 572, p. 2].

Senior United States District Judge Robert N. Scola, Jr. granted Bluegreen's partial summary judgment motion on its tortious interference and injunctive relief claims under FDUTPA., and on the Marketing Defendants' affirmative defenses. *Id*. at 3.

At trial, Bluegreen prevailed on all claims. [ECF No. 561, pp. 31–42]. The Court returned a $100,000 verdict in Bluegreen's favor, representing a disgorgement of the Marketing Defendants' profits. *Id*. at 43. The Court also issued permanent injunctive relief against the Marketing Defendants. *Id*. at 42–43.

Bluegreen now seeks to recover $1,721,873.00 in attorneys' fees and $34,967.53 in non-taxable costs pursuant to the Lanham Act and FDUTPA. [ECF Nos. 572, 577]. Judge Scola referred Bluegreen's Motion to the Undersigned "for a report and recommendations, consistent with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of the Local Magistrate Judge Rules." [ECF No. 573].

For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Bluegreen's Motion.

I.      **Legal Standards and Analysis**

   A.  **Entitlement**

<u>*Entitlement to Attorneys' Fees under the Lanham Act*</u>

Bluegreen first seeks recovery of attorneys' fees under the Lanham Act. The Lanham Act states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" for any civil action arising under it. 15 U.S.C. § 1117(a). Here, Bluegreen is the prevailing party because the District Court entered final judgment in its favor. [ECF No. 572, p. 5]

The Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014), established the two-factor standard for determining whether a case is "exceptional." The Court held that "an 'exceptional' case is simply one that stands out from others with respect to [:] [(1)] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [(2)] the unreasonable manner in which the case was litigated." *Id*. "The Supreme Court also lowered the requisite evidentiary standard for proving an 'exceptional' case from clear and convincing evidence to a preponderance of the evidence." *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 1:15-cv-24363, 2021 WL 1200422, at *11 (S.D. Fla. Mar. 5, 2021) (citing *Octane Fitness*, 572 U.S. at 557), *report and recommendation adopted*, No. 15-cv-24363, 2021 WL 1198322 (S.D. Fla. Mar. 30, 2021).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554. District courts may consider equitable factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). "'[T]here is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations [the Supreme Court] ha[s] identified.'" *Id.* (quoting *Fogerty.*, 510 U.S. at 534).

"Even if the [district court] finds that the circumstances of the case are, in fact, exceptional, the decision whether to award attorney's fees is still discretionary." *Dieter v. B & H Indus. of Sw. Fla. Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) (citing *Jellibeans, Inc. v. Skating Clubs of Ga. Inc.*, 716 F.2d 833, 846 (11th Cir. 1983)).

The first *Octane Fitness* factor examines "the substantive strength of a party's litigating position." 572 U.S. at 554. Bluegreen advances three primary arguments under this factor. First, Bluegreen asserts that this case is exceptional because of the "overall weakness" of the Marketing Defendants' case, as evident in the several decisions issued against them. [ECF No. 572, p. 6]. Second, Bluegreen contends that the Marketing Defendants' litigation position was substantively weak because they were "on notice that the courts did not view their litigation positions positively" due to rulings in a similar

proceeding in *Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*, No. 2:20-cv-05486-DSF-ADS, 2022 U.S. Dist. LEXIS 238942 (C.D. Cal. Sept. 19, 2022). *Id*. at 7 n.6. Third, Bluegreen states that this case is exceptional because "novel issues were successfully litigated[.]" *Id.* at 6. The Undersigned will assess these positions.

**First**, although the Court issued several adverse decisions against the Marketing Defendants and ultimately ruled *in favor of* Bluegreen, these circumstances alone do not necessarily render a case exceptional. *Cf. Temurian v. Piccolo*, No. 18-CV-62737, 2021 WL 1520588, at *8 (S.D. Fla. Mar. 3, 2021) ("[The prevailing party's] success on [a] motion to dismiss is not itself sufficient to establish exceptionality. Indeed, if success on a motion to dismiss was the appropriate standard, 'exceptionality' would become the rule, rather than the exception."), *report and recommendation adopted*, No. 18-62737-CIV, 2021 WL 1121003 (S.D. Fla. Mar. 24, 2021).

"A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." *Tobinick v. Novella*, 884 F.3d 1110, 1119 (11th Cir. 2018), *aff'g* 207 F. Supp. 3d 1332 (S.D. Fla. 2016). While "[t]here is no precise rule or formula for determining whether a Lanham Act is 'exceptional' based on its lack of substantive strength[,] . . . some courts -- including courts in this District -- have declined to award fees where a [nonmoving party's] overall case was at least colorable." *FCOA, LLC v. Foremost Title & Escrow Servs., LLC*, No. 17-23971-Civ, 2019 WL 7790856, at *3 (S.D. Fla. Oct. 17, 2019)

(citing *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ.,Inc.*, No. 13-21604-CIV, 2017 WL 3610583, at *4 (S.D. Fla. Aug. 11, 2017) (weighing this factor in favor of granting exceptional-case status when "there [was] nothing in the record to show that a reasonable litigant would have expected success on the merits"), *report and recommendation adopted*, No. 13-CV-21604, 2018 WL 4409885 (S.D. Fla. June 25, 2018)), *report and recommendation adopted*, No. 17-cv-23971, 2020 WL 10459633 (S.D. Fla. Apr. 7, 2020).

Some courts also award fees where the nonmoving party presented "extremely weak arguments." *FCOA, LLC*, 2019 WL 7790856, at *3 (citing *Donut Joe's, Inc. v. Interveston Food Servs., LLC*, 116 F. Supp. 3d 1290, 1294 (N.D. Ala. 2015)); *see also Nakava, LLC v. S. Pac. Elixir Co.*, No. 19-81128-CIV, 2022 WL 17833230, at *4 (S.D. Fla. Dec. 5, 2022) (granting exceptional-case status when the nonmoving party "maintained litigation .positions that were not supported by evidence at trial" and "failed to present any evidence to controvert [the moving party's] [ ] evidence"), *report and recommendation adopted*, No. 19-81128-CIV, 2022 WL 17830536 (S.D. Fla. Dec. 21, 2022).

In the instant case, the Omnibus Order on Motions for Summary Judgment concluded that the Marketing Defendants were engaged in significant misconduct. Judge Scola found that the Marketing Defendants "did not provide the [timeshare] owners with truthful or helpful advice" and "profit[ed] from the owners' ignorance . . . by manipulating the owners with false or misleading information to charge them for nonexistent services." [ECF No. 437, p. 20].

When granting Bluegreen's Motion for Preliminary Injunction, the Court referenced these findings to conclude that "[t]he Marketing Defendants do not provide the timeshare owners with truthful or helpful advice; instead, they profit from the owners' ignorance of Bluegreen's internal collections policy to charge them for nonexistent services." [ECF No. 487, p. 4]. Judge Scola reaffirmed such conclusions in the Verdict, explaining that the "Marketing Defendants' claims that they can protect consumer credit scores [were] literally false." [ECF No. 561, p. 13].

Throughout the litigation, the Court also commented on the substantive weakness of the Marketing Defendants' case. The Omnibus Order pointed to various instances where the Marketing Defendants raised unsupported arguments, such as when "[t]he Marketing Defendants dispute[d] the[] results [of Bluegreen's proximate causation analysis] but fail[ed] to provide any statistical evidence to the contrary." [ECF No. 437, p. 11 (record citations omitted)].

Similarly, when denying the Marketing Defendants' Motion for Modification and/ or Clarification of the Preliminary Injunction, the Court explained that the Marketing Defendants' supporting arguments were largely "irrelevant" and "absent any concrete evidence." [ECF No. 502, p. 2]. In certain instances where the Marketing Defendants did offer evidentiary support, the Verdict found that the evidence was "unreliable" or so insignificant "that the [Court's] factual findings would be unaffected." [ECF No. 561, pp. 17; 38].

Moreover, the Court noted several defects in the Marketing Defendants' affirmative defenses, such as the "fail[ure] to point to any [relevant] evidence" in support of certain defenses and failure to "connect [an affirmative defense] to any particular facts." [ECF No. 437, pp. 31; 33]. The Marketing Defendants do not dispute (or respond to) Bluegreen's contention that the Marketing Defendants raised those same defenses again at trial *despite* the Court's ruling against them. [ECF Nos. 572; 574]. "Failure to respond to an argument may result in waiver." *W. 32nd/33rd Place Warehouse Condo. Ass'n, Inc. v. W. World Ins. Co.*, No. 22-CV-21408, 2023 WL 6317993, at *4 (S.D. Fla. Aug. 21, 2023) (citing *Five for Ent. S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 4433420, at *14 (S.D. Fla. Aug. 15, 2013) ("A failure to address issues in response to a motion is grounds for finding that the claims have been abandoned."))

These adverse findings throughout the course of the litigation show that from the time of the Omnibus Order [ECF No. 437], the Marketing Defendants knew that their misconduct and substantively weak case put them in a significantly risky position.

**Second**, Bluegreen failed to properly argue how the decision in *Diamond Resorts*, a non-binding trial-level case from **outside** this circuit (the Central District of California), should have put the Marketing Defendants "on notice" of how strong their arguments were or that this "notice" is relevant to the *Octane Fitness* factors. [ECF No. 572, p. 7 n.6].

Moreover, Bluegreen advanced this *Diamond* argument in a *footnote*. *See id*. But "addressing a legal argument only in a footnote is an incorrect method to present

substantive arguments on the merits." *Connor v. Midland Credit Mgmt., Inc.*, No. 18-23023-CIV, 2019 WL 717413, at *4, n.1 (S.D. Fla. Feb. 20, 2019) (citing *Mazzeo v. Nature's Bounty, Inc.,* No. 14-60580, 2014 WL 5846735, at *2 n.1 (S.D. Fla. Nov. 12, 2014) (not considering argument raised in a footnote); *see also Mock v. Bell Helicopter Textron, Inc.*, 373 F. App'x 989, 992 (11th Cir. 2010) (deeming argument waived because it was raised only in a footnote)). So the Undersigned is not persuaded that an out-of-circuit district case somehow put the Marketing Defendants "on notice" (because the argument was improperly asserted only in a footnote).

**Third**, Bluegreen's argument that this case is exceptional because it successfully litigated novel issues is not persuasive. Bluegreen cites to no legal authority and relies solely upon its own rhetoric to support its argument. The Undersigned will not consider arguments which are not supported by legal authority. See *United States Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007).

In sum, this case satisfies the first *Octane Fitness* factor because, throughout the litigation, the Court repeatedly found that that the Marketing Defendants engaged in significant misconduct and held an "extremely weak" litigation position. *See FCOA, LLC,* 2019 WL 7790856, at *3 (citing *Donut Joe's, Inc.*, 116 F. Supp. 3d at 1294). However, the arguments which Bluegreen improperly asserted or failed to support with legal authority do not contribute to this finding.

The second *Octane Fitness* factor looks to whether the parties litigated the case in an "unreasonable manner." 572 U.S. at 554. Regarding this factor, Bluegreen states that this case is exceptional because the Marketing Defendants litigated this case in an "extraordinary and unreasonable manner" such that Bluegreen is entitled to attorneys' fees. [ECF No. 572, p. 6]. Bluegreen relies on many of the same arguments used to support its position relating to the first *Octane Fitness* factor. *Id*. at 10–11.

While courts "do not place much weight on the fact that [the nonmoving party] continued litigating his case even in the face of a number of adverse rulings," *Tobinick*, 884 F.3d at 1119, courts in this district have considered the following factors when determining whether a party's conduct was unreasonable pursuant to the second *Octane Fitness* factor:

> 1) establishing that the plaintiff failed to conduct an adequate pre-filing investigation or to exercise due diligence before filing suit; 2) showing the plaintiff should have known its claim was meritless and/or lacked substantive strength; 3) evidencing the plaintiff initiated litigation to extract settlements from defendants who want to avoid costly litigation; 4) showing a party proceeded in bad faith (noting that bad faith is no longer required to support an award of fees but finding the plaintiff's position was not reasonable); and 5) litigation misconduct.

*Fla. Int'l Univ. Bd. Of Trs.*, 2017 WL 3610583, at *4 (quoting *Bayer Cropscience AG v. Dow Agrosciences LLC*, 12-256, 2015 WL 1197436, at *4 (D. Del. Mar. 13, 2015), *aff'd*, 851 F.3d 1302 (Fed. Cir. 2017)).

As discussed in the analysis of the first *Octane Fitness* factor, the Court issued several decisions finding that the Marketing Defendants engaged in significant

misconduct and held a substantively weak litigation position. [*See, e.g.*, ECF Nos. 437; 487; 502; 561]. Given such findings, the Marketing Defendants "knew or should have known" that their case was substantively weak. *See Marjam Supply*, 2021 WL 1200422, at *14 (finding that the case satisfied the second *Octane Fitness* when the nonmoving party "knew or should have known" that its Lanham Act claim and defenses to counterclaims were "substantively weak"); *Fla. Int'l Univ. Bd. of Trs.*, 2017 WL 3610583, at *6 (noting that "a reasonable litigant would not have expected success on the merits" when weighing the second *Octane Fitness* factor in favor of granting exceptional-case status).

For these reasons, the Undersigned finds that the Marketing Defendants litigated this case in an unreasonable manner pursuant to the second *Octane Fitness* factor.

Considering the totality of the circumstances, this case satisfies both *Octane Fitness* factors and thereby gains exceptional-case status. *See Fla. Int'l Univ. Bd. of Trs.*, 2017 WL 3610583, at *6–7 (granting exceptional-case status when the case satisfied both *Octane Fitness* factors). As a result of the exceptional-case status, Bluegreen is entitled to recover attorneys' fees under the Lanham Act. *See Tobinick*, 884 F.3d at 1119 ("[T]he [d]istrict [c]ourt was well within its discretion to find [that] [the nonmoving party's] manner of litigating his suit made it an exceptional case supporting an attorney's fees award under the Lanham Act.").

<u>*Entitlement to Attorneys' Fees and Costs under FDUTPA*</u>

Bluegreen additionally seeks recovery of attorneys' fees and costs under FDUTPA. Under FDUTPA, "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the non-prevailing party." Fla. Stat. § 501.2105(1). Courts consider the following non-exhaustive list of factors when determining whether to award fees and costs under FDUTPA:

> (1) the scope and history of the litigation;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances;
> (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith;
> (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless;
> (6) whether the defense raised a defense mainly to frustrate or stall;
> (7) whether the claim brought was to resolve a significant legal question under FDUTPA law.

*Chow v. Chak Yam Chau*, 640 F. App'x 834, 839 (11th Cir. 2015) (citing *Humane Soc'y of Broward Cnty., Inc. v. Fla. Humane Soc'y*, 951 So. 2d 966, 971–72 (Fla. 4th DCA 2007)).

The Marketing Defendants object to Bluegreen's entitlement under FDUTPA, arguing that Bluegreen may not recover fees and costs if its FDUTPA claim is "inseparably intertwined" with its Lanham Act claim. [ECF No. 574, pp. 7–8].

However, "the fees recoverable are those devoted to the entire action, not merely the FDUTPA claim, 'unless the attorney's services clearly were not related in any way to

establishing or defending an alleged violation of chapter 501.'" *Chow*, 640 F. App'x at 838

(quoting *Diamond Aircraft Indus., Inc. v. Horowitch*, 107 So. 3d 362, 370 (Fla. 2013); *see also*

*Alhassid v. Bank of America, N.A.*, 688 F. App'x 753, 759 (11th Cir. 2017) (finding that the

district court did not abuse its discretion when awarding fees and costs in a case where

"work on the non-FDUTPA claims . . . related in some way to establishing a violation of

FDUTPA fees and costs"); *accord Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2017 WL

3536917, at *19–29 (S.D. Fla. Aug. 17, 2017), *appeal dismissed*, No. 17-14147-HH, 2018 WL

4574819 (11th Cir. Apr. 20, 2018).

Under FDUTPA, assessing a fees and costs award is inappropriate "if either (1)

counsel admits that the other services provided in that action were unrelated to the

FDUTPA claim, or (2) a party establishes that the services related to non-FDUTPA claims

were clearly beyond the scope of a 501 proceeding." *Chow*, 640 F. App'x at 838 (quoting

*Diamond Aircraft*, 107 So. 3d at 370) (internal quotations omitted). "It is the non-prevailing

party's burden to show that 'the services related to non-FDUTPA claims were clearly

beyond the scope of a 501 proceeding.'" *Id.*

The instant case does not resemble either of the situations described by the *Chow*

Court. First, Bluegreen did not admit that both its FDUTPA and non-FDUTPA claims

were unrelated. [ECF No. 577, pp. 5–7]. Second, the Marketing Defendants stated that

both types of claims were related because they argued that Bluegreen's claims relied on

"the same core allegation[.]" [ECF No. 574, p. 7 (quoting ECF No. 572, p. 13)]. As a result,

the Undersigned finds that Bluegreen's non-FDUTPA claims do not prevent Bluegreen from recovering fees and costs under FDUTPA.

For these reasons, the key issue is whether the FDUTPA factors weigh in favor of awarding fees and costs to Bluegreen for the *entire* action, without allocation. The Undersigned will address each factor below.

  1. *The scope and history of the litigation*

When assessing the scope and history of the litigation, courts generally focus on the parties' respective positions and litigation tactics throughout the entire case. *See Procaps*, 2017 WL 3536917, at *11 (considering each party's litigation strategies and conduct throughout the course of the litigation).

Bluegreen relies on many of its same arguments regarding the first *Octane Fitness* factor in addressing the first FDUTPA factor. [ECF No. 572, p. 13]. Bluegreen repeatedly argues that the Marketing Defendants' weak position in this litigation weighs in favor of awarding fees. *Id.* The Marketing Defendants maintain that their ultimate loss in the litigation is not sufficient to weigh in favor of awarding fees and costs. [ECF No. 574, p. 9].

The fact that the Marketing Defendants held a relatively weaker litigation position may serve as *one* consideration under this factor. *See Warren Tech., Inc. v. UL LLC*, No. 18-21019-CV, 2020 WL 9219127, at *5 (S.D. Fla. Dec. 17, 2020) (weighing the first FDUTPA factor in favor of granting fees when the court determined "that the case was relatively

weak and that [the opposing party] was unsuccessful on every substantive motion"), *report and recommendation adopted in part*, No. 1:18-cv-21019, 2021 WL 911238 (S.D. Fla. Mar. 10, 2021) (agreeing with the report and recommendations except as to the fourth FDUTPA factor), *aff'd*, No. 21-11168, 2021 WL 4940833 (11th Cir. Oct. 22, 2021).

Additionally, cases within this district find that the analysis of the first FDUTPA factor is similar to the analysis of the *Octane Fitness* factors. *See id.*(referencing the court's determination that the case was exceptional under the *Octane Fitness* standard when weighing the first FDUTPA factor in favor of granting fees); *Hard Rock Café Int'l USA, Inc. v. RockStar Hotels, Inc.*, No. 17-CV-62013, 2019 WL 3412155, at \*9 (S.D. Fla. May 20, 2019) (referencing the court's exceptional-case analysis under the Lanham Act when considering the scope and history of the litigation under FDUTPA), *report and recommendation adopted*, No. 17-cv-62013, 2019 WL 3408888 (S.D. Fla. June 4, 2019).

As discussed in the analysis of the *Octane Fitness* factors, decisions throughout the history of this litigation indicate that the Marketing Defendants engaged in significant misconduct and pursued an exceptionally weak case that they knew or should have known was unlikely to succeed. For these reasons, the Undersigned finds that the scope and history of the litigation weigh in favor of granting fees and costs. *See Warren Tech.*, 2020 WL 9219127, at \*5.

2. *The ability of the opposing party to satisfy an award of fees*

The second FDUTPA factor asks whether the information available indicates the opposing party's financial ability to satisfy an award of fees. *See Procaps*, 2017 WL 3536917, at *12–13 (looking to the nonmoving party's financial situation to assess the second FDUTPA factor).

Bluegreen argues that given the Marketing Defendants' $1,558,958.62 in revenue from Bluegreen owners and $12 million in revenue from owners involved in a separate but similar litigation, the Marketing Defendants' ability to satisfy an award of fees weighs in favor of granting fees and costs. [ECF No. 572, pp. 13–14]. The Marketing Defendants contend that this factor weighs against awarding fees because they spent the majority of their earnings on business expenses and currently face additional costs resulting from various litigations, including the instant case. [ECF No. 574, pp. 9–10].

However, Bluegreen highlights that the Court previously found that the Marketing Defendants' representations of their profits and losses were unreliable. [ECF No. 572, p. 14 (citing ECF No. 561, pp. 29; 38)]. The Undersigned determines that the information referenced by Bluegreen supports a finding that the Marketing Defendants are able to satisfy an award of fees. *See Procaps*, 2017 WL 3536917, at *12–13 (finding that information regarding the non-prevailing party's market value, assets, and earnings supported an award of fees).

The Undersigned notes that the Marketing Defendants never argued that they are **unable** to pay the fees and costs in question. [ECF No. 574, pp. 9–10]. Rather, they only argued that, for various reasons, the entire sum of their earnings is not available to pay the requested fees. *Id.*

Without further details about the Marketing Defendants' purported financial status and how it relates to an inability to pay these fees and costs, the Undersigned finds that this factor weighs in favor of granting fees. *See Procaps*, 2017 WL 3536917, at *12–13 (weighing this factor in favor of awarding fees when the non-prevailing party "does not exactly say that it lacks the ability to pay" but also "does not say that it **cannot** pay the award"); *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2021 WL 2269822, at *7 (S.D. Fla. Apr. 30, 2021) (concluding that the non-prevailing party was able to pay the fees and costs "in the absence of evidence to the contrary"), *report and recommendation adopted*, No. 18-cv-60912, 2021 WL 2024424 (S.D. Fla. May 21, 2021).

> 3. *Whether an award of fees against the opposing party would deter others from acting in similar circumstances*

The third FDUTPA factor considers whether awarding fees "will deter others from engaging in the same conduct as [the non-prevailing party.]" *Massive Transit Transp., LLC v. Atl. Coast Auto., Inc.*, No. 0:23-CV-61321, 2024 WL 693061, at *4 (S.D. Fla. Jan 31, 2024), *report and recommendation adopted*, 23-CV-61321, 2024 WL 691425 (S.D. Fla. Feb. 20, 2014); *see also Warren Tech.*, 2020 WL 9219127, at *5 ("[T]his factor looks at the general deterrent effect to anyone filing similar litigation in the future.").

Bluegreen asserts that this factor weighs in favor of granting fees because many other organizations engage in similar schemes in violation of FDUTPA and the Lanham Act, as evidenced by the numerous cases that occur between timeshare companies and timeshare exit companies. [ECF No. 572, p. 14]. The Marketing Defendants do not address Bluegreen's argument or dispute this factor, thus waiving any opposition to it. *See W. 32nd/33rd Place Warehouse Condo. Ass'n*, 2023 WL 6317993, at *4 (citing *Five for Ent. S.A.*, 2013 WL 4433420, at *14).

Notably, the Verdict described findings similar to those that Bluegreen highlights in its Motion. The Verdict stated that there is a "timeshare exit industry" which further victimizes timeshare owners by "charg[ing] the owners thousands of dollars and us[ing] false and misleading tactics to tortiously induce [owners] to breach their contracts with the timeshare companies, thus exposing them to damaged credit." [ECF No. 561, p. 1].

The Undersigned finds that this factor weighs in Bluegreen's favor due to the commonality of similarly unlawful tactics amongst timeshare exit companies.

4. *The merits of the respective positions -- including the degree of the opposing party's culpability or bad faith*

Under the fourth FDUTPA factor, courts evaluate the merits of each party's claims or defenses, as well as evidence of the opposing party's culpability or bad faith. *See Procaps*, 2017 WL 3536917, at *13. When analyzing the opposing party's culpability or bad faith, courts focus on the opposing party's *litigation* conduct, rather than the conduct that brought about the action. *See Colomar v. Mercy Hosp., Inc.*, 335 F. App'x 29, 31 n.1 (11th

18

Cir. 2009) (rejecting the argument that the degree of the opposing party's culpability or bad faith "must refer to the party's 'bad faith' conduct that *precipitated* the FDUTPA claim" (record citations omitted)); *see also Temurian*, 2021 WL 1121003, at *5 (looking to whether the "[opposing party] acted in bad faith in pursuing their FDUTPA claim").

For this factor, Bluegreen reiterates arguments related to the *Octane Fitness* factors and the first FDUTPA factor. [ECF No. 572, pp. 14–15]. Similarly, the Marketing Defendants state that this factor is neutral and repeat their arguments regarding the first FDUTPA factor. [ECF No. 574, p. 9]. Neither party specifically alleges instances of bad faith. [ECF Nos. 572, pp. 14–15; 574, p. 9].

As discussed in the analysis of the *Octane Fitness* factors and first FDUTPA factor, the Undersigned finds that the extreme substantive weakness of the Marketing Defendants' litigation position weighs this factor at least slightly in favor of granting fees and costs. *See Flexiteek Ams., Inc. v. Plasteak, Inc.*, No. 12-60215-CIV, 2016 WL 7497485, at *21 (S.D. Fla. Feb. 6, 2016) (weighing this factor "slightly in favor" of the prevailing party when the non-prevailing party "advance[ed] meritless claims" but "there [was] no evidence that the [non-prevailing party's] FDUTPA claims were brought in bad faith"), *report and recommendation adopted as modified*, No. 12-60215-CIV, 2016 WL 7508240 (modifying the report and recommendation on a separate issue); *see also CMR Constr. & Roofing, LLC v. UCMS, LLC*, No. 2:20-cv-867, 2023 WL 2930825, at *6 (M.D. Fla. Feb. 9, 2023) (finding that the fourth FDUTPA factor "weigh[ed] slightly in favor of an award of

fees" when the opposing party "failed to allege a viable FDUTPA claim" but did not act culpably or in bad faith).

     5.  *Whether the claim brought was not in subjective bad faith but frivolous, unreasonable, and groundless*

The fifth FDUTPA factor examines the merits of a party's claims to determine if they were frivolous, unreasonable, and groundless. *See Procaps*, 2017 WL 3536917, at *17–18 (considering whether claims were "meritless," "not powerful," or "lacked a viable legal theory").

Bluegreen explains that this factor is inapplicable because they prevailed on the merits of their claims, and the Marketing Defendants do not dispute that argument. [ECF Nos. 572, p. 15; 574, pp. 9–11]. The Undersigned agrees with Bluegreen that this factor is inapplicable to the instant analysis. Therefore, the Undersigned will not consider this factor in the FDUTPA factor analysis. *See Warren Tech.*, 2020 WL 9219127, at *6 ("skipping" a FDUTPA factor because it was inapplicable to the instant case).

     6.  *Whether the defense raised a defense mainly to frustrate or stall*

The sixth FDUTPA factor weighs in favor of granting fees when "defenses were designed to frustrate or stall." *Procaps*, 2017 WL 3536917, at *19.

Bluegreen contends that the Marketing Defendants raised defenses to frustrate or stall the case's progression. [ECF No. 572, p. 15]. Again, Bluegreen explains that the Court ruled against the Marketing Defendants on several of their affirmative defenses at the summary judgment stage, and that the Marketing Defendants "insisted" on presenting

those defenses again at trial, along with another defense. *Id.* The Marketing Defendants do not address Bluegreen's contention that they raised affirmative defenses that the Court already rejected. [ECF No. 574, p. 10]. Instead, the Marketing Defendants contend that this factor weighs against awarding fees because "the Court rejecting certain arguments and defenses does not mean that [the Marketing Defendants] raised them to frustrate or stall the proceedings." *Id.*

As mentioned previously, the Marketing Defendants waived any potential objection to Bluegreen's contention that, during trial, the Marketing Defendants raised affirmative defenses which the Court had *already* considered and rejected. *See W. 32nd/33rd Place Warehouse Condo. Ass'n*, 2023 WL 6317993, at *4 (citing *Five for Ent. S.A.*, 2013 WL 4433420, at *14). Moreover, the Undersigned's analysis of the *Octane Fitness* factors established that the Marketing Defendants knew their position was extremely weak such that the continued litigation of their defense was unreasonable. *See Procaps*, 2017 WL 3536917, at *19 ("[The sixth FDUTPA] factor . . . is based on the reasonableness of the *defendant's* positions and the strategy underlying its tactics."). Thus, this factor weighs in favor of Bluegreen.

7. *Whether the claim brought was to resolve a significant legal question under FDUTPA law*

When assessing the seventh FDUTPA factor, courts look to whether previous decisions in the case "resolved a significant question regarding FDUTPA" or "advance[d] FDUTPA law in any significant way." *Warren Tech.*, 2020 WL 9219127, at *6.

21

Regarding this factor, Bluegreen claims that the instant case provides a "framework" for other Florida-based companies to pursue nationwide application of FDUTPA. [ECF No. 572, p. 15]. The Marketing Defendants contend that this factor does not weigh in favor of granting fees because Bluegreen did not identify a specific legal question that this case resolved. [ECF No. 574, pp. 10–11]. In their Reply, Bluegreen emphasizes that the nationwide application of FDUTPA was previously unclear. [ECF No. 577, p. 9].

Here, the Court stated in its Omnibus Order on Motions for Summary Judgment that "there is admittedly some confusion in the case law as to the extraterritorial application of FDUTPA[.]" [ECF No. 437, p. 25]. This statement confirms the existence of uncertainty within FDUTPA case law. However, in a separate Order, the Court later found that this **uncertainty was resolved**:

> [T]he Court concludes that the preliminary injunction need not be limited to the Marketing Defendants' conduct directed at Florida timeshare owners. In its summary judgment order, the Court recognized that Florida law is unclear regarding whether the FDUTPA applies with respect to consumers outside of Florida when the conduct at issue did not take place entirely within Florida. However, the Court now decides the Marketing Defendants' conduct in this case falls entirely within the FDUTPA's purview.

[ECF No. 487, p. 5].

Given these representations from the Court, this case *did* resolve a significant legal question regarding the nationwide application of FDUTPA weighing in favor of Bluegreen. For these reasons, the Undersigned finds that the consideration of whether

the claim brought was to resolve a significant legal question under FDUTPA law weighs in favor of awarding fees and costs.

Because all applicable FDUTPA factors weigh in Bluegreen's favor, the Undersigned finds that Bluegreen is entitled to fees and costs under FDUTPA for the entire action, without allocation. *See Marjam Supply*, 2021 WL 1200422, at *10 (finding the prevailing party "entitled to its attorneys' fees under FDUTPA" when "the equitable [FDUTPA] factors weigh in favor of [the prevailing party]").

Ultimately, the Undersigned **respectfully recommends** that the Court find Bluegreen entitled to fees under both the Lanham Act and FDUTPA -- and entitled to costs under FDUTPA.

### B.  Attorneys' Fees

<u>*Reasonable Hourly Rate*</u>

Finding that Bluegreen is entitled to attorneys' fees under the Lanham Act and FDUTPA, the Undersigned must then determine the reasonableness of the attorneys' hourly rates. The Eleventh Circuit defines a "reasonable hourly rate" as "the prevailing market rate in the relevant legal community for similar services by attorneys with reasonably comparable skills, experience, [and] reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum v. Stenson*, 465 U.S. 886, 895–96 n.11 (1984)). "The applicant bears the burden of producing satisfactory evidence that

the requested rate is in line with prevailing market rates." *Id.* at 1302 (internal citation omitted).

In determining the prevailing market rate, the Court should consider several factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (discussing factors set out in *Johnson v. Ga. Hwy. Exp., Inc.*, 488 F.2d 714, 717–18 (5th Cir. 1974)), *aff'd*, 109 F.3d 771 (11th Cir. 1997).

The Court "itself [is] an expert on the question [of fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Elie Neufeld, LLC v. Edward Wolf & Assocs., LLC*, No. 22-23204-CIV, 2023 WL 4471606, at *3 (S.D. Fla. June 23, 2023) (citing *Norman*, 836 F.2d at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940))), *report and recommendation adopted*, No. 22-23204-CIV, 2023 WL 4457884 (S.D. Fla. July 11, 2023). Additionally, "[a] request for attorney's fees should not result in a second major litigation." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)) (alteration in original).

Here, the hourly rates that Bluegreen seeks range from $300.00 to $385.00 for two associates and $380.00 to $495.00 for three partners. [ECF No. 577, p. 18]. Local Rule

24

7.3(a)(5)(A) requires the party moving for fees to state "the identity, experience, and qualifications for each timekeeper for whom fees are sought." S.D. Fla. L.R. 7.3(a)(5)(A). Bluegreen filed a declaration from its lead trial counsel, Attorney Eric C. Christu. [ECF No. 527-1]. There, Attorney Christu provides relevant background information for each of the timekeepers.

The Marketing Defendants do not dispute the reasonableness of the hourly rates sought in this case. Nonetheless, the Court must still ensure that the fees it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he [c]ourt has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute."); *see also Kelly v. Lee Cnty. R.V. Sales Co.*, No. 8:18-CV-424-T-27JSS, 2021 WL 3111553, at *2 (M.D. Fla. July 22, 2021) (reducing hourly rates of two timekeepers despite no challenge to the hourly rates by the opposing party).

The Undersigned finds that the hourly rates in this case are reasonable and within the range of rates charged for similar services by attorneys of reasonably comparable skill, experience, and reputation. *See, e.g., Marjam Supply*, 2021 WL 1200422, at *17–18 (finding hourly rates of $380.00 to $445.00 for associates and $500 to $750.00 for partners reasonable in a Lanham Act and FDUTPA case).

*Reasonable Hours Expended*

The Court must evaluate the reasonableness of the total hours expended by Bluegreen's counsel. The moving party bears the burden of providing the Court with sufficiently detailed records so the Court may assess the time claimed for each activity. *Norman*, 836, F.2d at 1303; *see also Hermosilla v. Coca-Cola Co.*, No. 10-21418-CIV, 2011 WL 9364952, at *14 (S.D. Fla. July 15, 2011) ("A party seeking to recover attorneys' fees bears the burden of providing specific and detailed evidence so that a determination can be made of the necessity of the action and the reasonableness of the time claimed for the action." (citing *A.C.L.U. of Ga. v. Barnes*, 168 F.3d 423, 427, 432–33 (11th Cir. 1999))), *aff'd*, 492 F. App'x 73 (11th Cir. 2012).

The party requesting fees must exercise "billing judgment" and must exclude hours from its fees motion that would be unreasonable to bill a client, and therefore to one's adversary, "irrespective of the skill, reputation, or experience of counsel." *Norman*, 836 F.2d at 1301.

Bluegreen requests $1,721,873.00[2] in attorneys' fees. [ECF No. 577, p. 9]. Bluegreen filed a declaration (with exhibits) from Attorney Christu in support of the fees request

---

[2]     Bluegreen adjusted the attorneys' fees requested from $1,747,964.50 to $1,721,873.00 after the Marketing Defendants' Response noted several discrepancies between the times referenced in the narrative of the billing entries and the number of hours billed. [ECF No. 577, p. 10].

for the following timekeepers: (1) Attorney Christu, $425-$495[3] an hour for 251.5 hours; (2) Attorney Benjamin F. Elliott, $335-425 per hour for 1503.2 hours[4]; (3) Attorney Christian M. Leger, $400-$460 per hour for 968.2 hours[5]; (4) Attorney Erin E. Tuck, $350-385 per hour for 748.2 hours; and (5) Attorney Justin Green, $300-375 per hour for 800.3 hours. [ECF Nos. 572-1, p. 10; 577, p. 10].

The Marketing Defendants object to Bluegreen's requested fees for four reasons: (1) "[Bluegreen] only received a fraction of the initial amount they sought"; (2) "[m]any of the time entries submitted [by Bluegreen] contain inappropriate 'block billing,' . . . with no explanation of the amount of time the relevant attorney spent on each individual task"; (3) "billing records submitted by [Bluegreen] contain multiple erroneous entries"; and (4) Bluegreen is "not entitled to fees for three attorneys to attend each day of trial." [ECF No. 574, pp. 11–13].

There are several arguments the Undersigned must evaluate:

---

[3]    Per Bluegreen's submissions, the attorney billing rates changed "over life of matter." [ECF No. 572-1, p. 10 n.1].

[4]    Bluegreen adjusted the hours billed for Attorney Elliott from 1566.4 hours to 1503.2 hours after the Marketing Defendants' Response noted several discrepancies between the times referenced in the narrative of the billing entries and the number of hours billed. [ECF No. 577, p. 10].

[5]    Bluegreen adjusted the hours billed for Attorney Leger from 970.2 hours to 968.2 hours for the same reasons that they adjusted the amount of hours billed for Attorney Benjamin F. Elliott. *Id.*

**First**, Marketing Defendants cite *Marjam Supply*, 2021 WL 1200422, at *21, in arguing that the Court should reduce Bluegreen's requested fees because Bluegreen recovered a fraction of the disgorgement relief sought. [ECF No. 574, p. 11]. Bluegreen states that the instant case is distinguishable from *Marjam Supply* because Bluegreen obtained injunctive relief, and therefore the Court should not reduce the requested fees. [ECF No. 577, p. 8].

Courts may compare the relief that the prevailing party requested to the relief that the prevailing party obtained when determining whether to reduce the requested fees. *See Marjam Supply*, 2021 WL 1200422, at *21 (reducing the requested fees by 20% when the prevailing party sought "$1.6 million in damages and 5 million in punitive damages at trial and yet the jury only awarded $310,000 in damages and $800,000 in punitive damages"); *Carnival Corp. v. McCall*, No. 18-24588-CIV, 2021 WL 2338647, at *8 (S.D. Fla. Apr. 26, 2021) (declining to reduce requested fees when the prevailing party obtained a fraction of the monetary relief sought alongside permanent injunctive relief which "had value to the [prevailing party] and was needed given the [non-prevailing party's] initial non-compliance with its terms"), *report and recommendation adopted*, No. 18-cv-24588, 2021 WL 2333102 (S.D. Fla. June 8, 2021).

Here, the Court permanently enjoined the Marketing Defendants from:

> (1) making any misrepresentation to a Bluegreen Owner regarding the services that the [Marketing Defendants], or any lawyer to which the [Marketing Defendants] refer, will provide in connection with a Bluegreen Interest;

(2) communicating to a Bluegreen Client, that the [Marketing Defendants] have a 100% success rate, that the [Marketing Defendants] are 100% successful, the [Marketing Defendants] have always gotten Bluegreen Owners out of their timeshare, or the [Marketing Defendants] have never lost a case;

(3) inducing a Bluegreen Owner to cease payment on an obligation associated with a Bluegreen Interest; or

(4) offering for sale to any Bluegreen Owner the legal cancellation of a Bluegreen Interest unless the [Marketing Defendants] first demonstrate to the Court that the [Marketing Defendants] have the ability to deliver such service . . . .

[ECF No. 577, p. 4 (record citations omitted)].

As Bluegreen argues, *Marjam Supply* is distinguishable from the instant case because the Court there did not award injunctive relief alongside the partial monetary relief. 2021 WL 1200422, at *4. But the Court in the instant case made several statements recognizing the value of injunctive relief for Bluegreen. For example, the Court noted that "anytime an owner defaults on her loan obligations Bluegreen incurs various sorts of expenses related to repossessing and reselling the timeshare interest associated with that loan. Moreover, it is undisputed that the Marketing Defendants continue to accept Bluegreen owners as customers and to refer them to attorneys[.]" [ECF No. 437, p. 27]. The Court reaffirmed this recognition in the Verdict, granting permanent injunctive relief to Bluegreen. [ECF No. 561, pp. 42–43]. Thus, the injunctive relief in this case supplements the monetary relief when assessing the nature of the relief obtained and comparing it to the amount of fees incurred in obtaining relief.

The Undersigned agrees with Bluegreen's position that the partial monetary relief *and* permanent injunctive relief distinguish the instant case from *Marjam Supply*. *See* 2021 WL 1200422, at *21. Considering the significant permanent injunctive relief alongside Bluegreen's partial disgorgement damages, the Undersigned finds that partial monetary recovery does not warrant a reduction in requested fees in this case. *See Carnival Corp.*, 2021 WL 338647, at *8.

**Second**, the Marketing Defendants assert that the Court should reduce Bluegreen's requested fees because its submitted time entries contain "block billing" that prevents the Court from assessing the reasonableness of fees sought. [ECF No. 574, pp. 11–12 (citing *CityPlace Retail, L.L.C. v. Wells Fargo Bank, N.A.*, 2021 WL 3361172, at *8 (S.D. Fla. Jan. 12, 2021))]. Bluegreen states that the submitted time entries are sufficiently specific, noting that block billing alone does not necessarily warrant a reduction in of requested fees. [ECF No. 577, p. 8 (citing *Wyndham Vacation Ownership, Inc. v. Slattery, Sobel & Decamp, LLP*, No. 6:19-CV-1908-WWB-EJK, 2022 WL 8217011, at *6–7 (M.D. Fla. July 22, 2022)), *report and recommendation adopted*, 2022 WL 4285897 (M.D. Fla. Sept. 16, 2022), *reconsideration denied*, 2023 WL 2039378 (M.D. Fla. Jan. 27, 2023))].

Upon reviewing Bluegreen's submissions, the Undersigned agrees with the Marketing Defendants.

"Block billing occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those

individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013). The practice of block billing is disfavored because it prevents the court from accurately ascertaining the amount of time spent on each discrete task. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11 (S.D. Fla. July 1, 2008) (noting that block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable").

Nonetheless, "[a]s a general proposition block billing is not prohibited so long as the [c]ourt can determine from the time entry the services that were performed." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).

In its Reply, Bluegreen cites *Wyndham Vacation*, 2022 WL 8217011, at *6–7, to argue that block billing absent any additional deficiencies such as "that the hours lack detail, are unreasonable for the tasks performed, are excessive or otherwise not compensable . . . is insufficient for a reduction of an attorney's fee award." [ECF No. 577, p. 9 (internal citations omitted)]. *Wyndham Vacation* supports Bluegreen's argument that objecting to block billing alone does not necessarily warrant a reduction in fees. The *Wyndham Vacation* Court further noted that,

> the mere inclusion of two tasks in a single entry is not, in itself, evidence of
> block billing. *Machado v. Da Vittorio, LLC*, No. 09-23069-CIV, 2010 WL

2949618, *3 (S.D. Fla. July 26, 2010); *Williams v. R.W. Cannon, Inc.*, 657 F.
Supp. 2d 1302, 1312 (S.D. Fla. 2009). When the tasks are intertwined, a
thorough description of the activities clarifies, rather than obscures, the
record. *Id.*

2022 WL 8217011, at *6.

Bluegreen argues that its time entries are "proper, encompassing small increments
of time, and each entry describing a single, discrete task; and, in instances of multiple
entries, they are for tasks that are intertwined, and each task is described with enough
specificity to determine how the time was spent and if the time was reasonable." [ECF
No. 577, p. 10]. The Undersigned disagrees.

Below are a few examples of Bluegreen's entries that fail to meet that self-described
standard:

| 5/9/2023 | 5.70 | $495.00 | $2,821.50 | Continued trial preparation, in light of impending trial commencement; Work on witness presentation issues - i.e., order and evidentiary issues; Strategize regarding motion to reconsider Summary Judgment ruling; Exchanges with opposing counsel re pretrial matters; Work on evidentiary issues and anticipated limine rulings. |
|---|---|---|---|---|

| 7/27/2023 | 2.20 | $495.00 | $1,089.00 | Substantive trial preparation for upcoming trial; Work on witness preparation issues and presentation issues in light of limine rulings and Judge's trial time restrictions. |
|---|---|---|---|---|

| 5/13/2022 | 3.00 | $380.00 | $1,140.00 | Continue work with co-counsel and review of records to determine appropriate owner witnesses; Attention to outstanding defendant discovery for potential motion to compel. |
|---|---|---|---|---|

[ECF No. 572, pp. 16, 17, 23].

These time entries, as they are written, prevent the Court from determining how much time was spent on each task and whether that time was reasonable. For example, in the second entry from 7/27/2023, the first task listed is "substantive trial preparation for upcoming trial" but without any details describing what that means. "Substantive trial preparation" could mean anything, including reviewing discovery, conducting legal research, or even something as simple as practicing opening statements and closing arguments. Unlike the second task listed related to issues stemming from the *in limine* rulings, the first task does not allow the Court to make the necessary determinations.

Additionally, Bluegreen fails to cite any binding authority in support of its argument. *See Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case." (citing *Camreta v. Greene*, 563 U.S. 692, 709, n.7 (2011); *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) ("A district court is not bound by another district court's decision, or even an opinion by another judge of the same district court, but a district court in this circuit is bound by this court's decisions."))).

Decisions within the Eleventh Circuit clarify that block billing becomes problematic when it hinders a court's assessment of whether the time devoted to each separate task was reasonable. *See Barnes*, 168 F.3d at 429 ("The imprecision of the billing records submitted by the plaintiffs makes it difficult, if not impossible, to calculate with

any precision the number of hours an attorney devoted to a particular task in this litigation."); *see also Dial HD, Inc. v. ClearOne Commc'ns*, 536 F. App'x 927, 931 (11th Cir. 2013) (affirming a district court's decision to "appl[y] a 25% across-the-board reduction to the fees charged by one law firm based on its conclusion that the firm used block billing, making it difficult to ascertain how much time was spent on each task").

As such, courts within this district often find that a reduction in fees is appropriate when the prevalence of block billing "prevents the [c]ourt from assessing the time spent on each **discrete** task and thus, the reasonableness of the fees sought." *CityPlace Retail*, 2021 WL 3361172, at *8–9 (emphasis added) (reducing requested fees when "[t]here [were] [ ] numerous examples of entries . . . that include[d] a list of tasks that [were] not related to each other in any way other than they were performed by the same attorney"); *Carnival Corp.*, 2021 WL 2338647, at *9 (finding that block billing warranted a reduction in fees when "many of the blocked billed entries [were] comingled with different tasks such that it [was] impossible for the [c]ourt to determine the reasonableness of the time expended on each task").

As alleged by the Marketing Defendants, Bluegreen submitted many impermissible, block billed entries. These instances of block billing are problematic because they list multiple distinct tasks within the same entry but do not specify how much time the timekeeper dedicated to each entry. Therefore, the Undersigned is unable

to assess whether the time dedicated to each task was reasonable. Included below are examples of the problematic entries related to each attorney:

Attorney Christu:

| 6/7/2021 | 5.00 | $430.00 | $2,150.00 | Prepare for and attend, present and argue continuation of discovery hearing before Magistrate Judge Goodman; React to ruling and strategize regarding going forward; Exchange with counsel for defendant, Consalvo. |
|---|---|---|---|---|

| 3/17/2023 | 4.80 | $495.00 | $2,376.00 | Work on trial preparation, including efforts to finalize pretrial stipulation; Work on deposition designations; Work on voir dire questions; Several exchanges amongst counsel regarding open issues; Receive and review Order from Court regarding trial setting; Strategize regarding next steps based on ruling. |
|---|---|---|---|---|

| 8/18/2023 | 5.70 | $495.00 | $2,821.50 | Trial preparation; Work on witness examinations and evidentiary presentation; Numerous exchanges with defense counsel regarding pretrial matters; Work on agreed upon stipulations |
|---|---|---|---|---|

[ECF No. 572-1, pp. 12; 13; 18].

Attorney Benjamin F. Elliott:

| 11/10/2020 | 4.10 | $335.00 | $1,373.50 | Assemble summons for each defendant in advance of filing complaint; Assemble civil action cover sheet in advance of filing complaint; Revise complaint in regard to Lanham Act allegations; Review and revise proposed exhibit 1 to complaint; Organize logistics of filing complaint. |
|---|---|---|---|---|

| 6/22/2022 | 2.50 | $380.00 | $950.00 | Continue to assist in preparation for deposition of Pandora 30(b)6 representation; Review of defendant discovery requests to develop further protocol for response to same; Work with co-counsel on identification of search terms for collection of rele vant emails. |

| 10/31/2022 | 2.00 | $380.00 | $760.00 | Review of defendant document production; Attention to discovery deadlines; Attention to summary judgment briefing (working drafts). |

| 6/7/2023 | 9.30 | $435.00 | $4,045.50 | Continued work amongst counsel; Attention to identification of additional time stamps of customer sales call recordings; Prepare list of same to provide to opposing counsel; Draft notice to Court. |

*Id*. at 19; 24; 32; 51.

Attorney Christian M. Leger:

| 7/15/2022 | 1.8 | $400.00 | $720.00 | Prepare for and attend conference call with client re: REDACTED ; Exchange emails with opposing counsel re: continued conferral on witness selection; Begin analysis of topics for continued deposition of Carlsbad Law Group corporate representative. |

| 10/28/2022 | 2.6 | $400.00 | $1,040.00 | Draft and revise omnibus motion for summary judgment ; Analysis and consideration of additional case law attendant to Defendants  affirmative defenses; Receive and review email from opposing counsel re: multiple outstanding discovery issues, and investigate and respond to same; Receive and review order granting leave to exceed page limit and file omnibus motion for summary judgment. |

| 12/12/2022 | 4.6 | $400.00 | $1,840.00 | Continue revising and editing responses in opposition to Defendants Motion for Summary Judgment; Analysis and consideration of case law re: additional authorities to support existing arguments and development of new arguments in opposition to Defendants summary judgment motions; Draft and prepare proposed client affidavit on securitization, servicing, and various other issues needed to defeat summary judgment; Revise and edit draft oppositions to Pandora Defendants summary judgment motions to incorporate additional citations to case law and evidence. |

*Id*. at 63; 75; 77.

Attorney Erin E. Tuck:

| 11/4/2022 | 3.60 | $350.00 | $1,260.00 | Conduct in-depth review and analysis of Pandora's 30(b)(6) deposition while contemporaneously creating chart memorializing pertinent testimony for the purpose of using relevant testimony in the MSJ; Conduct research, analysis, and scrutiny of Federal Rules of Civil Procedure, case law, Local Rules, and other Federal Authority relative to thelegal standard and requirements for civil conspiracy claims for the purpose ofassisting in drafting the MSJ. |

| 1/10/2023 | 3.7 | $385.00 | $1,424.50 | At the direction of lead counsel: 1) continue to draft jury instructions; and 2) conduct research and review of Local Rules for the purpose of determining the requirements of the pretrial statement in order to assist lead counsel in trial preparation |

| 3/3/2023 | 4.10 | $385.00 | $1,578.50 | Review Marketing Defendants deposition designations and prepare transcripts for the purpose of assisting lead counsel in making counter-designations and objections;Review and analyze 6 audio recordings used in the WVO trial for the relevancy for the trial of this matter and locate appropriate time stamps for the purpose of assisting lead counsel in preparing exhibit list; At the direction of lead counsel, draft Expedited Motion for extensionof time to file responses to deposition designations; Revise Expedited Motion in accordance with discussions with opposing counsel to be a Joint Motion and include an extension of the pretrial stipulation deadline, and otherwise prepare motion for filing. |

*Id.* at 103; 104; 112.

Attorney Justin Green:

| 4/22/2021 | 3.60 | $350.00 | $1,260.00 | Conference call with Lead counsel and co-counsel to discuss strategy and planning RE: Western Alliance Bank subpoena response and opposing counsels untimely objections under Magistrate Goodman's standing discovery order; Contact Western Alliance Ban k RE: subpoena production; Receive return telephone call from Western Alliance bank to discuss subpoena production and follow up with co-counsel; Receive secure document transfer notice from Wells Fargo, coordinate document processing with litigation support, and follow up troubleshooting call to Wells Fargo legal processing department RE: resolving production deficiencies; Strategy meeting with lead counsel RE: propounding additional subpoenas for discovery to data storage vendor - ElephantDrive, Inc., and draft subpoena for document production to Elephant Drive. |

| 2/10/2022 | 1.60 | $350.00 | $560.00 | Conduct initial review and assessment of Pandora production of documents received on 2.9.2022 - containing over 65,000 call recordings; Coordinate with litigation support department to analyze deficiency in production RE: missing data files for corresponding email account downloads for over 500 email accounts and or email servers utilized by Defendants, appraise lead counsel of situation and prepare response plan; Review meta data for missing email accounts to assess potential value and responsiveness to Bluegreen's first RFP to assess if missing data is relevant; Draft proposed correspondence to opposing counsel RE: production deficiency. |

*Id*. at 140; 146.

The Undersigned finds that the amount of problematic block billing prevents the Court from assessing whether the hours billed were reasonable and warrants a reduction in fees. The inability to evaluate the time entries relates to more than small, nitpicky entries. Indeed, as noted above, the illustrations of improper block billing concern *thousands* of dollars.

**Third**, the Marketing Defendants request that the Court deduct erroneous billing amounts from Bluegreen's requested fees. [ECF No. 574, pp. 12–13]. They highlighted several instances where the time claimed on a particular day was greater than the time specified in the narratives. *Id.* In its Reply, Bluegreen explained that "the times referenced in the narratives are accurate and acknowledged that "adjustment to the total time claimed is appropriate." [ECF No. 577, p. 10].

"[T]he [c]ourt has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the

number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute." *Valley*, 82 F. Supp. 3d at 1325. As a result, the Undersigned finds that similarly erroneous billing amounts beyond those acknowledged by the parties warrant further adjustments to the requested fees.

"It is important to keep **accurate** and current records of work done and time spent on a case, especially when a third party, *i.e.*, someone other than the client, may pay the bills." *Dewitt v. Daley*, No. 05-61418-CIV, 2007 WL 9698322, at *3 (S.D. Fla. Nov. 29, 2007) (emphasis added) (citing *Hensley*, 461 U.S. at 437), *report and recommendation adopted*, No. 05-61418-CIV, 2007 WL 9698332 (S.D. Fla. Dec. 17, 2007). "[B]illing entries [that] are clerical, excessive, duplicative, redundant, or [that] **represent erroneous time entries** . . . must be reduced." *Id.* (emphasis added). "Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which **accurately** reflect the work done by each attorney." *Id.* (emphasis added) (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).

Here, Bluegreen submitted multiple erroneous time entries beyond those that it conceded were incorrect in its Reply. Some errors represent relatively large discrepancies between the daily hours billed and the hours listed in the corresponding narrative. For example, Attorney Elliott's billing records illustrate that on May 3, 2023, he billed 8 hours; however, the narrative for that entry only amounts to 4.1 hours:

| 5/3/2023 | 8.00 | $435.00 | $3,480.00 | Analysis of value of actual damages associated with tortious interference claim and defendant evidence in support of same (.8), Prepare for and confer with client in regard to trial strategy following Court order on summary judgment motions (.8); Analysis of proposed summary chart and consider changes thereto in light of summary judgment order (1.0); Review of owner testimony to identify strength of evidence in response to court's identification of issues remaining for trial (1.5); |
|---|---|---|---|---|

[ECF No. 572-1, p. 48].

Similarly, Attorney Green's billing records show that on April 15, 2022, he billed

5.4 hours; whereas his narrative for that entry lists only 1.3 hours:

| 4/15/2022 | 5.40 | $350.00 | $1,890.00 | Receive response from Bank of America subpoena for bank records and attempt to process documents (broken CD), and coordinate production of replacement (.4); Review prior Bank of America production and perform document database maintenance to correlate related account data to prepare for updated production (.5); Review Wells Fargo letter responding to subpoena and place telephone call to Wells Fargo RE: update on status of responsive production to subpoena (.4). |
|---|---|---|---|---|

*Id*. at 151.

There are also several, smaller errors throughout Bluegreen's submissions.[6] The Undersigned finds that these erroneous entries throughout Bluegreen's submissions warrant further reduction in fees.

---

[6]    For example, on November 22, 2022, Attorney Elliott billed 9.5 hours but his narrative for that day only accounts for 9 hours. [ECF No. 572-1, p. 32]. In his first entry for December 16, 2022, Attorney Elliott billed 3.5 hours but his narrative for that entry accounts for 1.5 hours. *Id*. at 33. In his second entry for December 16, 2022, Attorney Elliott billed 2.5 hours but his narrative for that entry accounts for 1.5 hours. *Id.* On April 27,

**Fourth**, the Marketing Defendants state that the Court should deduct redundant hours that Bluegreen's attorneys billed for attending each day of trial. [ECF No. 574, pp. 13–15 (citing *CityPlace Retail*, 2021 WL 3361172, at *9)]. Bluegreen argues that these hours are not redundant because each attorney performed significant duties. [ECF No. 577, pp. 10–11].

"When more than one attorney represents a party, a court must deduct from the fee award any 'redundant hours.'" *CityPlace Retail*, 2021 WL 3361172, at *9 (quoting *Vazquez v. 1052 LLC*, No. 15-22677-Civ, 2016 WL 541432, at *3 (S.D. Fla. Feb. 11, 2016)). "There is nothing inherently unreasonable about a client having multiple attorneys, and they all may be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer.'" *Norman*, 836 F.2d at 1302 (citing *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983), *cert. denied*, 464 U.S. 994, 104 S. Ct. 489, 78 L.Ed.2d 684 (1983)). "[A] fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." *Barnes*, 168 F.3d at 432.

---

2022, Attorney Leger billed 4 hours but his narrative for that day only accounts for 3 hours. *Id*. at 59.

The Undersigned is at a bit of a disadvantage because I did not preside over the trial. Nevertheless, I am familiar with the myriad issues in this case and my more than forty years of experience as a trial lawyer and judge tells me that three lawyers for Bluegreen at trial is not unreasonable. *See Johnson*, 706 F.2d 1205 at 1208 ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work."); *see also Flexiteek Ams.*, 2016 WL 7497485, at *27 (awarding reasonable attorneys' fees to a multi-lawyer trial team involved in a complex Patent Act and FDUTPA case when the court found no "unreasonable or unnecessary redundancy" in the hours expended). In addition, the Marketing Defendants had a four-member trial team.

In determining the number of hours reasonably expended, the Court must exclude "excessive, redundant or otherwise unnecessary hours" from those claimed. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 436). This task may be accomplished by either applying an hour-by-hour analysis or making an across-the-board cut. *See Bivins v. Wrap it Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). Judges "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). "Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano*

*v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436).

Rather than conduct an hour-by-hour analysis of Bluegreen's submissions to account for all deficient time entries, the Undersigned will instead reduce the requested fees by 20%. "When a trial court is confronted with a fees request which demonstrates billing inefficiencies, it is appropriate to make an 'overall reduction' in the fees award by adopting an across-the-board percentage reduction." *Procaps S.A. v. Pantheon Inc.*, 2013 WL 6238647, at *16 (S.D. Fla. Dec. 3, 2013) (quoting *MKT Reps S.A. De C.V.*, 2013 WL 1289261, at *12 (S.D. Fla. Mar. 28, 2013) (imposing 20% reduction after reducing the hourly billing rates)); *see Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994) ("Where fee documentation is voluminous, such as in the instant case, an hour-by-hour review is simply impractical and a waste of judicial resources."); *see also Truesdell v. Thomas*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6983508, at *7 (M.D. Fla. Nov. 8, 2018) ("The court has broad discretion in determining the extent to which a reduction in fees is warranted by block billing." (citing *Ferrante Treatment Techs., LLC v. Ciampi*, No. 6:06-CV1565 ORL 28KRS, 2007 WL 1128962, at *3 (M.D. Fla. Apr. 16, 2007)), *report and recommendation adopted*, No. 5:13-cv-552-Oc-10PRL, 2018 WL 6620486 (M.D. Fla. Dec. 3, 2018).

Accounting for this $344,374.60[7] reduction in fees, the Undersigned **respectfully recommends** that Bluegreen recover **$1,377,498.40** in attorneys' fees.[8]

### C. Costs

Bluegreen argues that they are entitled to $34,967.53 in reasonable costs. [ECF No. 572, p. 20]. This figure combines Bluegreen's non-taxable costs ($12,482.11) and Bluegreen's disputed costs originally requested as taxable costs. ($22,485.42). *Id*. at 19.

In their Motion, Bluegreen states that Plaintiffs are entitled to $12,482.11 in non-taxable costs and $22,485.42 in disputed costs to the extent that the Court determines them not recoverable as taxable costs under 28 U.S.C. § 1920. *Id*. at 21. The $22,485.42 in disputed costs is comprised of $1,524.10 for a deposition transcript; $9,222.50 for a video recording of a deposition; $10,763.82 for a transcript of the Marketing Defendants' sales presentations; and $975.00 for subpoena service to third-parties ($65 per subpoena service for 15 subpoenas served). *Id*.; ECF No. 572-1, p. 210.

The Court has since awarded Bluegreen $12,339.62 out of the $22,485.42 disputed costs as taxable costs. [ECF No. 591]. This $12,339.62 award in taxable costs is comprised

---

[7]     The Undersigned calculated this figure by multiplying the total requested attorneys' fees by 20% ($1,721,873.00 x 20% = $344,374.60).

[8]     This figure represents the difference between the total requested fees and the reduced fees ($1,721,873.00 - $344,374.60 = $1,377,498.40).

of \$730.80 in taxable costs for the deposition transcript[9]; \$0 in taxable costs for the video

recording of a deposition[10]; \$10,763.82 in taxable costs for a transcript of the Marketing

Defendants' sales presentations[11]; and \$845.00 in taxable costs for subpoena service to

third parties.[12] *Id.* at 10; 12–13; 16–17; 19.

As a result, \$10,145.80[13] in costs remain that Bluegreen now seeks to recover as

non-taxable costs (originally requested as *taxable* costs).

The Undersigned's analysis does *not* address whether the previously-requested

(and rejected under § 1920) \$10,145.80 in costs should nonetheless be awarded under

FDUTPA. Bluegreen argues that "to the extent that the Court determines that [the costs

sought in Bluegreen's motion for award of taxable costs] is not recoverable as taxable

under 28 U.S.C. § 1920, under the circumstances, the Court should award [those] costs as

---

[9]     The Court excluded \$793.30 from the total \$1,524.10 requested taxable costs for the deposition transcript because \$793.30 of these costs were either not taxable under 28 U.S.C. § 1920 or lacked adequate explanation of their necessity. [ECF No. 591, pp. 12 –13].

[10]    The Court did not award any of the \$9,222.50 taxable costs requested for the video recording of a deposition because these costs lacked adequate explanation. *Id.* at 16–17.

[11]    The Court awarded the entire \$10,763.82 requested taxable costs for a transcript of the Marketing Defendants' sales presentations. *Id.* at 19.

[12]    The Court excluded \$130 from the total \$975 requested taxable costs for third-party service fees because \$130 of these costs were associated with second subpoenas to third-parties that Bluegreen failed to justify. *Id.* at 10 n.5.

[13]    \$10,145.80 represents the difference between the total amount of disputed costs originally sought as taxable costs and the costs the Court did award as taxable costs (\$22,485.42 – \$12,339.62 = \$10,145.80).

non-taxable pursuant to this Motion[.]" *Id.* at 21. However, Bluegreen does not cite to any

legal authority for the proposition that they should get a second bite at the apple. As

previously stated, the Undersigned will not consider arguments which are not supported

by legal authority. *See United States Steel Corp.*, 495 F.3d at 1287 n.13.

For these reasons, the Undersigned's analysis focuses on the requested non-

taxable costs that Bluegreen did *not* initially request as taxable costs ($12,482.11). This

sum is comprised of $6,553.50 in costs for a trial technician; $3,585.07 in costs for pre-trial

and trial lodging; $1,143.54 in costs for travel and parking for trial attendance; and

$1,200.00 in costs for mediation. [ECF No. 572, p. 20].

The Undersigned's costs analysis is limited to whether Bluegreen is entitled to

these non-taxable costs under FDUTPA. "FDUTPA permits the recovery of litigation

expenses that are 'reasonable and related to the litigation.'" *Unisource Discovery, Inc. v.

Unisource Discovery, LLC*, No. 20-23276-CIV, 2023 WL 4187094, at *3 (S.D. Fla. June 9, 2023)

(citing *HRCC, Ltd. v. Hard Rock Café Int'l (USA), Inc.*, No. 6:14-cv-20004-Orl-40KRS, 2018

WL 1863778, at *9 (M.D. Fla. Mar. 26, 2018), *report and recommendation adopted*, No. 6:14-

cv-2004-Orl-40KRS, 2018 WL 1863779 (M.D. Fla. Apr. 13, 2018)), *report and recommendation

adopted*, No. 1:20-cv-23276, 2023 WL 4188118 (S.D. Fla. June 26, 2023). "[The opposing

party] bears the burden to establish that a cost item is not recoverable." *Universal

Physician Servs., LLC v. Zotto*, No. 8:16-cv-1274-T-36JSS, 2021 WL 3193314, at (M.D. Fla.

July 9, 2021) (citing *Monelus v. Tocodrian, Inc.*, 609 F. Supp. 2d 1328, 1332–33 (S.D. Fla.

2009)), *report and recommendation adopted*, No. 8:16-cv-1274-CEH-JSS, 2021 WL 4434883 (M.D. Fla. July 29, 2021).

"However, granting unsubstantiated costs or costs above those which are properly charged, is tantamount to penalizing the losing party." *United Food Mart, Inc. v. Motiva Enters., LLC.*, No. 04-60539CIV, 2006 WL 3068821, at *3 (S.D. Fla. July 10, 2006) (citing *Lashkajani v. Lashkajani*, 911 So. 2d 1154, 1158–59 (Fla. 2005)).

Local Rule 7.3(a)(6) requires motions for nontaxable costs to "describe and document with invoices all incurred and claimed . . . expenses not taxable under 28 U.S.C. § 1920[.]" S.D. Fla. L.R. 7.3(a)(6). "Consequently, the matter is quite settled in this district that a moving party must provide supporting documentation to justify a cost award of any kind." *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, No. 13-20544-CIV, 2020 WL 6808856, at *9 (S.D. Fla. Apr. 16, 2020) (quoting *Lustig v. Bear Stearns Residential Mortg. Corp.*, No. 08-14419-CIV, 2010 WL 11519359, at *2 (S.D. Fla. June 3, 2010); *Gonzalez v. Wells Fargo Bank, N.A.*, No 1:13-CV-23281, 2015 WL 12978820, at *8 (S.D. Fla. Mar. 20, 2015) (reduced claimed non-taxable costs for messenger service and telephone charges where movant did not comply with the local rule), *report and recommendation adopted*, No. 13-23281-CIV, 2015 WL 12978799 (S.D. Fla. Apr. 8, 2015)), *report and recommendation adopted*, No. 13-CV-20544-KMM, 2020 WL 5757493 (S.D. Fla. Sept. 28, 2020), *amended*, No. 13-CV-20544-KMM, 2020 WL 10787197 (S.D. Fla. Nov. 12, 2020), *aff'd*, No. 20-14058, 2023 WL 8946765 (11th Cir. Dec. 28, 2023).

The Undersigned will discuss each category of requested non-taxable costs in turn.

*Trial Technician*

Bluegreen seeks to recover $6,553.50 in non-taxable costs for expenses related to Bluegreen's trial technician. [ECF No. 572, p. 20]. Bluegreen submitted two invoices that show the quantity of items purchased, the items purchased, the unit prices, and the amounts charged as support for this request. [ECF No. 572-1, pp. 204–05]. The Marketing Defendants dispute all costs associated with the trial technician because Bluegreen provides no description of the services rendered or items purchased. [ECF No. 574, pp. 16–17]. In response, Bluegreen argues that "[p]ortions of the invoices were redacted to protect mental impressions, but the invoices are self-explanatory [.]" [ECF No. 577, p. 11].

The Undersigned finds that Bluegreen's submissions in support of this request are not sufficient because they failed to "**describe** and document with invoices all incurred and claimed . . . expenses not taxable under 28 U.S.C. § 1920[.]" S.D. Fla. L.R. 7.3(a)(6) (emphasis added). As shown below, neither of the invoices are "self-explanatory" because **everything** within the description column is redacted.

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 0.40 | CONSULT | REDACTED | 145.00 | 58.00 |
| 0.70 | CONSULT | | 145.00 | 101.50 |
| 2.50 | CONSULT | | 145.00 | 362.50 |
| 1.80 | CONSULT | | 145.00 | 261.00 |

| Quantity | Item | Description | Unit Price | Amount |
|---|---|---|---|---|
| 1.10 | CONSULT | REDACTED | 145.00 | 159.50 |
| 0.70 | CONSULT | | 145.00 | 101.50 |
| 5.80 | CONSULT | | 145.00 | 841.00 |
| 9.80 | CONSULT | | 145.00 | 1,421.00 |
| 8.50 | CONSULT | | 145.00 | 1,232.50 |
| 7.50 | CONSULT | | 145.00 | 1,087.50 |
| 3.50 | CONSULT | | 145.00 | 507.50 |
| 1.00 | EQUIPMENT | | 360.00 | 360.00 |
| | TRAVEL | | | 60.00 |

[ECF No. 572-1, pp. 204-05].

On one hand, "[i]t is well settled that '[e]xpenses such as reimbursement for travel, meals, lodging, photocopying, long-distance calls, computer research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable' as non-taxable costs. *Brown Jordan Int'l, Inc. v. Carmicle*, No. 14-60629-CV, 2017 WL 5633312, at *10 (S.D. Fla. Aug. 7, 2017) (quoting *Keegan v. Am. Honda Motor Co.*,

*Inc.*, 2014 WL 12551213, at *28 (C.D. Cal. Jan. 21, 2014)), *report and recommendation adopted*, No. 0:14-CV-60629, 2017 WL 5632811 (S.D. Fla. Aug. 22, 2017).

In the instant case, however, the "Description" column is entirely redacted. The only description of these services is in Bluegreen's Motion, which states that the trial technician was "necessary" and "aided counsel in the presentation of evidence[.]" [ECF No. 572, p. 20]. Bluegreen fails to include descriptions for each entry, instead choosing to provide a broad description encompassing both invoices. [ECF No. 577, p. 11 ("the technician's services were used at trial to allow Bluegreen to present evidence through the use of the courtroom technology. Preparation for presentation and actual technological presentation at trial is the work covered by the invoices ")]. Additionally, the items purchased column is just as unhelpful (especially with the descriptions redacted) because it merely states "CONSULT", "EQUIPMENT", or "TRAVEL".

Because Plaintiffs redacted the invoices, the Undersigned is unable to determine whether each entry is reasonable or relevant to this litigation. *See Architectural Ingenieria*, 2020 WL 6808856, at *11 ("Being unexplained and unsupported, these amounts are not awardable."); *Noble House, LLC v. Derecktor Fla., Inc.*, No. 20-CV-62438, 2021 WL 2022636, at *5 (S.D. Fla. Apr. 17, 2024) (declining to award non-taxable costs documented on invoices that "[did] not provide any description of the work completed in connection with [those invoices]"), *report and recommendation adopted*, No. 20-cv-62438, 2024 WL

2018944 (S.D. Fla. May 7, 2024). Therefore, the Undersigned **respectfully recommends** that the Court should not award the $6,553.50 in costs related to the trial technician.

*Pre-Trial and Trial Lodging*

Bluegreen seeks to recover $3,585.07 in non-taxable costs for pre-trial and trial lodging. [ECF No. 572, p. 20]. Bluegreen submitted several receipts and statements indicating the costs of this lodging to support this request. [ECF No. 572-1, pp. 185; 189–93]. The Marketing Defendants argue that Bluegreen is not entitled to any costs related to hotels, travel, or parking because "it would be unfair to burden the [Marketing] Defendants with travel expenses caused by [Bluegreen's]" decision to hire non-local attorneys. [ECF No. 574, p. 16].

The Marketing Defendants' argument is persuasive. It is true that lodging fees are typically recoverable as non-taxable costs. *Brown Jordan Int'l, Inc.*, 2017 WL 5633312, at *10 (quoting *Keegan*, 2014 WL 12551213, at *28). However, "[a] fee applicant seeking to recover expenses incurred for retaining non-local counsel generally 'must show a lack of attorneys practicing in that place who are willing and able to handle his claims.'" *CityPlace Retail*, 2021 WL 3361172, at *16 (quoting *Martinez v. Hernando County Sherrif's Office*, 579 F. App'x 710, 714 (11th Cir. 2014)); *see also Marjam Supply*, 2021 WL 1200422, at *25 (declining to award travel expenses related to non-local counsel when "there appear[ed] to be no reason why counsel from Miami could not have been hired from the start of the case"); *Alper Auto., Inc. v. Day to Day Imp., Inc.*, No. 18-81753-CIV, 2022 WL

3904327, at *7, 10 (S.D. Fla. July 26, 2022) (declining to award costs associated with travel to or from the location of the litigation when the plaintiff used non-local counsel and did not establish a lack of available local counsel).

In this case, none of Bluegreen's attorneys are local to Miami. [ECF No. 572-1, pp. 3–4]. Four of Bluegreen's attorneys are based in Orlando, Florida. *Id.* One of Bluegreen's attorneys is based in West Palm Beach, Florida. *Id.*; *cf. CityPlace Retail*, 2021 WL 3361172, at *5 ("It is a 70 mile drive from West Palm Beach to Miami, approximately the same distance as driving from Philadelphia to Allentown or from mid-town Manhattan to New Haven, Connecticut."). Bluegreen does not argue that there was a lack of local counsel available to handle this case, but, instead, argues that these costs are reasonable due to the "long-standing" relationship between Bluegreen and their counsel. [ECF No. 577, p. 11]. Additionally, the Undersigned notes that Bluegreen's counsel has an office *in* Miami.[14]

Because Bluegreen did not establish a lack of local counsel available to litigate this case, the Undersigned finds Bluegreen may not recover travel expenses incurred as a consequence of retaining non-local counsel. *See Grigorian v. FCA US, LLC*, No. 18-24364-CIV, 2021 WL 5605542, at *12 (S.D. Fla. Oct. 1, 2021) (declining to award any travel expenses resulting from the "[d]efendant's decision to hire counsel who were neither

---

[14]     Shutts & Bowen LLP, https://www.shutts.com/contact-contact-miami (last visited July 16, 2024).

local to its place of business nor the jurisdiction in which suit was brought," including costs related to lodging), *report and recommendation adopted*, No. 18-24364-Civ, 2021 WL 5579276 (S.D. Fla. Nov. 30, 2021); *see also Altair S.R.L. v. His Wind, LLC*, No. 5:15-cv-329-Oc-30PRL, 2016 WL 1728931, at *5 (M.D. Fla. Apr. 29, 2016) (declining to award travel expenses resulting from the plaintiff's decision to retain non-local counsel, including those related to lodging, because "[i]t would be unfair to burden [the] [d]efendant with this expense"). For these reasons, the Undersigned finds that Bluegreen should not recover their requested lodging costs.

<u>*Travel and Parking for Trial Attendance*</u>

Next, Bluegreen seeks $1,143.54 in non-taxable costs related to travel and parking fees for trial attendance. [ECF No. 572-1, p. 184]. $613.08 of this request is associated with mileage reimbursement for interoffice travel, and $530.46 of this request is associated with parking fees. *Id.* Bluegreen supports this request with invoices and receipts detailing the dates of these charges. *Id.* at 186–92; 199–202. The Marketing Defendants incorporate the same arguments described in the previous section, objecting to all travel and parking costs. [ECF No. 574, p. 16].

The Undersigned finds that Bluegreen is not entitled to $613.08 in travel expenses for the same reasons discussed in the previous section.

However, "[t]he [c]ourt will not refuse reimbursement for costs that would have been incurred even by local counsel." *Graves v. Plaza Med. Ctrs., Corp.*, No. 1:10-23382-CV,

2018 WL 3699325, at *12 n.13 (S.D. Fla. May 23, 2018), *report and recommendation adopted*, No. 10-23382-CIV, 2018 WL 3697475 (S.D. Fla. July 13, 2018). Parking fees, for example, are typically recoverable as non-taxable costs. *See Kipu Sys. LLC v. ZenCharts LLC*, No. 17-24733-Civ, 2021 WL 1895881, at *8 (S.D. Fla. Feb. 5, 2020) (including parking costs in the award of non-taxable costs), *report and recommendation adopted*, No. 17-CV-24733, 2021 WL 4479451 (S.D. Fla. Sept. 30, 2021), *appeal dismissed*, Nos. 20-14802-X, 20-14804-X, 21-13796-X, 2022 WL 16579536 (11th Cir. Feb. 8, 2022); *see also Mawk v. Kaplan Univ.*, No. 6:13–cv–1469–Orl–22KRS, 2015 WL 4694055, at *3 (M.D. Fla. Aug. 6, 2015) (including parking costs incurred to attend a pre-trial meeting in the award of non-taxable costs).

The Undersigned finds that the $15.00 parking charge from May 16, 2023, when counsel attended a pre-trial conference, was reasonable and sufficiently documented with a corresponding receipt detailing the date of the charge, the location of the parking, and the amount charged. [ECF No. 572-1, p. 186]. Likewise, the $10.00 parking charge of from May 30, 2023, when counsel attended a hearing, is reasonable and sufficiently documented with a receipt reflecting the same information mentioned previously. *Id.* at 187. Similarly, the Undersigned finds that parking charges incurred on days in which the attorneys were attending trial are reasonable and sufficiently documented with invoices.[15]

---

[15]     Two charges of $55.37 on August 21, 2023. [ECF No. 572-1, pp. 189–92]. Two charges of $55.37 on August 22, 2023. *Id.* Two charges of $55.37 on August 23, 2023. *Id.* One charge of $62.50 on August 24, 2023. *Id*. at 188.

Although Bluegreen lists two parking charges of $55.37 from August 20, 2023, as part of the parking fees incurred to attend trial, these charges do not correspond with the trial dates of this case. *Id.* at 184; 189–92. Rather, these parking fees appear related to the attorneys' decision to check-in to their hotel accommodations the day before trial. Because local attorneys would likely not incur such fees, the Undersigned excludes these parking fees from the award of parking fees as non-taxable costs.

For these reasons, the Undersigned finds that Bluegreen is entitled to $419.72 in non-taxable costs for parking fees.[16]

## *Mediation*

Finally, Bluegreen requests $1,200.00 in mediation costs. *Id.* at 181. Bluegreen supports this request with an invoice including the dates of charges, descriptions of the services rendered, the hours billed, and the amounts charged. *Id.* at 194–197. The Marketing Defendants do not dispute these costs. [ECF No. 574, pp. 15–17].

The Undersigned finds that these costs are reasonable and recoverable. The costs associated with mediation are adequately described and documented in an invoice with descriptions of the services rendered, the charges associated with these services, and the portion of these charges that Bluegreen is responsible for paying. [ECF No. 572-1, pp.

---

[16]    The Undersigned calculated this figure by subtracting the total amount of parking fees requested by the amount of parking fees excluded from the award ($530.46 - $110.74 = $419.72).

194–97]. Also, Bluegreen reasonably incurred these costs because the Court issued an Order of Referral to Mediation. [ECF No. 137, p. 5]; *see Marjam Supply*, 2021 WL 1200422, at *25 (awarding mediation fees as non-taxable costs when "the record show[ed] that the mediation was ordered by the [c]ourt at a time where the FDUTPA claims were still at issue").

Thus, the Undersigned finds that Bluegreen is entitled to $1,200.00 in mediation fees as non-taxable costs. In total, the Undersigned **respectfully recommends** that the Court award Bluegreen **$1,619.72** in non-taxable costs.[17]

## II.    Conclusion

For the reasons stated above, the Undersigned **respectfully recommends** that the District Court **grant in part and deny in part** Bluegreen's Motion for Attorneys' Fees and Non-Taxable Costs. The Undersigned **recommends** that the Court award Bluegreen **$1,377,498.40** in attorneys' fees and **$1,619.72** in non-taxable costs.

## III.    Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to file objections timely shall bar the parties from a de novo

---

[17]    The Undersigned calculated this figure by adding the awarded parking fees to the awarded mediation fees ($419.72 + $1200.00 = $1,619.72).

determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interests of justice. *See* 29 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on July 18, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies Furnished to:**</u>
The Honorable Robert N. Scola Jr.
All Counsel of Record