**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

BLUEGREEN VACATIONS UNLIMITED,
INC., et al.,

    Plaintiffs,

vs.

CASE NO: 1:20-cv-24681-RNS

TIMESHARE LAWYERS, P.A., et al.,

    Defendants.
_____/

**DEFENDANTS RICH FOLK AND WILLIAM WILSON'S OBJECTION TO
REPORT AND RECOMMENDATIONS ON BLUEGREEN'S MOTION FOR
ATTORNEYS' FEES AND NON-TAXABLE COSTS**

    Defendants Rich Folk and William Wilson (together, the "Individual Defendants")[1] respectfully submit this Opposition to Magistrate Judge Goodman's Report and Recommendations on Bluegreen's Motion for Attorney's Fees and Non-Taxable Costs (DE 593; the "R&R").

**INTRODUCTION**

    Following the entry of verdict in this action, Plaintiffs Bluegreen Vacations Unlimited, Inc., and Bluegreen Vacations Corp. (collectively, "Bluegreen" or "Plaintiffs") filed a Motion for Attorneys' Fees and Non-Taxable Costs (DE 572; the "Motion") against the Individual Defendants and their co-defendant Pandora Marketing, LLC ("Pandora" and, with the Individual Defendants, the "Marketing Defendants"). Plaintiffs sought attorneys' fees under the Lanham Act and both fees and costs under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Marketing Defendants opposed the Motion (DE 574; the "Opposition") and Plaintiffs filed a reply (DE 577).

---

[1] As the Court is aware, Defendant Pandora Marketing, LLC filed for bankruptcy in the United States Bankruptcy Court for the District of Wyoming on January 31, 2024, Case No. 24-20022. *See* Defendant Pandora Marketing, LLC's Suggestion of Bankruptcy. DE 580. Pursuant to 11 U.S.C. § 362, this action was therefore automatically stayed as to Pandora. This Objection is filed solely on behalf of the Individual Defendants. The undersigned counsel do not represent Pandora in the bankruptcy proceeding and are not authorized to file any objections to the R&R on behalf of Pandora.

The Marketing Defendants argued that Plaintiffs were not entitled to attorneys' fees under the Lanham Act because this is not an "exceptional" case under *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  Opposition at 2-5.  Plaintiffs' argument that the case is exceptional boils down to nothing more than that the Court made certain rulings against the Marketing Defendants on summary judgment and that Plaintiffs ultimately won the case at trial. But a case is not "exceptional" merely because one party wins and another loses; otherwise, every Lanham Act case would be exceptional, and that is not the law. The R&R incorrectly adopted Plaintiffs' position, holding that this case is exceptional because (1) the actions of Pandora employees on which this litigation is based amounted to "significant misconduct"; (2) the Court made adverse rulings against the Marketing Defendants before trial; and (3) it was therefore unreasonable for Defendants to continue defending against the action. The R&R concluded that the Marketing Defendants acted unreasonably in continuing to litigate this action *despite the fact* that this Court held on summary judgment that the Plaintiffs had not established all of the elements of their Lanham Act claim, and the fact that after the Marketing Defendants vigorously disputed the proper amount of disgorgement at trial, the Court awarded only $100,000 rather than the more than $1.5 million that Plaintiffs sought. This decision was in error, and the Court should decline to adopt it.

In addition, the R&R incorrectly concluded that because this is an "exceptional" case, the Plaintiffs are "entitled" to attorneys' fees. R&R at 11. But even where a case is exceptional, a court can exercise its discretion and decline to award fees.  Judge Goodman failed to consider *Plaintiffs'* unreasonable litigation positions and tactics or their improper treatment of their own customers. In considering the R&R, the Court should take these factors into consideration and, even if it finds that this case is exceptional, exercise its discretion and decline to award attorneys' fees under the Lanham Act.

The R&R also incorrectly held that Plaintiffs are entitled to fees and costs under FDUTPA, improperly analyzing certain of the factors in the FDUTPA fee analysis.  For example, the R&R relied on its incorrect *Octane Fitness* analysis to find that the first factor – the scope and history of the litigation – weighed in favor of awarding fees, because Marketing Defendants were purportedly unreasonable in continuing to defend this action through trial.  Similarly, the R&R incorrectly held that the second factor – the party's ability to satisfy an award – weighed in favor of awarding fees, despite the fact that Plaintiffs failed to meet their burden of submitting sufficient

evidence to demonstrate that Pandora was able to satisfy an award, and no evidence whatsoever that the Individual Defendants were able to do so. The Court should decline to adopt the R&R's recommendation on this issue and should find, instead, that Plaintiffs are not entitled to fees under FDUTPA.

Finally, the R&R correctly applied a reduction to Bluegreen's requested fees, based on their improper block billing and errors in the billing records submitted. The R&R should have applied an additional reduction, however, because Plaintiffs' recovery – even including the value of the injunctive relief they obtained – was drastically lower than what they initially sought. The R&R properly held that Bluegreen was not entitled to the vast majority of the non-taxable costs that it sought.

## ARGUMENT

### I. Bluegreen is Not Entitled to Fees Under the Lanham Act

Under the Lanham Act, the Court may only award fees in an "exceptional" case. 15 U.S.C. § 1117(a). An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). In determining whether a case is exceptional, the court should consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*.

#### A. This is Not an Exceptional Case

Judge Goodman incorrectly held that this is an "exceptional" case under *Octane Fitness* and that Plaintiffs are therefore entitled to attorneys' fees. R&R at 11. The Individual Defendants object to this holding.

With respect to the first *Octane Fitness* factor, the substantive strength of a party's litigating position, Judge Goodman rejected Plaintiffs' arguments that a district court decision in *Diamond Resorts* put the Pandora Defendants "on notice" that their litigation position was weak and that the case is exceptional "because it successfully litigated novel issues." R&R at 8-9. Judge Goodman found, however, that the first *Octane Fitness* factor was satisfied because "throughout the litigation, the Court repeatedly found that the Marketing Defendants engaged in significant misconduct and held an 'extremely weak' litigation position." R&R at 9.

3

Judge Goodman's finding that the Marketing Defendants had engaged in "significant misconduct" was based on the Court's holding on summary judgment that the Marketing Defendants "did not provide the [timeshare] owners with truthful or helpful advice" and "profit[ed] from the owners' ignorance…by manipulating the owners with false or misleading information to charge them for nonexistent services." R&R at 6, quoting ECF No. 437 at 20. Judge Goodman further pointed to the Court's statement in the Verdict that the "Marketing Defendants' claims that they can protect consumer credit scores [were] literally false." R&R at 7, quoting ECF No. 561 at 13.[2]

Judge Goodman's conclusion that the Marketing Defendants had "an 'extremely weak' litigation position" was based on certain of this Court's statements in the decision on summary judgment, in which the Court made adverse findings against the Marketing Defendants. Judge Goodman concluded that "[t]hese adverse findings throughout the course of the litigation show that from the time of the Omnibus Order [ECF No. 437], the Marketing Defendants knew that their misconduct and substantively weak case put them in a significantly risky position." R&R at 8.

With respect to the second *Octane Fitness* factor, Judge Goodman found that the Defendants had "litigated this case in an unreasonable manner" based solely on the fact that "the Court issued several decisions finding that the Marketing Defendants engaged in significant misconduct and held a substantively weak litigation position" and therefore "'knew or should have known' that their case was substantively weak." R&R at 11. In other words, Judge Goodman concluded that the Marketing Defendants' litigation position was so weak that they should not have continued to defend this action. *See* R&R at 21 ("the Undersigned's analysis of the *Octane Fitness* factors established that the Marketing Defendants knew their position was extremely weak such that *the continued litigation of their defense was unreasonable*") (emphasis added).

It was error to hold that the Marketing Defendants' litigation position was so weak that their continued defense of this action was unreasonable. As set forth in the Defendants' Opposition, even though the Court had already held that "[t]he Defendants' entire business model is based on offering a service – i.e., legal cancellation of timeshare contracts – they do not actually provide," DE 437 at 34, it did *not* hold that the Marketing Defendants were liable for false

---

[2] To be clear, the "misconduct" that Judge Goodman refers to in the R&R is conduct that Pandora employees engaged in prior to this litigation; Judge Goodman did *not* find that the Marketing Defendants engaged in misconduct during the litigation.

4

advertising under the Lanham Act; Plaintiffs were still required to demonstrate each of the elements of a cause of action for false advertising. The Court denied Plaintiffs' motion for summary judgment with respect to the Lanham Act claim, holding that Plaintiffs had not established widespread dissemination of false or misleading statements. *Id*. at 17 ("[T]he Court concludes that genuine issues of material fact remain as to whether the sales presentations at issue were sufficiently disseminated to constitute an actionable advertisement or promotion under the Lanham Act."). Indeed, the Court suggested that this would be a difficult showing for Plaintiffs to make, stating that while there was deposition testimony in the record regarding statements made to certain owners, such evidence was "insufficient to prove that those statements were made to each and every one of the thousands of customers that eventually contracted with the Marketing Defendants" and that "even among those owners that were deposed, it does not appear that the sales presentations they received were entirely uniform." *Id*. at 15-16. Based on this holding, it was not unreasonable for the Defendants to continue to litigate this action and require Plaintiffs to establish each of the elements of their claim. Further, the Marketing Defendants argued vigorously at trial that because of Plaintiffs' misconduct toward their own customers, the Court should not award Bluegreen the full amount of disgorgement that it sought. The Court agreed and awarded only $100,000 in disgorgement, rather than $1.5 million. Contrary to the R&R's holding that it was unreasonable for the Defendants to continue the defense of this action, it was imminently reasonable to present evidence at trial regarding Plaintiffs' bad acts, as evidenced by the drastically reduced disgorgement award. Judge Goodman's holding to the contrary was incorrect, and this Court should decline to adopt the finding that this is an "exceptional" case.

### B. The R&R Failed to Consider Plaintiffs' Unreasonable Litigation Positions and Tactics

The R&R incorrectly concluded that "[a]s a result of the exceptional-case status, Bluegreen is entitled to recover attorneys' fees under the Lanham Act." R&R at 11. Even if this case were "exceptional" – and again, it is not – Plaintiffs would not be automatically entitled to fees. Rather, the Court may still exercise its discretion and decline to award fees in an exceptional case. *Dieter v. B&H Industries of Southwest Florida Inc*., 880 F. 2d 322, 329 (11th Cir. 1989) ("Even if the trial court finds that the circumstances of the case are, in fact, exceptional, the decision whether to award attorney's fees is still discretionary.").

5

Defendants argued in the Opposition that, even if the Court found that this were an exceptional case, it should exercise its discretion and decline to award fees. Opposition at 5-6. Specifically, Defendants argued that it was *Plaintiffs* who engaged in unreasonable litigation tactics, including waiting until the last minute to drop their damages claims in order to avoid a jury, after both causing Defendants to incur substantial litigation costs *and* running up their own legal bills, which they now seek to impose upon Defendants. *Id.* The R&R failed to consider this argument.

The R&R similarly failed to take into consideration *Plaintiffs'* unreasonable litigation positions, which the Court found to be objectively unreasonable:

- "Bluegreen's position that *every single one* of these owners' statements regarding their unconscionable treatment at the hands of Bluegreen is false and should not be accepted, but that the *same owners' testimony* regarding misrepresentations allegedly made by Marketing Defendants is entirely true and must be accepted by the Court, is not plausible." ECF 561 at 37, citing Trial Tr. Vol. IV, 13:11-23 (emphasis in original).

- "As the Court put it, it cannot be true that 'these tens of thousands or hundreds of thousands of people that are going to these timeshare exit companies'—people who are 'so dissatisfied with [their timeshares] that they're willing to pay thousands of dollars to get out'—are 'just all wrong.'" *Id.*, quoting Trial Tr. Vol. IV, 13:24-14:7.

Finally, while the R&R considered Defendants' "misconduct," it failed to consider *Plaintiffs'* misconduct, including the Court's findings that Bluegreen engaged in "wrongful" and "reproachable" conduct, by "l[ying] to [the deposed owners], ma[king] misrepresentations to them during the sales process, pressur[ing] them into purchasing and/or upgrading, and otherwise defraud[ing] them." ECF 561 at 36. On review of the R&R, the Court should consider *Plaintiffs'* unreasonable litigation tactics and positions and *Plaintiffs'* misconduct, exercise its discretion, and decline to award attorneys' fees to Plaintiffs under the Lanham Act.

## II. Bluegreen is Not Entitled to Fees or Costs Under FDUTPA

The R&R also incorrectly concluded that Plaintiffs are entitled to fees and costs under FDUTPA. In determining whether to award fees or costs under FDUTPA, the relevant facts for a court to consider include "(1) the scope and history of the litigation, (2) the ability of the opposing party to satisfy an award of fees, (3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, (4) the merits of the respective positions—including the degree of the opposing party's culpability or bad faith, (5) whether the claim brought was not in subjective bad faith but frivolous, unreasonable, groundless, (6) whether the defense

6

raised a defense mainly to frustrate or stall, and (7) whether the claim brought was to resolve a significant legal question under FDUTPA law." *Marjam Supply Co. v. Pliteq, Inc.*, 2021 U.S. Dist. LEXIS 44435, at *27-28. "The party moving for fees bears the burden of demonstrating an entitlement to fees under the FDUTPA." *Hetrick v. Ideal Image Dev. Corp.*, 2011 U.S. Dist. LEXIS 90717, at *10 (M.D. Fla. July 26, 2011).

As set forth below, the factors weigh in favor of declining to award fees or costs under FDUTPA.

1. <u>The scope and history of the litigation.</u>

The R&R found that this factor weighed in favor of granting fees and costs because "decisions throughout the history of this litigation indicate that the Marketing Defendants engaged in significant misconduct and pursued an exceptionally weak case that they knew or should have known was unlikely to succeed." R&R at 15. As set forth above, the finding that Defendants' case was "exceptionally weak" and they therefore should have known their defense was unlikely to succeed was error. *Supra* § (I)(A). The R&R essentially holds that Defendants should not have defended against the FDUTPA cause of action and should have simply conceded the claim. That is not the law, and the R&R should not have concluded that this factor weighs in favor of awarding fees.

2. <u>The ability of the opposing party to satisfy an award of fees.</u>

Plaintiffs argued that this factor weighs in favor of awarding fees because "[t]he Marketing Defendants reaped millions of dollars from the scheme underlying this lawsuit and are, therefore, able to satisfy the award requested herein." DE 572 at 12. Specifically, Plaintiffs argued that "the Marketing Defendants received $1,558,958.62 in revenue from identifiable Bluegreen owners that were put at-issue in this matter," as well as approximately $12 million in revenue from Wyndham timeshare owners involved in a separate litigation, and an unspecified amount from Diamond timeshare owners involved in a third litigation. *Id.* at 13. They further asserted that the Court found that the profit and loss statements submitted by the Marketing Defendants at trial were unreliable. *Id.*

Defendants responded in the Opposition that the revenues from Bluegreen, Wyndham and Diamond timeshare owners were not pure profit available to satisfy a fee award and that, in addition to the $100,000 disgorgement award in the instant action, the Magistrate Judge in the Wyndham action had issued a report and recommendation recommending that the court award

7

over $16 million in disgorgement of profits – far more than the $12 million that Plaintiffs claim the Marketing Defendants "reaped" from Wyndham owners.

In the R&R, Judge Goodman ignored the fact that Defendants face a $16 million award in the Wyndham action and concluded that the "information referenced by Bluegreen supports a finding that the Marketing Defendants are able to satisfy an award of fees." R&R at 16. He faulted Defendants for failing to explicitly state that they could not satisfy an award of fees and concluded that "[w]ithout further details about the Marketing Defendants' purported financial status and how it relates to an inability to pay these fees and costs, the Undersigned finds that this factor weighs in favor of granting fees." *Id*. at 17. This finding was in error.

"There is no presumption that a party can pay a fee award." *Day v. Sarasota Drs. Hosp., Inc.*, 2021 U.S. Dist. LEXIS 255214, at *10 (M.D. Fla. Aug. 12, 2021). "The party seeking fees must provide some evidence that the non-prevailing party can pay." *DJ Lincoln Enter. v. Google, LLC*, 2022 U.S. Dist. LEXIS 134363, at *11 (S.D. Fla. July 28, 2022). The "evidence" that Plaintiffs provided here was nothing more than revenues that Pandora Marketing had received from timeshare owners. That "evidence" was insufficient to meet Plaintiffs' burden of demonstrating that the Defendants could satisfy a fee award, especially in the face of the $16 million award in the Wyndham case. *See Day*, 2021 U.S. Dist. LEXIS 255214, at *11-12 (incomplete financial information, including plaintiff's ownership of classic cars potentially worth over $100,000, was inadequate to satisfy defendant's burden, as there was "no explanation for the valuation of the automobiles, nor is there any evidence of the plaintiff's income or debts"); *DJ Lincoln*, 2022 U.S. Dist. LEXIS 134363, at *11 (assertions that non-prevailing party "can likely satisfy an award of fees because it admitted to operating a successful business, claimed damages of $30,000,000, and had the resources to retain counsel in this case" were "insufficient to satisfy Google's evidentiary burden").

Further, the evidence submitted by Plaintiffs related solely to *Pandora's* ability to satisfy an award; Plaintiffs submitted no evidence whatsoever regarding the Individual Defendants' ability to satisfy a $1.7 million fee award. To be clear, the Individual Defendants do not have the ability to satisfy the fee award, even as reduced by the R&R. But it was Plaintiffs' burden to show that the Individual Defendants did have the means to pay an award, and they utterly failed to do so. This factor therefore weighs against awarding fees and costs. *Day*, 2021 U.S. Dist. LEXIS 255214, at *10; *DJ Lincoln*, 2022 U.S. Dist. LEXIS 134363, at *11.

3. <u>The merits of the respective positions – including the degree of the opposing party's culpability or bad faith.</u>

Again, Judge Goodman relied on the incorrect *Octane Fitness* analysis in which he found that the Marketing Defendants' litigation position was extremely weak. He therefore found that this factor weighed "at least slightly in favor of granting fees and costs." R&R at 19. Because the underlying analysis regarding Defendants' litigation position was incorrect, the conclusion that this factor weighs in Plaintiffs' favor was also in error, and the Court should decline to adopt it.

4. <u>Whether the claim brought was not in subjective bad faith but frivolous, unreasonable, and groundless.</u>

Judge Goodman found that this factor was inapplicable and did not consider it. R&R at 20. The Individual Defendants do not object to that finding.

5. <u>Whether the defense raised a defense mainly to frustrate or stall</u>

The R&R found that this factor weighed in favor of awarding fees because (1) Marketing Defendants did not contest Plaintiffs' argument that they had raised affirmative defenses during the trial that the Court had already rejected and (2) because "the Undersigned's analysis of the *Octane Fitness* factors established that the Marketing Defendants knew their position was extremely weak such that the continued litigation of their defense was unreasonable." R&R at 21. This was in error.

First, the R&R does not actually find that the Marketing Defendants raised a defense mainly to frustrate or stall. Rather, it states only that the Marketing Defendants raised certain affirmative defenses at trial that the Court had already rejected. Parties often raise previously-rejected claims or defenses at trial in order to preserve the record for a potential appeal. Plaintiffs did not argue, and the R&R did not find, that the Marketing Defendants spent a great deal of trial time on previously-rejected affirmative defenses, and the mere fact that such a defense was raised does not mean that it was done with the intent to frustrate or stall.

Second, the R&R again relies on the faulty conclusion that the mere fact that the Marketing Defendants continued to litigate their defense of this action was inherently unreasonable. R&R at 21 ("the continued litigation of their defense was unreasonable"). Again, Judge Goodman apparently believes that the Defendants should have conceded liability for Plaintiffs' claims and failed to dispute the amount of disgorgement that was appropriate or the proper scope of injunctive relief. This is not the law, and the Court should fail to adopt the R&R's conclusion on this point.

9

Rather, the Court should find that Defendants did not raise a defense merely to frustrate or stall and that this factor weighs against awarding fees.

6. <u>Whether the claim brought was to resolve a significant legal question under FDUTPA law</u>

Plaintiffs argued that this case resolved a significant legal question regarding the application of FDUTPA because it "involved claims seeking to enjoin a California-based company (Pandora) from engaging in certain conduct anywhere in the country, regardless of Bluegreen's Florida location, where the conduct at-issue damaged the relationship between the Plaintiff Florida entities and consumers nationwide." Motion at 14. The R&R agreed that this case resolved a significant legal question under FDUTPA because there was previously "uncertainty within FDUTPA case law" about the extraterritorial application of FDUTPA, but that this "uncertainty was resolved" in this case. R&R at 22. This conclusion was in error.

In the order granting Plaintiffs a preliminary injunction, the Court noted that it had previously "recognized that Florida law is unclear regarding whether the FDUTPA applies with respect to consumers outside of Florida when the conduct at issue did not take place entirely within Florida," but concluded that "the Marketing Defendants' conduct in this case falls entirely within the FDUTPA's purview." DE 487 at 5. The Court reviewed previous decisions holding that "the FDUTPA 'permits a claim for injunctive relief by "anyone aggrieved" by an unfair or deceptive act,' without limitation as to where the unfair or deceptive act originated or unfolded," and relied on *Barnext Offshore, Ltd. v. Ferretti Grp. USA, Inc.*, and its progeny, "which reject the argument that the 'FDUTPA applies only to the limited circumstance where the consumer is located in Florida and the errant conduct at issue occurs entirely within Florida.'" *Id*. The Court then concluded:

> [A]lthough the Marketing Defendants are in California, and Bluegreen's customers are located throughout the United States, the Marketing Defendants' conduct has a sufficient connection to Florida to render it entirely within the FDUTPA's scope. In addition to the Marketing Defendants targeting Bluegreen timeshare owners in Florida, both Bluegreen Plaintiffs are Florida corporations with their principal places of business in Florida. Furthermore, the timeshare interests Bluegreen sells to its customers, and which the Marketing Defendants interfere with, arise under the Bluegreen Vacation Amended and Restated Club Trust Agreement, which, in turn, is established pursuant to the Florida Vacation Plan and Timesharing act, Fla. Stat. § 721.01 et seq. Because the Marketing Defendants are essentially selling the cancellation of a contract with a Florida entity, that is governed by Florida law, their deceptive conduct necessarily involves Florida.

10

> As such, the Court finds it appropriate here to enjoin the Marketing Defendants' harmful conduct with respect to all Bluegreen timeshare owners.

*Id*. at 5-6. In so holding, the Court did not "resolve" the "uncertainty" regarding the extraterritorial application of Florida, as the R&R holds. Rather, the Court acknowledged the fact that Florida court decisions are inconsistent on the issue and chose to follow a string of cases, including *Barnext*, that had previously held that FDUTPA can be applied to out-of-state defendants engaged in out-of-state conduct where the case has a sufficient nexus to Florida. The Court should therefore decline to adopt the R&R with respect to this issue and should find that this factor does not weigh in favor of granting fees.

As set forth above, the majority of the relevant factors weigh against awarding fees and costs, and on review of the R&R the Court should find that Plaintiffs are not entitled to fees or costs under FDUTPA.

### III. PLAINTIFFS ARE NOT ENTITLED TO THE FEES AND COSTS THEY REQUEST

Because the Plaintiffs are not entitled to fees or costs under either the Lanham Act or FDUTPA, the Court should deny their motion in its entirety. If, however, the Court determines that Plaintiffs are entitled to fees or costs, it should apply a significant reduction to the amount of fees and should deny almost all of the non-taxable costs sought.

#### A. The Court Should Reduce the Amount of Fees Sought

Plaintiffs initially sought $1,747,964.50 in attorneys' fees and $34,967.53 in costs. Motion at 1. After Defendants pointed out errors in Plaintiffs' billing records, Plaintiffs reduced their fee request to $1,721,873.00. R&R at 26 n.2.

Judge Goodman found that Plaintiffs "submitted many impermissible, block billed [time] entries" and concluded that "the amount of problematic block billing prevents the Court from assessing whether the hours billed were reasonable and warrants a reduction in fees." R&R at 33, 39. He further found that Plaintiffs "submitted multiple erroneous time entries beyond those that it conceded were incorrect in its Reply," some of which contained "relatively large discrepancies between the daily hours billed and the hours listed in the corresponding narrative." *Id*. at 40. The R&R concluded that "these erroneous entries throughout Bluegreen's submission warrant further reduction in fees." *Id*. at 41. Based upon the improper block billing and erroneous time entries, the

11

R&R applied a 20% reduction to Plaintiffs' requested fees. *Id*. at 44. The Court should adopt this portion of the R&R.

In contrast, as noted above, Defendants have established that, assuming Plaintiffs can be deemed the prevailing party, a further reduction of the requested fees is proper because Plaintiffs received only a fraction of the initial amount they sought. DE 574 at 11. Defendants' argument relied on *Marjam Supply Co. v. Pliteq, Inc.*, 2021 U.S. Dist. LEXIS 44435, at *70 (S.D. Fla. March 5, 2021), in which the court applied a reduction to the fees sought where the prevailing party sought "$1.6 million in damages and 5 million in punitive damages at trial and yet the jury only awarded $310,000 in damages and $800,000 in punitive damages." *Id*.; *see also Norman v. Hous. Auth.,* 836 F.2d 1292, 1302 (11th Cir. 1988); *James v. Wash Depot Holdings, Inc*., 489 F. Supp. 2d 1341, 1353-54 (S.D. Fla. 2007); *State Farm Mut. Auto Ins. Co. v. Laforet,* 658 So. 2d 55, 63-64 (Fla. 1995); *Peterson v. Hecht Consulting Corp*., 226 So. 3d 999, 1002 (Fla. 4th DCA 2017) (holding that "[a]court must reduce an attorney fee award from the lodestar amount when the prevailing party achieves only limited success", noting that plaintiff recovered less than one-third of the amount sought); *Jomar Props, LLC v. Bayview Constr. Corp.*, 154 So. 3d 515, 519 (Fla. 4th DCA 2015) (holding that the trial court appropriately reduced the lodestar amount based on the fact that the prevailing party recovered substantially less damages than it sought); *Eckhardt v. 424 Hintze Mgmt., L.L.C.*, 969 So. 2d 1219, 1222 (Fla. 1st DCA 2007) (holding that the trial court erred by failing to reduce the lodestar figure when the trial court awarded the plaintiff only 23% of the amount in controversy); *Fashion Tile & Marble, Inc. v. Alpha One Constr. & Assocs., Inc*., 532 So. 2d 1306, 1309 (Fla. 2d DCA 1988) (trial court may consider the result obtained by the verdict in terms of the potential damages available and the amount recovered compared to the amount claimed).

Here, the Defendants argued that a reduction should similarly be applied, because Plaintiffs initially sought millions of dollars in damages, but ***dropped*** their damages claims only several weeks before the originally-schedule trial in order to avoid facing a jury. DE 574 at 11. Defendants then stridently pursued their claim for over $1.5 million in disgorgement damages under the Lanham Act, but were awarded only $100,000 by this Court. DE 574 at 11 (emphasis added). Relying on *Carnival Corp. v. McCall*, 2021 U.S. Dist. LEXIS 79543 (S.D. Fla. April 26, 2021), the R&R distinguished *Marjam* and held that because Plaintiffs had received both

12

injunctive relief and a reduced amount of disgorgement, no further reduction was appropriate. This holding was in error.

First, the R&R failed to acknowledge that Plaintiffs had initially sought millions of dollars in damages, in addition to disgorgement and an injunction. After driving up both their own and Defendants' litigation costs by litigating the damages claims for years, Plaintiffs abandoned all of their damages claims at the eleventh hour to avoid a jury trial. Plaintiffs now seek to impose their litigation costs for the claims they dropped on Defendants, which they should not be permitted to do.

Second, even if the value of the injunction is taken into consideration, as it was in *Carnival Corp.*, it does not change the analysis. Again, Plaintiffs sought millions of dollars in damages, $1.5 million in disgorgement, and an injunction. In the end, they received only $100,000 in disgorgement and an injunction. The fact remains that the relief obtained "was only a portion of what was sought by" Plaintiffs, and a further reduction on these grounds is appropriate. *Marjam*, 2021 U.S. Dist. LEXIS 44435, at *70.

### B. The Court Should Adopt the R&R Regarding Non-Taxable Costs

Finally, the R&R recommended that the Court only award $1,619.72 in non-taxable costs. Specifically, Judge Goodman found that Plaintiffs were only entitled to $1,200 in mediation costs (which Defendants had not disputed) and $419.72 of parking costs. R&R at 55.

The R&R found that Plaintiffs were not entitled to costs that they had initially sought as taxable costs but now sought to recover as non-taxable costs. *Id*. at 45-57. The R&R further found that Plaintiffs were not entitled to (1) $6,553.50 for expenses related to Plaintiffs' trial technician, because the redacted invoice submitted by Plaintiffs did not contain any description of the services provided by the technician (*id*. at 49-52); (2) $3,585.07 for pre-trial and trial lodging for Plaintiffs' non-local attorneys (*id*. at 52-54); (3) $613.08 in travel expenses for non-local attorneys (*id*. at 54); (4) $55.37 in parking fees that did not correspond to the dates of the trial (*id*. at 56).

Defendants do not object to the R&R with respect to the costs awarded to Plaintiffs, and the Court should adopt this portion of the R&R.

### CONCLUSION

For the reasons set forth above, the Court should adopt in part and decline to adopt in part the Report and Recommendation.

Respectfully submitted this 8th day of August, 2024.

| */s/ John Y. Benford* | */s/ Patrick A. Bradford* |
|---|---|
| John Y. Benford | Patrick A. Bradford |
| Florida Bar: 51950 | (admitted *pro hac vice*) |
| Wilson Elser Moskowitz | Bradford Edwards LLP |
| Edelman & Dicker LLP | 575 Fifth Avenue, 14th Floor |
| 111 North Orange Avenue Suite 1200 | New York, NY 10017 |
| Orlando, Florida 32801 | Tel: 917.671.9406 |
| Phone: 407.203.7594 | Email: pbradford@bradfordedwards.com |
| Email: john.benford@wilsonelser.com | *Attorneys for Defendants William Wilson and Rich Folk* |
| *Attorneys for Defendants William Wilson and Rich Folk* | |

### CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2024, the foregoing document was filed using the CM/ECF system for the United States District Court, Southern District of Florida, which will send electronic notice of the foregoing to all counsel of record.

*/s/ John Y. Benford*

John Y. Benford, Esquire